

# Rules of
# Department of Social Services
## Division 35—Children's Division
## Chapter 71—Rules for Residential Treatment Agencies for Children and Youth

**Title** **Page**

**13 CSR 35-71.010** Definitions and Principles Generally Applicable to this Chapter......3

**13 CSR 35-71.015** Background Checks for Personnel of Residential Care Facilities and Child Placing Agencies......4

**13 CSR 35-71.020** Basic Residential Treatment for Children and Youth Core Requirements (Applicable To All Agencies)—Basis for Licensure and Licensing Procedures......9

**13 CSR 35-71.025** Exemption of Religious Residential Treatment for Children and Youth Operating Sites......12

**13 CSR 35-71.030** Hearings and Judicial Review......12

**13 CSR 35-71.035** Court Review and Dispositional Hearing......14

**13 CSR 35-71.040** Organization and Administration......15

**13 CSR 35-71.045** Personnel......15

**13 CSR 35-71.050** Staff Qualifications and Requirements......17

**13 CSR 35-71.060** Social Services Program......20

**13 CSR 35-71.070** Protection and Care of the Child......21

**13 CSR 35-71.075** Health Care......26

**13 CSR 35-71.080** Buildings, Grounds and Equipment......27

**13 CSR 35-71.090** Record Keeping......29

**13 CSR 35-71.100** Specific Rules for Basic Care Agencies Providing Care for Infant, Toddler, or Preschool Age Children (Birth Through Age Six (6))......29

**13 CSR 35-71.110** Child Care Program......31

**13 CSR 35-71.120** Specific Rules for Residential Treatment Agencies for Children and Youth Providing Maternity Care......32

**13 CSR 35-71.130** Specialized Standards—Residential Treatment for Children and Youth .............32

**13 CSR 35-71.140** Specialized Standards For Intensive Residential Treatment for Children and Youth ..............................................................34

**13 CSR 35-71.300** Notification Requirements for License-Exempt Residential Care Facilities ........43

**Title 13—DEPARTMENT OF SOCIAL SERVICES**
**Division 35—Children's Division**
**Chapter 71—Rules for Residential Treatment Agencies for Children and Youth**

**13 CSR 35-71.010 Definitions and Principles Generally Applicable to this Chapter**

*PURPOSE: This rule clarifies the terms used in the licensing rules for residential treatment agencies for children and youth.*

(1) The following principles shall apply to all decisions made pursuant to this chapter:

(A) The safety and welfare of children is paramount;

(B) All providers of direct services to children and their families will be evaluated in a uniform, transparent, objective, and consistent basis;

(C) Services to children and their families which are provided by the division and licensed residential care facilities shall be provided in a timely manner to maximize the opportunity for successful outcomes, and such services shall be tracked and routinely evaluated through a quality assurance program;

(D) Any provider of direct services to children and families shall have the appropriate and relevant training, education, and expertise to provide the highest quality of services possible which shall be consistent with federal and state standards;

(E) Resources and efforts of the division and licensed residential care facilities shall be committed to pursue the best possible opportunity for a successful outcome for each child. In the case of children and youth who are in the foster care system, successful outcomes may include preparing youth for a productive and successful life as an adult outside the foster care system, such as independent living. For those providers that work with children requiring intensive twenty-four- (24-) hour treatment services, successful outcomes shall be based on the least restrictive alternative possible based on the child's needs as well as the quality of care received; and

(F) All licensed service providers shall prioritize methods of reducing or eliminating a child's need for residential treatment through community-based services and supports.

(2) For the purpose of all regulations in 13 CSR Chapter 71, unless otherwise specified or unless the context clearly requires otherwise, the definitions of terms specified in sections 210.110, 210.481, 210.1253, RSMo, and 13 CSR 35-71.015 shall apply to all of the regulations in this chapter. The singular includes the plural and plural includes the singular. In addition, the following terms are defined as follows:

(A) "Agency" in the context of regulations governing licensed residential care facilities shall mean the same as licensed residential care facility or LRCF;

(B) "Background check" means a background check which complies with the requirements of 210.493, RSMo, and 13 CSR 35-71.015;

(C) "Chemical restraints" are drugs which are prescribed or administered to temporarily restrain a child who presents a likelihood of serious physical harm to him/herself or others;

(D) A "critical incident" is an incident involving a child in the care of the agency, in which the child or another person directly involved with the child is placed at significant risk of death, serious physical, mental, or sexual harm. A critical incident may involve conduct of the child, other children, and/or acts or omissions of staff of the agency. Examples of critical incidents include, but are not limited to: injury of a child during physical restraint; serious physical or sexual aggression by or toward the child; significant physical injuries requiring medical attention; allegations of sexual abuse; criminal conduct involving the child; elopement; attempted suicide; fire setting; child death; and information which must be reported to the child abuse and neglect hotline pursuant to 210.115, RSMo. A "critical incident report" is a report documenting a critical incident;

(E) "Director" is the director of the Children's Division;

(F) "Division" is the Children's Division of the Department of Social Services of Missouri as defined in section 210.481(3), RSMo;

(G) "Elopement" is when a child leaves a facility or designated area off the campus of a LRCF without permission and places the child out of sight and sound of direct supervision;

(H) "Family Care Safety Registry" means the family care safety registry administered by the Department of Health and Senior Services;

(I) "Good standing" refers to a licensed residential treatment agency for children and youth in substantial compliance with Chapter 71 of the Children's Division residential treatment agencies for children and youth rules and is not under involuntary intake suspension, license denial, license suspension, and/or license revocation;

(J) "Intensive residential treatment" for children and youth is provided in a living unit of an agency for gravely, emotionally dysregulated youth that has the capability of providing a highly structured and secure environment to prevent runaway behavior, address the likelihood of rage and physical aggression, and minimize the likelihood of youth injuring themselves or others. Intensive residential treatment for children and youth may be achieved through a combination of staffing patterns, architectural design of the operating site, electronic monitoring of the operating site and its exits, or other means necessary to assure safety;

(K) "Mechanical restraints" are any device, instrument, or physical object used to confine or limit a child's freedom of movement, except when necessary for orthopedic, surgical, and other medical purposes, or when necessary, to transport a child that may abscond or cause injury during transportation. Support devices used in normal situations to achieve proper body position and balance are not mechanical restraints;

(L) "Medical examination" is a thorough physical examination conducted by a licensed physician, certified nurse practitioner, advanced practice nurse in a collaborative practice agreement with a licensed physician, or a registered nurse who is under the supervision of a licensed physician. It may include a variety of tests, depending on the age, sex, and health of the person being examined, that includes tests for communicable diseases including, but not limited to, tuberculosis and hepatitis, when recommended by a licensed physician. It should also include a statement of the patient's mental state as determined by a licensed physician;

(M) "Operating site" is any building or campus of a licensed agency in which children receive care;

(N) "Physical restraint" is physical holding involving restriction of a child's voluntary movement to temporarily restrain an agitated, violent, or aggressive child who presents a likelihood of serious physical harm to him/herself or others;

(O) "Professional staff" of residential care facility are staff or contractors of the residential care facility who are qualified and required by law to be licensed in good standing to provide services for children to provide the services which they are providing. Examples of professional staff include, but are not limited to, physicians, nurses, physician assistants, teachers, licensed professional counselors, physical therapists, and occupational therapists;

(P) "Social services" are planned psychosocial interventions that are intended to lead to increased individual and family self-sufficiency and empowerment, and will support



the child's transition from the placement into the family or community. Social services shall include, but shall not necessarily be limited to, individual, family, or group therapy that is provided in conjunction with other age and developmentally appropriate expressive, experiential, and adjunct activities;

(Q) "Transitional living services" are services provided to older adolescents that combine life skills training with opportunities to practice same. The goal of such services is to prepare the youth for successful adult living in the community upon their discharge from residential treatment for children and youth;

(R) "Variance" is a minor, time limited, deviation from a rule that may be requested by a licensed residential treatment for children and youth agency on a form prescribed by the division and approved or denied by the division. Approval may be granted by the division when a variance does not negatively impact child health and safety and is not under the purview of another regulatory entity. Examples include, but are not limited to, time limited deviations in licensed capacity and age range; and

(S) "Well-known religious order, church, and religious organization" are defined as follows:

1. A church, synagogue, or mosque;
2. An entity that would qualify for federal tax exempt status as a not-for-profit religious organization under section 501(c) of the *Internal Revenue Code* of 1954; or
3. An entity where the real property on which the residential treatment for children and youth operating site is located is exempt from local taxation because it is used for religious purposes.

*AUTHORITY: sections 207.020, 210.506, and 660.017, RSMo 2016, and sections 210.493 and 210.1286, RSMo Supp. 2021.* This rule originally filed as 13 CSR 40-71.010. Original rule filed May 9, 1956, effective May 19, 1956. Refiled March 12, 1976. Rescinded and readopted: Filed Nov. 8, 1978, effective Feb. 11, 1979. Rescinded and readopted: Filed Oct. 13, 1982, effective Jan. 13, 1983. Amended: Filed Oct. 7, 1987, effective March 25, 1988. Emergency rescission and emergency rule filed Nov. 1, 1993, effective Nov. 12, 1993, expired March 11, 1994. Emergency rescission and emergency rule filed March 2, 1994, effective March 12, 1994, expired July 9, 1994. Rescinded and readopted: Filed Nov. 1, 1993, effective June 6, 1994. Emergency amendment filed July 25, 2008, effective Aug. 4, 2008, expired Jan. 30, 2009. Moved to 13 CSR 35-71.010 and amended: Filed July 25, 2008, effective Jan. 30, 2009. Amended: Filed Dec. 16, 2013, effective June 30, 2014. Emergency amendment filed Sept. 17, 2021, effective Oct. 1, 2021, expired March 29, 2022. Amended: Filed Sept. 17, 2021, effective March 30, 2022.*

**Original authority: 207.020, RSMo 1945, amended 1961, 1965, 1977, 1981, 1982, 1986, 1993, 2014; 210.493, RSMo 2021; 210.506, RSMo 1982, amended 1993, 1995; 210.1286, RSMo 2021; and 660.017, RSMo 1993, amended 1995.*

**13 CSR 35-71.015 Background Checks for Personnel of Residential Care Facilities and Child Placing Agencies**

*PURPOSE: This rule establishes the processes and procedures for conducting background checks for personnel of child placing agencies, licensed residential care facilities, and residential care facilities subject to the notification requirements under sections 210.1250 to 210.1286, RSMo, as provided and authorized by section 210.493, RSMo.*

*PUBLISHER'S NOTE: The secretary of state has determined that the publication of the entire text of the material which is incorporated by reference as a portion of this rule would be unduly cumbersome or expensive. This material as incorporated by reference in this rule shall be maintained by the agency at its headquarters and shall be made available to the public for inspection and copying at no more than the actual cost of reproduction. This note applies only to the reference material. The entire text of the rule is printed here.*

(1) Definitions. For the purpose of this regulation, unless otherwise specified in this section or unless the context clearly requires otherwise, the definitions of terms specified in sections 210.110, 210.481, and 210.1253, RSMo, shall apply to this regulation. The singular includes the plural and plural includes the singular. In addition, the following terms are defined as follows:

(A) "Applicant" means any individual who applies or is required to successfully complete the background check requirements for employment or presence at the Licensed Residential Care Facility (LRCF), License-Exempt Residential Care Facility (LERCF), or Child Placing Agency (CPA) by section 210.493, RSMo. For the purposes of background checks conducted by the Missouri State Highway Patrol of the Missouri Department of Public Safety, the term "applicant" is further defined as specified in section 43.539, RSMo.

1. Except as otherwise provided in this regulation, applicants for LRCFs, LERCFs, and CPAs who are required to complete the background check process include officers; managers; contractors with unsupervised access to children; volunteers with unsupervised access to children; employees; other support staff; owners of LRCFs and LERCFs that will have access to the facilities; and owners of LERCF, LRCF, and CPA that will have access to children.

2. Except as otherwise provided in this regulation, applicants for LERCFs who are required to complete a background check also include any applicant as defined in section 43.539, RSMo, who has unsupervised contact with a resident of the LERCF. The following individuals or classes of individuals who may have unsupervised contact with a child who is a resident of an LERCF are not deemed to be applicants and are not required to submit to background checks as provided in this subsection unless otherwise required by law or court order:

A. Legal parents, step-parents, grandparents, siblings, legal guardians, and prospective adoptive parents who do not reside on or at the LERCF but who have contact or visits with a child who resides on the property of an LERCF;

B. Licensed or other lawfully qualified individuals who do not reside at or on the property of an LERCF, who are not employees, officers, volunteers, staff, support staff of the LERCF, and who provide occasional emergency professional services within the scope of their employment pertaining to a child who resides at or on the property of the LERCF, such as licensed physicians, licensed nurses, licensed emergency medical technicians, POST certified law enforcement officers, juvenile officers, division employees, prosecuting attorneys, court appointed special advocates (CASA) assigned by a court to a child who resides at an LERCF, attorneys, and court appointed guardians *ad litem* for children who reside at an LERCF; and/or

C. Licensed or other lawfully qualified individuals who do not reside at or on the property of an LERCF, who are not employees, officers, volunteers, staff, support staff of the LERCF, and who provide reasonably necessary, professional services, maintenance in an emergency when it is necessary to protect the health and safety of individuals at the facility and background checks are not reasonably possible under the circumstances, or government inspections on the premises of an LERCF to ensure the health and safety of the residents such as fire, health, and safety inspectors, and nationally recognized accrediting agencies, heating, construction, electrical,



and plumbing contractors;

(B) "Boarding school" includes any educational institution in which some or all of the children who attend the institution reside during their attendance at the institution. Boarding schools include facilities where the children lodge in dorms, in private homes whose owners are contracted with, associated or affiliated with the institution, or in homes owned or operated by the institution regardless of whether or not the child's residence is located on or off the institution's campus;

(C) The "department" or the "division" shall refer to the Children's Division of the Missouri Department of Social Services;

(D) "Employee" is any individual who works in the service of a LERCF, LRCF, or Child Placing Agency under an express or implied contract for hire, whether written or unwritten, full time or part time, under which the LERCF, LRCF, or Child Placing Agency has the right to control the details of work performance in whole or in part. Other support staff may be employees and employees may be staff. For purposes of this regulation and any regulations implementing the background check process requirements prescribed by section 210.493, RSMo, employees of an LERCF, LRCF, or Child Placing Agency who neither work in nor perform services in Missouri, nor have access to children in Missouri, nor have access to a residential care facility in Missouri, and who are not otherwise required to successfully complete the background check process, are deemed other support staff who are not required to complete the background check process requirements in their capacities as employees;

(E) "Licensed Residential Care Facility" or "LRCF" means a facility providing twenty-four- (24-) hour care in a group setting to children who are unrelated to the person operating the facility and who are unattended by a parent or guardian, and which is required to have a license to operate as a Residential Care Facility under section 210.516, RSMo. LRCFs do not include licensed foster family homes or unlicensed kinship placements made pursuant to a juvenile or family court order;

(F) "License-Exempt Residential Care Facility" or "LERCF" means any place, facility, or home operated by any person who receives children who are not related to the operator and whose parent or guardian is not a resident of the same facility and that provides such children with supervision, care, lodging, and maintenance for twenty-four (24) hours a day, with or without transfer of custody, and that is not required to be licensed under section 210.516, RSMo.

Unless exempted as provided below, LERCFs include, but are not limited to, boarding schools, juvenile detention facilities, license-exempt foster homes as defined in section 210.516, RSMo, and other congregate care facilities. LERCFs do not include:

1. Hospitals, sanitariums, and clinics operated to provide medical care and treatment and operating pursuant to a valid license issued by the Missouri Department of Health and Senior Services (DHSS), the Missouri Department of Mental Health (DMH), the United States (such as Veterans' Administration Hospitals and hospitals administered by the armed forces of the United States);

2. Boarding schools operated by the Missouri Department of Elementary and Secondary Education (DESE), provided that DESE requires background checks equivalent or more stringent than the requirements of section 210.493, RSMo;

3. Foster homes and congregate care facilities or homes licensed or certified by the DMH, provided that DMH requires background checks equivalent or more stringent than the requirements of section 210.493, RSMo;

4. Juvenile corrections programs operated by the Department of Social Services, Division of Youth Services or juvenile detention facilities operated by juvenile officers or juvenile courts which are subject to the Prison Rape Elimination Act (PREA) standards and auditing;

5. Facilities operated by the Missouri Department of Corrections and county or local jails;

6. Any individual (but not a corporation, partnership, organization, or association) who receives on a voluntary basis, the child of close, personal friends or relatives as an occasional and personal guest in their personal home or the home of the child's parent, guardian, or legal custodian, who is otherwise unaffiliated with an LRCF or LERCF and who receives custody of or provides care of no other child unrelated by consanguinity, adoption, or affinity;

7. Any individual (but not a corporation, partnership, organization, or association) who is otherwise unaffiliated with an LRCF or LERCF who receives legal custody or guardianship of a child or sibling group pursuant to a judgment or order of a court of competent jurisdiction in cases where a state or local government is not a party and in cases where the judgment or order is entered by a court outside the state of Missouri, all of the requirements of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), the Interstate Compact for the

Placement of Children (ICPC), or the Interstate Compact for the Placement of Juveniles (ICJ) have been fully satisfied; and

8. Any camp which is not a boarding school, which is operated solely during certain months of the year, not to exceed four (4) months, which is conducted in good faith primarily to provide recreation or religious instruction for children, in which the children do not spend more than thirty (30) consecutive overnight periods during any twelve (12) month period, and not for ongoing residential or treatment purposes;

(G) "Manager" is any individual who administers or supervises the affairs of the LERCF, LRCF, or Child Placing Agency, including, but not limited to any individual who supervises any employees, staff, or volunteers of the LERCF, LRCF, or Child Placing Agency;

(H) "Missouri State Highway Patrol" or "MSHP" shall mean the Missouri State Highway Patrol of the Missouri Department of Public Safety;

(I) "Officer" is any individual who holds an executive position with the LERCF, LRCF, or Child Placing Agency, including but not limited to President and/or Chairperson of the Board, Board Vice President and/or Vice Chair, Board Secretary, Board Treasurer, any other position designated as an officer in the bylaws or articles of incorporation or organization; and General Counsel, Headmaster, Principal, Head Teacher, and Director and/or Chief Executive Officer of the LERCF, LRCF, or Child Placing Agency;

(J) "Owner" of an LERCF, LRCF, or Child Placing Agency is any individual who holds an equity interest in the LERCF, LRCF, or Child Placing Agency;

(K) "Sponsoring Organization" shall mean the entity that sponsors the LERCF, LRCF, or Child Placing agency, including, but not limited to, the sponsoring church or religious organization;

(L) "Other Support Staff" of a LERCF, LRCF, or Child Placing Agency include any individual who works for or performs services, including professional services, for the LERCF, LRCF, or Child Placing Agency, whether compensated or not. Other support staff may be employees and employees may be other support staff. For purposes of this regulation and any regulations implementing the background check requirements prescribed by section 210.493, RSMo. Other support staff who neither work in Missouri, nor perform services in Missouri, nor have access to children in Missouri, nor have access to a residential care facility in Missouri, and who are not otherwise required to successfully complete the background



check process, are not required to complete the background check process requirements in their capacities as other support staff; and

(M) "Volunteer" of an LERCF, LRCF, or Child Placing Agency is any individual who performs a service for or on behalf of the LERCF, LRCF, or Child Placing Agency of their own free will without obligation, or without any expectation of reward or compensation.

(2) The background checks conducted pursuant to this regulation shall consist of the following:

(A) A fingerprint-based background check of open and closed criminal history conducted in conjunction with the MSHP pursuant to section (3) of this regulation; and

(B) A search of the national offender registry conducted by the division; and

(C) A search of the following registries, repositories, or databases in Missouri, the state where the applicant resides, and each state where the applicant resided during the preceding five (5) years conducted by the division:

1. The state sex offender registry or repository (in Missouri this is a search of the MSHP Sex Offender Registry); and

2. The state family care safety registry (in Missouri this is a search of the family care safety registry); and

3. The state-based child abuse and neglect registry and database (in Missouri this is a search of the Central Registry of the division).

(3) All of the fingerprint-based background checks of closed criminal history conducted under this regulation shall be performed in conjunction with the MSHP solely through the authority of the Missouri Volunteer and Employee Criminal History Service (MOVECHS) and the National Child Protection Act, Public Law 103-209, as amended. No fingerprint-based, criminal background checks of federal records or closed criminal history shall be conducted under this regulation on clients, patients, and students of the LERCF or LRCF unless the fingerprint-based background check of closed criminal history is authorized by federal and state law and that individual is also an employee, staff, or volunteer of the LERCF or LRCF. The background checks conducted in conjunction with the MSHP will be conducted pursuant to the law, statutes, regulations, and policies governing the MSHP and will include a fingerprint background check and a state open records check as provided in this section.

(A) Fingerprint background check is a state and FBI background check is required for any person who is actively employed by or seeks employment with, actively licensed or seeks licensure with, actively volunteers or seeks to volunteer with, actively contracted with or seeks to contract with, an owner or operator of a Licensed Residential Care Facility, a License-Exempt Residential Care Facility, or a Child Placing Agency after the phase-in period.

1. The fingerprint background check will be conducted through the Missouri VECHS Program, pursuant to the National Child Protection Act, as amended.

2. Criminal history record information will consist of complete Missouri criminal history (open and closed) records, and criminal history from the Federal Bureau of Investigation. Criminal history will include convictions, arrests within thirty (30) days, pending charges and suspended imposition of sentence (SIS) during probation, not guilty findings, charges *nolle prossed*, or dismissed cases, SIS cases after probation is completed, and arrests after thirty (30) days where no charges have yet been filed or reported by the prosecuting attorney, and will include a search of the state sex offender registry.

(B) State open records check is required for any person that is not an employee, volunteer, contractor, or owner/operator, who is eighteen years of age or older, who resides at or on the property, or who has or may have unsupervised access to children for whom a Licensed-Exempt Residential Care Facility provides care. A state open record check consists of convictions, arrests within thirty (30) days, pending charges, suspended imposition of sentence (SIS) during probation, and will include a search of the state sex offender registry.

(4) Application of this Regulation. This regulation applies to CPAs, LRCFs, and LERCFs which are subject to the notification requirements of sections 210.1250 to 210.1286, RSMo.

(A) Phase-in Period. Every LRCF, LERCF, and Child Placing Agency operating on the date that section 210.493, RSMo, and this regulation became effective shall have until March 31, 2022, for all applicants to complete background checks. The division may extend this deadline for any individual LRCF, LERCF, and Child Placing Agency, due to unusual, compelling, and extenuating circumstances beyond the control of the LRCF, LERCF, or Child Placing Agency. The request for an extension shall be in writing and shall explain the reasons for the request for an extension. Any applicant who does not complete the background check process as specified in this regulation by the deadline shall be ineligible for employment or service with an LRCF, LERCF, or Child Placing Agency until the background check process has been successfully completed.

(B) Any applicant who begins employment or service after the effective date of the phase-in period shall complete the background check process before beginning employment or service with an LRCF, LERCF, or Child Placing Agency.

(5) Designation of Authority. The Department of Social Services hereby designates the Children's Division of the Department of Social Services to be the division within the Department of Social Services to administer background checks as required by section 210.493, RSMo. The Department of Social Services hereby designates the Administrative Hearings Unit within the Division of Legal Services of the Department of Social Services to process and decide all appeals of applicants as provided in this regulation.

(6) Application Process.

(A) The applicant shall apply for background screening through the division's online portal on forms promulgated by the division. The application forms and instructions are incorporated by reference and made a part of this rule as published by the Department of Social Services, Children's Division, 205 Jefferson Street, 10th Floor, PO Box 88, Jefferson City, MO 65102, at its website at https://www.dss.mo.gov/provider-services/children/residential-program/background-checks.htm, October 1, 2021. This rule does not incorporate any subsequent amendments or additions. The applicant shall submit the completed application form and upload any supporting or supplemental forms and documentation through the division's online portal. The application must be signed by the applicant (e-signature is acceptable).

1. The applicant may apply to the division for permission to file the application and supporting documentation by mail or private delivery service rather than through the online portal when there are unusual, compelling, and extenuating circumstances which make filing the application through the online portal impossible. The applicant shall apply for permission to file the application form, supporting, or supplemental materials with the division in writing, and shall explain the circumstances why the applicant cannot submit the application through the online portal. A copy of the application forms for use in submitting application by mail is incorporated by reference and made a part of this rule as published by the Department of Social



Services, Children's Division, 205 Jefferson Street, 10th Floor, PO Box 88, Jefferson City, MO 65102, at its website at https://www.dss.mo.gov/provider-services/children/residential-program/background-checks.htm, October 1, 2021. This rule does not incorporate any subsequent amendments or additions. Applicants may download a copy of the forms. The applicant shall attach all documentation that may be necessary to complete the required application. If the division grants permission under this section, the applicant may submit the form with supporting materials by mail, by private delivery service, or in person to the offices of the division at Children's Division, Attn: Background Screening Team, 205 Jefferson Street, 10th Floor, PO Box 88, Jefferson City, Missouri 65102; or by email at CDScreen@dss.mo.gov.

(B) The application shall contain all of the following information:

1. The applicant's current, full legal name, residence address, mailing address, business address, telephone number, and email address. The applicant's mailing address and email addresses shall be the applicant's address of record for purposes of this regulation;

2. The applicant's date of birth and full Social Security number;

3. Any other names or aliases that the applicant has used or been known by during the five- (5-) year period preceding the application;

4. Any other residence address, mailing address, county and state of residence, business address, telephone number, and email address that the applicant has had during the five- (5-) year period preceding the application;

5. Whether the applicant is registered, or is required to be registered, on a state sex offender registry or repository or in the National Sex Offender Registry. If the applicant is so registered or required to be registered, the applicant shall provide the following additional information:

A. The national, federal, state, or local jurisdiction in which the applicant is registered or required to be registered;

B. The specific crime or offense for which the applicant is registered or required to be registered including:

(I) The date or approximate date that the crime or offense was committed;

(II) The statute or section number of the crime or offense;

(III) The name and address of the court where the case was adjudicated;

(IV) The case number; and

(V) The date of the plea, finding, judgment, or sentence;

6. Whether the applicant is listed as a perpetrator of child abuse or neglect under sections 210.109 to 210.183, RSMo, or any other finding of child abuse or neglect based on any other state's registry or database. In states where the official registry of substantiated findings of child abuse or neglect are made or kept by a county, this information must also be disclosed. If the applicant is listed, the applicant shall also provide:

A. The state or county registry or database in which the applicant is listed;

B. The specific finding(s) of the state or county agency and the conduct for which the applicant is listed, including:

(I) The date(s) of the conduct;

(II) The date the applicant was listed;

(III) The name and address of the state or local government entity that maintains the list;

7. Whether the applicant has ever been found guilty of or pled guilty or *nolo contendere* to any crime or offense listed in section 210.493.11(5), RSMo. If the applicant has ever been found guilty of or pled guilty or *nolo contendere* to any such crime or offense, the applicant shall also provide—

A. The national, federal, state, or local jurisdiction where the applicant was found guilty of or pled guilty or *nolo contendere*;

B. The specific crime or offense for which the applicant is registered or required to be registered, including:

(I) The date or approximate date that the crime or offense was committed;

(II) The statute or section number of the crime or offense;

(III) The name and address of the court where the case was adjudicated;

(IV) The case number; and

(V) The date of the plea, finding, judgment, or sentence;

8. Whether the applicant consents to the division notifying the LRCF, LERCF, or Child Placing Agency of its decision on eligibility or ineligibility and/or sending a copy of its eligibility or ineligibility finding to the LRCF, LERCF, or Child Placing Agency;

9. Whether the person is requesting a response and notice of final decision by first-class mail or by email;

10. The name and address of any LRCF, LERCF, or Child Placing Agency that the applicant wishes the division to send a finding of eligibility or ineligibility to upon the completion of the background check process;

11. A fully completed and signed MOVECHS Waiver Agreement and Statement (SHP-981G) form. The completed and signed waiver form must be submitted with the application;

12. Acknowledgement and certification by the applicant, under penalty of perjury that all submitted information is true, accurate, and complete to the best of the applicant's knowledge; and the applicant understands that a knowing violation of section 210.493, RSMo, may constitute a criminal offense and knowingly making a materially false statement in connection with a background check shall render the applicant ineligible;

13. Any other information and documents that the applicant wishes the division to consider in making its decision about eligibility;

14. An explanation of why the applicant is unable to provide any of the information that must be provided to support the application.

(C) The applicant shall register with the Family Care Safety Registry and execute any documents necessary for the division to access the applicant's results in the Family Care Safety Registry.

(D) The applicant shall execute any authorizations necessary to obtain information from state, local, and federal registries.

(E) The applicant shall submit fingerprint cards and any required fees to the Missouri State Highway Patrol's central repository and follow all of the Missouri State Highway Patrol's procedures for requesting a fingerprint-based criminal background check. The applicant shall further execute any documents and consents necessary for the Missouri State Highway Patrol to complete the fingerprint-based criminal background check and to notify the division of any criminal history record, or lack of criminal history record information discovered on the applicant as required by law.

(F) The applicant must submit a completed MOVECHS Waiver Agreement and Statement (SHP-981G) to the division with the application form to the division before reporting to be fingerprinted.

(G) The application will not be complete until the division receives a fully completed application form, MOVECHS Waiver Agreement and Statement (SHP-981G) and the results of the fingerprint-based criminal background check from the Missouri State Highway Patrol, and the applicant has registered for the Family Care Safety Registry and executed any authorizations necessary to obtain information from any registries.

(H) Upon receipt of a complete application, and MOVECHS Waiver Agreement and Statement (SHP-981G), and consideration of the application, the division will notify the



applicant of eligibility or ineligibility based on the background check by mailing or emailing a notice to the applicant's address of record, and send a copy to the LRCF, LERCF, or Child Placing Agency as indicated on the application.

1. The notice will indicate whether the applicant is eligible or ineligible for employment or presence at the LRCF, LERCF, or Child Placing Agency.

2. The notice will advise the applicant of the applicant's right to request administrative review and appeal the decision and the process for requesting administrative review or appeal.

3. The notice will advise the applicant of the applicant's responsibility to notify the division, LRCF, LERCF, or Child Placing Agency of any event which would impact the applicant's eligibility as provided in section 210.493, RSMo, and this regulation.

4. The notice will advise the applicant that the finding of eligibility or ineligibility was based on a background check of records through the date of the notice and for the particular LRCF, LERCF, or Child Placing Agency for which the background check was requested.

(I) If the division finds the applicant eligible, the division shall forward a copy of the finding to any LRCF, LERCF, or Child Placing Agency indicated by the applicant. If the division finds the applicant ineligible, the division shall not send a copy of the notice to any indicated LRCF, LERCF, or Child Placing Agency, until the division determines the applicant has exhausted the applicant's administrative remedies and the division has received a written consent from the applicant authorizing the division to disclose such information.

(7) Fees and Costs. The applicant, LRCF, LERCF, or Child Placing Agency shall be responsible for the payment of any and all required fees for processing the application, including any fees for the fingerprint-based background check and the Family Care Safety Registry.

(8) Notice and Communications. The division will send all communications and notices pertaining to an application and request for administrative review or appeal by first-class mail unless the applicant or entity requesting administrative review or appeal affirmatively notifies the division, in writing, that the applicant or person would like to receive communications by email and provides the division with the email address. It is the responsibility of the applicant or person to notify the division of any change in the applicant's or person's contact information. All notices shall be sent to the address or email address of record, and all correspondence sent to that address shall be deemed received and sufficient service for all purposes.

(9) The division shall not reveal any information pertaining to any disqualifying crime, offense, or other related information regarding the applicant to the LRCF, LERCF, or Child Placing Agency except as may be otherwise required by law.

(10) Continuing Obligation to Notify and Expiration of Determination.

(A) The division's decision of eligibility or ineligibility shall be based upon the information that the division receives through the background check process, and any additional information that may be made available to the division during administrative review and appeal.

(B) The division's finding is only valid through the date of the decision and only for the LRCF, LERCF, or Child Placing Agency indicated by the applicant on the application. The applicant may designate more than one LRCF, LERCF, or Child Placing Agency on a single application.

(C) The applicant shall be responsible for notifying the division of any change in circumstance which may render the applicant ineligible and shall submit a new application based upon the subsequent information.

(D) The applicant's fingerprint-based background check is valid for five (5) years from the date the fingerprints were taken, or until there is any change in the circumstances of the applicant which would render the applicant ineligible under the statute, whichever occurs first. It is the responsibility of the applicant to track the expiration date of the fingerprints and submit an application for a new background check.

(E) The division's finding automatically expires thirty (30) days from the date of the division's decision. It is the responsibility of the applicant to submit a new application for a new determination and fingerprint-based criminal background check following the procedures specified in this regulation.

(11) In determining whether an applicant is eligible or ineligible under section 210.493, RSMo, and this regulation, the division shall not consider the manner, content or the religious curriculum of the program, or ministry of a school or of a facility sponsored by a church or religious organization.

(12) Administrative Review and Appeal Procedure.

(A) The decision of the division shall be final unless the applicant or person who is aggrieved by a decision of the division under this regulation files a request for administrative review of the decision within fourteen (14) days of the mailing of the decision. Any request for administrative review that the division receives after the deadline is untimely and will not be subject to further administrative review or appeal.

(B) Administrative Review.

1. A request for administrative review shall be made in writing, either on a form provided by the division or by letter. The division will publish a form on its website. The request for administrative review shall—

A. Include the name, address, telephone number, and email address of the person requesting administrative review;

B. State whether the division should provide the response and notice of final decision by first-class mail or by email;

C. Identify the decision the requestor wishes to be reviewed, the specific reasons the requestor believes the division's decision is erroneous, and why the requestor is aggrieved by the decision;

D. Include copies of any relevant documents, materials, or information that the requestor wishes to submit in support of the administrative review request; and

E. State whether the person requests that the review be considered on the basis of the materials submitted or whether the person requests a conference. If the person requests a review conference, then the person shall also provide dates and times within the next thirty (30) days when the person may be available and the reasons why the administrative review cannot be processed on the basis of the materials presented.

2. The request for administrative review shall be submitted to the division by certified first-class mail through the United States Postal Service return receipt requested to the address specified on the notice of ineligibility or submitted electronically by email to the division to the email address specified in the notice of ineligibility.

3. The administrative review shall be conducted and decided based upon the written materials submitted to the division and any information and materials presented at a review conference. The division will provide a review conference upon written request.

4. The review conference may take place by telephone conference call, video conference, or in-person meeting.

5. The administrative review process shall be informal. The rules of evidence shall not apply. There is no right to conduct discovery.

There shall be no right to compel the production of witnesses or evidence by subpoena or otherwise.

6. The administrative review shall be conducted by an individual designated by the director of the department or the division, who may be an employee of the division or the department. However, the individual shall not have been involved in making the decision which is subject to review.

7. The individual conducting the administrative review shall conduct the administrative review and render a written decision no later than thirty (30) days from the date that the division received the request for administrative review.

8. The decision upon administrative review shall be the final decision of the department as to any person that is not an applicant.

(C) Appeal.

1. Any applicant who is aggrieved by a decision upon administrative review shall have the right to appeal the decision to the Administrative Hearings Unit of the Division of Legal Services of the Department of Social Services. The applicant shall submit a notice of appeal to the division, within fourteen (14) days of the date of the administrative review decision, by certified first-class mail through the United States Postal Service return receipt requested to the address specified on the notice of ineligibility or submitted electronically by email to the division to the email address specified in the notice of decision upon administrative review. The division must receive the notice of appeal within fourteen (14) days of the date of the decision. Any notice of appeal that is received after the deadline is untimely and the appeal will be dismissed. Completion of the administrative review process is a condition precedent to the applicant's right to appeal.

2. The parties to the appeal shall be the division and the applicant.

3. All appeals shall be processed and decided by a hearing officer from the Administrative Hearings Unit of the Division of Legal Services of the Department of Social Services. The decision of the hearing officer shall be the final decision of the department.

4. The following evidence shall be admitted and considered by the hearing officer on appeal as provided in this section without further foundation:

A. A copy of the application form and all supporting documentation;

B. A copy of the record of the court establishing that the applicant pled guilty or *nolo contendere* or has been found guilty of a crime or offense listed in 210.493, RSMo;

C. A copy of a letter or official communication from the applicable state, county, or local government agency stating that the applicant is listed as a perpetrator of child abuse or neglect in the state, county, or local government agency's registry or database of perpetrators of child abuse or neglect;

D. A copy of the report of the fingerprint-based background check conducted pursuant to section (3) of this regulation; and

E. A copy of a letter, official communication, or a print out of the applicable page of the National Sex Offender Registry or state sex offender registry.

5. The applicant or division may object to the hearing officer considering the information outlined in this regulation. The burden shall be on the objecting party to establish that the items of evidence shall not be considered by the hearing officer.

6. The hearings held under this section shall be informal, but they shall be held on the record and testimony will be adduced under oath. The rules of evidence do not apply. The applicant may be represented by an attorney.

7. Upon written request the division will provide the applicant with a copy of the fingerprint-based state and FBI background check.

8. The hearing shall not be an opportunity to collaterally attack or re-litigate the validity of the underlying plea of guilt, plea of *nolo contendere*, or the underlying finding of child abuse, neglect, or maltreatment by the applicable state or local agency, or the accuracy of information in the federal, state, or local registry or repository.

9. The hearing shall be based upon the written submissions of the parties unless the applicant or the division request a hearing by video or teleconference. The hearing officer may hold an in-person hearing only upon a showing that an in-person hearing is necessary to accommodate a special need of an applicant or the division.

10. The hearing officer shall issue a decision in writing, which will be sent by first-class mail (or by email at the election of the applicant) to the applicant at the applicant's address of record. If the applicant is represented by an attorney the decision will be sent to the applicant's attorney. The written decision of the hearing officer shall be the final decision of the department.

(D) Judicial Review.

1. Any applicant aggrieved by the final decision of the department after appeal may seek judicial review as provided in section 536.150, RSMo.

2. Any person who is not an applicant who is aggrieved by the final decision of the department after administrative review may seek judicial review as provided in section 536.150, RSMo.

*AUTHORITY: sections 207.020 and 660.017, RSMo 2016, and sections 210.493 and 210.1286, RSMo Supp. 2021.* Emergency rule filed Sept. 17, 2021, effective Oct. 1, 2021, expired March 29, 2022. Original rule filed Sept. 17, 2021, effective March 30, 2022.*

**Original authority: 207.020, RSMo 1945, amended 1961, 1965, 1977, 1981, 1982, 1986, 1993, 2014; 210.493, RSMo 2021; 210.1286, RSMo 2021; and 660.017, RSMo 1993, amended 1995.*

**13 CSR 35-71.020 Basic Residential Treatment for Children and Youth Core Requirements (Applicable To All Agencies)—Basis for Licensure and Licensing Procedures**

*PURPOSE: This rule describes the procedures for application for licensure, the licensing investigation and provisions for continued licensing investigations after the initial license is granted.*

*PUBLISHER'S NOTE: The secretary of state has determined that the publication of the entire text of the material which is incorporated by reference as a portion of this rule would be unduly cumbersome or expensive. This material as incorporated by reference in this rule shall be maintained by the agency at its headquarters and shall be made available to the public for inspection and copying at no more than the actual cost of reproduction. This note applies only to the reference material. The entire text of the rule is printed here.*

(1) Licensing Authority.

(A) Any person who develops, establishes, maintains, or operates a residential treatment agency for children and youth, other than persons exempt from licensure requirements under section 210.516, RSMo, must apply for and receive a license from the division prior to accepting any child for care.

(B) Before a license may be granted, an agency must be in compliance with sections 210.481–210.536, RSMo, sections 210.1250–210.1286, RSMo, and these rules.

(2) Application Procedures.

(A) To apply for a license to operate a Licensed Residential Care Facility (LRCF) in Missouri the person, or the persons legally authorized designee, shall file an application with the division on forms provided by the division.



1. The application forms are published on the division's website and are incorporated by reference and made a part of this rule as published by the Department of Social Services, Children's Division, 205 Jefferson Street, 10th Floor, PO Box 88, Jefferson City, MO 65102, and available at: https://www.dss.mo.gov/provider-services/children/residential-program/licensed.htm, October 1, 2021. This rule does not incorporate any subsequent amendments or additions. The person shall attach all additional supplementary materials and documentation that may be necessary to complete the required application. The person shall submit the form with supplementary materials to the division by email at the following email address: CDaskRPU@dss.mo.gov.

2. The application form shall be signed by the person or the person's legally authorized designee. The division will accept e-signatures.

(B) The application shall contain the following information:

1. The name, street address, mailing address, fax number, and phone number of the residential care facility;

2. The name, street address, mailing address, email address, and phone number of the director, owner, and operator of the LRCF;

3. The name, street address, mailing address, email address, phone number, and job title of the individual or individuals who are designated to submit the application on behalf of the residential care facility. This individual shall be an individual who is legally authorized to act on behalf of the residential care facility and to legally bind the residential care facility to the statements made and information provided in support of the application;

4. The name and description of the person operating the residential care facility, including a statement as to whether the person operating the residential care facility is a firm, corporation, benevolent association, partnership, association, agency, or an incorporated or unincorporated organization, regardless of the name used. If the owner or operator of the residential care facility is incorporated, a corporation shall state the type of corporation, the state in which the corporation was incorporated, and the date of incorporation;

5. The name and address of the sponsoring organization of the residential care facility, if applicable;

6. The name and address of every school attended by, or to be attended by, the children served by the residential care facility;

7. A certification that officers, managers, contractors, volunteers with access to children, employees, and other support staff of the residential care facility, and owners who will have access to the facilities have, or will have, completed background checks and have been found eligible as required in section 210.493, RSMo, and 13 CSR 35-71.015.

(C) The residential care facility shall submit the additional documentation and information in support of the application as provided in this subsection. This information may be submitted on a form or forms provided by the division, or it may be submitted separately as attachment(s) to the application.

1. Local health department inspection certificates.

A. The residential care facility shall successfully complete and obtain any and all local health department inspection certificates required in the jurisdiction in which the facility operates. If the residential care facility operates in more than one (1) county or local jurisdiction, then the residential care facility shall obtain the required certificates for each facility in each location.

B. The residential care facility shall submit a copy of all local health department inspection certificates with the application, and shall indicate the date of the inspection and the date that each certificate expires, if any.

C. If there is no local or county government health department in which the residential care facility is located, or if the local or county health department will not perform a health inspection, the residential care facility shall request that decision in writing and submit that information with the application.

D. If the residential care facility is unable, after exercising diligent efforts, and due to no fault of its own, to obtain a local inspection certificate, then the residential care facility shall submit a statement describing the efforts made to obtain the certificate(s) and the reason why the residential care facility was unable to obtain the certificate. The residential care facility shall attach copies of any correspondence from any state, county, or local jurisdictions declining to conduct the inspection.

2. Proof that medical records are maintained for each child. The division will accept copies of the LRCF's administrative policy regarding the maintenance of medical records as *prima facie* proof that the LRCF is maintaining medical records for purposes of submitting an application. However, proof that the LRCF is maintaining medical records on each child will be the subject of verification and monitoring. The LRCF shall provide the division access to the facility upon request to inspect the medical records maintained by the LRCF on the children served by the LRCF in order to verify that the medical records are being kept.

3. Evidence of compliance with local building and zoning requirements.

4. A floor plan of the proposed site in which the specific use of each room is identified.

5. A signed and dated copy of the civil rights agreement. This form is included with the application forms referenced in paragraph (2)(A)1.

6. A chart depicting the agency's organizational structure and lines of supervision.

7. Written policies and procedures established by the board of directors which clearly set forth the authority and the responsibilities delegated to the executive director.

8. A copy of the articles of incorporation or organization, bylaws, and board roster, including the mailing address and place of employment of each member, and a list of board officers.

9. A proposed budget for a period of not less than one (1) year, including sources of income and/or fund raising methods.

10. Verification of availability of not less than three (3) months' operating capital.

11. A copy of the residential care facility's written intake policy.

12. Written identification of specific program models or designs which shall include the methods of care and treatment to be provided.

13. The job title, job description, and minimum qualifications for all staff.

14. A projected staffing plan for the anticipated capacity.

15. Written child abuse and neglect reporting policy.

16. Written personnel practices, including staff training and orientation.

17. Written discipline policy.

18. Written visitation policy.

19. Written health care policy.

20. Written restraint policy utilizing a recognized and approved physical restraint program.

21. A needs assessment conducted and submitted as evidence of need for the type and scope of program proposed. This written assessment shall include, but is not limited to:

A. An identification and survey of potential referral sources, existing resources, and unmet community needs;

B. A business plan that details the agency's proposed venture explaining the vision, mission, current status, expected needs, defined markets, and projected results;

C. A description of how treatment



will be provided and documented and how the proposed operating site meets therapeutic needs;

D. A description of how the agency will be financed and how fiscal viability will be maintained; and

E. A description of the results of a meeting planned and hosted by the agency with key community participants with the intent of enhancing communication, gathering information for the needs assessment, addressing interaction with community resources, and addressing community questions and comments regarding the proposed residential treatment agency for children and youth.

22. Evidence of compliance with fire safety requirements of the State Fire Marshal.

23. A certification that all individuals who are required to complete a background check and be found eligible for employment or presence at the LRCF as provided in section 210.493, RSMo, and 13 CSR 35-71.015.

24. Verification of the education, licensing credentials, and experience for all professional staff.

25. A copy of the resume for all professional and administrative staff.

26. Written description of the recreational program, and the manner in which staff are qualified and prepared to create, organize, and supervise them.

27. A copy of the annual written staff training plan.

28. A copy of the personnel manual for the agency.

29. A copy of the program manual for the agency.

30. For any agency operating a swimming pool on grounds, documentation that the pool is operated and maintained in accordance with all applicable ordinances and/or state guidelines.

31. Documentation that each operating site's food service is in compliance with the requirements of the Department of Health and Senior Services and/or any local applicable ordinances.

32. Written volunteer policies.

33. Written confidentiality policy.

34. Written policy for the use of locked isolation.

35. Written instructions for fire, severe weather, and other emergency evacuations.

36. Written description of the agency's religious requirements and practices.

37. Written policy governing the use of medications, including psychotropic medications.

38. A copy of any newsletter, brochure, or flyer used by the agency for fundraising or marketing purposes.

39. Documentation of insurance for the agency for professional and commercial liability, worker's compensation insurance, fire and disaster insurance, and agency vehicle insurance.

(D) Upon receipt of the application form and supporting documentation, the division will send a request to the State Fire Marshal to conduct a fire and safety inspection and provide the LRCF and the division with a copy of the approved fire and safety certificate.

(E) The application will be complete when the residential care facility submits a completed application with all of the required supporting documents and information to include all required inspection certificates.

(3) Licensing Assessment.

(A) When the application is complete the division will conduct a thorough assessment of the residential care facility to determine whether the residential care facility meets all of the requirements for licensure in compliance with the licensing law and applicable rules.

(B) If an applicant for licensure is determined not to be in compliance with the licensing law and applicable rules, or if the division issues a provisional license and the residential care facility does not achieve full compliance within six (6) months of the date of the issuance of the provisional license, the application will be denied. A new application for licensure must be filed if the agency desires to pursue licensure.

(4) The License.

(A) Upon determination of compliance with the licensing law and applicable rules, the director shall issue a license for an initial six- (6-) month probationary term.

(B) Following the probationary period, upon determination of continued compliance with Missouri statutes and applicable licensing rules, the director shall extend the term of the license for a period not to exceed two (2) years.

(C) The license shall be posted in a conspicuous place on the premises of the operating site.

(D) The number, sex, and age range of children an agency is authorized to accept for care shall be specified on the license and shall not be exceeded.

(E) The license shall not be transferable.

(F) An LRCF for children and youth may request a temporary variance from one (1) or more of the licensing requirements for a specified period of time on a form prescribed by the division that is approved or denied by the division. Approval may be granted by the

division only in unusual situations when the division determines that the variance will not negatively impact child health and safety and is not under the purview of another regulatory entity. Examples may include, but are not limited to, time limited deviations in licensed capacity and age range. No variance will be granted for any licensing requirements which involve the health, safety, and welfare of children. Examples include, but are not limited to, compliance with fire and sanitary codes, food safety, building occupancy requirements, and other requirements imposed by law. In the event the licensed residential treatment agency for children and youth does not agree with the decision of the division, it may request administrative review pursuant to 13 CSR 35-71.030.

(5) License Amendment.

(A) An LRCF shall file an application for amendment with the division on a form prescribed by the division at least sixty (60) days prior to—

1. Relocation and/or address change;
2. Change in the name of the LRCF;
3. Change in the capacity, gender served, and/or age range of children; or
4. Any major change in the program.

(B) These changes shall be approved by the division prior to implementation.

(6) Licensing Renewal.

(A) The LRCF shall complete and return the application for license renewal to the division at least ninety (90) days prior to the expiration of the current license. The LRCF shall utilize the forms indicated in paragraph (2)(A)1. of this regulation to initiate the license renewal process. The LRCF shall attach all additional supplementary materials and documentation that may be necessary to complete the required application. The LRCF shall submit the form with supplementary materials by email to CDaskRPU@dss.mo.gov. The application form shall be signed by the director of the LRCF or the director's legally authorized designee. The division will accept e-signatures.

(B) The division shall initiate action on the completed application packet prior to the expiration of the existing licensure period.

(C) In addition to the completed application form, the residential care facility shall submit the following documents with the application for license renewal:

1. A current board roster, including the mailing address and place of employment of each member and a list of board officers;
2. A summary of any significant changes to programs and copies of any resulting policies or policy changes;



CSR

3. A copy of a current organizational chart;

4. Certification that all individuals who are required to submit to a background check have completed their background checks and have been found eligible by the division for employment or presence at the LRCF as provided in section 210.493, RSMo, and 13 CSR 35-71.015;

5. Annual results of a check of the family care safety registry for all staff, as well as interns, volunteers, and contractors. For individuals who reside outside of Missouri who are subject to the background check requirements provided for in section 210.493, RSMo, the LRCF shall require all officers, managers, contractors, volunteers with access to children, employees, other support staff, and owners of the LRCF who will have access to the facilities of the LRCF to successfully complete an annual background screening which shall consist of a check of the child abuse and neglect registry and a criminal background check of the state or jurisdiction in which the individual resides. LRCFs shall further implement and apply policies which require all personnel who are otherwise required to submit to a background check pursuant to section 210.493, RSMo, to immediately notify the LRCF if they are listed in a state or local government registry as a perpetrator of child abuse or neglect, or if they were arrested or charged with any crime listed in section 210.493, RSMo;

6. Evidence of current compliance with the fire and safety requirements of the State Fire Marshal;

7. A record of monthly drills for fire and emergency evacuations which are held at different times of the day and night;

8. Documentation that each operating site's water supply and sewage disposal system is currently in compliance with the requirements of the Department of Health and Senior Services if not an approved public source;

9. A copy of the most recent financial audit and/or financial review;

10. A copy of the annual written staff training plan;

11. Documentation that each operating site food service is currently in compliance with requirements of the Department of Health and Senior Services or any local applicable ordinance;

12. A copy of the current personnel and/or program manual for the agency if there have been changes since last submitted to the licensing unit;

13. For any agency operating a swimming pool on grounds, documentation that the pool is operated and maintained in accordance with all applicable local ordinances and/or state guidelines;

14. A copy of the resume of all administrative and professional staff, if not previously submitted to the licensing unit;

15. Documentation of insurance for the agency for professional liability and commercial liability, worker's compensation insurance, fire and disaster insurance, and agency vehicle insurance; and

16. Documentation of Form 990 for all non-profit agencies and Internal Revenue Service return for for-profit agencies and self-disclosure of tax liabilities, including but not limited to, all employee withholding taxes.

(D) Division staff may review the results of employee background screenings, along with family care safety registry during routine record reviews.

(E) Upon determination of compliance with the licensing law and applicable rules, the director shall issue a license for a period not to exceed two (2) years.

(7) License Supervision.

(A) Division licensing consultants may make supervisory on site contacts which may or may not be scheduled to determine compliance with the licensing rules.

(B) Division licensing consultants may review personnel files including, but not limited to, criminal/child abuse/neglect background screening documentation during on site reviews.

*AUTHORITY: sections 207.020, 210.506, and 660.017, RSMo 2016, and sections 210.493 and 210.1286, RSMo Supp. 2021.* This rule originally filed as 13 CSR 40-71.020. Original rule filed Nov. 9, 1978, effective Feb. 11, 1979. Rescinded: Filed Oct. 13, 1982, effective Jan. 13, 1983. Emergency rule filed Nov. 1, 1993, effective Nov. 12, 1993, expired March 11, 1994. Emergency rule filed March 2, 1994, effective March 12, 1994, expired July 9, 1994. Readopted: Filed Nov. 1, 1993, effective June 6, 1994. Emergency amendment filed July 25, 2008, effective Aug. 4, 2008, expired Jan. 30, 2009. Moved to 13 CSR 35-71.020 and amended: Filed July 25, 2008, effective Jan. 30, 2009. Amended: Filed Dec. 16, 2013, effective June 30, 2014. Emergency amendment filed Sept. 17, 2021, effective Oct. 1, 2021, expired March 29, 2022. Amended: Filed Sept. 17, 2021, effective March 30, 2022.*

**Original authority: 207.020, RSMo 1945, amended 1961, 1965, 1977, 1981, 1982, 1986, 1993, 2014; 210.493, RSMo 2021; 210.506, RSMo 1982, amended 1993, 1995; 210.1286, RSMo 2021; and 660.017, RSMo 1993, amended 1995.*

**13 CSR 35-71.025 Exemption of Religious Residential Treatment for Children and Youth Operating Sites**

*PURPOSE: This rule sets forth the requirement that residential treatment for children and youth operating sites must be under the exclusive control of a religious organization in order to qualify for exemption under sections 210.211(5) or 210.516.1(5), RSMo.*

When a nonreligious organization, having as its principal purpose the provision of residential treatment for children and youth services, enters into an arrangement with a religious organization to provide continuing assistance in the maintenance or operation of a residential treatment for children and youth operating site, the operating site is not under the exclusive control of the religious organization and does not qualify for exemption from licensure under sections 210.211(5) or 210.516.1(5), RSMo.

*AUTHORITY: sections 210.481, 210.486, 210.506, and 210.516, RSMo 2000.* This rule originally filed as 13 CSR 40-71.025. Original rule filed Oct. 7, 1987, effective March 25, 1988. Emergency rescission and emergency rule filed Nov. 1, 1993, effective Nov. 12, 1993, expired March 11, 1994. Emergency rescission and emergency rule filed March 2, 1994, effective March 12, 1994, expired July 9, 1994. Rescinded and readopted: Filed Nov. 1, 1993, effective June 6, 1994. Moved to 13 CSR 35-71.025, effective Oct. 30, 2008. Amended: Filed Dec. 16, 2013, effective June 30, 2014.*

**Original authority: 210.481, RSMo (1982), amended 1985; 210.486 and 210.506, RSMo (1982), amended 1993; and 210.516, RSMo (1982).*

**13 CSR 35-71.030 Hearings and Judicial Review**

*PURPOSE: This rule addresses the procedures for license denial, revocation, suspension, or suspension of intake and the right for an administrative hearing and judicial review for an agency aggrieved by a final decision of the director.*

(1) License Denial or License Revocation.

(A) The division may refuse to issue a license to an applicant, or may deny or revoke the license of a licensee, who—

1. Fails consistently to comply with the


applicable provisions of sections 210.481–210.536, and 210.1250–210.1286, RSMo, and the applicable corresponding rules;

2. Violates any of the provisions of its license;

3. Violates federal or state laws or rules relating to the protection of children;

4. Abuses or neglects children, or is the subject of multiple or serious reports of child abuse or neglect which upon investigation results in a substantiated finding of child abuse or neglect; or is found guilty, pleads guilty, or pleads no contest to any crime which would render an individual ineligible for employment or presence at the Licensed Residential Care Facility (LRCF) pursuant to section 210.493, RSMo;

5. Employs persons who the division has found ineligible for employment or presence at the LRCF pursuant to section 210.493, RSMo, and 13 CSR 35-71.015, or who abuses or neglects children;

6. Furnishes or makes any misleading or false statements or reports to the division;

7. Refuses to submit any reports or refuses to make available to the division any records required in making an investigation;

8. Fails or refuses to submit to an investigation by an authorized and identified representative of the division at any reasonable time;

9. Fails to provide, maintain, equip, and keep in safe and sanitary condition the premises established or used for the care of children as required by law, rule, or ordinance applicable to the location of a facility;

10. Fails to provide adequate financial resources for the satisfactory care of children being served, or the upkeep of the premises, or both;

11. Fails to satisfactorily comply with all fire, safety, health, and sanitation inspections as may be required by state law or local ordinance and required under section 210.252, RSMo; or

12. Is a health or safety concern for the children at the LRCF.

(B) The division shall provide written notice of denial or revocation of licensure to the agency, which shall include the reason(s) for the denial or revocation. Upon receipt of the notice of denial or revocation, the agency shall cease operation within ten (10) business days unless stayed by an appropriate administrative or judicial order, or a request for an administrative hearing is made before the expiration of the ten (10) business days from the date of the notice.

(C) The agency may appeal the decision of the division to deny or revoke the license by filing a request for appeal with the division

within ten (10) days after receipt of the notice of denial or revocation.

(D) Any person aggrieved by a decision of the division to deny or revoke a license shall be entitled to a hearing on administrative review under section (5) of this rule.

(E) An agency may not reapply for licensure within one (1) year from the date of denial or revocation.

(2) License Suspension.

(A) The division shall have the authority to suspend the license of an agency when—

1. The division determines that the suspension of the license is necessary to protect the health, safety, and welfare of children who are or may be placed at the operating site; and

2. The division determines that noncompliance with one (1) or more of the criteria set out in sections 210.496 and 210.1250–210.1286, RSMo, and/or subsection (1)(A) of this rule may exist; and

3. The division has reasonable cause to believe that the agency will be able to develop and effectively implement a corrective action plan to resolve the concerns which gave rise to the suspension of the license.

(B) The agency shall cease operations within ten (10) business days of the date the division issues an order suspending the license of the agency unless—

1. The agency files a written request for administrative review within ten (10) business days of the date of the order; or

2. The order is stayed by an appropriate administrative or judicial order.

(C) The order for suspension of the license shall be in writing. The order shall include:

1. The factual and legal basis for the order; and

2. Notification of the right of the agency to administrative review. The division may extend the order if there has been no substantial change in the circumstances since the entry of the original order or if there are new grounds for extension of the order.

(D) The division may reinstate a suspended license on its own motion or upon written application by the agency. The division may reinstate that license if the division determines that—

1. The agency has developed and successfully implemented a corrective action plan approved by the division to remedy the concerns which resulted in the license suspension; and

2. The agency meets all of the criteria for licensing; and

3. The division determines that suspension of the license is no longer necessary to

protect the health, safety, and welfare of the children involved.

(3) Suspension of Intake.

(A) The division shall have the authority to suspend the authorization of the agency to admit additional children into placement during time periods proscribed by the division when the division determines that the agency is not in compliance with the requirements of sections 210.493, 210.496, and 210.1250–210.1286, RSMo, and/or subsection (1)(A) of this rule and—

1. The addition of additional children to the agency is not in the best interests of the children already placed within the agency or who may be placed with the agency; and

2. Allowing the placement of additional children with the agency may pose a risk to the health, safety, and welfare of children already placed with the agency or who may be placed with the agency.

(B) The order for suspension of intake shall be in writing. The order shall include—

1. The factual and legal basis for the order; and

2. Notification of the right of the agency to administrative review. The division may extend the order if there has been no substantial change in the circumstances since the entry of the original order or if there are new grounds for extension of the order. A suspension of intake shall proscribe the number of additional children which the agency is authorized to accept for placement, if any, but it shall not include a requirement that children currently placed with the agency shall be removed.

(C) If the division finds that suspension of intake prior to the opportunity for a hearing on administrative review is necessary to protect the health, safety, and welfare of children then the division has the option to make the order to suspend intake effective immediately upon delivery to the agency; otherwise the order shall be effective ten (10) business days from the date of the entry of the order unless—

1. The agency files a written request for administrative review within ten (10) business days of the date of the order; or

2. The order is stayed by an appropriate administrative or judicial order.

(D) If the division issues an order to immediately suspend intake the division shall schedule an informal meeting to review the decision with the agency as soon as practicable. The meeting shall take place before the director or his/her designee. The division shall notify the agency of the date and time for the meeting. The meeting may be continued at the request of the agency, but the order



shall remain in effect pending the meeting. The meeting shall be informal, the rules of evidence shall not apply, and both the agency and the division may submit any information relevant to the issues in the case. The purpose of the meeting will be—

1. For the division to determine whether there is probable cause to find that a suspension of intake is necessary to protect the best interests of the children placed with the agency or who may be placed with the agency pending a fair hearing on administrative review pursuant to section (4), below; and

2. To afford the agency an opportunity to informally provide information relevant to the division's decision and to request relief from the entry of the order.

(E) If the division finds after the meeting that there is probable cause to continue the suspension of intake pending hearing on administrative review the division shall expedite the hearing on administrative review; otherwise the suspension of intake shall be stayed pending hearing on administrative review.

(F) The division may rescind the order suspending intake on its own motion or upon written application by the agency. The division may reinstate the intake if the division determines that—

1. The agency has developed and successfully implemented a corrective action plan approved by the division to remedy the concerns which resulted in the suspension of intake; and

2. The agency meets all of the criteria for licensing; and

3. The division determines that the suspension of intake is no longer necessary to protect the health, safety, and welfare of the children.

(4) Emergency Order Against an Existing License.

(A) The division may issue an order immediately suspending a license prior to a hearing on administrative review when the division finds that there is probable cause to believe that—

1. There is an imminent risk of immediate and significant harm to the health, safety, or welfare of children who are placed or who may be placed with the agency; and

2. The risk is such that the health, safety, or welfare of the children may be at risk if the division's emergency action does not become effective before the agency is afforded an opportunity for a hearing.

(B) The division's findings under this section must be made in writing and set out in the order. The order shall notify the agency of its right to request administrative review and of its right to an informal meeting.

(C) If the division issues an emergency order against a license under this section the division shall schedule an informal meeting to review the decision with the agency as soon as practicable. The meeting shall take place before the director or his/her designee. The division shall notify the agency of the date and time for the meeting. The meeting may be continued at the request of the agency, but the order shall remain in effect pending the meeting. The meeting shall be informal, the rules of evidence shall not apply, and both the agency and the division may submit any information relevant to the issues in the case. The purpose of the meeting will be—

1. For the division to determine whether there is probable cause to find that an emergency exists which requires continuation of the division's action pending a hearing on administrative review pursuant to section (5) below; and

2. To afford the agency an opportunity to informally provide information relevant to the division's decision and to request relief from the entry of the order.

(D) If the division finds after the meeting that there is probable cause for the emergency action and continues the suspension in effect the division shall refer the matter for a hearing on administrative review; otherwise the suspension of the license shall be stayed pending hearing on administrative review.

(5) Hearing on Administrative Review.

(A) The agency which is aggrieved by the decision of the division, (including, but not limited to, a decision to deny a variance, to suspend intake, suspend a license, deny a license application, or revoke an existing license) shall have the right to a hearing on administrative review of the division's decision.

(B) The division shall provide written notice to the agency of its adverse action against the license of an agency. The notice shall—

1. Inform the agency of the nature of the decision;

2. State the factual and legal basis for the division's action;

3. State the effective date of the action, if applicable; and

4. Notify the agency of its right to seek administrative review.

(C) To request a hearing the agency shall submit a written request for administrative review within ten (10) business days of the decision of the division. The request for administrative review shall set forth the basis of the agency's objection to the division's decision.

(D) Unless otherwise provided in this rule, the division's action shall be stayed pending the entry of an order after hearing on administrative review if the agency request administrative review of the division's decision within ten (10) business days of the date of the notice of the division's action.

(E) If the agency requests a hearing the division shall hold an administrative hearing. The hearing shall be held by the director or the director's designee.

(F) Upon receipt of the final decision of the division, the agency can decide to accept the final decision or file petition for judicial review pursuant to sections 210.526 and 536.100 through 536.140, RSMo.

*AUTHORITY: sections 207.020, 210.506, 210.526, and 660.017, RSMo 2016, and sections 210.493 and 210.1286, RSMo Supp. 2021.* This rule originally filed as 13 CSR 40-71.030. Original rule filed Nov. 9, 1978, effective Feb. 11, 1979. Emergency rescission and emergency rule filed Nov. 1, 1993, effective Nov. 12, 1993, expired March 11, 1994. Emergency rescission and emergency rule filed March 2, 1994, effective March 12, 1994, expired July 9, 1994. Rescinded and readopted: Filed Nov. 1, 1993, effective June 6, 1994. Emergency amendment filed July 25, 2008, effective Aug. 4, 2008, expired Jan. 30, 2009. Moved to 13 CSR 35-71.030 and amended: Filed July 25, 2008, effective Jan. 30, 2009. Amended: Filed Dec. 16, 2013, effective June 30, 2014. Emergency amendment filed Sept. 17, 2021, effective Oct. 1, 2021, expired March 29, 2022. Amended: Filed Sept. 17, 2021, effective March 30, 2022.*

**Original authority: 207.020, RSMo 1945, amended 1961, 1965, 1977, 1981, 1982, 1986, 1993, 2014; 210.493, RSMo 2021; 210.506, RSMo 1982, amended 1993, 1995; 210.526, RSMo 1982; 210.1286, RSMo 2021; and 660.017, RSMo 1993, amended 1995.*

**13 CSR 35-71.035 Court Review and Dispositional Hearing**

*PURPOSE: This rule defines the provisions for judicial review and disposition of the child(ren).*

The agency shall comply with all applicable requirements of section 210.710 or 210.720, RSMo, pertaining to judicial review of the status of the child.

*AUTHORITY: sections 210.481, 210.486, and 210.506, RSMo 2000.* This rule originally filed as 13 CSR 40-71.035. Emergency rule filed Nov. 1, 1993, effective Nov. 12, 1993, expired March 11, 1994. Emergency rule filed March 2, 1994, effective March 12, 1994, expired July 9, 1994. Original rule filed Nov.*



*1, 1993, effective June 6, 1994. Moved to 13 CSR 35-71.035, effective Oct. 30, 2008. Amended: Filed Dec. 16, 2013, effective June 30, 2014.*

**Original authority: 210.481, RSMo (1982), amended 1985 and 210.486 and 210.506, RSMo (1982), amended 1993.*

**13 CSR 35-71.040 Organization and Administration**

*PURPOSE: This rule sets forth the requirements for the incorporation, administration, and financing of an agency.*

(1) Each agency shall be incorporated and shall submit to the division its articles of incorporation and certificate of incorporation.

(2) An agency shall have a governing body responsible for establishing its policies, determining its programs, guiding its development, and providing its leadership. A list of the names, addresses, and place of employment of the current members of the governing board shall be kept on file at the agency and available for review.

(3) Voting members of the board of directors shall not be employed by and/or do not receive financial compensation from the agency. Any employee who serves as a member of the board of directors shall sign a statement acknowledging his/her understanding of and agreement with this rule. Such statement shall be part of the personnel file.

(4) The governing body shall be responsible for—

(A) Developing and maintaining a program of orientation and training for all new members of the governing body;

(B) Determining the size, selection, function, and organization of the governing body;

(C) Keeping minutes of each meeting of the governing body, which shall reflect its actions pertaining to and affecting the care and safety of children;

(D) Meeting as often as necessary, but at least four (4) times a year, to conduct the business of the agency, at least one (1) of which shall be held at an operating site;

(E) Conducting an on site visit to each operating site annually by at least a committee of the governing body;

(F) Ensuring an agency's continuous compliance with Missouri law and applicable licensing rules;

(G) Ensuring the agency's continuous compliance with all applicable federal, state, or local laws or regulations governing the operation of the agency;

(H) Ensuring that an agency's standards of practice shall be professional, ethical, and responsive to client needs;

(I) Appointing the executive director and delegating responsibility to the director to administer the agency in all of its activities, functions, and services;

(J) Performing and retaining a written evaluation of the executive director on an annual basis;

(K) Providing the division a written statement which sets forth the kind and extent of authority delegated to the executive director;

(L) Ensuring that all operating sites are maintained, staffed, and equipped to implement the agency's program effectively;

(M) Making available for review by the division the written policies and procedures of the agency, and evaluating the policies and procedures biennially to determine that the interests of children and families are being served;

(N) Meeting with division staff when requested;

(O) Providing written notification to the division within five (5) working days when there is a change of executive directors, board president, or the organizational structure of the agency;

(P) Reporting a criminal act of an employee in the performance of employment duties to law enforcement and/or the prosecuting attorney and providing immediate oral report followed by a written report to the division five (5) working days after the occurrence of the criminal act that specifies the agency's corrective action plan; and

(Q) Ensuring that no unrelated business is established at the licensed agency operating site without providing the division with a written request and receiving written permission from the division.

(5) Financial Management.

(A) The governing body shall approve an annual budget which shall be on file at the agency and submitted to the licensing unit;

(B) If an agency has annual gross revenues of five hundred thousand dollars ($500,000) or more, the agency shall be audited annually by an independent certified public accountant and a copy shall be submitted to the division. Agencies with an annual gross income of less than five hundred thousand dollars ($500,000) shall provide documentation of an annual financial review;

(C) The treasurer, administrator, and any other persons handling funds shall be bonded, as determined by the governing body;

(D) The governing body shall ensure that insurance for public liability, worker's compensation, fire and disaster insurance on the property, and agency vehicles is maintained; and

(E) The governing body shall be responsible for providing and maintaining adequate funds for the operation of the agency.

*AUTHORITY: section 210.506, RSMo 2000.* This rule originally filed as 13 CSR 40-71.040. Original rule filed Nov. 9, 1978, effective Feb. 11, 1979. Emergency rescission and emergency rule filed Nov. 1, 1993, effective Nov. 12, 1993, expired March 11, 1994. Emergency rescission and emergency rule filed March 2, 1994, effective March 12, 1994, expired July 9, 1994. Rescinded and readopted: Filed Nov. 1, 1993, effective June 6, 1994. Emergency amendment filed July 25, 2008, effective Aug. 4, 2008, expired Jan. 30, 2009. Moved to 13 CSR 35-71.040 and amended: Filed July 25, 2008, effective Jan. 30, 2009. Amended: Filed Dec. 16, 2013, effective June 30, 2014.*

**Original authority: 210.506, RSMo 1982, amended 1993, 1995.*

**13 CSR 35-71.045 Personnel**

*PURPOSE: This rule sets forth the requirements for child abuse/neglect and criminal background screenings, medical examinations, personnel records, job descriptions, and staff orientation and training.*

(1) General Requirements.

(A) The Licensed Residential Care Facility (LRCF) shall have a written statement of personnel practices which are approved by the governing body and provided to all staff at the time of employment.

(B) The LRCF shall evaluate and investigate application information carefully to determine whether employment or service of an applicant with the LRCF is in the best interests of the children in care.

(C) All officers, managers, contractors, volunteers with access to children, employees, other support staff and owners of such LRCF who will have access to the facilities of the LRCF shall submit to a background check and shall be found eligible for employment or presence at the LRCF as provided in section 210.493, RSMo, and 13 CSR 35-71.015 before commencing service or being afforded access to the facilities of the LRCF. These individuals shall notify the LRCF and the division of any change in circumstances which would render them ineligible for employment or presence at the LRCF. After the individual completes the background check, the LRCF shall further require all officers, managers, contractors, volunteers



with access to children, employees, other support staff, and owners of the LRCF who will have access to the facilities of the LRCF to successfully complete an annual check of the Family Care Safety Registry. The LRCF shall maintain documentation of the Family Care Safety Registry checks in its personnel records.

(D) After the individual completes the background check, the LRCF shall require all officers, managers, contractors, volunteers with access to children, employees, other support staff, and owners of the LRCF who will have access to the facilities of the LRCF, and who reside outside of the state of Missouri, to successfully complete an annual background screening which shall consist of a check of the child abuse and neglect registry and a criminal background check of the state or jurisdiction in which the individual resides. LRCFs shall further implement and apply policies which require all personnel who are otherwise required to submit to a background check pursuant to section 210.493, RSMo, to immediately notify the LRCF if they are listed in a state or local government registry as a perpetrator of child abuse or neglect, or if they were arrested or charged with any crime listed in section 210.493, RSMo.

(E) Any person who makes a materially false statement in connection with an application for licensure or relicensure as a LRCF shall be ineligible for employment or presence at the LRCF.

(F) Prior to the employment of any person for a position requiring credit hours, a degree, or both from an accredited college or university, a resume and an official college transcript, or a copy of the diploma, shall be on file at the LRCF. Any person employed in a position requiring general educational development certificate or high school diploma shall provide documentation of such within thirty (30) days of employment.

(G) An LRCF shall require the names of at least three (3) persons for each employee, volunteer, or staff person, who are unrelated to the individual, who can provide character references. At least two (2) of the three (3) persons shall be professional references from a previous employer, internship, or volunteer position. If the individual is a student then this requirement may be satisfied by providing the references from the individual's professor, guidance counselor, teacher, or academic advisor.

(H) The LRCF shall contact all references and maintain documentation of the reference checks in the LRCF's employee records. Documentation of the contact shall include the date, person making the contact, and the content of the contact.

(I) The LRCF shall require an annual driver record check for any staff, employee, intern, volunteer, or contract personnel who transport residents. No individual with a suspended or revoked driver's license or record of driving while under the influence of alcohol or any other intoxicating substance within the last five (5) years shall transport residents.

(2) Health Verification.

(A) All staff, employees, interns, volunteers, and contracted personnel shall be free of symptoms of communicable disease or other evidence of ill health which poses a threat to children.

(B) Staff, interns, volunteers, and contracted personnel shall be free of any conditions which would adversely affect their ability to care for or pose a threat to children.

(C) If the division has reason to question the capabilities of any individual working directly with children served by the LRCF, the division may require the individual to submit to a medical examination and obtain a report of an appropriate medical professional that the individual is medically fit to perform the services for the LRCF without reasonable risk to the children.

(3) Personnel Records. The LRCF shall maintain personnel records for each staff member, employee, intern, volunteer, and contracted employee as indicated below. The LRCF shall maintain the records on site and shall keep the records for at least five (5) years following the date of separation from the LRCF.

(A) For staff members and employees, the personnel record shall include—

1. Verification of education and experience, and a copy of professional license, if applicable;

2. Verification of the names of three (3) persons, unrelated to the staff member, who can provide character or professional references;

3. A copy of the job description signed and dated by the employee;

4. Results of annual checks of the family care safety registry;

5. Documentation that the individual has completed the background checks and that the division has found the individual eligible for employment or presence at the LRCF pursuant to section 210.493, RSMo, and 13 CSR 35-71.015;

6. Documentation of annual background checks for individual staff members who reside outside of Missouri that are subject to the background check requirements provided for in section 210.493, RSMo, which shall include a check of the child abuse and neglect registry and a criminal background check of the state or jurisdiction in which the individual resides. LRCFs shall further implement and apply policies which require all personnel who are otherwise required to submit to a background check pursuant to section 210.493, RSMo, to immediately notify the LRCF if they are listed in a state or local government registry as a perpetrator of child abuse or neglect, or if they were arrested or charged with any crime listed in section 210.493, RSMo;

7. The date of employment, date of separation, reason(s) for separation;

8. Copies of annual performance evaluations;

9. Results of an annual driver record check for any employee, intern, volunteer, and any contracted personnel who transport residents;

10. A signed and dated copy of the confidentiality statement;

11. A signed and dated copy of the discipline policy;

12. A signed and dated copy of the mandated child abuse/neglect reporting and critical incident reporting policies;

13. A signed and dated copy of an acknowledgement of receipt of program and personnel policies and manuals;

14. A signed and dated copy of the acknowledgment of completed agency orientation;

15. Documentation that the staff member has successfully completed all training required for the successful performance of the individual's duties;

16. Documentation of current first aid/cardiopulmonary resuscitation training and certification; and

17. Documentation of current medical aid certification, when applicable.

(B) For interns, volunteers, and contracted employees who have direct contact with children, the personnel record shall include—

1. Copy of professional credentials, if applicable;

2. Results of annual checks of the family care safety registry and documentation that the individual has completed the background check process and been found eligible for service as provided in section 210.493, RSMo, and 13 CSR 35-71.015;

3. Documentation of annual background checks for interns, volunteers, and contracted employees who have direct contact with children who reside outside of Missouri that are subject to the background check requirements provided for in section 210.493, RSMo, which shall include a check of the child abuse

and neglect registry and a criminal background check of the state or jurisdiction in which the individual resides. LRCFs shall further implement and apply policies which require all personnel who are otherwise required to submit to a background check pursuant to section 210.493, RSMo, to immediately notify the LRCF if they are listed in a state or local government registry as a perpetrator of child abuse or neglect, or if they were arrested or charged with any crime listed in section 210.493, RSMo;

4. A signed and dated copy of the contract or any agreement outlining purpose of presence on site;

5. A signed and dated copy of the confidentiality policy;

6. A signed and dated copy of the discipline policy;

7. A signed and dated copy of the mandated child abuse/neglect and critical incident reporting policies;

8. A signed and dated copy of the acknowledgement of receipt of manuals and policies related to the agreement/contract; and

9. Documentation of staff orientation participation.

(4) Job Descriptions. An agency shall establish a written job description for each position, which shall be made available to staff at the time of employment. Each description shall describe the duties and responsibilities of the position; address supervision, required knowledge, skills and abilities, minimum experience, educational requirements; and shall include examples of work performed. Each employee shall be given a copy of the job description for his/her position. A copy of the job description shall be signed and dated by the employee and placed in his/her file.

(5) Staff Orientation. Immediately before or within one (1) week following appointment, an employee, intern, volunteer, and any contracted personnel shall be oriented to the agency's programs, practices, and the duties and expectations of his/her position. The orientation program shall include, but not be limited to:

(A) Agency philosophy and history;

(B) Agency policies;

(C) Agency staff roles;

(D) The family's role in the child's care and the worker's role and responsibilities in relation to the family;

(E) Complete description of the agency's program model;

(F) Health and safety procedures, including the use of universal health care precautions;

(G) Crisis intervention procedures;

(H) Record keeping requirements;

(I) Cultural diversity;

(J) Separation and attachment issues;

(K) Confidentiality;

(L) Substance abuse;

(M) Recognition of suicidal tendencies and appropriate intervention;

(N) The procedure for identifying and reporting child abuse or neglect, or both, in accordance with sections 210.110–210.165, RSMo;

(O) Agency recreation program philosophy, policy, procedures, rules, and expectations;

(P) Legal rights of children and their families, including basic information on the constitutional rights of children and their families while children are in care and basic information on the Missouri juvenile justice system; and

(Q) Procedures to follow in an emergency.

(6) Staff Training.

(A) An agency shall establish and submit to the licensing unit an annual written plan of training each year for all employees and contracted personnel.

1. Employees and contracted personnel shall have forty (40) hours of training during the first year of employment and forty (40) hours annually each subsequent year; and

2. Direct care staff and immediate supervisors must maintain certification in a certified medication training program, crisis management, a current recognized and approved physical restraint program (where applicable), first aid, and cardiopulmonary resuscitation.

(B) All training must be documented on a training database/training log with the dates, location, subject, number of hours earned and person(s) who conducted the training.

(C) The training may include, but not be limited to, short-term courses, seminars, institutes, workshops, and in-service training provided on site by qualified professionals. Activities related to supervision of the staff member's routine tasks shall not be considered training activities for the purpose of this rule.

(D) The training plan shall include, but not be limited to:

1. Developmental needs of children;

2. Child management techniques;

3. Basic group dynamics;

4. Appropriate discipline, crisis intervention, de-escalation techniques, and behavior management techniques;

5. The direct care and professional staff roles in the operating site;

6. Interpersonal communication;

7. Proper, safe methods, and techniques of physical restraint;

8. First aid and cardiopulmonary resuscitation training;

9. Medication training and/or certification;

10. Suicide prevention;

11. Legal rights of children and their families, including basic information on the constitutional rights of children and their families while children are in care and basic information on the Missouri juvenile justice system; and

12. Water safety for those agencies allowing water activities.

*AUTHORITY: sections 207.020, 210.506, and 660.017, RSMo 2016, and sections 210.493 and 210.1286, RSMo Supp. 2021.* This rule originally filed as 13 CSR 40-71.045. Emergency rule filed Nov. 1, 1993, effective Nov. 12, 1993, expired March 11, 1994. Emergency rule filed March 2, 1994, effective March 12, 1994, expired July 9, 1994. Original rule filed Nov. 1, 1993, effective June 6, 1994. Emergency amendment filed July 25, 2008, effective Aug. 4, 2008, expired Jan. 30, 2009. Moved to 13 CSR 35-71.045 and amended: Filed July 25, 2008, effective Jan. 30, 2009. Amended: Filed Dec. 16, 2013, effective June 30, 2014. Emergency amendment filed Sept. 17, 2021, effective Oct. 1, 2021, expired March 29, 2022. Amended: Filed Sept. 17, 2021, effective March 30, 2022.*

**Original authority: 207.020, RSMo 1945, amended 1961, 1965, 1977, 1981, 1982, 1986, 1993, 2014; 210.493, RSMo 2021; 210.506, RSMo 1982, amended 1993, 1995; 210.1286, RSMo 2021; and 660.017, RSMo 1993, amended 1995.*

**13 CSR 35-71.050 Staff Qualifications and Requirements**

*PURPOSE: This rule sets forth the requirements for personnel practices, including staff qualifications, staff/child ratios, staff training and nonpaid staff.*

(1) Employee Qualifications.

(A) The agency shall employ staff who are qualified by education, training, and experience for their assigned responsibilities. A current employee who has qualified for a position under the previous rule and is serving in that position shall be exempt from meeting any increased requirements defined by these rules.

(2) Administrative and Supervisory Personnel.

(A) The agency shall employ staff to perform administrative, supervisory, service and direct care functions which may be combined only upon the approval of the division.

(B) When indirect care functions have been approved by the division and are combined,



the staff member shall meet the requirements for each function.

(C) The administrator shall be at least twenty-five (25) years of age and shall have one (1) of the following:

1. A master's degree in social work, counseling, social work administration, or a related human service degree, from an accredited school and two (2) years' experience in the management or supervision of child care personnel and programs;

2. A bachelor's degree in social work or a human service area of study from an accredited school and four (4) years' experience in the management or supervision of residential treatment for children and youth personnel and programs; or

3. If the administrator/executive director is responsible only for personnel, fiscal management and physical plants, and is not responsible for the programs and services of the agency, the agency may employ an administrator who has a bachelor's degree from an accredited school and two (2) years' experience in residential treatment for children and youth services. However, in this case, the agency shall employ a program director who meets the qualifications set forth in 13 CSR 35-71.130(1)(A)1. and 2.

(D) When the position of administrator/executive director is vacated, the governing body immediately shall designate a qualified person to act as administrator/executive director and the board president/designee shall notify the licensing unit in writing within five (5) working days.

(E) The administrator/executive director shall designate in writing a qualified staff to be in charge when s/he is absent.

(F) The program director shall have one (1) of the following:

1. A master's degree in social work or a human service area of study from an accredited school; or

2. A bachelor's degree in social work or a human service area or study from an accredited school plus two (2) years' experience in residential treatment for children and youth services.

(3) Professional Personnel.

(A) An agency shall obtain any professional services required for the implementation of the individual service plan of a child when these services are not available from staff.

(B) Professional staff who perform casework, group work tasks, or planning of services for children and their families, will have at least a bachelor's degree in social work, psychology, counseling or a related field from an accredited college. Professional staff performing individual and/or family therapy shall

have a master's degree in social work, psychology, counseling, or closely related field of study from an accredited college.

(C) Full- or part-time professional staff including psychologists, psychiatrists, social workers, counselor physicians, teachers and nurses, shall meet the licensing or certification requirements of their profession in Missouri.

(D) The agency shall have at least one (1) professional staff for every twenty (20) children in care.

(E) The agency shall designate a supervisor for professional staff when six (6) or more staff are employed. The supervisor shall have a master's degree in social work, psychology, counseling, or closely related field of study and at least two (2) years' clinical experience.

(F) Agencies, who by mission, serve a medically fragile and/or drug and alcohol affected population shall employ or contract with and schedule a licensed nurse for not less than twenty (20) hours per week. At least one (1) staff shall be present at all times who is trained in infant/child cardio pulmonary resuscitation.

(4) Direct Care Staff-Staff/Child Ratios.

(A) Direct care staff shall be responsible, mature individuals of reputable character who exercise sound judgment, display the capacity to provide good care and supervision of children and must demonstrate competence in their duties in the following areas:

1. Protecting and nurturing children;

2. Meeting child developmental needs and addressing child developmental delays;

3. Supporting relationships between children and families;

4. Working as a member of a professional team; and

5. Supporting children with lifetime relationships.

(B) Direct care staff shall be at least twenty-one (21) years of age and shall have at least a high school diploma or general educational development certificate. A staffing plan shall be developed which allows for consistency of care through communication between different shifts of care regarding activities or special needs or problems of children.

(C) The ratio of direct care staff to children shall be dependent on the needs of the children, but the staff/child ratio during waking hours shall not be less than one to four (1:4) for children birth to six (6) years of age.

(D) The staff/child ratio during waking hours shall not be less than one to six (1:6) for children six (6) to eight (8) years of age.

(E) The staff/child ratio during waking hours shall not be less than one to ten (1:10) for children eight (8) years of age and over.

(F) Staff in agencies serving children ages birth through six (6) years shall be awake during sleeping hours with a ratio of not less than one to six (1:6).

(G) For children ages six (6) to eight (8) years of age, the staff/child ratios during sleeping hours, for staff on duty but asleep, shall not be less than one to ten (1:10). If staff on duty remain awake, a ratio of not less than one to twelve (1:12) shall be required.

(H) For children over eight (8) years of age, the staff/child ratios during sleeping hours, for staff on duty but asleep, shall not be less than one to ten (1:10). If staff on duty remain awake, a ratio of not less than one to twelve (1:12) shall be required.

**Reference Chart**

The ratio of direct care staff to children shall be dependent on the needs of the children.

| Age Range | Level of Care | Direct Care Staff to Resident Ratio | |
|---|---|---|---|
| | | Awake | Asleep |
| Birth to 6 years | Basic Core | One (1) staff per four (4) children | One (1) staff per six (6) children. Staff must remain awake. |
| 6-8 years | Basic Core | One (1) staff per six (6) children | One (1) staff per ten (10) children (If the staff is on duty, but also sleeping).<br>Or<br>One (1) staff per twelve (12) children (if staff on duty remain awake). |
| Over 8 years | Basic Core | One (1) staff per ten (10) children | One (1) staff per ten (10) children (If the staff is on duty, but also sleeping).<br>Or<br>One (1) staff per twelve (12) children (if staff on duty remain awake). |

(I) Agencies must have two (2) staff available at all times, even if their staff/child ratio is lower than required above. One (1) staff may be sleeping, but available for emergency situations. When an agency has multiple cottages/units on campus or in a large congregate care setting, an awake, roving, staff may serve the purpose of maintaining the required staff/child ratio by maintaining a presence in the cottages/units on a rotating, regular, and timely basis.

(J) Appropriate staff/child ratios must be maintained at all times.

(K) Any children of live-in staff shall be included in the required staff/child ratios.

(L) The division may require a higher staff/child ratio if on site review indicates a need for more supervision to maintain control, discipline, and adequate care, or the division may approve a lower staff/child ratio if on site review indicates adequate care, discipline, and control can be maintained at a lower staff/child ratio.

(M) Staff/child ratios shall be maintained at all group off-grounds activities.

(N) Agencies employing twelve (12) or more direct care staff shall designate staff to be primarily responsible for supervising, evaluating, and monitoring the daily work and progress of the direct care workers who shall have one (1) of the following:

1. A bachelor's degree and one (1) year of work experience in a residential treatment agency for children and youth;

2. Two (2) years' college and two (2) years' work experience in a residential treatment agency for children and youth; or

3. A high school diploma and three (3) years' work experience in a residential treatment agency for children and youth.

(5) Relief Staff. The agency shall provide planned relief for direct care staff and shall have qualified relief staff to substitute for direct care staff for sick leave, vacation, relief time, and other absences.

(6) Interns. Graduate or undergraduate interns in a field work placement at the agency shall be subject to the general personnel policies of the agency, but shall not be considered or used as substitutes for employed staff.

(7) Educational Staff. An agency operating an on-grounds school shall demonstrate compliance with the Missouri State Department of Elementary and Secondary Education certification requirements for teachers/administrators/counselors.

(8) Recreational and Activity Staff.

(A) The agency shall develop and coordinate the agency's recreational and activity programs by designating staff qualified by experience, education or training, or both, or certified to carry out the program outlined in the recreation plan.

(B) An agency shall assign recreational/activity staff on basis of experience, education, and/or training in working with groups of children whose recreational needs and interests vary. Additional training shall be provided for this staff to enhance his/her ability to perform his/her assigned duties.

(9) Clerical Staff. Clerical staff shall be employed as needed for general clerical duties such as typing, recordkeeping, bookkeeping, and filing. Clerical staff shall not supervise or assist in the care of children without being qualified according to these rules.

(10) Other Staff. An agency shall employ, as needed, cooks, kitchen helpers, maintenance, custodial, and other support staff to perform housekeeping and maintenance functions.

(11) Volunteers. If an agency uses volunteers as part of its program of services, the agency shall have written policies which include:

(A) A clear description of the agency's purposes and goals;

(B) A clear job description for the director of volunteers and for each category of volunteers;

(C) A clear differentiation of functions and activities appropriate for paid staff members and volunteers in policy-making, advocacy, administrative, and direct service roles. If volunteers are counted toward the staff/child ratio, an agency supervisory employee must be present and available at the operating site;

(D) A process for screening and selecting volunteers, who have direct contact with children similar to that used for paid staff members;

(E) A defined line of supervision, with clear written expectations of the supervisor and the volunteers;

(F) Orientation, preservice and in-service training activities in the volunteers' specified roles;



(G) Procedures for monitoring and evaluating volunteer activities and contributions;
(H) Procedures for observing professional ethics and confidentiality;
(I) Procedures for reimbursement of travel and other expenses; and
(J) Procedures for handling conflicts between paid staff members and volunteers.

(12) Visiting Resources.
(A) Visiting resources shall be approved by individual resident's parent(s), legal guardian, or legal custodian.

*AUTHORITY: sections 210.481, 210.486, 210.506, and 210.511, RSMo 2000.* This rule originally filed as 13 CSR 40-71.050. Original rule filed Nov. 9, 1978, effective Feb. 11, 1979. Emergency rescission and emergency rule filed Nov. 1, 1993, effective Nov. 12, 1993, expired March 11, 1994. Emergency rescission and emergency rule filed March 2, 1994, effective March 12, 1994, expired July 9, 1994. Rescinded and readopted: Filed Nov. 1, 1993, effective June 6, 1994. Moved to 13 CSR 35-71.050, effective Oct. 30, 2008. Amended: Filed Dec. 16, 2013, effective June 30, 2014.*

**Original authority: 210.481, RSMo (1982), amended 1985; 210.486 and 210.506, RSMo (1982), amended 1993; and 210.511, RSMo (1982).*

**13 CSR 35-71.060 Social Services Program**

*PURPOSE: This rule sets forth the policies and procedure requirements for intake and admission, discharge, and social services.*

(1) Intake and Admission.
(A) Intake Policies.
1. Intake policies shall be in writing and shall identify services and programs offered.
2. Admissions shall be limited to children for whom the agency's services are appropriate, with consideration being given to a child's physical, psychological and emotional needs, social development, interests and past educational history.
3. An agency shall not discriminate in its intake and services on the basis of race, religion, color, ethnic, or national origin.
4. When a child is self-referred, efforts shall be made to contact the child's parent(s), guardian or legal custodian within twenty-four (24) hours. If the parent(s), guardian, or legal custodian cannot be contacted, the agency shall notify the appropriate public agency (division, juvenile court, police department) of the presence of the child. All efforts to notify the appropriate public agency, parent(s), or legal guardian shall be documented in the child's case record.
5. Whenever possible, an agency shall arrange for one (1) or more preplacement visits by the child (except in emergency placements), and when appropriate, for at least one (1) or more preplacement visits by the child's parent(s), guardian, or legal custodian.
(B) Admission Policies.
1. The agency shall have current, clearly written admission policies and criteria describing the age, sex, and emotional/behavioral needs of child/ren served; and
2. A copy of the admission policies must be submitted to the licensing unit with the application for the initial license and at any time changes are made in the admission policies.
(C) Admission Procedures.
1. An admission assessment must be completed for each child indicating that the placement meets the child's needs and best interests—
A. For planned admissions, the admission assessment must be completed before a child is accepted for care;
B. For emergency admissions, the admission assessment must be completed within five (5) days of admission; and
C. If the assessment of the child indicates a need for a more restrictive environment, the agency shall contact the child's treatment team, case manager, legal guardian, and/or legal custodian to plan for the child's placement in a more appropriate facility.
2. The admission assessment must be in writing and include specific information on—
A. The circumstances which led to the child's referral;
B. The immediate and long-range goals of placement;
C. The child's family and his/her relationship with family members;
D. The child's relationships with other adults and children;
E. The child's behavior, including appropriate and maladaptive behavior;
F. The child's medical history, including any current medical problems ensuring medical and all health related documentation is held in confidence consistent with applicable federal and state law;
G. The child's developmental history and current level of functioning;
H. The child's school history including current educational level, special achievements, and any school problems;
I. The history of any other placements outside the home, including the reasons for placement;
J. An evaluation of the child's special needs and strengths in the following areas: physical, familial, educational, social and psychological;
K. The parent's or legal guardian's expectations for placement, family involvement, and the duration of the child's stay in care; and
L. The child's understanding of placement.
3. Children must have a medical examination that includes tests for communicable diseases including, but not limited to, tuberculosis and hepatitis when recommended by a licensed physician, certified nurse practitioner, advanced practice nurse who is in a collaborative practice agreement with a licensed physician, or a registered nurse under the supervision of a licensed physician, within thirty (30) days before or ten (10) days after admission. A copy of the medical examination report and findings, signed and dated by the physician, must be in the child's record.
4. Children must have a dental examination by a licensed dentist within one (1) year before admission or arrangements must be made for an examination within three (3) months after admission.
5. A written placement agreement between the agency and the child's parent(s) or guardian must be completed at or before placement. A copy of the placement agreement must be in the child's record. The placement agreement must include authorization to care for the child and a medical consent form signed and dated by a child's parent(s) or legal guardian authorized to give consent.
6. Information about the agency must be discussed with the child's parent(s) or guardian at or before admission. Written material about the agency must be given to the child's parent(s) or guardian and child when age appropriate. The following information must be included in the discussion and in the written material:
A. Rules regarding visits, mail, gifts, and telephone calls;
B. Discipline policies;
C. Policies regarding religious training;
D. Rules regarding recreational activities;
E. Policy regarding participation in treatment planning;
F. A copy of the treatment plan;
G. Copies of all signed and dated releases of information; and
H. Health Insurance Portability and Accountability Act.

(2) Evaluation and Planning.
(A) Treatment Plan.
1. A preliminary written treatment plan must be developed and documented in the



child's record within fifteen (15) days of admission for each child admitted on an emergency basis. If the child remains in care beyond an initial thirty- (30-) day plan, the plan must be modified to indicate the need for continued placement. The plan must be based on the admission assessment.

2. A written treatment plan must be developed and documented in the child's record within fifteen (15) days of admission for each child admitted by plan for placement. The plan must be based on the admission assessment and observations of the child's adjustment into care. When drafting the treatment plan the agency shall consult with and involve all individuals and institutions which are parties to a juvenile proceeding involving the child or who may be necessary in preparing a treatment plan for the child, including, but not limited to: the child's legal custodian/guardian, the child's parent, the child (when appropriate), guardian *ad litem*, juvenile officer, children's division case manager, court appointed special advocate, as applicable to the individual child, and staff members who provide direct care, social services, education, recreation, and health services in developing and implementing the treatment plan for the child and family.

3. The service plan must identify and include:

A. The child's needs in addition to basic needs for food, shelter, clothing, routine care, and supervision;

B. Specific strategies and their frequencies to meet the child's needs, including instructions to staff;

C. Specific strategies and frequencies for family involvement, including a defined plan for visitation and engaging the family in services for the child;

D. Specific strategies to meet the recreational and developmental needs of the child;

E. The estimated length of stay;

F. Time limited goals and preliminary plans for discharge, that address permanency related to family reunification, termination of parental rights and adoption, placement with a fit and willing relative, legal guardianship, or another planned permanent living arrangement; and

G. The date and signature of the program director/qualified professional staff and a signed and dated attendance sheet of all other participants. Invited participants shall include, but not be limited to:

(I) Legal custodian/guardian;

(II) Parent;

(III) Child, as age/developmentally appropriate; and

(IV) Guardian *ad litem*/court appointed special advocate, as applicable to the individual child.

4. A copy or summary of the treatment plan must be given to the child, when appropriate, and to the child's parents or legal guardian. If the plan is not shared with the child, the child's record must reflect justification for this decision.

5. An agency shall provide and document in a child's record, social services to each child at least two (2) times per month as required by treatment plan. Social services shall be provided to the child's family for whom reunification is the permanency goal and shall begin at placement. The family's participation or reasons for non-participation shall be documented.

6. The progress of a child and his/her family shall be evaluated at least every ninety (90) days from the date of admission, and the service plan shall be modified when appropriate. In crisis placement, an evaluation shall be conducted at least every thirty (30) days. Evaluations shall be made by professional staff in consultation with other staff who have significant contact with the child, the parent(s), guardian, or legal custodian.

(B) Treatment Plan Review.

1. The treatment plan review must include:

A. An evaluation of progress toward meeting the child's needs;

B. An evaluation of progress toward the permanency goal;

C. Any needs identified since the plan was developed or last reviewed and strategies to meet the needs, including instructions to staff; and

D. An update of the estimated length of stay and discharge plans, if changed.

2. The review of the treatment plan with the date and signature of the program director/qualified professional staff and a signed and dated attendance sheet of all other participants in the review must be documented in the child's record.

3. Reports of the evaluations in summarized form shall be included in the child's record, and shall be shared with the parent(s), guardian, or legal custodian.

(3) Discharge from Care.

(A) The following persons must be involved in planning a nonemergency discharge: the child; the child's parent(s) or legal guardian and agency staff.

(B) The child may be released only to the parent(s) or legal guardian unless there is a court-authorized independent living arrangement.

(C) If a child is discharged because s/he is a danger to him/herself or others, s/he must be accompanied by staff to the parent(s) or legal guardian or an appropriate placement resource.

(D) The date and circumstances of the child's discharge must be documented in his/her record. The signature, address and relationship of the adult to whom the child is discharged must be included in the documentation.

(E) Except in emergency situations, an agency shall give at least thirty (30) days' written notice to the parent(s), guardian, or legal custodian before discharging a child from care.

(F) The discharge plan must be tied to permanency goals related to family reunification, termination of parental rights and adoption, placement with a fit and willing relative, legal guardianship, or another planned permanent living arrangement.

(4) Discharge Summary. When a child in care is discharged, an agency shall complete a written discharge summary within thirty (30) days of the date of discharge. This summary shall be included in the child's case record, and shall include:

(A) The name, address, telephone number, and relationship of the person(s) or agency to whom the child is discharged;

(B) A summary of services provided during care;

(C) A summary of growth and accomplishments during care;

(D) Reason for discharge; and

(E) An identified aftercare plan which shall include cooperative efforts with the parent(s) or legal guardian to support the child's transition from placement into the family or community.

*AUTHORITY: sections 210.481, 210.486, and 210.506, RSMo 2000.* This rule originally filed as 13 CSR 40-71.060. Original rule filed Nov. 9, 1978, effective Feb. 11, 1979. Emergency rescission and emergency rule filed Nov. 1, 1993, effective Nov. 12, 1993, expired March 11, 1994. Emergency rescission and emergency rule filed March 2, 1994, effective March 12, 1994, expired July 9, 1994. Rescinded and readopted: Filed Nov. 1, 1993, effective June 6, 1994. Moved to 13 CSR 35-71.060, effective Oct. 30, 2008. Amended: Filed Dec. 16, 2013, effective June 30, 2014.*

**Original authority 210.481, RSMo (1982).*

**13 CSR 35-71.070 Protection and Care of the Child**

*PURPOSE: This rule sets forth the provisions*



*for protection of the child, including child abuse or neglect, or both, exploitation, confidentiality, discipline and control, physical restraint, fire safety/emergency preparedness procedures, transportation, work experience and allowances. Also, provision for the care of the child, including living arrangements, personal hygiene, clothing, food and nutrition, personal possessions, family identity, religious requirements, educational program, recreational and activity programs transitional living services, smoking policy, and prohibition of practices with negative impact on residents.*

(1) Protecting the Child in Care. An agency shall submit an immediate oral report (within six (6) hours), to the division followed by a written report, within five (5) working days after the occurrence of an unusual incident, such as the death or serious injury of a child, alleged child abuse or neglect, loss of any electricity, gas, water, telephone, or any other conditions affecting the health and safety of children for a period of longer than twelve (12) hours or requires the removal of residents, or any emergency that requires summoning first responders.

(A) Protecting the Child in Care-Child Abuse or Neglect, or Both.

1. The agency shall require each staff person to read and sign a statement defining child abuse and neglect and outlining responsibilities to report all child abuse and neglect incidents as required by statute.

2. An agency shall have written procedures for any alleged incident of child abuse or neglect, or both, which shall include:

A. Reporting the alleged incident as required by the child abuse/neglect reporting law, sections 210.110-210.165, RSMo;

B. Conducting an internal investigation of the alleged incident; and

C. Providing a written report to the licensing unit of the agency's internal investigation of the alleged incident.

D. An internal investigation shall include, but not be limited to:

(I) Names of staff and residents involved;

(II) Date incident occurred;

(III) Date division notified;

(IV) A copy of the critical incident report including but not limited to: injury of a child during physical restraint; serious physical or sexual aggression by or toward the child; significant physical injuries requiring medical attention; allegations of sexual abuse; criminal conduct involving the child; elopement; attempted suicide; fire setting; child death; and information which must be reported to the child abuse and neglect hotline pursuant to section 210.115, RSMo;

(V) A summary of administrative interviews with staff and residents(s) to determine the situation;

(VI) Any action taken to protect the child(ren); and

(VII) Any immediate corrective action of any licensing violations or agency policy.

E. An internal investigation should be completed by an objective third party not involved in the incident, so as to avoid any potential for conflict of interest.

3. If the safety of the children is threatened, as determined by the executive director, no person who is alleged as a perpetrator in an incident of child abuse or neglect, or both, shall work directly with children until an investigation is complete.

4. If the investigation results in an affirmative finding consistent with current statutory standard of proof the agency shall submit a written report to the licensing unit, outlining corrective action taken by the agency. If the agency fails to take appropriate action to prevent future abuse or neglect, or both, the division may deny, suspend, or revoke the license.

5. The agency shall create and maintain a centralized log of all critical incidents.

(B) Exploitation of Children.

1. Exploitation of children shall be prohibited.

2. As used in these rules, exploitation of children shall include, but not be limited to:

A. The use of a child or his/her picture or name for solicitation for funds without the written consent of the child's parent(s), guardian or legal custodian;

B. The use of a child to advance an agency's religious beliefs; and

C. The placement of unreasonable demands for work upon a child.

(C) Confidentiality.

1. An agency shall have written procedures for the maintenance and security of clients' records. This shall include a staff review of the procedures for confidentiality and a signed and dated statement indicating that staff have reviewed the procedures. The agency shall secure records against loss, tampering, or unauthorized use by—

A. Protection of the confidentiality of records when in use and keeping them under lock when not in use;

B. Staff and professional consultants seeking access only to the records with which they are professionally involved;

C. Staff not disclosing or permitting the disclosure of any information concerning the child or his/her family, directly or indirectly, to any unauthorized person; and

D. Staff being informed of the requirement that they must observe the procedures for protecting confidentiality after termination of employment.

2. Records shall be made available to the division or its authorized and identified agents, either upon written or verbal request. This includes division staff who are involved in child abuse/neglect reporting/investigation.

3. All requests for access to a child's records shall be documented in the record providing the name of the individual making the request, the date, and the desired materials. If access was refused, the grounds for refusal shall be documented.

4. A consent for release form signed and dated by the parent(s), legal guardian, or legal custodian must be provided before a child's records are released or a child's photographs are displayed, or any video tape and/or audio recording of a child for the purpose of health, safety, welfare, enhanced supervision, and/or other therapeutic purpose pursuant to the child's case plan is released, to any person other than those specified in these rules. The consent must specify what information may be released, to whom, for what purpose, and for what period of time.

(D) Discipline and Control.

1. An agency shall have written policies regarding discipline, supervision, and behavior management, which shall be explained and made available to a child's parent(s), or guardian or legal custodian, or both, staff, and to the child. The procedures shall be within each child's ability to understand and achieve.

2. The policies shall identify the type of children served, describe the anticipated behavioral problems, set forth acceptable methods of dealing with the behaviors, and detail the required qualifications and training of staff. All discipline shall be consistent with the treatment/safety plan developed for the resident.

3. All discipline shall be reasonable and appropriate to the child's age and level of development. All discipline shall be limited to the least restrictive appropriate method and administered by appropriately trained staff.

4. Encouragement and praise of good behavior shall be used instead of focusing on unacceptable behavior.

5. The agency shall have written policies and procedures prohibiting discipline which may adversely affect a child's health or physical or psychological well-being. A copy shall be given to all residents, families, staff and placing agencies. The following forms of discipline shall not be used:

A. Cruel and unusual punishment;

B. Excessive or inappropriate work;



C. Denial of meals, daily needs, and the program provided by the individual service plan;

D. Verbal abuse, ridicule, or humiliation;

E. Permission for a child to discipline another child;

F. Chemical restraints;

G. Mechanical restraints;

H. Denial of planned visits, telephone calls, or mail contacts with family shall not be used as a consequence for negative behaviors;

I. The use of foods intended to produce an adverse reaction;

J. Physical or emotional abuse;

K. Confinement in any space not designed for isolation and observation;

L. Requirement that a child remain silent for long periods of time or other unreasonable verbal restrictions;

M. Corporal punishment including, but not limited to, slapping, hitting, spanking, paddling, shaking, belting, marching, standing rigidly in one (1) spot, use of excessive physical exercises such as running laps or doing push-ups or any method which harms or endangers the child;

N. Locked isolation for the purpose of discipline;

O. Withholding of an opportunity for a minimum of eight (8) hours of sleep in a twenty-four- (24-) hour period;

P. Withholding of shelter, clothing, essential personal needs, essential program services; or

Q. Withholding of meals, mail, allowances, or family visits.

(E) Physical Restraint.

1. All agencies using physical control techniques must have written policies defining the method of control utilizing a recognized physical restraint training program, approved by the division. The agency shall identify persons used in implementing these methods; and establish the training required for these persons. These policies shall address the use of crisis intervention, including techniques to be used prior to physical restraint and include:

A. The use of two (2) staff, one (1) of whom is fully qualified;

B. An immediate notice to the supervisor; and

C. A written report to the administrator.

2. For agencies permitting the use of physical restraint, the administrator and/or program director shall review its usage at least quarterly.

3. The agency shall maintain a centralized record when physical restraint is used, which shall include:

A. The name of the child, the date and time the child was physically restrained;

B. The circumstances that led to the placement of the child in a physical restraint and the de-escalation attempts used to try to prevent the use of physical restraint;

C. The name of the staff person who initiated the physical restraint, the staff person(s) who assisted with the physical restraint, and any other staff and/or residents who witnessed the physical restraint;

D. The amount of time the child remained in the physical restraint, any changes in the staff participation, and the time of and reasons for release;

E. Documented behavioral observations of the child at each five- (5-) minute interval;

F. Specific notation of any extension of any physical restraints lasting longer than five (5) minutes including reasons for the extension;

G. Documentation of results of debriefing that includes recommendations of staff and resident for avoiding a similar situation; and

H. Documentation of any medical care provided to the child.

4. Physical restraint shall include all efforts to minimize the possibility of injury to a child.

5. All instances of physical restraint shall be documented on incident reports and filed in the child's record.

6. Physical restraint may be used as a management method after all other verbal de-escalation measures have been exhausted, never to replace other more positive measures of control. Physical restraint methods shall be used only to end disturbances that threaten physical injury to the child, physical injury to others, or to take from a child a dangerous object which the child has threatened to use against him/herself or against others.

7. An agency shall not use mechanical restraint.

8. Strap-boards, strait-jackets, or home-made restraint devices such as tape shall not be used.

9. Within twenty-four (24) hours of each physical restraint incident, treatment staff shall debrief the incident with the resident.

10. For agencies permitting the use of physical restraint, the administrator and/or program director shall review its usage at least quarterly.

11. If the agency does not meet all the requirements for the use of physical restraint, the division shall give written notice of specific deficiencies and the agency shall not use physical restraint until corrections are made and approved by the division.

(F) Fire Safety-Emergency Evacuation Procedure.

1. Each operating site shall be inspected biennially and shall be in compliance with the requirements of the State Fire Marshal.

2. Written instructions for fire and other emergency evacuations shall be posted in a conspicuous place in each operating site. Children shall be instructed in evacuation procedures at the time of admission. An evacuation drill shall be held at least monthly, and a record of all drills shall be on file at each agency.

3. The agency shall train staff in fire prevention and to report fires and shall teach children fire safety.

4. The agency shall establish emergency preparedness policy, to include but not to be limited to:

A. Emergency contact information;

B. Evacuation procedures; and

C. Medication management during emergencies.

(G) Transportation.

1. General requirements.

A. The agency shall provide transportation as indicated by the individual needs of the children, for example, medical and dental appointments, educational or training programs, counseling, family therapy, and court proceedings. If the agency cannot, for any reason, transport a child to any required services, the agency shall work with the child's treatment team members, legal guardian, and/or legal custodian to make appropriate and timely arrangements.

B. The agency shall be responsible for the care, safety, and supervision of children on field trips or at any time children are transported away from the operating site.

2. Vehicle and vehicle operator.

A. Staff transporting children shall have a valid driver's license as required by Missouri law.

B. All vehicles used to transport children shall be licensed and operated in accordance with Missouri law.

C. Children shall not be transported in campers, trailers, or in the back of trucks.

3. Safety and supervision.

A. All children shall be seated in a permanent seat and restrained by seat belts or child restraint devices as required by Missouri law.

B. Staff/child ratios shall be maintained at any time the agency transports children away from the operating site.

C. Children shall be required to remain seated while the vehicle is in motion.

D. Doors shall be locked when the vehicle is moving.



E. Order shall be maintained when the vehicle is moving.

F. Children shall not be left unattended in a vehicle at any time.

G. Children shall enter and leave the vehicle from the curbside unless the vehicle is in a protected area or driveway.

H. Children shall be assisted, when necessary, while entering or leaving the vehicle.

I. Head counts shall be taken before leaving the operating site, after entering the vehicle, during a field trip, after taking the children to bathrooms, after returning to the vehicle and when back at the operating site.

J. When children leave the vehicle, the vehicle shall be inspected to ensure that no children are left on or under seats.

(H) Work Experience.

1. An agency shall provide the opportunity for work experiences for each child appropriate to the age, health, and abilities of the individual child.

2. Work experience shall not interfere with a child's time for school, study periods, play, sleep, community contacts, or visits with his/her family, and shall be designed to serve the child's interest.

3. If work experience is a part of the child's treatment plan, it shall be identified in the treatment plan. A schedule shall be maintained for all children who work paying jobs for review by licensing staff.

4. Children shall not be used as substitutes for staff.

5. An agency shall differentiate between chores children are expected to perform, specific work assignments made as a means of earning money, and jobs performed in or out of the operating site to gain vocational training.

6. Work training programs and employment of children shall be approved by the executive director or designated staff when the child is employed outside the operating site.

7. Children shall be given some choice in their chores and work experiences, and duties shall be changed periodically to provide the child a variety of experience.

8. An agency shall limit the length of time children spend on regular nonpaid chores to one (1) hour a day during the school year and not more than two (2) hours a day during the summer months for all children.

9. An agency shall comply with the applicable child labor laws, sections 294.011-294.140, RSMo. Children working paying jobs shall receive pay in accordance with community rates.

10. A complete record of a child's earnings and dispersals from this fund shall be maintained and made available upon request to the child, the parent(s), the guardian, or legal custodian and the licensing unit.

11. Children shall be provided proper supervision when working with, or in proximity to, power-driven machinery, upon scaffolding, in the operation of a motor vehicle, or in any other occupation which is dangerous to the life or health of a child.

(I) Allowances and Money.

1. If a child does not work and earn his/her own spending money, each child shall receive a regular allowance. The child shall be allowed to use discretion in spending some of the allowance for items other than basic needs.

2. Money belonging to a child being discharged shall be transferred to the child, the parent(s), or the agency authorized to act as custodian.

3. Documentation of all deposits and withdrawals should be maintained and available for review upon request. At the time of discharge from the agency, documentation shall be made part of the child's record.

(J) Critical Incident Report.

1. In the event that a critical incident occurs that includes, but is not limited to: injury of a child during physical restraint; serious physical or sexual aggression by or toward the child; significant physical injuries requiring medical attention; allegations of sexual abuse; criminal conduct involving the child; elopement; attempted suicide; fire setting; child death; and information which must be reported to the child abuse and neglect hotline pursuant to section 210.115, RSMo, a critical incident report is completed by the agency. When a child is not in Children's Division custody, the agency shall then verbally notify, within six (6) hours, the regional licensing consultant, the child's treatment team, case manager, parent, legal guardian, guardian *ad litem*, and legal custodian and provide them with a copy of the critical incident report within twenty-four (24) hours of the occurrence of the critical incident. In the event a child is in Children's Division custody, the agency contact, in addition to the regional licensing consultant, is the case manager. The agency contacts the regional licensing consultant and case manager within six (6) hours. The case manger then notifies the other pertinent team members. The agency then provides the regional licensing consultant and case manger with a copy of the critical incident report within twenty-four (24) hours of the occurrence of the critical incident.

(2) Care of the Child.

(A) Living Arrangements. Children shall be grouped by their age, level of development, and need for supervision.

(B) Personal Hygiene.

1. An agency shall provide each child with his/her own toiletry articles and with space for their storage.

2. An agency shall provide mirrors or unbreakable reflective surfaces in bathrooms at levels easily accessible to all children.

(C) Clothing.

1. An agency shall establish minimum clothing requirements for each child in care.

2. An agency shall assure that clothes are provided to each child. Clothes shall be individually selected and fitted, appropriate to the season and kept in a state of good repair and cleanliness. Each child's clothing shall be identified as his/her own.

3. An agency shall assure shoes are provided to each child which shall be kept in good repair.

4. When possible, children shall be permitted to participate in the selection and purchase of their own clothing.

5. Donated clothing shall be used only if it is in good condition.

6. Clothing belonging to and worn by a child while in residence shall be taken with him/her upon discharge.

(D) Food and Nutrition.

1. Nutritional requirements.

A. An agency shall provide nutritious, appetizing food which meets the daily nutritional requirements of the children in care.

B. Consideration shall be given when planning meals to the religious practices and cultural differences of the children.

C. An agency shall provide supplementary foods and modified diets for children with special dietary needs.

D. When a dietitian or nutritionist is not employed by an agency, consultation on menu planning shall be obtained as needed from a city, county, or state health agency or through a local resource.

E. Variations in the appetites of the children in care shall be recognized, and the children shall be encouraged, but not forced, to eat.

F. Children shall be encouraged to develop healthy eating habits.

G. All milk shall be pasteurized. Dry or powdered milk shall only be used in meal preparation and not utilized for drinking purposes.

2. Meal service.

A. An agency shall serve meals at recognized meal times, and at least three (3) times a day, unless children receive their noon meal at school.

B. Nutritious between-meal snacks shall be provided.



C. Staff and children who eat together shall be served the same food unless contraindicated for medical reasons.

(E) Personal Possessions. Each child shall be permitted to bring safe and appropriate personal possessions with him/her and to acquire belongings of his/her own while in residence. A written inventory log of the child's possessions at the time of admission and at the time of discharge shall be on file. The inventory log shall be updated during the stay, as needed.

(F) Family Identity and Relationships.

1. An agency shall develop written visitation policies.

2. An agency shall encourage and support contacts between a child and his/her family while the child is in care, unless the rights of the parent(s) to contact their child have been terminated or restricted by court order. The frequency of contact shall be determined by the child's parent(s), guardian, or legal custodian in consultation with agency staff. An agency shall enable the family to visit and remain involved in their child's care as well as actively participate in relationship building.

3. Privacy shall be provided for visits with family members, relatives, and friends, for telephone calls and for written communications unless otherwise indicated by the treatment plan.

4. Flexible visiting hours shall be provided for the parent(s) or legal guardian.

(G) Religious Requirements.

1. Prior to admission, an agency shall provide a written description of the agency's religious requirements and practices, which shall be made available to the parent(s), guardian, or legal custodian, and, when appropriate, to the child.

2. Upon admission, if the agency requires mandatory religious observance or mandatory church attendance, consent of the parent(s), or guardian or legal custodian, or both, shall be obtained and explained to the child upon admission.

3. Opportunity for religious experience shall be made available to each child within the religious preference of his/her family by treatment plan.

4. The child's parent(s), guardian, or legal custodian shall provide written authorization regarding any change in religious affiliation by the child while s/he is in care.

5. Children shall be permitted to attend religious activities and services in the community by treatment plan.

(H) Educational Program. The agency shall be responsible for ensuring compliance with Missouri statutes pertaining to the children's education.

1. An agency shall not admit a child unless an educational program appropriate to the child's needs can be made available and provided.

2. The educational progress of a child shall be continually evaluated and the progress shall be included in the child's three- (3-) month treatment plan review according to 13 CSR-71.060(2)(B)1.A.

3. If the educational resources of the local community do not meet the needs of the children in care or if a child is excluded from school for behavioral or other reasons, the agency shall work closely with the local school district to provide an appropriate education plan pursuant to section 210.1050, RSMo.

4. An agency shall maintain contact and cooperation with involved school systems to provide a coordinated approach to meeting the educational needs of each child.

5. An agency shall provide appropriate space, adequate lighting, supervision for quiet study after school hours, and access to reference materials and school supplies.

6. Children shall be permitted and encouraged to participate in extracurricular activities such as sports, art and music, to the extent of their interests, abilities, and talents.

7. At the time of discharge, a copy of the child's educational records/file shall follow the child.

8. Agency employees providing educational services shall meet the certification criteria established by the Department of Elementary and Secondary Education.

(I) Recreational and Activity Programs/Leisure Time.

1. An agency shall involve children in a variety of age and developmentally appropriate on site and community activities individually, and in groups, which meet the range of needs specified in their respective treatment plan.

2. An agency shall maintain a written plan and schedule for a recreational program of both general and physically challenging activities which promote health and physical development in accordance with the individual interests, ages, and needs of the children. This program shall include procedures by which a child's involvement and progress shall be regularly reported.

3. An agency shall submit a list of general and physically challenging activities which they plan to use in their recreational program which includes a description of the activity, the purposes, and goals. This list shall be submitted to the division at initial licensure or license renewal.

4. An agency shall provide indoor and outdoor recreational facilities for quiet and active play.

5. Each child shall have some time to be alone if s/he wishes, and places where the child reasonably will be undisturbed, while under the overall supervision of staff.

6. Recreational and leisure-time activities shall be included as a planned part of family interventions, provided these activities do not interfere with the safety or security of the child, family, or operating site.

7. Any water activity, including but not limited to, swimming, wading, fishing, or boating shall be permitted only when—

A. An adult with a current lifeguard certificate, including cardio pulmonary resuscitation training is present; except

B. An adult who has completed a course in basic water safety, which includes infant/child cardio pulmonary resuscitation training, may supervise children when a swimming pool containing a depth of less than twenty-four inches (24") of water is being used; and

C. Other water activities such as fishing or boating shall require staff supervision at all times. The agency shall ensure the safety and supervision of the children and utilize appropriate equipment.

8. Agencies with on- or off-ground activity programs, which by their nature significantly alter the usual level of resident supervision, shall clearly describe each activity in their recreational plan. These include activities which could be described as physically or otherwise challenging, or those which utilize animals, or those which might involve a level of risk to children. The plan for each activity shall outline the qualifications of staff members involved, special equipment, supervision rules that will be used, and any changes in the usual behavioral rules for residents and staff required by the activity. At a minimum, the plan specifically shall address each of the following:

A. Special qualifications of staff.

(I) The agency will confirm in writing in each staff's personnel file that the staff has specialized training, or extensive life experience in the recreational activity that qualify staff to supervise the activity.

(II) If the agency or specific staff is certified in a recognized activity area such as ROPES, Project Adventure, or Red Cross water safety instructor (WSI), these standards will be evidence of compliance;

B. Special safety equipment.

(I) All sports and outdoor equipment used in the program is selected on the basis of safety factors and is regularly checked or tested to insure it is up to the agency's standards, which comply at a minimum with applicable national standards for the equipment in use.



(II) First aid and emergency response kits and other emergency supplies and medications needed by participants are under the control of the designated group leader at all times.

(III) The agency provides for adequate shelter from the elements, safe and healthful food and water, appropriate clothing, and appropriate equipment required for the activities and the environment;

C. Special rules for staff and resident behavior.

(I) The agency has a written plan for coverage and supervision when groups are physically distant from the main location which includes delegation of authority.

(II) Personnel designated responsible for the group must have had first aid or first responder training and at least one (1) staff person with the group shall be certified to provide cardio pulmonary resuscitation; and

D. Risk management.

(I) The agency shall have a written plan which describes unsafe conditions which would restrict or rule out this activity. Safety rules for staff and residents, appropriate clothing and equipment required, and necessary training for staff and residents prior to undertaking the activity shall be specified in the plan. Changes to this plan shall be submitted to the division.

(II) The agency shall include in its plan the level of administrative approval required to authorize the undertaking of any such activity.

(J) Transitional Living Services. Agencies serving an adolescent population shall develop and implement a transitional living services component which shall begin at the time of the initial assessment and shall be modified in accordance with the youth's changing needs as new skills are developed. This component should compliment any other life skills program/training in which the youth is involved. Group and individual counseling should include coping and adjustment issues relating to the youth's transition from residential treatment. The program shall include development of a planned program in which, at a minimum, residents may acquire skills and practice in the following areas developing:

1. Skills for independence;
2. Skills and knowledge of financial management;
3. Skills necessary for locating, obtaining, and maintaining a residence;
4. The basic skills for negotiating successfully with community institutions and systems;
5. A basic knowledge in substance abuse prevention, human sexuality, physical and sexual abuse, Human Immunodeficiency Virus prevention and other sexually transmitted diseases;
6. Daily life skills;
7. Skills for job preparation, maintenance, and retention; and
8. Skills for developing positive peer relationships and a support system.

(K) Smoking Policy. Agencies shall develop a smoking policy for staff and residents that is consistent with Chapter 407, RSMo.

(L) Prohibition of Practices with Negative Impact on Residents. Agencies shall develop policy that prohibits activities and media (music, movies, video games, television) that negatively impact children.

*AUTHORITY: sections 210.481, 210.486, and 210.506, RSMo 2000.* This rule originally filed as 13 CSR 40-71.070. Original rule filed Nov. 9, 1978, effective Feb. 11, 1979. Emergency rescission and emergency rule filed Nov. 1, 1993, effective Nov. 12, 1993, expired March 11, 1994. Emergency rescission and emergency rule filed March 2, 1994, effective March 12, 1994, expired July 9, 1994. Rescinded and readopted: Filed Nov. 1, 1993, effective June 6, 1994. Moved to 13 CSR 35-71.070, effective Oct. 30, 2008. Amended: Filed Dec. 16, 2013, effective June 30, 2014.*

**Original authority: 210.481, RSMo (1982), amended 1985 and 210.486 and 210.506, RSMo (1982), amended 1993.*

**13 CSR 35-71.075 Health Care**

*PURPOSE: This rule sets forth the procedures for health care, emergency medical care, psychiatric and psychological care, including psychotropic medication.*

(1) Health Care Procedure.

(A) The agency shall have a written health care program plan which shall address preventive medical, eye, hearing, and dental care.

(B) The agency's health care program shall include admission examinations, subsequent examinations, nursing care, first-aid procedures, dispensing of medicine, basic remedial treatment and the training and implementation of the use of the universal health care precautions and the other basic principles of communicable disease prevention. The agency shall make provisions for the services of a licensed physician to be responsible for medical care, including on site or office visits.

(C) At admission, the agency shall obtain written authorization for each child from the parent(s), guardian, or legal custodian for emergency medical care, necessary immunizations, and for routine medical examinations and care.

(D) A complete medical examination by a licensed physician certified nurse practitioner, advanced practice nurse in a collaborative practice agreement with a licensed physician, or a registered nurse who is under the supervision of a licensed physician shall be given to each child within thirty (30) days prior to admission, or within ten (10) days after admission. The findings of the examination shall be recorded on a form prescribed by the division, or one containing the equivalent information. Children shall receive physical examinations in accordance to the periodicity of the Missouri medicaid healthy children and youth schedule for medical and developmental examinations.

(E) If a child shows overt signs of highly infectious disease or other evidence of ill health, the agency shall make arrangements for an immediate examination by a licensed physician.

(F) Any child who has not received primary immunization prior to admission shall be immunized according to the Department of Health and Senior Services's current guidelines.

(G) A current immunization history shall be maintained for each child.

(H) Booster shots shall be administered to children as needed, and at time intervals recommended by the agency physician or by the Department of Health and Senior Services's current guidelines.

(I) Each child shall be given an annual eye examination and corrective treatment shall be provided as prescribed.

(J) Children must be tested for communicable diseases including, but not limited to, tuberculosis and hepatitis according to the recommendations of a licensed physician.

(K) Dental Care.

1. Children must have a dental examination by a licensed dentist within one (1) year before admission or within three (3) months after admission. A copy of the examination report and findings must be in the child's record.
2. A child shall have a dental examination at least annually while in care.

(L) Any treatment or corrective measures required by the licensed physician or dentist shall be arranged by the agency, as approved by a parent, guardian, or legal custodian.

(M) Upon discharge, a copy or summary of the child's health and dental records shall be provided to the child's parent(s), guardian, or legal custodian.

(2) Emergency Medical Procedure.



(A) At least one (1) staff member shall be qualified/certified to administer first aid, including adult/child cardio pulmonary resuscitation, and shall be available within the agency at all times.

(B) A first-aid kit shall be readily available.

(C) An agency shall contact a child's parent(s), guardian, or legal custodian immediately, but no longer than twelve (12) hours when a serious illness, a serious injury, or hospitalization of the child occurs. This includes any visit to an emergency medical facility.

(D) In the event of the death of a child, the parent(s), guardian, legal custodian, and the division shall be notified immediately.

(3) Isolation for Illness. Provision shall be made for the medical isolation of any child with a highly communicable disease or other evidence of ill health which poses a serious threat to other children.

(4) Psychiatric and Psychological Care. When the agency's treatment plan for a child indicates a need for professional care by a psychiatrist or a psychologist, the specialized treatment shall be provided, or arranged for, by the agency.

(5) Medicine and Drugs.

(A) All medication shall be prescribed by a licensed physician, and administered by a licensed nurse or staff who have successfully completed and maintained, at a minimum, the Level 1, Medication Aide Training Program or a recognized medication certification training program, approved by the division for children in residential treatment.

(B) All medicine and drugs shall be kept in a locked unit and shall only be accessible to and dispensed by the agency nurse or qualified/certified staff. Medications requiring refrigeration shall also be stored in a locked unit.

(C) All medication shall be labeled to indicate the name of the child, the type and dosage of medication, and shall be dated. All administered, transferred, and/or destroyed medications shall be documented on a medication administration record.

(D) Medication prescribed for one (1) child shall not be administered to another.

(E) No child shall self-administer medication unless the practice is approved by a licensed physician, or a registered nurse with approval of a licensed physician. The approval shall be documented in the child's medication record and treatment plan.

(F) When medications which are approved by a physician's order are prescribed, continued, discontinued or changed, an entry shall be made in the child's record. Entries shall be evaluated at least every thirty (30) days by a licensed nurse or staff that have successfully completed a recognized medication certification training program approved by the division for children in residential care.

(G) When medications are discontinued, they shall be destroyed within forty-eight (48) hours by staff as directed by a licensed physician or qualified pharmacist or a registered nurse.

(H) Upon discharge, all medication shall be transferred with the resident for whom it was prescribed. Medication must be given directly to a responsible adult/guardian/legal custodian or adult designee (such as a contracted transportation service) of the resident.

(6) Psychotropic Medication.

(A) Prescribing Psychotropic Medication.

1. An agency shall have written policies, which, upon request, shall be made available to the child's parent(s), or guardian or legal custodian, or both, to staff and to the child, governing the use of psychotropic medication.

2. The prescribing physician shall provide a written medication order reflecting the reasons for prescribing the medication, the dosages and the frequency of administration.

3. When a written order for psychotropic medication is provided by a physician to be administered in an emergency situation in his/her absence, staff shall document all dosages of medication given. The physician shall fully document the justification for, and the expected results of, the medication order.

4. Psychotropic medication shall not be administered as a form of punishment, as a substitute for a program, or due to lack of staff.

5. Unless there is a court order to the contrary, the parent(s), guardian or legal custodian of a child shall give prior, informed, written consent to the use of medication. Consent may be given at the time of admission.

6. The parent(s), guardian or legal custodian shall be informed regarding any possible side-effects of medications to be administered. This shall be documented in the child's record.

(B) Administering and Monitoring of All Medications, Including Psychotropic Medication.

1. The following information shall be maintained in the case record of each child receiving medication:

A. The medication history of the child;

B. Documentation of all medication administered;

C. A description of any significant changes in the child's appearance or behavior that may be related to the use of medication;

D. Any medication errors; and

E. A record of each refusal of medication including the child's name, the date, the time, the staff administering medication and the child's reason for refusal.

(C) Staff Training Relating to Medication Management. An agency shall provide training for all staff who work directly with children to enable them to recognize changes in a child's appearance or behavior that may be related to the use of any medication, including psychotropic.

*AUTHORITY: sections 210.481, 210.486, and 210.506, RSMo 2000.* This rule originally filed as 13 CSR 40-71.075. Emergency rule filed Nov. 1, 1993, effective Nov. 12, 1993, expired March 11, 1994. Emergency rule filed March 2, 1994, effective March 12, 1994, expired July 9, 1994. Original rule filed Nov. 1, 1993, effective June 6, 1994. Moved to 13 CSR 35-71.075, effective Oct. 30, 2008. Amended: Filed Dec. 16, 2013, effective June 30, 2014.*

**Original authority: 210.481, RSMo (1982), amended 1985 and 210.486 and 210.506, RSMo (1982), amended 1993.*

**13 CSR 35-71.080 Buildings, Grounds and Equipment**

*PURPOSE: This rule sets forth requirements for the physical plant, sanitation, safety and fire protection, space, and equipment.*

(1) Physical Plant-General Requirements.

(A) Plans for additional buildings, or alterations which affect the structural strength, safety, sanitary conditions, and floor space of existing buildings, shall meet the requirements of state and local ordinances. The plans for these buildings or alterations shall be submitted for review by the residential licensing unit, the State Fire Marshal and the Department of Health and Senior Services.

(B) If construction is not started within one (1) year of the approval of plans, the plans and specifications shall be resubmitted to the same agencies prior to beginning construction.

(C) An agency shall maintain its buildings, grounds, furniture, and equipment in a clean, safe, and sanitary condition and in a good state of repair.

(D) Each operating site shall be effectively safeguarded against insects and rodents.

(E) Each operating site housing children shall include areas and specialized recreational



space, and shall properly equip, supply, and maintain these areas so as to promote relaxation and varied opportunities for recreation.

(F) Telephone service shall be available in each operating site.

(G) An agency operating a swimming pool shall maintain a file to provide documentation that the pool is operated and maintained in accordance with all applicable local ordinances, state guidelines, or both.

(H) Heaters, floor furnaces, radiators, hot water heaters, or other equipment which pose a threat to children shall be separated from areas used by children by partitions, screens, or other barriers, as approved by the State Fire Marshal.

(I) Smoking shall be prohibited in child care, food preparation, and food service areas.

(J) Porches, decks, stairwells, or other areas having a significant drop-off from which children might fall and be injured shall have an approved railing or approved barrier.

(2) Administrative and Clerical Space. Adequate space shall be provided for administrative and clerical staff and for the storage of records.

(3) Interview and Consultation Area. A private area shall be provided for interviews and consultations.

(4) Sleeping Rooms and Areas.

(A) An agency licensed after the effective date of these rules (November 12, 1993) shall provide a sleeping space for each child of at least seventy (70) square feet.

(B) An agency licensed after (November 12, 1993) shall provide at least one (1) window to the outside of the operating site (effective the date of this amendment) in each sleeping room.

(C) No enclosed basement rooms or rooms that are more than one-third (1/3) below ground level on all four (4) sides shall be used. Each sleeping room, unless it has a door opening to the outside at ground level, shall have an exit access door leading directly to a corridor which leads to an exit. Exit doors shall comply with existing fire and safety requirements.

(D) Each child shall be provided with his/her own bed which shall be adequate in width and length for his/her height.

(E) Sleeping areas shall be designated and provided for boys and for girls to allow for maximum supervision and separation. Programs providing care for children through age three (3) years are not required to separate children according to gender. Consideration for waiving the age limit may be given to programs providing less than seventy-two- (72-) hour care to enable programs to keep sibling groups together.

(F) An agency licensed, or buildings constructed, after the effective date of these rules (November 12, 1993), shall house no more than four (4) children in a single sleeping area.

(G) Single beds shall be provided and spaced appropriately to allow for maximum comfort of the children. Bunk beds may be used, if age-appropriate, and shall be constructed of safe, stable materials.

(H) Each bed shall have level, firm springs and a firm mattress or other comfortable, orthopedically supportive surface, protected by rubber sheeting or other covering, when necessary. A pillow, bed linen, and sufficient cover for comfort shall be provided.

(I) A complete change of bed linen shall be provided when soiled, but at least once a week.

(J) Children shall have sufficient closet and drawer space for clothing and personal belongings.

(5) Staff Quarters. When staff quarters are provided, they shall be located adjacent to the children's bedrooms so that children can be supervised easily and staff can be available to any child, when needed.

(6) Bath and Toilet Facilities.

(A) A minimum of one (1) toilet and one (1) wash basin shall be provided for every four (4) children and one (1) tub or shower shall be provided for every six (6) children in residence. In agencies licensed after the effective date of these rules (November 12, 1993), these accommodations shall be located on the same floor as the sleeping rooms. In agencies licensed after (effective the date of this amendment) the bath and toilet facilities shall be in a separate, distinct room.

(B) Separate and private bathroom accommodations shall be provided for boys and for girls ages six (6) years or older.

(C) Agencies licensed after (effective the date of this amendment) shall have a window to the outside of the operating site or other exhaust ventilation system in each bathroom.

(D) Hot water heating systems and water temperature shall be routinely monitored to ensure safety of children.

(7) Laundry and Utility Area. Laundry equipment shall be available in a well-lighted and well-ventilated area.

(8) Heating and Cooling. Each operating site shall be well ventilated and maintain indoor temperatures comfortable for children.

(9) Electrical Systems.

(A) Each operating site's electrical system shall comply with all applicable local ordinances, state guidelines, or both.

(B) Artificial lighting shall be provided to meet the needs of the children and shall be safely and sufficiently shielded.

(C) The operating site shall have an adequate lighting source.

(10) Windows, Screens, and Glass Doors.

(A) Windows which are accessible from the outside shall be lockable and open easily from the inside. The manufacturer's designed functions of windows shall not be altered without the approval of the State Fire Marshal.

(B) Open windows and doors shall be securely screened and barriers to prevent children from falling against windows or falling from window openings shall be provided as needed.

(C) Shatterproof safety glass shall be installed in high risk areas where children are active, and clear glass doors shall be marked plainly at varying heights to avoid impact.

(11) Dining and Kitchen Area.

(A) Each operating site shall have a kitchen which provides the following:

1. A refrigerator capable of maintaining foods at safe temperatures according to Department of Health and Senior Service's standards and verified by thermometers located in each refrigerator and freezer;

2. A stove with a hood in operating condition;

3. A kitchen sink in operating condition with hot and cold running water;

4. Adequate provision for the sanitary disposal and temporary storage of food waste and refuse;

5. A supply of equipment to prepare meals, and dishes, glassware, and flatware for use at each meal. Utensils shall be free of chips, cracks, or other defects, and shall be thoroughly cleansed after each use;

6. Equipment used in the preparation and serving of food, including can openers, meat slicers, and cutting surfaces which shall be cleaned and sanitized after each use;

7. No smoking in food preparation and food service areas;

8. Dining areas equipped with tables and chairs appropriate to the children's ages, and arranged so that children and staff can have their meals together;

9. Dishwashing facilities with water hot enough to sanitize utensils or other approved sanitization method;

10. A window or other adequate exhaust ventilation system in each kitchen;

11. Adequate space and light; and



12. Walls, floors, and ceilings made of materials that are easy to clean and maintain.

(12) Food Storage.

(A) Food and drink shall be stored, prepared, displayed, served and transported in a manner to protect it from contamination.

(B) Each operating site shall store and use food service areas, only sufficient poisonous and toxic materials required to maintain sanitary conditions. Toxic materials shall be properly labeled and stored in secure, locked, cabinets which are used for no other purpose.

(13) Water.

(A) If an operating site's water supply is not an approved public source, each operating site shall have its water supply annually approved by the Department of Health and Senior Services or Department of Natural Resources.

(B) Each operating site shall provide cool, safe drinking water and single-serving cups or glasses for those unable to drink from fountains.

(14) Sewage Disposal.

(A) The agency shall utilize public sewage disposal systems when they are available.

(B) If the agency does not utilize public sewage disposal systems, facilities shall have their sewage disposal systems approved biennially by the Department of Health and Senior Services or Department of Natural Resources.

(15) Hazardous Materials. All flammable liquids, matches, poisonous materials, medicines, alcoholic beverages, hazardous personal care items, or other hazardous items shall be locked and inaccessible to children. Any lawful, authorized use of such materials would be under the approval of the executive director of the residential treatment agency for children and youth.

(16) Weapons.

(A) Ammunition, guns, hunting knives, bows and arrows or other weapons shall be stored in a locked cabinet or locked closet.

(B) All guns must have trigger locks installed.

(17) Animals.

(A) Agencies that have animals shall develop written policy and/or procedures that address the purpose and care of animals in therapeutic programming.

(B) Agencies that have animals shall adhere to local and state guidelines regarding care and public safety.

(C) Documentation of veterinarian visits and health records shall be made available, when requested.

(D) Appropriate pet containment systems shall be available to use, when necessary.

(18) Out Buildings. Any buildings used on campus for the storage of equipment or material shall be locked.

*AUTHORITY: sections 210.481, 210.486, and 210.506, RSMo 2000.* This rule originally filed as 13 CSR 40-71.080. Original rule filed Nov. 9, 1978, effective Feb. 11, 1979. Emergency rescission and emergency rule filed Nov. 1, 1993, effective Nov. 12, 1993, expired March 11, 1994. Emergency rescission and emergency rule filed March 2, 1994, effective March 12, 1994, expired July 9, 1994. Rescinded and readopted: Filed Nov. 1, 1993, effective June 6, 1994. Moved to 13 CSR 35-71.080, effective Oct. 30, 2008. Amended: Filed Dec. 16, 2013, effective June 30, 2014.*

**Original authority: 210.481, RSMo (1982), amended 1985 and 210.486 and 210.506, RSMo (1982), amended 1993.*

**13 CSR 35-71.090 Record Keeping**

*PURPOSE: This rule sets forth the records, documents and reports, which an agency shall maintain and, upon request, submit to the residential licensing unit.*

(1) The agency shall maintain a register of all children currently receiving care, including information concerning the child's name, sex, birthdate and person or agency legally responsible for each child.

(2) Individual case records for all children accepted for care shall be maintained for at least five (5) years after a child is discharged from care and shall include:

(A) The child's full name, date of birth, complete social history including reason and date of placement and medical history;

(B) Reports of any pre-placement visits and conferences;

(C) The admission assessment, including information concerning the religious, educational, economic and cultural background of the family; information about the child's development, health history, personality, school placement and adjustment; previous placements; attitudes toward separations; family relationships;

(D) Documents pertinent to current legal custody and guardianship status;

(E) Written agreements with parent(s), guardian, or legal custodian;

(F) School reports for each semester, including the child's grades, progress, and adjustment;

(G) The initial treatment plan and subsequent treatment plan reviews;

(H) Chronological case recording and progress summary completed at least monthly which identifies the child's progress and services provided to the family;

(I) Plans for discharge, aftercare, and supervision;

(J) Reports from recreational and other adjunctive staff involved with the child and family. All recreational activity shall be documented separately in each child's record;

(K) Copies of critical incident reports, which shall include, but not be limited to, injury of a child during physical restraint; serious physical or sexual aggression by or toward the child; significant physical injuries requiring medical attention; allegations of sexual abuse; criminal conduct involving the child; elopement; attempted suicide; fire setting; child death; and information which must be reported to the child abuse and neglect hotline pursuant to section 210.115, RSMo; and

(L) Admission and periodic health, vision, and dental examination information, physician's written instructions with regard to special dietary or health care, and record of all medications and treatments.

*AUTHORITY: sections 210.481, 210.486, and 210.506, RSMo 2000.* This rule originally filed as 13 CSR 40-71.090. Original rule filed Nov. 9, 1978, effective Feb. 11, 1979. Emergency rescission and emergency rule filed Nov. 1, 1993, effective Nov. 12, 1993, expired March 11, 1994. Emergency rescission and emergency rule filed March 2, 1994, effective March 12, 1994, expired July 9, 1994. Rescinded and readopted: Filed Nov. 1, 1993, effective June 6, 1994. Moved to 13 CSR 35-71.090, effective Oct. 30, 2008. Amended: Filed Dec. 16, 2013, effective June 30, 2014.*

**Original authority: 210.481, RSMo (1982), amended 1985 and 210.486 and 210.506, RSMo (1982), amended 1993.*

**13 CSR 35-71.100 Specific Rules for Basic Care Agencies Providing Care for Infant, Toddler, or Preschool Age Children (Birth Through Age Six (6))**

*PURPOSE: This rule sets forth the requirements for personnel, indoor and outdoor space, and equipment.*

(1) Physical Requirements.



(A) General Requirements.

1. Stairways shall be well-lighted and free of obstructions. Stairways having more than three (3) steps shall have a handrail the children can reach.

2. Porches, decks, stairwells, or other areas having a significant drop-off from which children might fall and be injured shall have an approved railing or approved barrier. The railing or barrier shall be constructed to prevent the child from crawling or falling through or becoming entrapped.

3. Approved safety gates at stairways and doors shall be provided and used as needed.

4. Protective outlet covers or twist-lock outlets shall be used in areas accessible to the children.

5. Heaters, floor furnaces, radiators, hot water heaters, or other equipment which pose a threat to children shall be separated from areas used by children by partitions, screens, or other approved barriers.

6. Smoking shall be prohibited in child care, food preparation, and food service areas.

(B) Indoor Space.

1. General requirements.

A. Open windows and doors shall be securely screened. Barriers to prevent children from falling against windows or falling from windows shall be provided when windows are less than twenty-four inches (24") from the floor and not constructed of safety glass or other unbreakable material.

B. Walls, ceilings, and floors shall be finished with material which can be cleaned easily and shall be free of splinters, cracks, and chipping paint. Floor covering shall be in good condition. Lead-free paint shall be used for all painted surfaces.

C. Concrete floors in areas utilized for child care shall be covered with carpet, tile, linoleum, or other floor covering.

D. Floor surfaces under indoor equipment from which children might fall and be injured, shall be protected with pads or mats which will effectively cushion the fall of a child. Carpeting alone is not an acceptable resilient surface under indoor equipment.

E. Toilet and handwashing facilities shall be in working order and convenient for the children's use.

F. Paper towels, soap, and toilet paper shall be provided and easily accessible so the children can reach them without assistance.

G. Locks or latches shall not be used on bathroom or bathroom stall doors.

H. One (1) potty chair, junior commode, or toilet with an adaptor seat shall be provided for every four (4) children being toilet trained. Potty chairs shall be located in the bathroom and shall be emptied, cleaned, and disinfected after each use.

(C) Diapering Area.

1. A safe diapering table with a waterproof washable surface shall be used for changing diapers. The diapering table shall be located within or adjacent to the group space so staff using the diapering table can maintain supervision of his/her group of children at all times.

2. Operating sites shall have one (1) diapering table for every group of eight (8) infant/toddlers.

3. Diapering supplies, and a properly equipped hand washing sink with warm running water, soap, and a towel or other Department of Health and Senior Services approved hand sanitizing method shall be adjacent to the diapering area.

(D) Outdoor Space.

1. General requirements.

A. An outdoor play area shall be available on, or adjoining, the agency's property. The area shall be located so it is convenient and the children can gain access to it without hazard. It shall be fenced when necessary for the protection of children from traffic, water, or other hazards.

B. The play area shall be safe for children's activities, well-maintained, free of hazards such as poisonous plants, broken glass, rocks, or other debris and shall have good drainage.

C. The fall-zone area under and around outdoor equipment where children might fall and be injured shall be covered with impact-absorbing materials which will effectively cushion the fall of a child. This material may include sand, pea gravel, tanbark, shredded tires, wood chips, rubber matting, or other approved resilient material.

(E) Swimming and Wading Pools.

1. Swimming and wading pools used by children shall be constructed, maintained, and used in a manner which safeguards the lives and health of children.

2. Swimming and wading pools shall be fenced to prevent access by children. The fence shall be at least forty-eight inches (48") high with a self-closing, self-latching door that must be unlatched from the inside and should be constructed so that a four-inch (4") sphere could not be passed through the fence.

3. Children using swimming or wading pools shall be instructed in water safety and supervised by an adult at all times.

4. An adult with a current lifeguard training certificate, including infant/child cardio pulmonary resuscitation training, shall be on duty at all times when a swimming pool or other bodies of water containing a water depth of twenty-four inches (24") or more is being used.

5. An adult who has completed a course in basic water safety, which includes infant/child cardio pulmonary resuscitation, shall be on duty when a swimming pool containing less than twenty-four inches (24") of water is being used.

(F) Sleeping Equipment.

1. An individually assigned crib, portable crib, or playpen shall be provided for each infant and toddler. Stack cribs shall not be used.

2. Cribs and playpens shall have side rail spokes which conform to current United States Consumer Product Safety Commission standards.

3. The crib mattress or playpen pad shall be correctly sized to the crib or playpen, in good condition, waterproof, and kept clean and dry. Sheets and covers shall be changed immediately when soiled or wet.

(G) Tables and Seating Equipment.

1. Individual chairs and table space for the licensed capacity of the operating site shall be available for children twelve (12) months of age and older. Chairs shall be proportioned so children sit comfortably and securely.

2. Infants and toddlers who are unable to sit at a table shall have one (1) piece of mealtime feeding equipment for every four (4) infant/toddlers which may include feeding tables, high chairs, infant seats, or other safely designed infant seating equipment. Equipment shall be provided which will allow the child to sit comfortably and securely while being fed. Appropriate safety restraints shall be used according to manufacturer's instructions.

(H) Indoor Play Equipment and Materials.

1. General requirements.

A. Play equipment and materials shall be clean, in good condition with all parts intact and accessible to children.

B. Play equipment and materials shall be replaced as needed to maintain the number of items required for the licensed capacity of the operating site.

2. Preschool and school-age children.

A. Children twenty-four (24) months of age and older shall have an ample variety of age-appropriate toys, books, creative materials and activities which provide fun, stimulation, development, and opportunities for individual choices.

B. The following shall be required:

(I) Blocks, construction, and transportation toys;

(II) Manipulatives;

(III) Creative arts;

(IV) Gross motor activities;

(V) Library and language activities;



(VI) Music and rhythm activities;

(VII) Dramatic and housekeeping play; and

(VIII) Science activities or sensory experiences.

C. Infants and toddlers.

(I) Infants and toddlers shall have safe toys which shall be washed or sanitized at least weekly or when soiled. Toys, parts of toys, or other materials shall not be small enough to be swallowed. Toys and materials shall include, but not be limited to, each of the following:

(a) Push-pull toys;

(b) Balls or other gross motor equipment;

(c) Blocks, stacking toys, or other manipulatives; and

(d) Cloth or plastic-coated books.

3. Outdoor equipment.

A. All outdoor equipment shall be safely constructed, in good condition and free of sharp, loose, or pointed parts. Only lead-free paint shall be used.

B. Outdoor equipment shall be provided for the ages and number of children in care to meet their physical and developmental needs.

C. Children shall be instructed in the safe use of outdoor equipment.

D. Stationary equipment such as swings, slides, and climbers shall be securely anchored, have no exposed footings, and be placed to avoid accidents or collisions.

E. Any hanging apparatus that might entrap, close, or tighten upon a child shall not be used.

F. Trampolines shall not be used. Mini-trampolines, aerobic bouncers, or other similar small jumping equipment may be used with close supervision.

*AUTHORITY: sections 210.481, 210.486, and 210.506, RSMo 2000.* This rule originally filed as 13 CSR 40-71.100. Emergency rule filed Nov. 1, 1993, effective Nov. 12, 1993, expired March 11, 1994. Emergency rule filed March 2, 1994, effective March 12, 1994, expired July 9, 1994. Original rule filed Nov. 1, 1993, effective June 6, 1994. Moved to 13 CSR 35-71.100, effective Oct. 30, 2008. Amended: Filed Dec. 16, 2013, effective June 30, 2014.*

**Original authority: 210.481, RSMo (1982), amended 1985 and 210.486 and 210.506, RSMo (1982), amended 1993.*

**13 CSR 35-71.110 Child Care Program**

*PURPOSE: This rule sets forth requirements for discipline, infant and toddler care, training and daily program.*

(1) General Requirements.

(A) Staff shall provide frequent, direct contact, and supervision so children are not left unobserved on the premises.

(B) Children under three (3) shall be supervised and assisted while in the bathroom.

(C) Supervision shall be maintained while children are napping or sleeping and staff shall be able to see and hear the children if they have difficulty during napping or when they awaken.

(2) Discipline.

(A) The agency shall establish simple, understandable rules for children's behavior and shall explain them to the children in a manner they can understand.

(B) Expectations for a child's behavior shall be appropriate for the developmental level of the child.

(C) Only constructive, age-appropriate methods of discipline shall be used to help children develop self-control and assume responsibility for their own actions.

(D) Praise and encouragement of good behavior shall be used instead of focusing only upon unacceptable behavior.

(E) Firm, positive statements or redirection of behavior shall be used with infants and toddlers.

(3) Care of Infants and Toddlers.

(A) Infants and toddlers shall have constant care and supervision.

(B) Children shall be cared for by the same staff person on a regular basis.

(C) Staff shall be alert to various needs of the child such as thirst, hunger, diaper change, fear of or aggression by other children and the need for attention.

(4) Diapering and Toilet Training.

(A) Disposable tissues or wipes shall be used to cleanse the child at each time of diapering.

(B) The diapering table shall be cleaned thoroughly with a disinfectant or sanitizer after each use.

(C) The child shall not be left unattended at any time while on the diapering table.

(D) Diapers and wet clothing shall be changed promptly.

(E) Wet or soiled diapers shall be placed in an airtight disposal container located in the diaper change area. Diaper containers shall be plastic lined, contain only soiled diapers (no soiled clothes or linens) and kept clean and free of build-up of soil and odor.

(F) Staff changing diapers shall wash their hands with soap and running water or other Department of Health and Senior Services approved hand-sanitizing method each time after changing a child's diaper before performing any other tasks.

(G) The diapering and hand washing area shall be separate from any food service area and any food-related materials.

(H) Children shall not be punished, berated, or shamed in any way for soiling their clothes.

(5) Daily Activities for Children.

(A) A daily schedule shall be established in written form which shall include activities for all ages of children in care.

(B) Daily activities for preschool and school-age children shall include, but not be limited to:

1. Developmentally appropriate play experiences and activities planned to meet the interests, needs, and desires of the children;

2. Individual attention and conversation with adults;

3. Indoor and outdoor play periods which provide a balance of quiet and active play, and individual and small group activities. Activities shall provide some free choice experiences;

4. Toileting and hand washing times;

5. Regular snack and meal times;

6. A supervised nap or rest period for preschool children after the noon meal;

7. A quiet time for school-age children after the noon meal with a cot or bed available for those who wish to nap or rest; and

8. A study time for school-age children who choose to do homework, with a separate, quiet work space.

(C) Daily activities for infants and toddlers shall include, but not be limited to:

1. Developmental and exploratory play experiences and free choices of play appropriate to the interests, needs, and desires of infants and toddlers;

2. Regular snack and meal times according to each infant's individual feeding schedule;

3. A supervised nap period. After awakening, an infant may remain in the crib for brief periods as long as s/he is content. Toddlers shall be taken out of bed for other activities when they awaken;

4. Individual attention and play with adults, including holding, cuddling, talking, and singing;

5. A plan for sensory stimulation which includes visual stimulation through pictures, books, toys, nonverbal communication, games, and the like; auditory stimulation through verbal communication, music, toys, games, and the like; tactile stimulation through surfaces, fabrics, toys, games, and the like;



6. Encouragement in the development of motor skills by providing opportunities for reaching, grasping, pulling up, creeping, crawling, and walking; and

7. Opportunity for outdoor play when weather permits.

*AUTHORITY: sections 210.481, 210.486, and 210.506, RSMo 2000.* This rule originally filed as 13 CSR 40-71.110. Emergency rule filed Nov. 1, 1993, effective Nov. 12, 1993, expired March 11, 1994. Emergency rule filed March 2, 1994, effective March 12, 1994, expired July 9, 1994. Original rule filed Nov. 1, 1993, effective June 6, 1994. Moved to 13 CSR 35-71.110, effective Oct. 30, 2008. Amended: Filed Dec. 16, 2013, effective June 30, 2014.*

**Original authority: 210.481, RSMo (1982), amended 1985 and 210.486 and 210.506, RSMo (1982), amended 1993.*

**13 CSR 35-71.120 Specific Rules for Residential Treatment Agencies for Children and Youth Providing Maternity Care**

*PURPOSE: This rule sets forth the requirements for agencies providing maternity care, including health care plan, program, and relinquishment of the infant.*

(1) In addition to the rules for basic core agencies, an agency desiring to provide maternity care shall meet these additional general requirements—

(A) A maternity residence upon request shall provide a written description of its program to the residents, parent(s), guardian, or legal custodian and to the division;

(B) Written financial policies and expectations shall be made available upon request to the division and to the parent(s), guardian, or legal custodian upon admission into the maternity residence;

(C) A training plan shall be developed to ensure that staff working with pregnant and parenting adolescents develop skills and knowledge regarding infant and adolescent care;

(D) Maternity residences shall be separate from other treatment programs; and

(E) At least two (2) direct-care pursuant to 13 CSR 35-71.050(4)(A)1.–5. and (B) trained pursuant to 13 CSR 35-71.045(5)(A)-(Q) and 13 CSR 35-71.045(6)(A)1. and 13 CSR 35-71.045(2)(B)1.–9., (C), and (D)1.–12. staff shall be on site at all times.

(2) Health Care.

(A) There shall be a written plan for all deliveries to take place in a licensed hospital.

(B) Physician's Services.

1. Each resident shall receive the services of a licensed physician on a regular and continuing basis throughout pregnancy, delivery, and post-delivery checkups.

2. The maternity residence shall provide for consultation from a licensed obstetrician who shall be available in an emergency.

3. A licensed nurse shall be accessible on an as needed basis for pre and post-natal care.

(C) Ambulance Service. Ambulance service shall be available for emergencies.

(D) Medical Records. The resident's medical record shall include a medical consent form, the name of the health care provider, a schedule of appointments, documentation of pre and post-natal care, the expected date of delivery, and any special needs or problems.

(E) Medication. No prescription or non-prescription medication shall be administered without the specific documented approval of the physician providing obstetric care.

(3) Program.

(A) The maternity residence shall, at a minimum, provide a program to residents addressing prenatal care, labor, delivery, nutrition, general health and hygiene, postnatal care, family planning, sexually transmitted disease, and child-care techniques.

(B) Upon dismissal from the maternity residence, each resident shall be given written information regarding postnatal care.

(C) Professional staff shall be responsible for development of a long-term plan for the mother and infant. This plan shall be developed with the involvement of the mother and the legal guardian.

(4) Relinquishment of the Infant.

(A) The decision to keep or relinquish the infant shall be the right of the birth parent(s). This decision shall be made without undue pressure or influence.

(B) At the request of the resident, the professional staff shall arrange for referral to a licensed child-placing agency.

(5) Infant/Child Cardio Pulmonary Resuscitation.

(A) At least one (1) staff shall be present at all times who is trained in infant/child cardio pulmonary resuscitation.

*AUTHORITY: sections 210.481, 210.486, and 210.506, RSMo 2000.* This rule originally filed as 13 CSR 40-71.120. Emergency rule filed Nov. 1, 1993, effective Nov. 12, 1993, expired March 11, 1994. Emergency rule filed March 2, 1994, effective March 12, 1994, expired July 9, 1994. Original rule filed Nov. 1, 1993, effective June 6, 1994. Moved to 13 CSR 35-71.120, effective Oct. 30, 2008. Amended: Filed Dec. 16, 2013, effective June 30, 2014.*

**Original authority: 210.481, RSMo (1982), amended 1985 and 210.486 and 210.506, RSMo (1982), amended 1993.*

**13 CSR 35-71.130 Specialized Standards—Residential Treatment for Children and Youth**

*PURPOSE: This rule sets forth the requirements for specialized residential treatment, including program director, assessment staff, professional staff, staff/child ratios, training, treatment plan review, and locked isolation.*

(1) In addition to rules for basic residential treatment for children and youth, an agency seeking to become licensed to provide residential treatment for children and youth, shall meet these additional requirements:

(A) Program Director. The program director must be a full-time staff dedicated solely to the overall treatment program with at least the following minimum qualifications:

1. A master's degree in social work or human service field from an accredited college or university or licensed as a certified social worker; and

2. Two (2) years' experience providing treatment services. One (1) year of this experience must have been in a residential treatment setting;

(B) Assessment Staff. Staff responsible for developing initial assessment and treatment plan for each child must have at least the following minimum qualifications:

1. A master's degree in social work or human service field from an accredited college or university or licensed as a certified social worker; and

2. One (1) year of experience in a residential treatment setting;

(C) Professional Staff.

1. The agency must have sufficient, appropriately qualified professional staff available on a full-time, part-time, or continuing consultative basis, or any combination of these to address the needs of children in care.

2. The professional staffing plan must be in writing and implemented by the agency.

3. The program director shall document that the number, qualifications, and responsibilities of professional staff are appropriate to the agency's size and the scope of its program.

(D) Staff/Child Ratios.

1. At least one (1) direct care staff for every four (4) children, birth to six (6) years

of age, shall be on duty during waking hours.

2. Staff shall be awake during children's sleeping hours, and maintain staff/child ratios of one (1) staff for every six (6) children from birth to six (6) years of age.

3. At least one (1) direct care staff for every six (6) children, age six (6) years and older shall be on duty during waking hours.

4. Staff shall be awake during children's sleeping hours and maintain staff/child ratios of one (1) staff for every twelve (12) children age six (6) years and older.

**Reference Chart**

| Age Range | Level of Care | Direct Care Staff to Resident Ratio | |
|---|---|---|---|
| | | Awake | Asleep |
| Birth to six (6) years | Residential Treatment | One (1) staff per four (4) children | One (1) staff per six (6) children. Staff must remain awake. |
| Age six (6) and older | Residential Treatment | One (1) staff per six (6) children | One (1) staff per twelve (12) children. Staff must remain awake. |

5. An agency licensed, or buildings constructed after (effective the date of this amendment) shall have no more than two (2) children in a sleeping room.

(E) Training. All staff working with children must receive at least forty (40) hours annually of in-service training and meet the training requirements in accordance with 13 CSR 35-71.045. At least ten (10) hours of the training must be related specifically to treatment issues with emotionally disturbed, mentally ill, behaviorally disordered, medically fragile, physically disabled, and/or developmentally delayed children. Professional staff providing sexual abuse treatment are required to have fifteen (15) hours of annual training in investigation, treatment, nature, extent, and causes of sexual abuse pursuant to section 660.526, RSMo;

(F) Treatment Plan Review.

1. Each child's treatment plan shall be reviewed and updated at least every three (3) months.

2. If a child shows no progress toward achieving the goals and objectives in the treatment plan since the plan was developed or last reviewed, the reasons for continuing the child in the agency's program must be included in the child's record.

3. Appropriate information about the updated treatment plan shall be given to the child and the child's parent(s), guardian, or legal custodian and documented in the child's record.

4. A minimum of one (1) hour of individual, group, or family counseling sessions shall be provided to each child at least one (1) time a week with other sessions available as needed.

(G) Locked Isolation.

1. Prior to the implementation of a locked isolation room, the agency shall have approval of the State Fire Marshal and the division.

2. Written policies for the use of locked isolation shall be made available to the child's parent(s), or guardian or legal custodian, or both, and when appropriate, to the child.

3. Agencies utilizing locked isolation shall submit a plan for the emergency evacuation of isolated residents to the licensing unit including documentation that staff has included evacuating residents from locked isolation during fire drills.

4. Locked isolation may be used only as a management method after all other verbal de-escalation measures have been exhausted, and never to replace other more positive measures of control. Documentation of intervention methods used to prevent use of locked isolation must be in the resident's record.

5. Locked isolation may be used only when a child presents a danger to him/herself or others.

6. Locked isolation shall be used in the shortest intervals possible until the child regains reasonable self-control.

7. The maximum time a child may remain in locked isolation is thirty (30) minutes, unless extensions are approved at the end of every thirty (30) minute period by the program director or a qualified designee. A child shall not remain in locked isolation more than a two (2) hour period. If the child has not regained control after two (2) hours, a medical order shall be obtained.

8. When a child is placed in locked isolation, staff shall physically monitor the child in at least five (5) minute intervals. Staff shall remain in close proximity to the child in locked isolation with no more than one (1) locked door between the staff and the child. Close proximity means that staff are close enough to the child(ren) to be able to hear any sounds the child(ren) might make that would indicate a need for assistance.

9. Not more than one (1) child shall be in a locked isolation room. A locked isolation room shall not be utilized for any other purpose.

10. Within twenty-four (24) hours of each locked isolation incident, treatment staff shall debrief the incident with the resident.

11. The agency shall maintain a record when locked isolation is used, which shall include:

A. The name of the child, the date, and the time the child was placed in locked isolation;



B. The circumstances that led to the placement of the child in locked isolation and efforts to prevent the use of locked isolation;

C. The name of the staff person who requested placement of the child in locked isolation, the staff person who approved locked isolation, and the name of the staff person who monitored the child while in locked isolation;

D. The amount of time the child remained in locked isolation, the frequency of monitoring and the time of and reasons for release;

E. Documented behavioral observations of the child at each five (5) minute interval;

F. Specific notation of any extension of locked isolation including reasons for the extension and by whom approval for extension was given; and

G. Documentation of results of debriefing that includes recommendations of staff and resident for avoiding similar situations.

12. For agencies permitting the use of locked isolation, the treatment team shall review its usage at least weekly and sign/date the isolation report.

A. Written policies for the use of locked isolation shall be distributed to staff, and there shall be documented training provided to staff in the policies and use of locked isolation, which shall include, but not be limited to:

(I) Directions for the removal of all dangerous items from the child, including but not limited to, belts, shoelaces, jewelry, items in pockets, matches, and any other items which represent a potential hazard during locked isolation; and

(II) Proper written documentation of the use of locked isolation.

13. If the agency does not meet all requirements for the use of locked isolation, the division shall give written notice of the specific deficiencies and the agency shall not use locked isolation until corrections are made and approved by the division.

14. Locked isolation rooms shall be constructed and equipped so that control is maximized, but the risk of suicide or injury to children is minimized. The following shall apply:

A. An isolation room shall be constructed to allow for both visual and auditory supervision of a child;

B. An isolation room shall have one (1) approved locking-against-egress device which shall be used only when staff are immediately present, awake, and in possession of a key. There shall be a backup system which does not rely on a key, i.e., an electronic locking-release mechanism, as approved by the State Fire Marshal;

C. Potentially dangerous articles shall be removed from the child prior to placing the child in locked isolation, for example, belts, shoes, matches, and/or contents of pockets;

D. An isolation room shall have at least a seven and one-half foot (7 1/2') ceiling and be of sufficient length and width for the comfort of the child;

E. All doors, ceilings, and walls shall be constructed of such strength and noncombustible material that harm to the child is minimized;

F. All switches controlling lights, ventilation, and the like, shall be on the outside of the room;

G. In order to prevent harm to the child, windows shall be secured and made of tempered material to prevent shattering;

H. No functional electrical outlets shall be allowed in the room;

I. Tamper-resistant, recessed ceiling lights shall be utilized, and steam or hot water radiators shall be enclosed in a tamper-resistant, protective casing;

J. The room shall be properly heated, cooled, and ventilated;

K. Normal toileting and bathing facilities shall be available during isolation; and

L. The agency shall have a schedule for monthly routine maintenance of the locks.

*AUTHORITY: sections 210.481, 210.486, and 210.506, RSMo 2000.* This rule originally filed as 13 CSR 40-71.130. Emergency rule filed Nov. 1, 1993, effective Nov. 12, 1993, expired March 11, 1994. Emergency rule filed March 2, 1994, effective March 12, 1994, expired July 9, 1994. Original rule filed Nov. 1, 1993, effective June 6, 1994. Moved to 13 CSR 35-71.130, effective Oct. 30, 2008. Amended: Filed Dec. 16, 2013, effective June 30, 2014.*

**Original authority: 210.481, RSMo (1982), amended 1985 and 210.486 and 210.506, RSMo (1982), amended 1993.*

**13 CSR 35-71.140 Specialized Standards For Intensive Residential Treatment for Children and Youth**

*PURPOSE: This rule sets forth the standards for intensive residential treatment, including personnel requirements, staff/child ratios, training, treatment plan review, recreation, and safety procedures.*

(1) In addition to the licensing rules for basic residential treatment for children and youth, an agency seeking to provide intensive residential treatment for children and youth shall meet these additional requirements—

(A) Personnel.

1. Program director. The person responsible for the overall treatment program shall be full-time staff with at least the following minimum qualifications:

A. A master's degree in social work or human service field from an accredited college or university or licensed as a clinical social worker; and

B. Two (2) years' experience providing treatment services. One (1) year of this experience must have been in a residential treatment setting.

2. Assessment staff. Staff responsible for developing an initial assessment and treatment plan for each child shall have at least the following minimum qualifications:

A. A master's degree in social work or human service field from an accredited college or university or licensed as a clinical social worker; and

B. One (1) year of experience in a residential treatment setting.

3. Professional staff.

A. Agencies must have sufficient appropriately qualified professional staff available on a full-time, part-time, or continuing consultative basis, or any combination of these, to address the needs of children in care.

B. The professional staffing plan must be in writing and implemented by the agency.

C. The professional staff plan must document that the number, qualifications, and responsibilities of professional staff are appropriate to the agency's size and the scope of its program;

(B) Nursing Personnel. The agency shall employ and schedule a licensed nurse for not less than twenty (20) hours per week;

(C) Staff/Child Ratios. Staff/child ratios shall be maintained at not less than a one to four (1:4) ratio for children ages birth to age six (6) years when children are awake and one to five (1:5) ratio when children ages birth to age six (6) years are asleep and one to five (1:5) ratio when children/youth ages six (6) to twenty-one (21) years are awake and one to six (1:6) ratio when children and youth ages six (6) to twenty-one (21) years are asleep. Staff shall remain awake on duty during children's sleeping hours;

**Reference Chart**

| Age Range | Level of Care | Direct Care Staff to Resident Ratio | |
|---|---|---|---|
| | | Awake | Asleep |
| Birth to age six (6) years | Intensive Need | A minimum of one (1) staff per four (4) children when children are awake and a minimum of one (1) staff per five (5) children when children are asleep. Staff shall remain awake on duty during children's sleeping hours. | |
| Age six (6) years and older | Intensive Need | A minimum of one (1) staff per five (5) children/youth when children/youth are awake and one (1) staff per six (6) children/youth when children/youth are asleep. Staff shall remain awake on duty during children's/youth's sleeping hours. | |

(D) Training. All staff working with children must receive at least forty (40) hours annually of in-service training at least ten (10) hours of the training must be specifically related to relevant intensive residential treatment issues;

(E) Treatment Plan Review.

1. Each child shall have an initial written treatment plan within ten (10) days of admission.

2. Each child's treatment plan must be reviewed and updated at least every month.

3. If a child shows no progress toward achieving the goals and objectives in the treatment plan since the plan was developed or last reviewed, the reason(s) for continuing secure care shall be included in the child's record.

4. Appropriate information about the updated treatment plan must be given to the child and the child's parent(s), guardian, or legal custodian. This must be documented in the child's record.

5. A minimum of one (1) hour of individual, group, or family counseling sessions shall be provided to each child at least two (2) times a week with other sessions available as needed.

6. If the assessment of a child indicates a need for treatment by a psychiatrist or if the child is currently under psychiatric care, the agency shall provide or arrange for appropriate consultation and treatment;

7. If the assessment of the child indicates a need for a more restrictive environment, the agency shall contact the child's treatment team, case manager, legal guardian, and legal custodian to plan for the child's placement in a more appropriate facility. Intensive residential treatment is not meant to replace the need for more restrictive settings such as psychiatric care or incarceration when indicated by psychological evaluation, psychiatric evaluation, or by physician or court order.

(F) Recreation. A recreation plan shall be developed by an individual with a degree in recreational therapy or a related field with at least one (1) year's experience in working with children in a residential treatment setting;

(G) Safety-Emergency Evacuation Procedure. Locking hardware is permitted on children's sleeping room doors if they are equipped with electronic locking-release mechanism approved by the State Fire Marshal or if staff are immediately present, awake, and in possession of a key for the locking device, or both. There shall be a backup system which does not rely on a key, i.e., an electronic release mechanism, as approved by the State Fire Marshal; and

(H) Sleeping Area. An agency licensed, or buildings constructed after (effective the date of this amendment) shall house no more than one (1) child in a sleeping room.

 RL—8
(Rev. 4/79)

**Application For License/Approval To Operate:**

Child Caring Agency ☐
Group Home For Children ☐
Child Placing Agency ☐

We hereby make application to the Divison of Family Services, Deparmtent of Social Service, for a License/Approval to operate a Child Caring Agency, Group Home and/or a Child Placing Agency. We agree to abide by the rules prescribed by the Division of Family Services.

1. Name of Agency ______________________________
   (*To Appear on License*) (*Phone Number*)

2. Address ______________________________
   (*Street and Number*) (*City*) (*County*) (*Zip Code*)

2. Address ______________________________
   (*Street and Number*) (*City*) (*County*) (*Zip Code*)

3. Satellite Operations:

| | |
|---|---|
| (*Name*) | (*Name*) |
| (*Street & Number*) | (*Street & Number*) |
| (*City, County, Zip Code*) | (*City, County, Zip Code*) |
| (*Name*) | (*Name*) |
| (*Street & Number*) | (*Street & Number*) |
| (*City, County, Zip Code*) | (*City, County, Zip Code*) |

4. Community need defined by survey with:
   A. United Way ( )
   B. Juvenile Court ( )
   C. Division of Family Services ( )
   C. Other ______________________

5. Conducted under the auspices of ______________________________
   (*Name of Sponsoring Organization*)

6. Approved by or affiliated with: (*Indicate*)
   A. National Assocations ______________________________
   B. State Associations ______________________________
   C. Local Assocations ______________________________

7. Date Organized ______________ 8. Date Incorporated ______________

9. Religious, racial or other limitations of admisssion: (*Explain*) ______________________________

MO 888—2719

RL—8
Page 2

Residential Program:

(A) Maximum number of children to receive care: ____________ Sex: Male ( ) Female ( )

(B) Ages of children to receive care: From ______________years to ______________years

(1) Satellite Operations:

(a) Name of Facility______________________________________________________

1. Maximum number of children to receive care: _________ Sex: Male ( ) Female ( )
2. Ages of children to receive care: From __________ years to __________ years

(b) Name of Facility______________________________________________________

1. Maximum number of children to receive care: _________ Sex: Male ( ) Female ( )
2. Ages of children to receive care: From __________ years to __________ years

(c) Name of Facility______________________________________________________

1. Maximum number of children to receive care: _________ Sex: Male ( ) Female ( )
2. Ages of children to receive care: From __________ years to __________ years

(d) Name of Facility______________________________________________________

1. Maximum number of children to receive care: _________ Sex: Male ( ) Female ( )
2. Ages of children to receive care: From __________ years to __________ years

Placement Program: (*Check the service which applies to your agency.*) Adoptive Homes ( ) Foster Homes ( )

______________________ ____________________________________ __________________
(*Date*) (*Signature of Director or Board Chairman*) (*Title*)

**The Following Material Must Be Submitted With Your Application:**

(A) Completed Personnel Report, RL-10 A & B (attached)
(B) Copy of Financial Statement, RL-9, for current fiscal year or most recent available. (attached)
(C) List of board members
1. Names and addresses of board officers
2. Other board members
(D) Where applicable, signed Civil Rights Agreement Form (attached)
(E) Where applicable, completed Administrator Candidate Information Form, RL-1 (attached)
(F) Where applicable, letter or documentation that building(s) comply with applicable local building codes.

Return To: Licensing Consultants
Residential Licensing Unit
Division of Family Services
Broadway State Office Building
P.O. Box 88
Jeferson City, MO 65103

MO 886-2719



**State of Missouri**
**Department of Social Services**
**Division of Family Services**

**Adminintrator Information** **RL-1**

______________________________________________________________
(*Name of Administrator*) (*Address*) (*Birthdate*) (*Home Phone*)

______________________________________________________________
(*Facility Name*) (*Address*) (*Phone Number*)

**Experience with Children adn/or Administrative or Managment Experience** (*Please check and complete all that apply to the administration*).

1. Child Care of Children' Services: Number of years_______ Age of Children__________
   Position ____________________ Type of Facility _____________
2. Other experience with children: Number of Years_______ Age of Children__________
   Describe: ______________________________________________

   (*Use another sheet of paper if necessary*.)
3. Administrative or Management Experience: Number of Years: ________________
   Describe: ______________________________________________

   (*Use another sheet of paper if necessary*.)

**Employment Record**: List all positions administrator held within the last 5 years, beginning with present of last employment

| Date Employed From | To | Position | Employer | Employer's Address | Reason For Leaving |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

(*Use another sheet of paper if necessary*)

**Education:**

| | Name of School | Dates From | To | Dates and Degree | Major |
|---|---|---|---|---|---|
| College | | | | | |
| Graduate Study | | | | | |

**Character:** Has administrator ever been convicted of a felony involving intentional bodily harm? Yes ( ) No ( )
If yes, please explain:______________________________________________
Has administrator ever been convicted of violating laws enacted to protect children? Yes ( ) No ( )
If yes, please explain:______________________________________________

**References:** Give the name and address of three persons whom you contacted regarding your determination of administrator's good character:

| Name | Address | Zip Code | Telephone |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

I declare the above is true and correct to the best of my knowledge.

______________________________________________ ______________
(*Signature of Chairman of Board of Directors*) (*Date*)



RL-11

**Missouri Division of Family Services**
**Request for Fire and Safety Inspection**

Date Requested________________

State Fire Marshall: Local Fire Department

Division of Fire Safety
Truman Building 8th Floor
Jefferson City, MO 65101

A Fire and Safety Inspection is Requested for the Following Facility:
Name of Residential Facility:________________
Address:________________
Name of Person to Contract:________________
Address:________________ Phone Number:________________
Directions:________________

Child Caring Agency ________________ Initial _______ Number of Children Applicant
Group Home for Children ________________ Renewal_______ Wants to be Licensed for:________________
Date Renewal Due:________________ Vendor Number:____________Age Range:_______

*To be Completed by Fire and Safety Inspector:*

The above named facility has been inspected and does ( ) or does not ( ) conform with fire and safety ordiances.

Restrictions:________________

If the facility does not conform with fire and ordinances, indicate reasons in the space provided below.

Date________________ ________________
(*Name of Inspector*) (*Title*)

Return to: Division of Family Services
Attention: Licensing Unit
P.O. Box 88
Jefferson City, MO 65103

cc: ________________
(*Residential Facility*)

________________
(*Fire Inspector*)



**Department of Social Services**
**Missouri Division of Family Services**
**Request for Sanitation Inspection**

Date Requested ____________________

To: ______________________________ From: ______________________________

Phone Number ____________________

Sanitary Inspection is Requested for the Following Facility:

Name of Residential Facility: ______________________________ Phone Number: ____________
Address: ______________________________
Name of Person to Contact: ______________________________
Address: ______________________________
Directions: ______________________________

Child Caring Agency: ____________________ Date Inspection Due: ____________________
Group Home for Children ____________________ Number of Children ____________________
Foster Family Group Home ____________________ Age Range ____________________

*To be Completed by the Sanitation Inspector:*

The above named facility has been duly inspected and does ( ) or does not ( ) confrom with sanitation requirements.

Restrictions: ______________________________

If the facility does not conform with fire and safety ordinances, indicate reasons in the space provided below:

______________________________

Date: ____________ ______________________________
(*Name of Inspector*) (*Title*)

Return to: Licensing Consultant
Residential Licensing Unit
Division of Family Servicess
Broadway State Office Building
P.O. Box 88
Jefferson City, MO 65103

cc: ______________________________
(*Residential Facility*)

Chapter 71—Rules for Residential Treatment Agencies for Children and Youth 13 CSR 35-71 CSR

**Personnel Report**
**Child Caring Agencies—Group Homes—Child Placing Agencies**

RL-10A
(Rev. 7-78)

Name of Agency: ______________________ Address: ______________________

______________________ ______________________

**Professional and Administrative Staff**

| Name | Age | Title | Experience | Education | | Annual Salary* | Physical Examination** | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | Years in Field | Years Completed | Degree | | Date | Good Health | TB Test: Date and Result |
| | | | | | | | | | |

*Include part-time staff also, indicating the number of hours anticipate employing each part-time staff during the budget year and their hourly rate of salary
**Refers to only Child Caring Agencies and Group Home Programs

JOHN R. ASHCROFT (2/28/22)
Secretary of State
CODE OF STATE REGULATIONS 41

 **House Parent and Other Staff** RL-10B

Name of Agency: ______________________ Address: ______________________

______________________ ______________________

**Professional and Administrative Staff**

| Name | Age | Title | Salary* | Experience | Education | | Physical Examination** | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Years in Field | Years Completed | Degree | Date | Good Health | TB Test: Date and Result |
| | | | | | | | | | |

*Include part-time staff also, indicating the number of hours anticipate employing each part-time staff during the budget year and their hourly rate of salary

**Refers to only Child Caring Agencies and Group Home Programs

MO 886-2720



*AUTHORITY: sections 210.481, 210.486, and 210.506, RSMo 2000.* This rule originally filed as 13 CSR 40-71.140. Emergency rule filed Nov. 1, 1993, effective Nov. 12, 1993, expired March 11, 1994. Emergency rule filed March 2, 1994, effective March 12, 1994, expired July 9, 1994. Original rule filed Nov. 1, 1993, effective June 6, 1994. Moved to 13 CSR 35-71.140, effective Oct. 30, 2008. Amended: Filed Dec. 16, 2013, effective June 30, 2014.*

**Original authority: 210.481, RSMo (1982), amended 1985 and 210.486 and 210.506, RSMo (1982), amended 1993.*

**13 CSR 35-71.300 Notification Requirements for License-Exempt Residential Care Facilities**

*PURPOSE: This rule implements the notification requirements for License-Exempt Residential Care Facilities in Missouri as required by sections 210.1250 through 210.1286, RSMo, as enacted into law in HB 557 (2021).*

*PUBLISHER'S NOTE: The secretary of state has determined that the publication of the entire text of the material which is incorporated by reference as a portion of this rule would be unduly cumbersome or expensive. This material as incorporated by reference in this rule shall be maintained by the agency at its headquarters and shall be made available to the public for inspection and copying at no more than the actual cost of reproduction. This note applies only to the reference material. The entire text of the rule is printed here.*

(1) Definitions. For the purpose of this regulation, unless otherwise specified in this section or unless the context clearly requires otherwise, the definitions of terms specified in sections 210.110, 210.481, 210.1253, RSMo, and 13 CSR 35-71.010 and 13 CSR 35-71.015 shall apply to this regulation. The singular includes the plural and plural includes the singular. In addition, the following terms are defined as follows:

(A) "Residential Care Facility Notification Act" or "RCFNA" refers to sections 210.1250–210.1286, RSMo.

(2) Designation of Authority. The Department of Social Services hereby designates the Children's Division of the Department of Social Services to be the division within the Department of Social Services to administer background checks as required by section 210.493, RSMo, 13 CSR 35-71.015, and the RCFNA.

(3) Application and Purpose of this Regulation. This regulation implements the requirements of the RCFNA. It applies to License-Exempt Residential Care Facilities (LERCFs).

(4) All LERCFs shall notify the division of their operation within Missouri before they accept any children as provided in this regulation and the RCFNA. LERCFs operating in Missouri and providing Residential Care Facility services to children on July 14, 2021, shall register with the division no later than Thursday, October 14, 2021.

(5) Notification Procedures.

(A) To notify with the division, the director of the LERCF, or his or her designee, shall file a notification using the division's online portal, or as may be otherwise provided in this regulation.

1. The online notification form, instructions and filing the notification are incorporated by reference and made a part of this rule as published by the Department of Social Services, Children's Division, 205 Jefferson Street, 10th Floor, PO Box 88, Jefferson City, MO 65102, at its website at https://www.dss.mo.gov/provider-services/children/residential-program/license-exempt.htm, October 1, 2021. This rule does not incorporate any subsequent amendments or additions. The LERCF shall submit the completed notification form and upload any supporting or supplemental forms and documentation through this online portal. The LERCF shall attach all documentation that may be necessary to complete the required notification and upload the documentation with the notification form.

2. The LERCF may apply to the division for permission to file the notification and supporting documentation by mail or private delivery services rather than through the online portal when there are unusual, compelling, and extenuating circumstances which make filing the notification through the online portal impossible. The LERCF shall apply for permission to file the notification form, supporting or supplemental materials with the division in writing, and shall explain the circumstances why the LERCF cannot submit the notification through the online portal. A copy of the notification form for use in submitting notification by mail is incorporated by reference and made a part of this rule as published by the Department of Social Services, Children's Division, 205 Jefferson Street, 10th Floor, PO Box 88, Jefferson City, MO 65102, at its website https://www.dss.mo.gov/provider-services/children/residential-program/license-exempt.htm, October 1, 2021. LERCFs may download a copy of the form. The LERCF shall attach all documentation that may be necessary to complete the required notification. If the division grants permission under this subsection the LERCF may submit the form with supporting materials by mail, by private delivery service, or in person to the offices of the division at Residential Program Unit, 205 Jefferson Street, 10th Floor, PO Box 88, Jefferson City, Missouri 65102; or by email at CD.NotifyRPU@dss.mo.gov.

(B) The notification form shall be signed by the director of the LERCF, or his or her designee, attesting that the information contained in the notice and the supplemental materials are true, accurate, complete, and subject to penalties of perjury. The division will accept e-signatures.

(C) The notification form shall designate the individual within the LERCF to be the point of contact between the LERCF and division. The point of contact between the division and the LERCF shall be the director unless otherwise specified by the LERCF. The notification form shall further indicate whether the LERCF prefers to receive communications by mail through the United States Postal Services or electronically by email.

(D) The notification shall contain the information required in this subsection and otherwise in this regulation.

1. The LERCF shall list its full name, street address, mailing addresses, email address, and phone number. The mailing address and email addresses shall be the addresses of record of the LERCF and all official correspondence to the LERCF will be sent to the mailing or email address on record.

2. The LERCF shall identify the name of the director, owner, operator, all staff members, volunteers, and any individual eighteen (18) years of age or older who resides at or on the property of the LERCF. The LERCF shall provide the name, street address, physical and electronic mailing addresses, and phone number of the director or director's designee who will serve as the point of contact between the division and the LERCF.

3. The LERCF shall provide a full description of the agency or organization operating the LERCF, including a statement as to whether the agency or organization is incorporated.

A. The description of the agency or organization shall specify the type of agency or organization.



B. If the agency or organization is incorporated then the LERCF shall provide the state in which the LERCF was incorporated and the corporate name of the LERCF.

4. The LERCF shall identify the name and address of the sponsoring organization of the residential care facility, if applicable.

5. The LERCF shall identify the school or schools attended by the children served by the residential care facility. The LERCF shall list the name and address of each school.

6. Fire and safety inspection certificates.

A. The LERCF shall include with the notification a copy of any and all fire and safety inspection certificates required by law in the jurisdiction where the LERCF operates, and shall indicate the date of the inspection and the date that each certificate expires, if any. If the LERCF operates in more than one (1) county or local jurisdiction then the LERCF shall submit the required certificates for each facility at each location. The LERCF shall indicate the date of the inspection and the date that each certificate expires, if applicable.

B. LERCFs operating in jurisdictions where there are no required fire and safety inspections shall include a statement to that effect in the notification form.

C. If the LERCF is unable, after exercising diligent efforts, and due to no fault of its own, to obtain fire and safety inspection certificates in jurisdictions where such certificates are required by state law or local ordinance, then the LERCF shall submit a statement describing the efforts made to obtain the certificate(s) and the reason why the LERCF was unable to obtain the certificate. The LERCF shall attach copies of any correspondence from any state, county, or local jurisdictions declining to conduct the inspection when available.

7. Local health department inspection certificates.

A. The LERCF shall include with the notification a copy of any and all state or local health department inspection certificates required in the jurisdiction in which the facility operates. If the LERCF operates in more than one (1) county or local jurisdiction, then the LERCF shall obtain the required certificates for each facility at each location. The LERCF shall indicate the date of the inspection and the date that each certificate expires, if any.

B. LERCFs operating in jurisdictions where there are no required local or county government health department inspections shall include a statement to that effect in the notification form.

C. If the LERCF is unable, after exercising diligent efforts, and due to no fault of its own, to obtain any required local health department inspection certificates in jurisdictions where such certificates are required by state law or local ordinance, then the LERCF shall submit a statement describing the efforts made to obtain the certificate(s) and the reason why the LERCF was unable to obtain the certificate. The LERCF shall attach copies of any correspondence from any state, county, or local jurisdictions declining to conduct the inspection when available.

8. Proof that medical records are maintained for each child.

A. The division will accept a written attestation, made under oath, subject to penalty of perjury, and executed by the director of the LERCF, that the LERCF actually maintains medical records for each child served by the LERCF according to the written policy of the LERCF, which shall be attached to the attestation.

B. The LERCF shall provide the division access to the facility upon request to inspect the medical records maintained by the LERCF on the children served by the LERCF in order to verify that the medical records are being kept. The division will request access to this information only when the division has reasonable basis to believe that the LERCF is not maintaining records for any child as required by law.

9. Background Check completion/eligibility. The director of the LERCF, or his or her authorized designee, shall certify, under oath subject to the penalties of perjury that all individuals who are required to complete a background check have successfully completed the background checks and have been found eligible for employment or presence at the LERCF pursuant to section 210.493, RSMo, and 13 CSR 35-71.015.

A. Phase-in period for LERCFs in operation as of July 14, 2021. For all original notifications submitted by LERCFs which were both in operation and had children in its facility as of July 14, 2021, the division will accept a written certification from the director of the LERCF that all individuals who are required to submit to a background check pursuant to section 210.493, RSMo, and 13 CSR 35-71.015 either have completed the background check requirements or will have successfully completed the background check by the end of the phase-in period. Upon completion of this process the director or the director's designee shall provide written or electronic notice to the division certifying that the background check process for these individuals has been successfully completed. The division may extend this period for up to an additional one hundred twenty (120) days if the LERCF establishes, in writing, that it is unable to successfully complete the process by the deadline.

(E) When the division is satisfied that the LERCF has complied with all of the requirements for notification, the division will issue a letter to the LERCF—

1. Confirming the receipt of the completed notification;

2. Informing the LERCF that the records of the division reflect that the LERCF has successfully completed all of the notification process as of the date of the letter, that the LERCF may accept children pursuant to section 210.1259, RSMo, and that the division will include the LERCF on the list of LERCFs as specified in section 210.1280, RSMo, and section (9) of this regulation; and

3. Notifying the LERCF of the deadlines for submitting any supplemental notifications as provided in subsection (5)(F).

(F) Duty to Supplement. The LECRF shall have a continuing duty to submit a supplemental notification within fifteen (15) calendar days if or when—

1. The LERCF terminates its operations in Missouri;

2. The LERCF has any change in its physical address, mailing address, or email address, or other address on record; or

3. There is a change in the name, mailing address, email address, or other contact information for the director of the LERCF or designated point-of-contact of the LERCF.

4. The supplemental notification form shall be signed by the director of the LERCF or his or her designee attesting that the information contained in the form and the supplemental materials are true, accurate, and complete, and subject to penalties of perjury. The division will accept e-signatures.

(6) Nothing in this regulation shall give the division jurisdiction or authority to regulate or attempt to regulate, control, or influence the form, manner, or content of the religious curriculum, program, or ministry of the LERCF.

(7) When the department or the division is advised or has reason to believe that any LERCF is operating without proper notification in accordance with the RCFNA and the division's implementing regulations, the division shall give the director of the LERCF written notice by certified mail that the director shall file notification in accordance with the RCFNA and the division's implementing regulations, or the department may request a court injunction as provided under section 210.1271, RSMo, or take other action as may be authorized by law. The division shall send its written notice to the address of record of



the LERCF when an address has been provided.

(A) The division may extend the time for the LERCF to comply with the notification requirements for up to sixty (60) days upon request of the LERCF and a showing by the LERCF that the LERCF has reasonable cause for the delay in completing the notification requirements and that the health and safety of the children will not be at risk.

(B) The division may further condition an extension of time upon the LERCF submitting a time-limited corrective action plan to complete the notification requirements that is mutually satisfactory to the LERCF and the division.

(8) Administrative Review and Judicial Review.

(A) Any LECRF which is aggrieved by a decision of the department or division under this regulation may file a request for administrative review of the decision within fourteen (14) days of the mailing of the decision as provided in this regulation.

(B) Administrative Review.

1. A request for administrative review shall be made in writing, either on a form provided by the division or by letter or submitted electronically by email to the division to the email address specified in the division's decision. The request for administrative review shall include the following information:

A. The name, address, telephone number, and email address of the LERCF making the request for administrative review;

B. Specify whether the LERCF is requesting a response and notice of final decision by first-class mail or by email;

C. Identify the division's decision to be reviewed, and why the LERCF is aggrieved by the decision;

D. The LERCF shall include copies of any relevant documents, materials, or information that the LERCF wishes to submit in support of the request for administrative review; and

E. Specify whether or not the LERCF requests that the review be considered on the basis of the materials submitted, or whether the LERCF requests an in-person review conference. If the LERCF requests an in-person review conference then the LERCF shall also provide dates and times within the next thirty (30) days when the LERCF will be available and the reasons why the administrative review cannot be processed on the basis of the materials presented.

2. The LERCF may be represented by legal counsel.

3. The administrative review shall be conducted and decided based upon the written materials submitted to the division and any information and materials presented at an in-person review conference. If the LERCF establishes that there is a good reason to hold an in-person review conference then the division will hold an in-person review conference.

4. The in-person review conference may take place by telephone conference call, video conference, or in-person review conference at a date and time during regular working hours that are mutually convenient to the division and the LERCF requesting the conference.

5. The administrative review process and in-person review conference shall be informal. The rules of evidence shall not apply. There is no right to conduct discovery. There shall be no right to compel the production of witnesses or evidence by subpoena or otherwise.

6. The administrative review shall be conducted by an individual designated by the director of the department or division, who may be an employee of the division or the department. However, the individual shall not have been involved in making the decision which is subject to review.

7. The individual conducting the administrative review shall conduct the administrative review and render a written decision no later than thirty (30) days from the date that the division received the request for administrative review.

8. The decision upon administrative review shall be the final decision of the department.

(9) The division will maintain a list of all LERCFs which are in compliance with the requirements of sections 210.1250–210.1286, RSMo, and this regulation.

(A) The list shall include the following information:

1. The name, physical address, and mailing address of the LERCF;

2. The name of the director of the LERCF; and

3. Whether the LERCF has submitted any fire and safety or health department certificates with the notification.

(B) The division will provide a copy of the list to anyone who asks, upon request submitted to the Children's Division, Residential Program Unit, 205 Jefferson Street, PO Box 88, Jefferson City, Missouri 65102; or by email at CD.NotifyRPU@dss.mo.gov.

(C) The director of any LERCF may submit written request to correct any errors in the list or to supplement the list with updated information.

(D) The division will update the list when errors or updates are brought to its attention. Except in cases where there is a scrivener's error, the division will provide notice and an opportunity to object making any changes about the LERCF on the list. The LERCF may seek administrative review of any changes in the list following the procedures specified in this regulation.

*AUTHORITY: sections 207.020 and 660.017, RSMo 2016, and sections 210.493 and 210.1286, RSMo Supp. 2021.* Emergency rule filed Sept. 17, 2021, effective Oct. 1, 2021, expired March 29, 2022. Original rule filed Sept. 17, 2021, effective March 30, 2022.*

**Original authority: 207.020, RSMo 1945, amended 1961, 1965, 1977, 1981, 1982, 1986, 1993, 2014; 210.493, RSMo 2021; 210.1286, RSMo 2021; and 660.017, RSMo 1993, amended 1995.*