IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

CNS INTERNATIONAL MINISTRIES, INC.,    )
   )
         Plaintiff,    )
   )
v.    )   Case No. 2:21-CV-65 RLW
   )
ROBERT KNODELL, Acting Director of the    )
Missouri Department of Social Services,    )
   )
         Defendant.    )

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION
TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff CNS International Ministries, Inc. (CNSIMI or Heartland), for its Suggestions in Opposition to Defendant's Motion for Judgment on the Pleadings, states as follows:

**Introduction**

CNSIMI is the corporate identity of Heartland, which comprises, among other things, Heartland Children and Youth Home (composed of separate recovery programs for girls and boys), Heartland Women's Recovery Program, and Heartland Men's Recovery Program. In coordination with its recovery programs, Heartland provides a K-12 school, which is attended by those in the boys' and girls' programs as well as children of staff and children from the community, and an accredited two-year college known as "Heartland Christian College." At the spiritual core of the Heartland community is Heartland Community Church.

Heartland's recovery programs, which have been continuously operating since the mid-1990s, promote healing in children and adults who have been bound by life-controlling addictions, attitudes, and behavioral problems, by formation in the concepts of Christian living and personal responsibility.

Heartland is an intentional community, which is one that is built around a specific interest

or goal. Heartland's goal is to communicate Jesus as the answer to every issue human persons

face, including addiction, anger, broken homes, and financial crises.

To Heartland's knowledge, there is no listing in Missouri's Central Registry for Abuse

and Neglect that has resulted from any incident between an adult and a child in the boys' or girls'

recovery programs in the past 20 years, nor any felony or misdemeanor convictions resulting

from such interactions in the entire history of Heartland. Children in the Heartland Children and

Youth Home are supervised by carefully vetted staff.

On July 14, 2021, Missouri House Bills 557 and 560 took effect, imposing various new

background check and disclosure provisions on "License-Exempt Residential Care Facilities" or

"LERCFs"—a category that includes boarding schools. Because CNSIMI includes a boarding

school, it is considered a LERCF. 13 CSR 35-71.015(1)(F). The new laws do not apply new

background check and disclosure requirements only to CNSIMI's boarding school or to

individuals who are involved with children at CNSIMI; the provisions consider CNSIMI *in toto* a

LERCF, despite the boarding school being only one small element of Heartland's operations.

Accordingly, every ministry and operation of CNSIMI is subject to the new rules.

The new laws' broad application to CNSIMI has obvious and immediate implications that

range from nonsensical to flatly illegal. For instance, CNSIMI is now bound to conduct

background checks on all "support staff," which includes those who perform "professional

services." 13 CSR 35-71.015. This means that CNSIMI is bound to check the background of its

accountants and lawyers (including, it seems, the undersigned), even if they are never anywhere

near any children at Heartland. Moreover, the background check and disqualification provisions

apply to all employees of CNSIMI, including pastors and religious teachers, which is a clear

violation of the longstanding church autonomy doctrine that reserves for religious organizations

the exclusive right to choose their ministers. *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC,* 565 U.S. 171 (2012); *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049 (2020).

Then there are the applications of the new law that require CNSIMI to violate other laws. For instance, the new law requires CNSIMI to notify the State of all residents at CNSIMI, which includes those in the recovery programs. Federal law, however, requires that drug and alcohol rehab facilities keep confidential the identities of those in their programs. 42 U.S.C. 290dd-2 and 42 U.S.C. 290ee-3. This Court has previously found in favor of CNSIMI, pursuant to the federal rules cited herein, regarding its claims that it cannot reveal the identities of those in its recovery programs. *In re Employment Records of John Does Employed by Sharpe Holdings*, 4:17MC238 RLW, 2017 WL 6547738 (E.D. Mo. 2017).

These are only a few of the problems alleged in CNSIMI's seven-count complaint challenging Missouri's new laws. At this stage, the Court must accept as true CNSIMI's factual allegations and construe the complaint in favor of CNSIMI. *Ashley Cnty. v. Pfizer, Inc*., 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)). CNSIMI's first amended complaint presents legitimate, seriously problematic issues with the State's new laws, and the case should be allowed to proceed.

## Count I

## Violation of Federal Privacy Laws

The newly enacted Section 210.1262 states that a facility such as CNSIMI must notify the Department of Social Services of, *inter alia*, the "[n]ame of the director, owner, operator, all staff members, volunteers, and any individual eighteen years of age or older who resides at or on the property of the residential care facility." The new laws also require CNSIMI to provide the

3

State with background checks for all those working or dwelling at Heartland, which would reveal the identities of those in the recovery programs. Section 210.493. The purpose of these extensive background checks is to determine whether an individual is "eligible or ineligible for employment *or presence* at the residential care facility." Section 210.493.10 (emphasis added). The law makes presence at Heartland without completing a background check a Class B misdemeanor. Section 210.1283.

These obligations to disclose are not limited to recovery program participants. As a LERCF, CNSIMI is required to compel disclosures from everyone present: "[t]he director of the LERCF, or his or her authorized designee, shall certify, under oath subject to the penalties of perjury that all individuals who are required to complete a background check have successfully completed the background checks and have been found eligible for employment or presence at the LERCF pursuant to section 210.493, RSMo, and 13 CSR 35-71.015." 13 CSR 35-71.300(5)(D)(9). The LERCF's compliance is required in order to obtain a letter confirming "that the LERCF may accept children . . ." 13 CSR 35-71.300(5)(E)(2).[1]

CNSIMI alleges in its first count that the records sought by the Department of Social Services are confidential under federal law because they reveal the names of individuals participating in CNSIMI's drug and alcohol recovery programs. 42 U.S.C. 290dd-2(b)(2)(a). Pursuant to 42 U.S.C. 290dd-2 and 42 U.S.C. 290ee-3, CNSIMI is required to observe strict confidentiality regarding the identities of those in the drug and alcohol recovery programs it administers. Indeed, CNSIMI has previously litigated to a judgment from this Court confirming that federal rules prohibit it from revealing the identities of those in its recovery programs. *In re*

---

[1] The Plaintiff is currently granted a temporary extension due to the phase-in period for LERCFs in operation as of July 14, 2021, which extends the timeframes for the compelled background checks of existing community members. *See* 13 CSR 35-71.300(5)(D)(9)(A). The State has no obligation to grant further extensions; they are purely discretionary.

*Employment Records of John Does Employed by Sharpe Holdings*, 4:17MC238 RLW, 2017 WL 6547738 (E.D. Mo. 2017).

According to the First Amended Complaint, "[t]he Heartland Men's Recovery Center houses men of all ages and from all over the United States." Doc. 23 ¶ 13. "Men in the Recovery Program participate in daily devotions, chapel, and all weekly Heartland church services. In the Heartland Women's Recovery Program, women live in a home-like environment while focusing on their relationship with Jesus Christ. They are trained in areas such as vocation, work ethic, child-rearing, and financial stewardship." Doc. 23 ¶¶ 15-16.

The new Missouri laws are clear that anyone who "resides at or on the [Heartland] property," 210.1262 RSMo, must be disclosed to the State. The First Amended Complaint is clear that Plaintiff "houses" those in its recovery programs. Therefore, recovery program participants must be disclosed to the State, which violates 42 U.S.C. § 290dd-2: "[r]ecords of the identity . . . of any patient which are maintained in connection with the performance of any program or activity relating to substance use disorder education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall . . .  be confidential . . . ."

Defendant alleges that Section 210.1262 does not violate 42 U.S.C. 290dd-2 because, Defendant says, "in no case is CNS required to identify any individual as a patient." Doc. 27 at 14. Defendant's position is, apparently, that although CNSIMI will have to disclose the names of those in the recovery programs to the State, it will not have to say that they are members of a recovery program. This argument ignores the plain language of the federal regulation, which prohibits disclosure of "[r]ecords of the identity" that are "maintained in connection with" a substance use disorder program. "Records of the identity" are the protected species; patient status

in a recovery program is merely the reason said records are maintained, not the subject of the confidentiality protection. The Defendant's suggestion that the subject of confidentiality is these individuals' status as patients simply ignores the plain meaning of the regulation.

The Defendant's proposed interpretation also ignores the legal consequences of any disclosure. The purpose of the disclosures of identities is to notify the State of the catalogue of individuals who will be compelled to undergo comprehensive background checks. Background checks on those enrolled in Heartland's recovery programs will recite their criminal histories, including (with exceedingly rare exceptions) their involvement with drug- and alcohol-related offenses. *See* 13 CSR 35-71.015(2). So, limiting the initial disclosure requirement to "identities" without associated patient status would do nothing to preserve the substance of the confidentiality protections afforded by the federal regulations.

The new laws therefore leave CNSIMI in an impossible legal situation. The federal privacy rules do not offer protection for entities who disclose the identities of people in recovery programs but do not expressly say that they are in recovery programs, as the new Missouri laws, as interpreted by Defendant, require. Thus, running any recovery program puts Heartland in legal peril. *See U.S. ex rel. Chandler v. Cook Cty., Ill.,* 277 F.3d 969, 981 (7th Cir. 2002) ("It is not only the privacy rights of individual patients that are at stake here, but also the continued effectiveness and viability of important substance abuse treatment programs . . . .").

Men and women in Heartland's recovery programs are in a similar quandary. Missouri's new laws threaten the confidentiality of the assistance Heartland provides, which is one of the central reasons people join recovery programs. *Id.* ("Patients will be less willing to seek treatment if patient confidentiality is not strictly protected.").

The federal privacy statute and governing regulations "carry a strong presumption against

disclosing records of this kind. . . . The express purpose of this provision is to encourage patients to seek treatment for substance abuse without fear that by doing so, their privacy will be compromised." *United States v. Cresta*, 825 F.2d 538 (551-52) (1st Cir. 1987), *cert. denied*, 486 U.S. 1042 (1988). The privacy rules are "a response to the considerable stigma long associated with, and still attached to, substance use disorders." *See Confidentiality of Alcohol and Other Drug Abuse Treatment Information for Emergency Department and Trauma Center Patients*, 20 Health Matrix 387, 388 (2010). "Congress felt that 'the strictest adherence' to the confidentiality provisions was needed, lest individuals in need of drug abuse treatment be dissuaded from seeking help." *Ellison v. Cocke Cty. Tenn*, 63 F.3d 467, 471 (6th Cir. 1995); *see also Cook Cty.* 277 F.3d at 981 ("Patients will be less willing to seek treatment if patient confidentiality is not strictly protected.").

Pursuant to 42 CFR § 2.20, "no state law may either authorize or compel any disclosure prohibited by the [privacy regulations]." Given that Sections 210.1262 and 210.493 clearly require that CNSIMI disclose the names of recovery program participants, and that "the strictest adherence" to federal confidentiality rules is required, the challenged Missouri laws violate federal law, and CNSIMI should be protected from their application and enforcement.

## Count II

## Violation of Right to Expressive Association

CNSIMI alleges in its second count that Section 210.1262 violates its right to expressive association by imposing threats and burdens on those who join in its Christian beliefs and practices. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 633 (1984) (O'Connor, J., concurring) ("Protection of the association's right to define its membership derives from the recognition that

the formation of an expressive association is the creation of a voice, and the selection of members is the definition of that voice.").

### A. Disclosure Requirements Burden Expressive Association.

Specifically, Section 210.1262 requires, unquestionably and as described *supra*, that CNSIMI provide the State with the names of those in its drug and alcohol recovery programs. The negative implications of these mandated disclosures are immense, as disclosure requirements may dissuade those in recovery programs from continuing or deter potential new members from joining, which in turn would jeopardize the programs themselves.

For these reasons, the Supreme Court has ruled that "compelled disclosure requirements are reviewed under exacting scrutiny," and even a "legitimate and substantial" governmental interest "cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383-84 (2021); *see also Roberts v. U.S. Jaycees*, 468 U.S. 609, 622-23 (1984) ("Government actions that may unconstitutionally infringe upon this freedom can take a number of forms [including an] attempt to require disclosure of the fact of membership in a group seeking anonymity.").

The State, here, could easily pursue its goals with a narrower disclosure requirement that applies only to those with regular contact with children and excludes those in Heartland's recovery programs. This would cure most defects with the challenged laws.[2] Because the State could so easily pursue its goals by narrower means, the disclosure requirements fail "exacting scrutiny" and violate CNSIMI's association rights.

---

[2] The laws would still run afoul of Heartland's right to Church autonomy (described *infra*), whereby the State may not disqualify CNSIMI's pastors and religious instructors based on background checks.

## B.  Background Check Requirements Burden Expressive Association.

The State's background check requirements (and actions that must be taken upon the information revealed in the check) also threaten CNSIMI's association rights. Background checks are required for:

> Officers, managers, contractors, volunteers with access to children, employees, and other support staff of residential care facilities subject to the notification requirements under sections 210.1250 to 210.1286; any person eighteen years of age or older who resides at or on the property of such residential care facility; any person who has unsupervised contact with a resident of such residential care facility; and owners of such residential care facilities who will have access to the facilities shall undergo background checks under section 210.493.

§ 210.1263 RSMo; 13 CSR 35-71.015(F). Background checks are also required for those who apply for a position at CNSIMI. 13 CSR 35-71.015(1)(A). These background checks are prior restraints on both the LERCF's and adherent individuals' rights to associate, because they punish association without these checks with criminal sanctions and/or the threat of said sanctions.

The statutorily defined purpose of each background check is to determine whether an individual is "eligible or ineligible for employment *or presence at* the residential care facility." Section 210.493(10) (emphasis added). Failure to complete a background check makes an individual guilty of a Class B misdemeanor. Section 210.1283. The LERCF likewise is required to compel these disclosures: "[t]he director of the LERCF, or his or her authorized designee, shall certify, under oath subject to the penalties of perjury that all individuals who are required to complete a background check have successfully completed the background checks and have been found eligible for employment or presence at the LERCF pursuant to section 210.493, RSMo, and 13 CSR 35-71.015." 13 CSR 35-71.300(5)(D)(9).

CNSIMI and its members must require/submit to these background checks regardless of whether they typically (or ever) have contact with children. Background checks are required for

"support staff," for instance, which includes "any individual who works for or performs services, including professional services, for the LERCF . . ." 13 CSR 35-71.015. This would include lawyers and accountants, who may (and do—for example, the undersigned) work hundreds of miles away from CNSIMI. Doc. 23 ¶ 105. Requiring that "support staff" undergo background checks threatens CNSIMI's ability to operate, as it may be difficult to find accountants, lawyers, and consultants who are willing to submit to FBI background and fingerprint checks as a condition of taking CNSIMI on as a client.

The broad scope of individuals required to undergo these intrusive background checks, 210.1263, RSMo; 210.493, RSMo; 13 CSR 35-71.015(1)(F), is made even broader by regulatory expansion of the customary meaning of certain terms. "Officer," for instance, includes "any individual who holds an executive position" including President, Chairperson of Board, Board Vice President, Board Vice Chair, Board Secretary, "any other position designated as an officer in the bylaws or articles of incorporation or organization," Headmaster, Principal, Head Teacher, Director, Chief Executive Officer, and even General Counsel. See 13 CSR 35-71.015(1)(I).[3]

The background check requirements outright curtail CNSIMI's associational rights because the results of the background checks determine whether a community member can remain at Heartland. The new laws declare an individual "ineligible" to be at Heartland if he or she refuses to consent to a background check, is registered in certain state registries, or has pled guilty to or been convicted of certain crimes, including, for instance, "felony drug-related offenses." Section 210.493. Again, these individuals are ineligible to remain at CNSIMI regardless of whether they have any contact with children and, in many cases, whether their criminal offenses have anything to do with children.

---

[3] Many of these overbreadth problems are regulatory, and not statutory. The Department of Social Services took an already-broad statute and made it broader.

The most direct and obvious curtailment of Heartland's association rights is the fact that that those whose background checks show "felony drug-related offense(s) committed during the preceding five years" are ineligible to be present at Heartland. This requirement could empty the recovery programs, which are a central part of Heartland's mission.

In all of these ways, the State's new disclosure requirements restrict the freedom of CNSIMI to form an expressive association of those who share a common commitment to education, addiction recovery, and religious faith. The rules require disclosure of the identities of those in recovery programs; exclude from Heartland people whose histories include problems that are irrelevant to child abuse or endangerment, including the very problems that would lead them into a recovery program; and require background checks for individuals like lawyers and accountants who work off-site with no contact with children.

This is all an attack on CNSIMI's ability to associate freely, define its membership, and share common goals and faith, and it is impermissible under the First Amendment. Defendant argues that "[t]he challenged laws limit only whether people can work, reside at or on the property of a residential care facility, or have unsupervised access to children. . . . They exert no control over CNS membership." Doc. 27 at 14. Defendant thus interprets "membership" in a formal sense, but in reality CNSIMI's "members" include all who participate in its intentional community, such as workers, recovering addicts, students, teachers and others.[4] In 2004, Judge Webber found in favor of CNSIMI and Heartland Academy Community Church on expressive

---

[4] Expressive association claims are often successfully made by non-"membership" organizations such as schools and nonprofit women's shelters (*Our Lady's Inn v. City of St. Louis,* 349 F. Supp. 3d 805, 821 (E.D. Mo. 2018)), a beauty pageant (*Green v. Miss United States of Am., LLC*, 533 F. Supp. 3d 978, 995 (D. Or. 2021)), a crisis pregnancy center (*Slattery v. Cuomo*, 531 F. Supp. 3d 547, 567 (N.D.N.Y. 2021)), and parade organizers (*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos., Inc*., 515 U.S. 557 (1995)).

association claims. *Heartland Acad. Cmty. Church v. Waddle*, 317 F. Supp. 2d 984, 1105 (E.D. Mo. 2004), *aff'd*, 427 F.3d 525 (8th Cir. 2005). The challenged laws clearly restrict who can occupy these roles, often in nonsensical ways, and compel disclosure of members in violation of federal statutes and longstanding First Amendment precedent.

**Count III**

**Procedural Due Process**

Plaintiff's third count raises procedural due process concerns with the new Missouri statutes based on (a) the threatened removal of students without meeting established due process standards, and (b) the determination based on background checks, in a manner that conflicts with federal constitutional, statutory and regulatory law, that certain individuals are ineligible to remain at or be employed by CNSIMI.

**A. Removal of Students without Due Process**

Violation of Missouri's new notification requirements is punished by, *inter alia*, "injunctive relief to cease the operation of the residential care facility and provide for the appropriate removal of the children from the residential care facility . . ." Section 210.1271(1). There is no requirement in 210.1271(1) that notice to and a hearing for CNSIMI or its members precede such injunctive relief. *See also* Section 210.1268.

A separate section, Section 210.143, governs claims of child abuse or neglect at LERCFs, such as CNSIMI. That process requires that "the children's division," "law enforcement," or a "prosecuting or circuit attorney" petition the circuit court for an order directing a facility that is the subject of an investigation of allegations of child abuse or neglect "to present the child at a place and time designated by the court to a children's division worker for an assessment of the child's health, safety, and well-being." Section 210.143. The child can then be held for

"assessment" for up to 72 hours. Section 210.143(3).

The new statutes provide no due process for the child, CNSIMI, or the parents prior to the 72-hour removal. If the child is held for assessment for more than 72 hours, there must be "a hearing with **attempted** notice to the facility and to the parents or guardian and with due process for all parties." Section 210.143(3) (emphasis added). Only "attempted" notice is required, even though the statutory scheme gives the State of Missouri Children's Division contact information for virtually all leadership personnel at a facility, and despite the fact that the Children's Division knows how and where to serve CNSIMI and its agents.

The new regulations further authorize removals of students without notice based on only a "reasonable belief" standard:

> The petition and order may be made on an *ex parte* basis if it is reasonable to believe that providing notice may place the child at risk for further abuse or neglect, if it is reasonable to believe that providing notice may cause the child to be removed from the state of Missouri or the jurisdiction of the court, or if it is reasonable to believe that evidence relevant to the investigation will be unavailable if the *ex parte* order is not entered.

210.143(5), RSMo.

If a facility such as Heartland happens to be served with "a subpoena, petition, or order," the new laws provide for some limited attempts at due process:

> Any person served with a subpoena, petition, or order under this section shall not be required to file an answer, but may file a motion for a protective order or other appropriate relief. The motion shall be filed at or before the time for production or disclosure set out in the subpoena or order. The motion shall be in writing, but it may be informal and no particular form shall be required. The clerk shall serve a copy of the motion on the director of the children's division and any agency who applied for the order. The court shall expedite a hearing on the motion and shall issue its decision no later than one business day after the date the motion is filed. The court may review the motion in camera and stay implementation of the order once for up to three days. The in camera review shall be conducted on the record, but steps shall be taken to protect the identity of the child. Any information that may reveal the identity of a hotline reporter shall not be disclosed to anyone in any proceeding under this subsection unless otherwise allowed by law.

210.143.6, RSMo. However, it is unclear under what circumstances a facility would be served

with "a subpoena, petition, or order," given that *ex parte* applications are allowed.[5]

None of these new provisions provides adequate due process for removing a child from Heartland, the standard for which was firmly articulated years ago by Judge Webber of the United States District Court for the Eastern District of Missouri, after the State wrongfully removed 115 students from Heartland: the State must provide notice and a hearing prior to removing any child from Heartland unless there is reasonable cause to believe that that particular child is "in imminent danger of suffering serious physical harm, threat to life from abuse or neglect, or has been sexually abused or is in imminent danger of sexual abuse." *Heartland Academy Community Church v. Waddle,* 317 F. Supp. 2d 984, 1111 (E.D. Mo. 2004), *aff'd, Heartland Academy Community Church v. Waddle,* 427 F.3d 525 (8th Cir. 2005). The State's attempt to institute a new statutory scheme falls well short of this clear due process standard, ignoring the directly applicable *Waddle* holding.[6]

## B. Background Check Ineligibility without Due Process

Defendant's Motion does not address Plaintiff's claim that Defendant's background check process does not satisfy procedural due process requirements. If an individual is rendered "ineligible" to be present at an LERCF such as CNSIMI because of information revealed in a background check, there is only limited opportunity for review. This is inadequate to provide constitutional due process.

At the outset, any appeal is hindered by the fact that the law prohibits notice to the

---

[5] Defendant defends the *ex parte* applications by noting that a subsequent hearing is required under Section 210.1271.2. Doc. 27 at 6. But, again, only *attempted notice* of such a hearing to the parties, and not *actual notice*, is required. 210.1271.2, RSMo.

[6] Defendant's brief also ignores the *Waddle* case, instead citing *Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887 (8th Cir. 2020), a case about removing a child from custodial parents before having a hearing.

facility of what renders an individual ineligible: "The department shall not reveal to the residential care facility or the child placing agency any disqualifying offense or other related information regarding the applicant." Section 210.493(9). A facility like CNSIMI cannot meaningfully review or appeal an ineligibility finding without knowing the reasons behind it.

Even where grounds are known, individuals may be ineligible to associate with or remain at Heartland even if their names have been placed on a central registry merely on the basis of probable cause or reasonable suspicion, regardless of whether they obtained a due process hearing, and regardless of whether they had *de novo* appeal rights in a court of law, all of which is contrary to the 14th Amendment to the U.S. Constitution. *Jamison v. Dept. of Soc. Servs.,* 218 S.W.3d 399 (Mo. 2007).

Finally, the ineligibility determination and the appeal process themselves lack due process protections. 13 CSR 35-71.015(12)(B) explains the administrative review process leading to the exclusion of an individual from CNSIMI:

    a) The Administrative Review shall be conducted and decided based upon the written materials submitted to the division and any information and materials presented at a review conference. The division will provide an in-person conference upon written request.

    b) The review conference may take place by telephone conference call, video conference or in-person meeting.

    c) The Administrative Review process shall be informal. **The rules of evidence shall not apply. There is no right to conduct discovery. There shall be no right to compel the production of witnesses or evidence by subpoena or otherwise.**

    d) The Administrative Review shall be conducted by an individual designated by the Director of the Department or the division, who may be an employee of the division or the Department. However, the individual shall not have been involved in making the decision which is subject to review.

    e) The individual conducting the Administrative Review shall conduct the administrative review and render a written decision no later than thirty (30) days from the date that the division received the request for administrative review.

    f) **The decision upon Administrative Review shall be the final decision of the Department as to any person that is not an applicant.**

Emphasis added. The regulations therefore explicitly deny the facility and/or its applicant or employee anything resembling a due process hearing. There is no discovery, no compelling of witnesses or evidence, and, apparently, no testimony under oath and no rules of evidence.

Despite this informality and the prohibition against disclosing to a facility the basis for a determination, a facility can appeal. This entails an Administrative Review before the Administrative Hearings Unit of the Division of Legal Services of the Department of Social Services. 13 CSR 35-71.015(12)(C). Here, again, there are severe limitation on due process:

> The Hearing is and **shall not be an opportunity to collaterally attack or re-litigate the validity of the underlying plea of guilt, plea of nolo contendere, or the underlying finding of child abuse, neglect or maltreatment** by the applicable state or local agency, or the accuracy of information in the federal, state or local registry or repository.

13 CSR 35-71.015(12)(C)(8) (emphasis added).[7] Appeal hearings are "informal, but they shall be held on the record and testimony will be adduced under oath. **The rules of evidence do not apply.** The applicant may be represented by an attorney." 13 CSR 35-71.015(12)(C)(6) (emphasis added).

Ultimately, applicants and facilities have access to only limited judicial review.

1. Any applicant aggrieved by the final decision of the Department after appeal may seek judicial review as provided in section 536.150 RSMo.

2. Any person who is not an applicant who is aggrieved by the final decision of the Department after Administrative Review may seek judicial review as provided in section 536.150, RSMo.

13 CSR 35-71.015(12)(D). The judicial review is not *de novo*, but instead the administrative decision is reviewed only for abuse of discretion. Section 536.150.

---

[7] As discussed *infra* regarding Count VII, federal background check law is in stark contrast to this new Missouri provision. Federal law explicitly provides for collateral attack on the underlying convictions or pleas revealed in background checks. 28 CFR 50.12.

Just like the State's new rules for removal of children from Heartland, under no circumstances do the background check procedures and reviews in place satisfy due process.

### Count IV

### Parental Rights

Entities that conduct religious schools, such as CNSIMI, are protected by the Due Process Clause of the Fourteenth Amendment from a government's unwarranted interference with the rights of parents, and the rights of the school selected by the parents, to direct the upbringing and education of the parents' children. *Pierce v. Society of Sisters,* 268 U.S. 510 (1925). Parents and guardians, as a part of their liberty, may direct the education of their children, including religious education, by selecting where their children will be brought up and educated. Under *Pierce*, CNSIMI has standing to assert those rights. The new statute and enabling regulations conflict with these parental rights, threatening CNSIMI with removals and disruption of operations without due process of law (see discussion of Count III, *supra*).

Defendant states that parental rights do "not empower parents to nullify prohibitions on the residence of sex offenders, burglars, and felons who have committed drug-related offenses." Doc. 27 at 8. Defendant misstates the effect of its own rules and regulations, which allow mass removals of students and call for the cessation of operations at CNSIMI without notice and an opportunity to be heard. *See supra.* Violation of the State's new notification requirements, which would require CNSIMI to inform the State of the identities of those in the drug and alcohol recovery programs, among other things, is remedied by "injunctive relief to cease the operation of the residential care facility and provide for the appropriate removal of the children from the residential care facility . . ." Section 210.1271.1. This is not "reasonable government regulation," as Defendant states, Doc. 27 at 8 (citing *Runyon v. McCrary*, 427 U.S. 160, 178 (1976)), but an

unreasonable and unconstitutional attack on CNSIMI that will result in parents being forced to send their children somewhere other than their preference, CNSIMI.

By threatening removals of children and the shutdown of CNSIMI in illegal and unconstitutional circumstances, Defendant is violating parents' rights to send their children to Heartland and direct their upbringing. Thus, Count IV must survive Defendant's motion. *See Heartland Academy Community Church v. Waddle,* 317 F. Supp. 2d 984, 1100-01 (E.D. Mo. 2004), *aff'd, Heartland Academy Community Church v. Waddle,* 427 F.3d 525 (8th Cir. 2005) (finding that the defendant "violated Plaintiffs' right to family integrity when he removed the children on October 30, 2001, without notice or an opportunity to be heard and in the absence of exigent circumstances").

## Count V

## Church Autonomy

In Count V, CNSIMI alleges that the new statute and enabling regulations violate CNSIMI's freedom and autonomy under the Religion Clauses of the First Amendment to the United States Constitution. The Free Exercise and the Establishment Clauses together vest in churches and other religious organizations the autonomy to order their own affairs: to decide for themselves, free from governmental interference, matters of ecclesiastical government, doctrine, the communication of that doctrine, and the internal administration of their institution. "[A] component of this autonomy is the selection of the individuals who play certain key roles." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020).

CNSIMI's teachers of religion, among other employees, are sources of religious instruction to students and are an essential part of transmitting religious faith to the next generation. Yet, the State's new laws purport to bar these teachers if their background checks do

not satisfy the State. Even more obviously defective from a constitutional perspective, the State's new laws presume to disqualify a pastor at CNSIMI if s/he does not satisfy the background check provisions. The State cannot invade a religious entity's sphere of autonomy in such a way.[8]

The Department's primary defense to Plaintiff's church autonomy claim is a procedural argument that "[t]he ministerial exception is an affirmative defense, not a cause of action." Doc. 27 at 17. Although the ministerial exception is often employed as an affirmative defense, courts do not describe it as *only* an affirmative defense. And neither Plaintiff's claim based on the ministerial exception nor Defendant's objection to it is novel; the latter was recently disposed of in *InterVarsity Christian Fellowship/USA v. Bd. of Governors of Wayne State Univ.*, 534 F. Supp. 3d 785 (E.D. Mich.), *reconsideration denied*, 542 F. Supp. 3d 621 (E.D. Mich. 2021). There, a Christian student organization brought a Section 1983 action against a state university and its administrators after the organization's leadership standards were found to run afoul of the college's non-discrimination policy. *Id*. at 796. The student organization plaintiff alleged that the university's actions violated the church autonomy tenets handed down in *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171, 177-78 (2012). *InterVarsity*, 534 F. Supp. 3d at 802. The university, like the defendant in the case at bar, argued that "the right to religious internal management can be applied only as an affirmative defense" and not as "enforcement claims brought through 42 U.S.C. § 1983." *Id*.

---

[8] Plaintiff notes that religion teachers and pastors are merely the most obviously "ministerial" roles reserved to CNSIMI's discretion by the church autonomy doctrine. The State also overreaches by proposing to vet, by background check, all other core religious organization officials: the President, Chairperson of Board, Board Vice President, Board Vice Chair, Board Secretary, Headmaster, Principal, Head Teacher, Director, Chief Executive Officer, and even General Counsel. *See* 13 CSR 35-71.015(1); 210.1263, RSMo; 210.493, RSMo. If the State has right of approval over who CNSIMI's religion teachers, pastor, and Board are, as well as its officers, then CNSIMI has no authority over its own structure and governance.

The district court, discussing *Hosanna-Tabor* and its recent church autonomy successor, *Our Lady of Guadalupe*, stated that "[t]he [Supreme] Court repeatedly and unequivocally stated the First Amendment creates a broad right against *any* government intrusion into a religious organization's internal affairs." *InterVarsity*, 534 F. Supp. 3d at 803 (emphasis in original). Similarly, the district court found, "Section 1983 explicitly gives private parties the right to sue officials for the 'deprivation of *any* rights, privileges, or immunities secured by the Constitution.'" *Id*. at 805 (citing 42 U.S.C. § 1983) (emphasis in original). The district court concluded that "[t]he First Amendment provides religious organizations the right to select their own ministers, and, under the First Amendment and § 1983, organizations can sue the government for violating that right."[9] *InterVarsity*, 534 F. Supp. 3d at 807.

Plaintiff's pastors and teachers of religion, among other employees, are sources of religious instruction to students and are an essential part of transmitting religious faith to the next generation. The statute and enabling regulations presume to determine who "is eligible or ineligible for employment or presence at [CNSIMI]," 210.493.10, based upon the results of invasive background checks. As to Plaintiff's ministers, as that term is used in the church autonomy sense, that determination is for CNSIMI alone.

### Count VI

### Illegal Search and Seizure

Plaintiff alleges that Defendant's new rules and regulations expressly allow the State to conduct warrantless and unreasonable searches and seizures. Doc. 23 ¶ 155. Defendant's defense

---

[9] In any case, CNSIMI notes that it *is* using the church autonomy doctrine defensively. Defendant has imposed laws that invade CNSIMI's autonomy, and the lawsuit herein is a reaction to those laws.

is that it "may" seek to enforce its notification laws through a mass removal or forcing Heartland to close, but it is not *required* to. Doc. 27 at 15.

That Defendant is *allowed* to violate Plaintiff's rights—see, for instance, Plaintiff's due process analysis, *supra*—but is not *required* to violate those rights, is of little solace to Plaintiff. Nor does it render the statute constitutional. The mere possibility of a seizure that violates the Fourth Amendment is enough to coerce CNSIMI to comply with the law, and the threat of unconstitutional enforcement is sufficient to render the law unconstitutional. CNSIMI needs relief to ensure that the Department's new rules and regulations, targeting CNSIMI, are not enforced in a manner that violates CNSIMI's Fourth Amendment rights.

The new laws present other Fourth Amendment problems. Regulations require CNSIMI to keep medical records for children and allow the Department of Social Services, without any substantive reason and without a warrant, "to inspect the medical records." 13 CSR 35-71.300(5)(D)(8). Similarly, the Department of Social Services can at any time demand:

> a full census and demographic information of children at the residential care facility, including parental or other guardian contact information and a full list of officers, managers, contractors, volunteers with access to children, employees, and other support staff of the residential care facility; any person eighteen years of age or older who resides at or on the property of the residential care facility; and any person who has unsupervised contact with a resident of the residential care facility.

210.1264, RSMo. These laws allow warrantless searches in further violation of the Fourth Amendment, and the failure by CNSIMI to concede to these unconstitutional demands is grounds for closure of CNSIMI. Section 210.1271(1), RSMo.

**Count VII**

**Procedural Due Process/Federal Supremacy**

Plaintiff's seventh and final count alleges a procedural due process violation. Plaintiff alleges that federal background check law sets out the proper level of procedural due process, while Missouri's new laws fall short of that federal standard.

Missouri allows an individual to appeal a disqualification based on a background check, but, notably, the individual "shall not be [given] an opportunity to collaterally attack or re-litigate the validity of the underlying plea of guilt, plea of nolo contendere, or the underlying finding of child abuse, neglect or maltreatment . . ." 13 CSR 35-71.015(12)(C)(8).

Federal law, on the other hand, requires due process regarding FBI background checks, including the ability to correct a record:

> The officials making the determination of suitability for licensing or employment shall provide the applicants the opportunity to complete, or challenge the accuracy of, the information contained in the FBI identification record. These officials also must advise the applicants that procedures for obtaining a change, correction, or updating of an FBI identification record are set forth in 28 CFR 16.34. **Officials making such determinations should not deny the license or employment based on information in the record until the applicant has been afforded a reasonable time to correct or complete the record, or has declined to do so.** A statement incorporating these use-and-challenge requirements will be placed on all records disseminated under this program. This policy is intended to ensure that all relevant criminal record information is made available to provide for the public safety and, further, to protect the interests of the prospective employee/licensee who may be affected by the information or lack of information in an identification record.

28 CFR 50.12 (emphasis added).

Under federal law an individual can collaterally attack what is in the database and cannot be told that he or she is ineligible for employment until that right has been exhausted. This constitutes pre-deprivation due process. Under the new Missouri law, the same individual can be denied employment in a process that specifically denies pre-deprivation due process. Plaintiff alleges that the proper due process is recognized by federal background check law, which

supersedes the contrary state law that Missouri has set forth. U.S. Const. art. VI, cl. 2.

Defendant argues that 28 CFR 50.12 does not grant a private right of action. But CNSIMI is not suing under 28 CFR 50.12. Rather, 28 CFR 50.12 is a demonstration of what due process should and, in federal law, does apply with respect to background checks.

Defendant also argues that the federal provision "expresses a preference, not a mandate" in saying that "[o]fficials making such determinations **should not** deny the license or employment based on information in the record until the applicant has been afforded a reasonable time to correct or complete the record, or has declined to do so." Doc. 27 at 9. Defendant does not cite any cases finding that "should" allows for discretion by officials. This is a tortured interpretation of the law.

Last, Defendant argues that Missouri law is consistent with 28 CFR 50.12 because Defendant allows applicants to submit "[a]ny other information and documents that the applicant wishes the division to consider in making its decision about eligibility." Doc. 27 at 10 (citing 13 C.S.R. 35-71.015(6)(B)(13)). Notably, however, as Defendant acknowledges, an applicant may not "collaterally attack or re-litigate the validity of the underlying plea of guilt, plea of nolo contendere, or the underlying finding of child abuse, neglect, or maltreatment by the applicable state or local agency, or the accuracy of information in the federal, state, or local registry or repository." 13 C.S.R. 35-71.015(12)(C)(8). Missouri's denial of the opportunity to correct the record—an opportunity that is explicitly provided in federal law—is the fundamental difference between the two laws and the reason why Plaintiff argues that Missouri's new law lacks due process.

**Conclusion**

For the foregoing reasons, Plaintiff CNS International Ministries, Inc., requests that Defendant's motion for judgment on the pleadings be denied.

Respectfully submitted,

OTTSEN, LEGGAT AND BELZ, L.C.

By:  /s/ Timothy Belz
     Timothy Belz  #MO-31808
     112 South Hanley, Second Floor
     St. Louis, Missouri 63105-3418
     Phone: (314) 726-2800
     Facsimile: (314) 863-3821
     tbelz@olblaw.com

     and

     Brad L. Blake #MO-38340
     Fellows & Blake, L.L.C.
     13421 Manchester Road, Suite 105
     St. Louis, Missouri 63131
     Phone: (314) 725-1600
     Facsimile: (314) 725-1609
     bblake@fellowsblakelaw.com

     Attorneys for CNS International Ministries, Inc.

**<u>Certificate of Service</u>**

The undersigned hereby certifies that the foregoing document was served on all registered parties on this 28th day of July 2022 using the Court's online filing system.

/s/ Timothy Belz