# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| CNS INTERNATIONAL MINISTRIES, INC., | ) ) ) |
| Plaintiff, | ) ) Case No. 2:21-cv-00065 |
| v. | ) ) |
| ROBERT KNODELL, | ) ) |
| Defendant. | ) |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant submits the following reply in support of its motion for judgment on the pleadings.

**A. Count I does not state a plausible claim for relief.**

Plaintiff appears to have concluded that its entire campus constitutes "the property of the residential care facility," Mo. Rev. Stat. §210.1262. See Ct. Doc. 37 at 2, 3. Plaintiff argues that it must, therefore, disclose on the notification form required by §210.1262 information including the names of everyone residing on Heartland's premises who is at least 18, as well as the names of all staff members and volunteers. Ct. Doc. 37 at 3. Plaintiff fails to consider the full, statutory definition of "residential care facility" (*see* Mo. Rev. Stat. §210.1253(6)) or the definition of license-exempt residential care facility ("LERCF").

A residential care facility

> means any place, facility, or home operated by any person who receives children who are not related to the operator and whose parent or guardian is not a resident of the same facility **and** that provides such children with supervision, care, lodging, and maintenance for twenty-four (24) hours a day…

Mo. Rev. Stat. §210.1253(6) (emphasis added).  The definition of LERCF is identical except for the addition of the language "and that is not required to be licensed under section 210.516, RSMo[.]" Mo. Code Regs tit. 13, §35-71.015(1)(F) (emphasis added).  Section 210.1253(3) provides the following definition: " 'Exempt-from-licensure' or 'license-exempt' , a residential care facility that is not required to be licensed under section 210.516[.]" Mo. Rev. Stat. §210.1253(3).

The factual allegations of the Amended Complaint show that the homes or facilities that house the Men's and Women's Recovery Programs are not places, facilities, or homes that receive children. See Ct. Doc. 23 at 4 (¶¶13, 14) (the "Men's Recovery Center houses men…" who reside in an area "separated by a lake" located in a different county from "the children, women, and college students"); Ct. Doc. 23 at 3 (¶9), at 4 (¶¶16, 17) (home for Women's Recovery Program separate from Heartland Children and Youth Home).  Nor does the Amended Complaint allege that the recovery programs for men or women provide children with supervision, care, lodging, and maintenance 24 hours a day.  Accordingly, neither the Men's Recovery Center nor the Women's Home (for Women's Recovery Program participants) meet the definitions of residential care facility (Mo. Rev. Stat. §210.1253(6)) or LERCF (Mo. Rev. Stat. §210.1253(3); Mo. Code Regs tit. 13, §35-71.015(1)(F)).

Because the Men's Recovery Center and the Women's Recovery Program home are not residential care facilities or LERCFs, participants in those recovery programs are not individuals "eighteen years of age or older who reside[ ] at or on the property of the residential care facility" (Mo. Rev. Stat. §210.1262(2)).  Section 210.1262 does not require listing individuals age eighteen or older who are housed in the Men's Recovery Center or the home for the Women's Recovery Program (see Ct. Doc. 23 at 4 (¶¶16, 17)) on the notification form based on their residence or participation in a recovery program.  Nor does residing in the Men's Recovery Center or the

2

Women's Home, or participating in the Men's Recovery Program or the Women's Recovery Program require those residents or participants to undergo background checks under Mo. Rev. Stat. §§210.1263 or 210.493.

Even if Plaintiff's understanding of the requirements of §§210.493, 210.1262, and §210.1263 were correct, Defendant would still be entitled to judgment as a matter of law on Count I. Plaintiff seeks declaratory and injunctive relief under 42 U.S.C. §290dd-2, which establishes a criminal penalty for its violation, *see* 42 U.S.C. §290dd-2(f); *Chapa v. Adams*, 168 F.3d 1036 (7th Cir. 1999); *Schlosser v. Kwak*, 16 F.4th 1078, 1083 (2nd Cir. 2021). Count I also mentions 42 U.S.C. §290ee-3. See Ct. Doc. 23 at 17 (¶79), at 19 (¶89). The former 42 U.S.C. §290ee-3 was recodified as 42 U.S.C. §290dd-2. ADAMHA Reorganization Act, Pub. L. 102-321, 106 Stat. 323 (1992); *see Ellison v. Cocke Cty*, 63 F.3d 467, 470-71 (6th Cir. 1995); see Ct. Doc. 23 at 19 (¶89). The current 42 U.S.C. §290ee-3 provides federal grants for States to establish "comprehensive response plan[s] to opioid abuse," §290ee-3(b)(2). It does not limit the disclosure of patient records. *See* 42 U.S.C. §290ee-3. Plaintiff's Amended Complaint does not contain allegations concerning any comprehensive response plan. Rather, Plaintiff seeks relief under 42 U.S.C. §290dd-2.

Plaintiff quotes *Ellison v. Cocke Cty.,* 63 F.3d 467 (6th Cir. 1995) in emphasizing the importance of 42 U.S.C. §290dd-2's confidentiality requirements. The Sixth Circuit concluded that 42 U.S.C. 290dd-2 does not create a private right of action. *Ellison* at 470, 471. "The 'legislative scheme' clearly leaves no place for suits by private plaintiffs." *Id.* at 471.

Every Circuit that has considered the question has reached the same conclusion. *Chapa v. Adams*, 168 F.3d 1036, 1038 (7th Cir. 1999) ("we are content to leave enforcement of 290dd-2 to

3

the criminal process"); *Schlosser v. Kwak*, 16 F.4th 1078, 1082-83 (2nd Cir. 2021); *Laster v. CareConnect Health Inc.*, 852 Fed. Appx. 476, 478 (11th Cir. 2021).

Though the Eighth Circuit has not addressed this specific question, "it is well-established that 42 U.S.C. §290dd-2 does not provide a private cause of action that can be enforced via §1983[.]…" *Reynolds v. MU Health Care*, 2020 WL 4905545 at *2 (W.D. Mo. Aug. 20, 2020). "… [S]ection 290dd-2 does not create 'enforceable rights, privileges, or immunities within the meaning of §1983.' " *Doe v. Broderick*, 225 F.3d 440, 449 (4th Cir. 2000), *quoting Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 423 (1987). "[T]he rationale of *Chapa* [*v. Adams*, 168 F.3d 1036 (7th Cir. 1999)] and *Doe* [*v. Broderick*, 225 F.3d 440 (4th Cir. 2000)] have been used by the Eighth Circuit to conclude[,]" in *Frison v. Zebro*, 339 F.3d 994, 999 (8th Cir. 2003), that 18 U.S.C. §912, "does not confer a private right of action." *Giroux v. Bear*, 2017 WL 1082396 at *3 (D. S.D. Mar. 22, 2017).

    **B.**    **Count II does not allege a violation of Plaintiff's right to expressive association.**

"The right to expressive association protects groups from being forced to 'accept members [they do] not desire.' " *Telescope Media Group v. Lucero*, 936 F.3d 740, 760 (8th Cir. 2019). Plaintiff does not assert that the challenged laws require it to accept anyone as a member unless Plaintiff so chooses. See Ct. Doc. 37 at 7-12.  The Amended Complaint (Ct. Doc. 23) does not allege that the challenged laws obligate Plaintiff to accept any person or category of persons as members.  Defendant is entitled to judgment as a matter of law on Ct. II (Expressive Association).

Plaintiff complains that some individuals may be found "ineligible for employment or presence at the residential care facility" as a result of a background check. See Ct. Doc. 37 at 9, 10; *see* Mo. Rev. Stat. §210.493(10).  But the statute does not require Plaintiff to accept any person as a member, so it does not violate Plaintiff's right to expressive association. *Lucero*, 936 F.3d at

4

760. Further, if an individual is found to be "ineligible for employment or presence at the residential care facility" as a result of a background check, *see* Mo. Rev. Stat. §210.493(10), he or she remains free to associate with Plaintiff's members at other locations.

    **C. Plaintiff lacks standing to pursue the claims asserted in Count VI.**

  The well-pled allegations of the Amended Complaint demonstrate that Plaintiff lacks standing to pursue the search and seizure claims asserted in Count VI.  The Amended Complaint does not allege that the Department of Social Services or any of the Department's employees or officials has requested to inspect or attempted to seize any medical records from Plaintiff.  Nor does it allege that the Department, its officials or employees have requested a full census and demographic information concerning the children at Plaintiff's LERCF.

  The facts alleged do not show a presently existing, actual threat that Defendant, its employees, or officials, will seize or search Plaintiff's premises or records.  Contrary to Plaintiff's assertion, Mo. Rev. Stat. §210.1271.1 does not authorize injunctive relief to cease operation of a LERCF based on failure to comply with a §210.1264 request for a full census or a request to inspect medical records.  A written attestation of the LERCF's director that the LERCF "actually maintains medical records for each child served" according to the LERCF's written policy, attached to the attestation, is sufficient proof, for purposes of the notification requirements, that the LERCF maintains medical records for each child, *see* Mo. Code Regs. tit. 13, §35-71.300(5)(D)8.A; Mo. Rev. Stat. §210.1262 (notification filed on department form shall contain "(8) Proof that medical records are maintained for each child.")

  The mere existence of §210.1264 (effective July 14, 2021) and Mo. Code Regs. tit. 13, §35-71.300(5)(D)8.A does not show that there is a presently existing, actual threat that Defendant, its employees or officials, will search Plaintiff's premises or seize its records.  Plaintiff "lacks

5

standing to sue for an injunction against future unconstitutional seizures because Plaintiff has failed to allege any non-speculative threat of future seizures." *D.C., Inc., v. Missouri ex rel. Davis*, 2009 WL 900733 at *4 (W.D. Mo. Apr. 1, 2009), *citing City of Los Angeles v. Lyons*, 461 U.S. 95, 102-103 (1983).  Defendant is entitled to judgment on the pleadings as to Count VI.

### D. Count VII (federal background check regulation)

Plaintiff argues, in effect, that because 28 C.F.R. §50.12 does not explicitly address collateral attacks upon criminal convictions or guilty pleas, or opportunities to re-litigate criminal or child abuse and neglect findings or sex offender registry listings, 28 C.F.R. §50.12 establishes, as a matter of federal law, "what due process" applies to the background checks required under Mo. Rev. Stat. §210.493.  But "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time, and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 323 (1976).  " '(D)ue process is flexible and calls for such procedural protections as the particular situation demands.' " *Id.* at 334, *quoting Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Plaintiff narrows in on one sentence of a regulatory provision affording an administrative appeal opportunity for applicants and others aggrieved by background check findings:

> 8. The hearing shall not be an opportunity to collaterally attack or re-litigate the validity of the underlying plea of guilt, plea of *nolo contendere*, or the underlying finding of child abuse, neglect, or maltreatment by the applicable state or local agency, or the accuracy of information in the federal, state, or local registry or repository.

Mo. Code Regs. tit. 13, §35-71.015(12)(C)8.  The pre-deprivation administrative process as a whole satisfies due process.  The subsequent opportunity for judicial review under Mo. Rev. Stat. §536.150 meets or exceeds the requirements of procedural due process.

Before any administrative appeal, there is an opportunity for administrative review. *See* §35-71.015(12)(B).  A person requesting administrative review of a background check finding

6

may submit "any relevant documents, materials, or information that the requestor wishes to submit in support of the administrative review request[,]" Mo. Code Regs. tit. 13, §35-71.015(12)(B).1.D. "[T]he division will provide a [pre-deprivation] review conference upon written request[,]" §35-71.015(12)(B)(3).  The language of the regulation providing for pre-deprivation administrative review does not preclude the requestor from collaterally attacking or re-litigating the accuracy of information in a state's registry or the validity of a conviction or guilty plea at that stage of the process.

Regardless, due process does not require an opportunity to collaterally attack or re-litigate such matters as convictions, guilty pleas, or child abuse and neglect findings as part of pre-deprivation process.  A pre-deprivation hearing need not definitively resolve whether an applicant is eligible or ineligible for employment with a residential care facility, rather, the hearing "should be an initial check against mistaken decisions[,]" *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985).

The " 'procedural requisites for' " a pre-deprivation " 'hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.' " *Loudermill* at 545, *quoting Boddie v. Connecticut*, 401 U.S. 371, 378 (1971).  Subsequent administrative appeal and judicial review opportunities are afforded to applicants and others aggrieved by background check findings.  If the aggrieved requestor of administrative review is not a background check applicant, after the administrative review, the requestor may seek judicial review from a circuit court under Mo. Rev. Stat. §536.150. Mo. Code Regs Ann. tit. 13, §35-71.015(12)(D)2.  "The decision upon administrative review shall be the final decision of the department as to any person that is not an applicant." *Id.*  For an applicant, the Department renders its final decision after the administrative appeal process in §35-71.015(12)(C). Mo. Code Regs

7

Ann. tit. 13, §35-71.015(12)(D)1. The applicant "may seek judicial review" of the department's final decision "as provided in section 536.150, RSMo." Section 35-71.015(12)(D)2.

The judicial review available before the circuit court affords background check applicants and other aggrieved parties the opportunity to be heard at a meaningful time and in a meaningful manner. Under §536.150, the circuit court conducts the hearing as an original action. *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 506 (Mo. banc 2009). The litigant seeking §536.150 review "tries his or her case to the court." *City of Valley Park* at 507. The circuit court "hears evidence, determines facts, and adjudges the validity of the agency decision." *Id.* at 506. Section 536.150 provides several forms of relief, including injunctive relief (such as a temporary restraining order). *See* Mo. Rev. Stat. §536.150.1. Section 536.150 review affords Plaintiff due process by providing it "an opportunity to be heard at a meaningful time and in a meaningful manner… ." *SH3 Health Consulting, LLC v. Page*, 459 F.Supp.3d 1212, 1226 (E.D. Mo. 2020).

**E.   Count III (procedural due process in administrative and judicial review of background check findings; proceedings under Mo. Rev. Stat. §210.1271)**

In response to Defendant's Count III arguments, Plaintiff raises issues concerning certain provisions of the regulation that provides for administrative review and an administrative appeal of background check findings, with subsequent §536.150 judicial review. Some of those concerns were addressed above, in Section D (Count VII). Defendant will now discuss Plaintiff's remaining procedural due process arguments related to background check requirements

Plaintiff suggests that "there is only limited opportunity for review" of a finding of ineligibility based on a background check. See Ct. Doc. 37 at 14. But, under Mo. Rev. Stat. §536.150, the circuit court conducts the hearing as an original action. *City of Valley Park*, 273 S.W.3d at 506. The circuit court may consider any admissible evidence, as it would in any bench-

8

tried case. *See id.* Nothing in the Residential Care Facility Notification Act, Mo. Rev. Stat. §§210.1250 through 210.1286, changes that.

Section 210.493 obligates Defendant to "provide the results of the background check to the applicant," but the department "shall not reveal to the residential care facility… any disqualifying offense or any other related information regarding the applicant." Mo. Rev. Stat. §210.493.9, .10. However, the background check application "shall contain… [w]hether the applicant consents to the division notifying the LRCF, LERCF, or Child Placing Agency of its decision on eligibility or ineligibility and/or sending a copy of its eligibility or ineligibility finding to the LRCF, LERCF, or Child Placing Agency[.]" Mo. Code Regs Ann. tit. 13, §35-71.015(6)(B)8.  If the applicant consents, the applicant must provide the name and address of the LRCF, LERCF, or Child Placing Agency to whom the background check decision or finding should be sent. §35-71.015(6)(B)(10). Nothing prevents an applicant from choosing to independently share his or her background check results, and divulge any information that may make the applicant ineligible, to a LERCF.  A LERCF may require anyone applying for a background check to agree to share the results and pertinent information with the LERCF as a condition of employment or residence.

The initial administrative review of a background check finding results in the department's final decision for requestors other than applicants. Mo. Code Regs Ann. tit. 13, §35-71.015(12)(D)2.  The department's decisions become final as to applicants after the administrative appeal process in §35-71.015(12)(C). Mo. Code Regs Ann. tit. 13, §35-71.015(12)(D)1. Plaintiff complains that the administrative review step does not involve a full, evidentiary hearing, but procedural due process does not require a full, evidentiary hearing at that initial stage.  Rather, the administrative review "should be an initial check against mistaken decisions[,]" *see Loudermill*, 470 U.S. at 545.

9

Plaintiff fails to cite any case law to support its characterization of the judicial review available through Mo. Rev. Stat. §536.150. Contrary to Plaintiff's assertion, §536.150 review is not limited to whether an agency's decision was an abuse of discretion. Rather, the circuit court "conducts a *de novo* review in which it hears evidence on the merits" and makes the record. *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 508 (Mo. banc 2009). The circuit court "determines the facts and decides whether the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious or otherwise involves an abuse of discretion." *Id.*

A §536.150 action is an original action in which the plaintiff "tries his or her case to the court." *City of Valley Park*, 273 S.W.3d at 506, 507. The circuit court "hears evidence, determines facts, and adjudges the validity of the agency decision." *Id.* at 506.

> … [I]n any such review proceeding the court may determine the facts relevant to the question whether the person at the time of such decision was subject to such legal duty, or had such right… and may hear such evidence on such question as may be properly adduced.

Mo. Rev. Stat. §536.150. "Section 536.150 authorizes a *de novo* post-deprivation evidentiary hearing before a Missouri circuit court, which determines the evidence and 'on the facts as found adjudges the validity of the agency decision.' " *Birkenholz v. Sluyter*, 857 F.2d 1214, 1218 (8th Cir. 1988), *quoting Phipps v. Sch. Dist. of Kansas City*, 645 S.W.2d 91, 95 (Mo. App. W.D. 1982). Based upon the facts determined by the circuit court, the court may decide whether the agency's decision "is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion[.]…" Mo. Rev. Stat. §536.150.

**Mo. Rev. Stat. §210.1271 proceedings**

Section 210.1271 authorizes bringing an action for

> injunctive relief to cease the operation of a residential care facility and provide for the appropriate removal of the children from the residential care facility and

10

> placement in the custody of the parent or legal guardian or any other appropriate individual or entity in the discretion of the court

for a limited set of violations, including "(1) Providing supervision, care, lodging, or maintenance for any children in such facility without filing notification in accordance with sections 210.1250 to 210.1286." Mo. Rev. Stat. §210.1271.1.  Plaintiff asserts that §210.1271 does not explicitly provide for notice and a hearing to Plaintiff and its members before injunctive relief is granted.

Mo. S. Ct. Rule 92.02 prohibits the issuance of a preliminary injunction absent "prior notice and an opportunity to be heard" (Mo. S. Ct. Rule 92.02(c)(1)) and imposes strict limits upon the issuance of ex parte temporary restraining orders (*see* Mo. S. Ct. Rule 92.02(b)(1)).  Section 210.1271.2 provides that, if a court grants an ex parte order (TRO) under §210.1271.1 "requiring a residential care facility to cease operations, a hearing shall be held within three business days to determine whether the order shall remain in effect," and "attempted notice" (at least) must be provided to "the facility and the parents or guardians **with due process for all parties**." Mo. Rev. Stat. §210.1271.2 (emphasis added).

Where the State "must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997).  When the General Assembly enacted Mo. Rev. Stat. §210.1271, it was " 'presumed to know the existing law.' "  Mo. Rev. Stat. §210.1271 did not amend Mo. S. Ct. Rule 92.02. Mo. Const. art. V, sec. 5; *State ex rel. Nothum v. Walsh*, 380 S.W.3d 557, 567 (Mo. banc 2012), *quoting Greenbriar Hills Country Club v. Dir. of Revenue*, 47 S.W.3d 346, 352 (Mo. banc 2001).  Section 210.1271.2 emphasizes the need for due process "for all parties" and requires the court to expedite proceedings beyond what Rule 92.02 would otherwise require if an ex parte order is issued to cease the operations of a residential care facility.

11

A LERCF that completely failed to comply with the Act's notification requirements (Mo. Rev. Stat. §§210.1259, 210.1262; Mo. Code Regs tit. 13, §35-71.300) would not have a constitutionally protected property interest in continuing to operate. *See Austell v. Sprenger*, 690 F.3d 929, 935-36 (8th Cir. 2012).  If a LERCF complied with all of the legal requirements for notification and the Department issued a letter informing the LERCF "that the LERCF has successfully completed all of the notification process as of the date of the letter" (Mo. Code Regs tit. 13, §35-71.300(5)(E)), at least arguably, that LERCF could have a protected property interest in operating a license-exempt residential care facility. *Rebirth Christian Academy Daycare, Inc. v. Brizzi*, 835 F.3d 742, 744, 746-48 (7th Cir. 2016).  The Amended Complaint does not allege that Plaintiff has completed or fully complied with the notification requirements for LERCFs.

Successfully completing the notification process includes providing to the Department the street, mailing, and e-mail addresses for the LERCF, the LERCF's telephone number (Mo. Code Regs tit. 13, §35-71.300(5)(D).1), and the street address, e-mail addresses, and telephone number of the director of the LERCF or "director's designee who will serve as the point of contact between the division and LERCF[,]" §35-71.300(5)(D).2.  Providing that information to the Department would facilitate attempts to notify the LERCF of any proceeding under Mo. Rev. Stat. §210.1271.

Where a property interest is involved, due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006); *Crum v. Vincent*, 493 F.3d 988, 993 (8th Cir. 2007).  Rather, due process "requires notice that is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Crum* at 993, *quoting Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  " 'Notice by mail is ordinarily presumed to be constitutionally sufficient.' " *Crum* at 993, *quoting Nunley v. Dept. of Justice*, 425 F.3d 1132, 1136 (8th Cir. 2005).  Notice provided at

12

a physical or mailing address submitted by the LERCF would satisfy due process. Service by e-mail upon one or more e-mail addresses provided by a LERCF would also satisfy due process, because it would be reasonably calculated to apprise the LERCF of a pending court matter and afford it an opportunity to present its objections. *See Missouri ex rel. Schmitt v. People's Republic of China*, 2021 WL 1889857 at *2 (E.D. Mo. May 11, 2021), *quoting Mullane*, 339 U.S. at 314.

"In child removal cases, the meaningful time and manner requirement means that the state must hold a hearing promptly after removal." *Mitchell v. Dakota County Soc. Servs*, 959 F.3d 887, 897 (8th Cir. 2020). Where a child was "without proper care, custody, or support" (*see* Mo. Rev. Stat. §211.031.1(1)(b)) because a LERCF where the child was staying had ceased operating, and the child was taken into custody, §211.032.1 provides that "the juvenile or family court shall notify the parties of the right to have a protective custody hearing." Mo. Rev. Stat. §211.032.1. Rule 114.01 requires personal service on all parties (Mo. S. Ct. R. 114.01(a)), unless personal service cannot be effected, in which case, service may be made by registered or certified mail to a party's last known address (Mo. S. Ct. R. 114.01(d)). For purposes of chapter 211 and Rules 110 to 129, *see* Mo. S. Ct. R. 110.01, the parties include "the parents, guardian, and custodian of the juvenile," Mo. S. Ct. R. 110.04(a)(20).

The notice to the parents and guardian required by Mo. Rev. Stat. §211.032.1 and Mo. S. Ct. R. 114.01 shall be provided in advance of the hearing. Mo. S. Ct. R. 114.01(f). Notifying parents and guardians is facilitated by §210.1264, which requires "any license-exempt residential care facility subject to the notification requirements of sections 210.1250 to 210.1286" to provide, "[u]pon request by the department or a law enforcement officer… a full census" of the children at the LERCF, "including parental and other guardian contact information… ." Mo. Rev. Stat. §210.1264. "A party 'need not receive actual notice, but only notice that is reasonably calculated,

13

under all the circumstances, to apprise interested parties of the pendency of the action.' " *Slaven v. Engstrom*, 710 F.3d 772, 779 (8th Cir. 2013) (citation omitted).

When the constitutionality of a statute is in question, "a court must ' "ascertain whether a construction of the statute is possible by which the question may be avoided." ' " *Thompson v. Southwest Sch. Dist.*, 483 F. Supp. 1170, 1180 (W.D. Mo.1980), *quoting IAM v. Street*, 367 U.S. 740, 749-50 (1961), *quoting Cromwell v. Benson*, 285 U.S. 22, 62 (1932). "In deciding among possible interpretations of a statute, the court must select an interpretation that appears to be consistent with the statute's constitutionality." *Thompson* at 1180. "Additionally, '[s]tatutes are interpreted to avoid unreasonable or absurd results." *Fox v. State*, 640 S.W.3d 744, 757 (Mo. banc 2022), *quoting St. Louis Police Officers' Ass'n v. Bd. of Police Comm'rs of City of St. Louis*, 259 S.W.3d 526, 528 (Mo. banc 2008). Read in the context of Missouri law governing the protection, care and custody of juveniles, Mo. Rev. Stat. §210.1271 does not violate the procedural due process rights of the parents, guardians, or custodians of children at LERCFs.

Plaintiff also attempts to mount a procedural due process challenge to Mo. Rev. Stat. §210.143. That statute authorizes the Children's Division, law enforcement, or a prosecuting attorney to file a petition for a court order directing a LERCF "that is the subject of an investigation of child abuse or neglect to present the child at a time and place designated by the court to a children's division worker for an assessment of the child's health, safety, and well-being." Mo. Rev. Stat. §210.143.1.

> The court shall enter an order under this section if:
> (1) The court determines that there is reasonable cause to believe that the child has been abused or neglected and the residential care facility does not voluntarily provide access to the child;
> (2) The assessment is reasonably necessary for the completion of an investigation or the collection of evidence; and
> (3) Doing so is in the best interest of the child.

14

Mo. Rev. Stat. §210.143.2.  The assessment is to be completed and the child returned to the LERCF or to the child's parents or guardian "unless the court, after a hearing with attempted notice to the facility and to the parents or guardian and with due process for all parties, enters further orders to the contrary." Mo. Rev. Stat. §210.143.3.

Plaintiff argues that §210.143 does not provide due process before a child is removed from a LERCF for 72 hours.  Parents have a liberty interest in "the care, custody and management of their children," but "the right to family integrity does not include a constitutional right to be free from child abuse investigations." *Mitchell v. Dakota County Soc. Servs*, 959 F.3d 887, 897 (8th Cir. 2020).  "The government has a compelling interest in protecting minor children, especially when it is necessary to protect them from their parents." *Id.*  The government also has a compelling interest in protecting children residing at a LERCF.

A "reasonable suspicion" of child abuse is sufficient to remove a child in the context of a child abuse investigation, *Stanley v. Finnegan*, 899 F.3d 623, 627 (8th Cir. 2018).  Plaintiff's reliance upon *Heartland I* (*Heartland Academy Community Church v. Waddle*, 317 F.Supp.2d 984 (E.D. Mo. 2004), *aff'd*, 427 F.3d 525 (8th Cir. 2005), see Ct. Doc. 37 at 14, for the applicable standard is misplaced.  Notably, in *Heartland I*, the court did not find that a reasonable suspicion or exigent circumstances existed, so the juvenile officer's actions in removing the children without notice or a hearing deprived plaintiffs of procedural due process. 317 F.Supp.2d at 1099-1101; *see* 427 F.3d at 535.  The juvenile officer prevented plaintiffs from receiving postdeprivation process by dismissing the petitions he had filed before a scheduled hearing could be held. 317 F.Supp.2d at 1101.  In *Heartland I*, a preliminary injunction was issued against Mike Waddle, chief juvenile officer for Missouri's Second Judicial Circuit, the Lewis County sheriff, David Parrish, and sheriff's deputy Patricia McAfee, *see Heartland Academy Community Church v. Waddle*, 335 F.3d

15

684, 687, 688 (8th Cir. 2003); and a permanent injunction was entered against "Mike Waddle, or any juvenile officer acting at his direction," 317 F.Supp.3d at 1110.

The "reasonable cause" standard in Mo. Rev. Stat. §210.143.2(1) is constitutional. *See Stanley*, 899 F.3d at 627.

Notice is not constitutionally required prior to a temporary, up to 72 hour removal of a child for an assessment of the child's health, safety and well-being where a court has determined that there is reasonable cause to believe the child has been abused or neglected and the LERCF where the child resides will not voluntarily provide access to the child (Mo. Rev. Stat. §210.143.2(1)), the assessment is reasonably necessary as part of a child abuse investigation (§210.143.2(2)), and the order is in the child's best interests (§210.143.2(3)). *See Mitchell*, 959 F.3d at 897; *Stanley*, 899 F.3d at 627; *see Hawley v. Nelson*, 968 F.Supp. 1372, 1386 (E.D. Mo. 1997) (no constitutional requirement to notify parent prior to interviewing child who was subject of suspected neglect), *aff'd at* 141 F.3d 1168 (8th Cir. 1998).

**F.     Plaintiff has not alleged an actual, existing threat to parents' liberty interest to send their children to Plaintiff's school or Plaintiff's ability to operate a religious school. (Count IV reply)**

Plaintiff argues that if it fails to comply with the notification requirements, *see* Mo. Rev. Stat. §§210.1259, 210.1262; Mo. Code Regs tit. 13, §35-71.300, and if Defendant seeks and obtains a §210.1271 injunction to cease the operation of Plaintiff's LERCF and remove the children, that would violate the due process right of parents to send their children to Plaintiff's school and direct their children's upbringing and education, and would violate Plaintiff's constitutional right to conduct a religious school. See Ct. Doc. 37 at 17.

The factual allegations of the Amended Complaint do not demonstrate any existing, actual threat by Defendant (or anyone else) to seek relief against Plaintiff under §210.1271.  Plaintiff

16

references prior litigation in which this court found that a juvenile officer violated the constitutional rights of various plaintiffs **in 2001** by removing children from Plaintiff's premises. See Ct. Doc. 37 at 18; *Heartland I*, 317 F.Supp.2d at 1099-1101; *see* 427 F.3d at 535.  The court did not conclude that Defendant or any employee or official of Defendant violated Plaintiff's constitutional rights, nor did it enjoin Defendant or any of Defendant's employees or officials. *See* 317 F.Supp.2d at 1085, 1110; *see Heartland Academy Community Church v. Waddle*, 335 F.3d 684, 687, 688 (8th Cir. 2003).  The actions of a Lewis County juvenile officer twenty plus years ago do not establish an existing threat by Defendant to violate Plaintiff's constitutional rights or to prevent parents from sending their children to Heartland.

For the reasons stated at pages 1-3 of this reply (Count I argument), Plaintiff is mistaken in asserting that the notification requirements obligate it to disclose the identities of participants in its recovery programs.  As explained in Defendant's Count III reply (see pp. 10-16), Mo. Rev. Stat. §210.1271 provides due process to all parties.  Moreover, there is no allegation of an existing, actual threat to seek an injunction against Plaintiff under §210.1271.

    **G.**    **Count V**

The undersigned's then co-counsel, Kaleb Gregory, prepared and filed Defendant's motion for judgment on the pleadings. See Ct. Doc. 27 at 18.  Soon after Plaintiff responded to that motion, Mr. Gregory withdrew due to leaving his position of employment. Ct. Docs 38, 39.  Since the filing of Defendant's motion for judgment on the pleadings, and upon further reflection, the undersigned has realized that Defendant's request for judgment on the pleadings really only applies to Counts I-IV, VI, and VII.

**Conclusion**

For the reasons stated herein, and in Defendant's motion for judgment on the pleadings and memorandum in support, Defendant respectfully requests that the Court grant it judgment on the pleadings on Counts I through IV, VI, and VII.

Respectfully submitted,

**ERIC S. SCHMITT**
Attorney General

/s/ *Emily A. Dodge*
Emily A. Dodge, Mo Bar #53914
Assistant Attorney General
P.O. Box 899
Jefferson City, MO  65102-0899
Tel: (573) 751-7344
Fax: (573) 751-9456
Email: Emily.Dodge@ago.mo.gov
ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of September, 2022, the foregoing was filed and served via the Court's electronic filing system upon all counsel of record.

/s/ *Emily A. Dodge*
Emily A. Dodge
Assistant Attorney General