IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CNS INTERNATIONAL MINISTRIES, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:21-CV-65 RLW ) |
| ROBERT KNODELL, Acting Director of the Missouri Department of Social Services, | ) ) ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**I.   The plain language of the new law makes every "place, facility, or home operated by" CNSIMI subject to background check and notification requirements.**

Missouri's new background check and notification requirements apply equally to residential care facilities and LERCFs (collectively, "LERCFs"). 13 CSR 35-71.300; 210.1264 RSMo. A residential care facility is "any place, facility, or home **operated by any person who receives children** who are not related to the operator and whose parent or guardian is not a resident of the same facility and that provides such children with [care] for twenty-four (24) hours a day . . ." 210.1253(6) RSMo. (emphasis added); 13 CSR 35-71.015 (defining LERCFs).

CNSIMI is a legal "person"[1] who "receives children" (in its children's homes and school) in the manner set forth in the regulation. Accordingly, all of the "places, facilities, and homes," **operated by CNSIMI** are covered by this new Missouri regulation.

Defendant defends the regulation only by narrowing it counter-textually. Defendant argues that CNSIMI's recovery programs are not subject to the new requirements because "the homes or facilities that house the Men's and Women's Recovery Programs are not places,

---

[1] A "person" is "an individual, partnership, organization, association, or corporation." 210.1253(5) RSMo.

facilities, or homes that receive children." Doc. 46 at 2. But that conclusion requires completely dropping an unambiguous and expansive element from the regulatory definition.

Specifically, the regulation attaches no significance to whether the adult recovery program homes, indisputably "homes," "places" and "facilities," *themselves* receive children. It asks whether any home, place, or facility is "**operated by any person [CNSIMI, a nonprofit corporation] who receives children . . . .**" 210.1253(6) RSMo. (emphasis added); 13 CSR 35-71.015. In other words, the legal status of "LERCF" is tied to whether a facility's *operator* receives children. This status therefore does not apply facility by facility, but operator by operator. Because CNSIMI "receives children" and cares for them in the way designated by the regulation, then all the "homes, places, and facilities" CNSIMI operates are legally LERCFs.

That this is the only credible interpretation of the regulation is clear from the drafters' use of the personal pronoun "who," rather than "that." If the drafters had intended for interpreters to identify a LERCF or residential care facility based on whether *it*—the facility, place, or home itself—receives children, the drafters would have written "homes, places and facilities, operated by any person, **that** receive children . . . ." Even more directly, the drafters could have deleted the phrase "operated by any person," which is surplusage under the Defendant's interpretation: "homes, places, and facilities that receive children . . . ."

Of course, Plaintiff would not argue that this broad scope is sound. One basis of this lawsuit is that the broad scope of these new background check and notifications provisions is straightforwardly unlawful. It is understandable that the Defendant finds a narrower interpretation more easily defensible and does not even attempt to defend the regulation's actual scope.

In defending a narrower interpretation, Defendant has left the new laws as written undefended. Plaintiff urges the Court to consider whether Defendant's abdication of the regulation

as written supports Plaintiff's argument that the regulation as written in fact lacks legal basis and must be invalidated. At the very least, the Court should reject Defendant's attempt to avoid an uncomfortable lawsuit by asking the Court to adopt a tortured interpretation of the text.[2] [3]

## II. Plaintiff's Count I does not depend upon a private cause of action.

Defendant argues that Plaintiff cannot raise the conflict between federal privacy laws and the State's new regulation because "42 U.S.C. §290dd-2 does not provide a private cause of action that can be enforced via §1983." Doc. 46 at 4 (citing cases). Defendant's cases are indeed uniform in finding that a private person cannot seek damages for a defendant breaching the plaintiff's confidentiality. Plaintiff has not filed a suit for damages, however, nor has it sued under the federal privacy laws.

Rather, Plaintiff argues that it cannot comply with *both* the regulation and federal privacy laws. If Plaintiff complies with the new law and identifies those in the recovery programs, it will face federal criminal charges and fines. 42 U.S.C. 290dd-2(f); 42 U.S.C. 1320d-5, 1320d-6. Further, recovery program participants face criminal charges (210.1283 RSMo.) if they do not subject themselves to background checks (as residents at a LERCF— 210.493(2) RSMo.), which would identify them as program participants.

This is precisely the type of case the Declaratory Judgment Act is designed to address. 10 Fed. Procedure, L. Ed. Declaratory Judgments 23:2 (2007) (purpose of the Declaratory Judgment Act is to enable parties uncertain of their legal rights and obligations to seek a

---

[2] As a distant second choice, Plaintiff would consider consenting on this subpoint to a judgment definitively narrowing the application of this statute in a way that binds the State's enforcement powers. In any case, Plaintiff urges the Court to decline to dismiss Plaintiff's claim in reliance on Defendant's interpretation adopted for the purpose of this litigation, because that would not protect Plaintiff and others from future illegal enforcement.

[3] Even apart from this issue, because CNSIMI is the corporate identity of the adult recovery programs (and the children's homes, for that matter), it is CNSIMI's officers, managers, contractors, employees, and support staff that are subject to the new notification requirements, regardless (in most cases) of whether they have any contact with children, because the recovery programs, for instance, do not independently have such agents. 210.1263 RSMo.

declaration of their rights and settle the controversy before duties are breached); *see also Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (federal court jurisdiction present where state-law claims "implicate significant federal issues").

### III. Plaintiff does not have to wait until Defendant conducts an illegal search and seizure to challenge the regulations that authorize those illegal actions.

Plaintiff's Count IV alleges that the new laws allow the Defendant to conduct warrantless and unreasonable searches and seizures, particularly of children's medical records. Doc. 23 ¶ 155. Instead of defending the constitutionality of the law's authorizations, Defendant says Plaintiff cannot challenge them until Defendant is certain to follow through with illegal searches and seizures.[4] Doc. 46 at 5-6.

Given the clarity of the new laws' requirements and no disavowal of enforcement by Defendant, *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014) (citing absence of disavowal as support for a credible threat of enforcement), Plaintiff does not have to wait to protect its constitutional rights until it faces a state injunction suit or closure of CNSIMI's business. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-129 (2007) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat").

Further, in cases where the challenged law is "recent and not moribund," like the laws at issue here, the standard for showing a credible threat of enforcement is "quite forgiving." *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 14 (1st Cir. 1996) (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 301-02 (1979)). This is because a court presumes that a legislature enacts a statute with the intent that it be enforced.

---

[4] As above, where Defendant declined to defend the full scope of the regulations, *supra* Section I, Plaintiff urges the Court to consider whether the Defendant's failure to defend the search-and-seizure authority granted in the new laws indicates that the laws as written are in fact indefensible, as Plaintiff has alleged.

4

*Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021), as amended (June 23, 2021).[5]

IV. **Although a review of DSS' background check rulings under 536.150 RSMo. is labeled "*de novo*," the process is more deferential than true *de novo* review.**

Defendant correctly points out that Missouri cases have characterized circuit court proceedings under 536.150 RSMo. as *de novo*. Doc. 46 at 10. In *City of Valley Park v. Armstrong*, 273 S.W.3d 504 (Mo. 2009), this characterization is made in comparing 536.150 RSMo. (typically appeals of noncontested cases) to 536.100-140 RSMo. (typically appeals of contested cases). CNSIMI has argued, however, that 536.150 RSMo. does not afford complete *de novo* circuit court review, as provided, for instance, in circuit court review of the decisions of a Child Abuse and Neglect Review Board, which is thoroughly *de novo*. 210.152.6 RSMo.; *Jamison v. Mo. Dept. of Social Services*, 218 S.W.3d 399, 416 (Mo. 2007) (Under 210.152 RSMo., "[a] circuit court must **independently determine** whether a preponderance of the evidence shows that the alleged abuse or neglect occurred." (emphasis added)). Sec. 536.150 RSMo., on the other hand, requires the reviewing court to determine whether the decision of DSS "is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion . . . but the court shall not substitute its discretion for discretion legally vested in [DSS] . . . ."

V. **Plaintiff's right to associate is clearly affected when the State removes members.**

Defendant appears to argue that the right to expressive association only involves being able to refuse certain members. Doc. 46 at 4 ("Plaintiff does not assert that the challenged laws require it to accept anyone as a member unless Plaintiff so chooses."). Having members forcefully removed is no different, however. *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d

---

[5] The Supreme Court "has applied [the principles in *Babbitt*] in a number of cases challenging criminal statutes . . . and in the civil context as well." *Hedges v. Obama*, 724 F.3d 170, 196 (2d Cir. 2013) (internal quotation marks omitted) (citing *MedImmune*, 549 U.S. at 129-30 (concluding that plaintiff need not expose itself to civil liability by breaching royalty agreement)); *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000).

5

525, 535 (8th Cir. 2005) (right to association violated when children illegally removed from school).[6] Freedom of expressive association recognizes the right to include and to exclude.

        Respectfully submitted,

        OTTSEN, LEGGAT AND BELZ, L.C.

By: /s/ Timothy Belz
    Timothy Belz  #MO-31808
    112 South Hanley, Second Floor
    St. Louis, Missouri 63105-3418
    Phone: (314) 726-2800
    Facsimile: (314) 863-3821
    tbelz@olblaw.com

and

Brad L. Blake #MO-38340
Fellows & Blake, L.L.C.
13421 Manchester Road, Suite 105
St. Louis, Missouri 63131
Phone: (314) 725-1600
Facsimile: (314) 725-1609
bblake@fellowsblakelaw.com

Attorneys for CNS International Ministries, Inc.

**Certificate of Service**

The undersigned hereby certifies that the foregoing document was served on all registered parties on this 14th day of September, 2022 using the Court's online filing system.

/s/ Timothy Belz

---

[6] Defendant also states that an individual found to be ineligible for employment at a LERCF "remains free to associate with Plaintiff's members at other locations." Doc. 46 at 5. CNSIMI does not have "other locations."