# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| CNS INTERNATIONAL MINISTRIES, INC., )<br>    Plaintiff, )<br>  v. )<br>ROBERT KNODELL, )<br>    Defendant. )<br>                     ) | Case No. 2:21-cv-00065 |

**DEFENDANT'S SUGGESTIONS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNTS II, V, VII, AND BACKGROUND CHECK RELATED ASPECTS OF COUNT III**

Plaintiff brings as-applied challenges to the constitutional validity of several provisions of the Residential Care Facility Notification Act, Mo. Rev. Stat. §§210.1250 to 210.1286 (RCFNA) and regulations that the Missouri Department of Social Services (DSS) has promulgated in implementing the RCFNA.  This motion for summary judgment addresses: (1) Count II; (2) Count V; and (3) Plaintiff's due process challenges to aspects of the administrative review and appeal processes applicable to background check findings, which the Amended Complaint raises in Counts III and VII.  The challenged provisions do not violate Plaintiff's right to expressive association and do not implicate *Hosanna-Tabor*.  The administrative review and appeal processes applicable to background check findings, which are subject to de novo judicial review under Mo. Rev. Stat. §536.150, satisfy procedural due process.  Defendant is entitled to summary judgment as a matter of law.

## Summary Judgment Standard

Entry of summary judgment is appropriate when the movant has demonstrated that there is an absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In meeting this initial burden, a movant who would not bear the burden of proof at trial must only identify those parts of the record that demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Furthermore, if the movant would not bear the burden of proof at trial, then he is entitled to summary judgment if he shows that the non-moving party has made an insufficient showing on an essential part of his claim. *Id.* " 'The non-moving party may not rely on allegations or denials,' but rather 'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor on more than mere speculation or conjecture.' " *Carter v. Pulaski County Special Sch. Dist.*, 956 F.3d 1055, 1059 (8th Cir. 2020), *quoting Ball v. City of Lincoln, Neb.*, 870 F.3d 722, 727 (8th Cir. 2017) (cleaned up).

## ARGUMENT

### I. The challenged provisions do not violate Plaintiff's right to expressive association (Count II)

"The right to expressive association protects groups from being forced to 'accept members [they do] not desire.' " *Telescope Media Group v. Lucero*, 936 F.3d 740, 760 (8th Cir. 2019). The challenged laws and regulations do not require Plaintiff to accept anyone as a member. The background check requirements, *see* Mo. Rev. Stat. §§210.1263, 210.493, do not force Plaintiff to accept any person as a member. Nor do the notification requirements of the RCFNA. *See* Mo. Rev. Stat. §§210.1259, 210.1262. Defendant is entitled to summary judgment on Count II.

### II. The challenged provisions do not implicate *Hosanna-Tabor* (Count V)

The background check requirements protect children who are particularly vulnerable because they are not living with either parent. *See* Mo. Code Regs. tit. 13, §35-71.015(1)(E). In

2

Count V, Plaintiff asserts that a background check statute and regulation, Mo. Rev. Stat. §210.493 and Mo. Code Regs. tit. 13, §35-71.015, violate the Establishment and Free Exercise Clauses of the federal constitution because a background check may result in an individual being found "ineligible for employment or presence at" Plaintiff's "residential care facility[,]" Ct. Doc. 23 (¶145). See Ct. Doc. 23 at 28-30 (¶¶142, 145-52). Plaintiff contends that *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171 (2012) ("*Hosanna-Tabor*") requires an exception for ministerial employees. See Ct. Doc. 23, ¶144.

The background check requirements, and an individual's potential ineligibility based on background check results, do not violate the Establishment Clause. The Establishment Clause "prevents the Government from appointing ministers," *Hosanna-Tabor*, 565 U.S. at 184. Nothing in any statute or regulation challenged in the Amended Complaint authorizes a government official or agency to select any of Plaintiff's ministers, officers, or ministerial employees.

*Hosanna-Tabor* does not mandate exempting ministerial employees from background check requirements. The question in *Hosanna-Tabor* was whether the Establishment or Free Exercise Clauses barred the Title VII suit of a terminated ministerial employee against the religious entity that had employed her. *Hosanna-Tabor* at 176, 188. The Court concluded that a ministerial exception "grounded in the First Amendment" precluded Title VII from applying "to claims" brought by an individual minister concerning his or her employment relationship with a religious institution, 565 U.S. at 188, more specifically, "an employment discrimination claim brought on behalf of a minister, challenging her church's decision to fire her[,]" *Hosanna-Tabor*, 565 U.S. at 196. In *Hosanna-Tabor* the Court held "only that the ministerial exception bars such a suit. We express no view on whether the exception bars other types of suits," 565 U.S. at 196.

3

In *Hosanna-Tabor,* the Supreme Court "unanimously recognized that the Religion Clauses foreclose certain employment discrimination claims brought against religious organizations." *Our Lady of Guadelupe Sch. v. Morrissey-Berru*, 140 S.Ct. 2049, 2061 (2020). "The constitutional foundation for" the Court's holding in *Hosanna-Tabor* "was the general principle of church autonomy to which we have already referred: independence in matters of faith and doctrine and in closely linked matters of internal government." *Id.*

The First Amendment prohibits government interference with internal matters of church discipline or government, and commits internal debates or controversies to a church's tribunal tasked with deciding such disputes. *Hosanna-Tabor*, 565 U.S. at 187.  In *Hosanna-Tabor*, permitting the "called teacher" to proceed with an employment discrimination lawsuit against the church that had rescinded her call and terminated her employment, *see* 565 U.S. at 179, entailed "government interference with an internal church decision that affects the faith and mission of the church itself." *Id.* at 190.  The Court explained that

> Requiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so, intrudes upon more than a mere employment decision. Such action interferes with the internal governance of the church,

*Hosanna-Tabor*, 565 U.S. at 188.

More recently, in *Our Lady of Guadelupe School*, the Court considered "whether the First Amendment permits courts to intervene in employment disputes involving teachers at religious schools who are entrusted with the responsibility of instructing their students in the faith." 140 S.Ct. at 2055.  The Court stressed that "[t]he First Amendment protects the right of religious institutions 'to decide for themselves, free from state interference, matters of church government as well as faith and doctrine.' " *Our Lady of Guadelupe*, 140 S.Ct. at 2055, *quoting Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952).  The Court

4

had applied that principle in *Hosanna-Tabor* to hold that the First Amendment barred the courts from entertaining a teacher's employment discrimination claim against the religious school where she had taught. *Our Lady of Guadelupe*, 140 S.Ct. at 2055.

The ministerial exception has been recognized as protecting a church's independence in "matters 'of faith and doctrine' " by preserving its authority to supervise and remove ministers "without interference by secular authorities" because "[w]ithout that power, a wayward minister's preaching, teaching, and counseling could contradict the church's tenets and lead the congregation away from the faith." *Our Lady of Guadelupe*, 140 S.Ct. at 2060-61.

The Supreme Court repeatedly emphasized that the constitution bars government intrusion or interference in "matters ' "of faith and doctrine" ' " *Lady of Guadelupe* at 2060, *quoting Hosanna-Tabor* at 186 (quoting *Kedroff*, 344 U.S. at 116).  "The independence of religious institutions in matters of 'faith and doctrine' is closely linked to… independence in " 'matters of church government.' " *Lady of Guadelupe* at 2060, *quoting Hosanna-Tabor* at 186.  "**This does not mean** that religious institutions enjoy a general immunity from secular laws, but it does protect their autonomy with respect to internal management decisions that are essential to the institution's central mission." *Lady of Guadelupe*, 140 S.Ct. at 2060 (emphasis added).

"The 'ministerial exception' was based on this insight." *Id.*  Under the ministerial exception rule, "courts are bound to stay out of employment disputes involving those holding certain important positions with churches and other religious institutions." *Id.*  The case before this Court does not concern an employment dispute.  The RCFNA and the regulations in Mo. Code Regs. tit. 13, §§35-71.010 through 71.300 do not purport to create a private right of action or claim for any employee or official of a residential care facility, nor do they empower any ministerial employee

5

to bring a claim against a church or religious institution. Defendant is entitled to summary judgment on Count V.

> **III.   Plaintiff's procedural due process challenges to the administrative review and appeal processes applicable to background check findings, where de novo judicial review is available, including the due process claims raised in Count VII, fail as a matter of law.**

Under Counts III and VII, Plaintiff brings procedural due process challenges to aspects of the administrative review and appeal processes applicable to background check findings. In order to follow the flow of those processes and avoid unnecessary repetition, Defendant will address those claims together.

The fundamental requirement of due process is the opportunity to be heard at a meaningful time, and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 323 (1976). " '(D)ue process is flexible and calls for such procedural protections as the particular situation demands.' " *Id.* at 334, *quoting Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The administrative review and appeal procedure for the Children's Division's decisions as to an applicant's eligibility or ineligibility under Mo. Rev. Stat. §210.493 are established in Mo. Code Regs. tit. 13, §35-71.015(12). The pre-deprivation administrative process as a whole satisfies due process. The subsequent opportunity for judicial review under Mo. Rev. Stat. §536.150, *see* Mo. Code Regs. tit. 13, §35-71.015(12)(D), meets or exceeds the requirements of procedural due process.

Before any administrative appeal, there is an opportunity for administrative review. *See* §35-71.015(12)(B). A person requesting administrative review of a background check finding may submit "any relevant documents, materials, or information that the requestor wishes to submit in support of the administrative review request[,]" Mo. Code Regs. tit. 13, §35-71.015(12)(B).1.D. "[T]he division will provide a [pre-deprivation] review conference upon written request[,]" Mo. Code Regs. tit. 13, §35-71.015(12)(B)(3).

6

A pre-deprivation hearing need not definitively resolve whether an applicant is eligible or ineligible for employment with a residential care facility, rather, the hearing "should be an initial check against mistaken decisions[,]" *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985).  Procedural due process does not require a full, evidentiary hearing at the initial stage of the administrative review and appeal process. *See id.*

Due process does not require an opportunity to collaterally attack or re-litigate such matters as convictions, guilty pleas, or child abuse and neglect findings as part of pre-deprivation process. Moreover, the language of Mo. Code Regs. tit. 13, §35-71.015(12), which provides for pre-deprivation administrative review, does not preclude the requestor from collaterally attacking or re-litigating the accuracy of information in a state's registry or the validity of a conviction or guilty plea at that stage of the process.

In Count VII, Plaintiff asserts that, under 28 C.F.R. §50.12, officials determining an applicant's suitability for employment should not deny employment based on information in the applicant's FBI identification record until s/he "has been afforded a reasonable time to correct or complete the record, or has declined to do so[,]" and the applicant shall be provided with the opportunity to "challenge the accuracy of, the information contained in the FBI identification record." Ct. Doc. 23 at 33, ¶165.  An FBI identification record may include dispositions of arrests that result in criminal charges. *See* 28 C.F.R. §16.31; *see Rompilla v. Beard*, 545 U.S. 374, 385 n. 3 (2005).

Certain criminal convictions or guilty pleas will render an applicant ineligible for employment at a LERCF. *See* Mo. Rev. Stat. §210.493.11(5).  Before they are fingerprinted, applicants for background checks required by Mo. Rev. Stat. §§210.493 or 210.1263 are given written information about how to challenge the accuracy or completeness of their FBI criminal

7

history record, either by contacting the FBI directly, or by sending a challenge "to the agency that contributed the questioned information to the FBI." Def.'s Statement of Facts, ¶¶1-3.

An applicant may direct a challenge to the accuracy or completeness "of any entry on his/her record to the FBI, Criminal Justice Information Services (CJIS) Division" or to the agency that "contributed the questioned information[,]" 28 C.F.R. §16.34.  DSS does not submit any criminal case dispositions (e.g., convictions or guilty pleas) to MULES/CJIS. Def.'s Statement of Facts, ¶¶ 4, 9.  If a background check applicant wanted to challenge the accuracy of criminal case disposition information that had been submitted to the FBI's CJIS database, that challenge would need to be directed to the agency that had "contributed the questioned information," 28 C.F.R. §16.34, not DSS.

Returning to the due process that Defendant provides to background check applicants, the " 'procedural requisites for' " a pre-deprivation " 'hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.' " *Loudermill*, 470 U.S. at 545, *quoting Boddie v. Connecticut*, 401 U.S. 371, 378 (1971).  Subsequent administrative appeal and judicial review opportunities are afforded to applicants and others aggrieved by background check findings.  If the aggrieved requestor of administrative review is not a background check applicant, after the administrative review, the requestor may seek judicial review from a circuit court under Mo. Rev. Stat. §536.150. Mo. Code Regs Ann. tit. 13, §35-71.015(12)(D)2.  "The decision upon administrative review shall be the final decision of the department as to any person that is not an applicant." *Id.*

For an applicant, the Department renders its final decision after the administrative appeal process in §35-71.015(12)(C). Mo. Code Regs Ann. tit. 13, §35-71.015(12)(D)1.  The applicant

8

"may seek judicial review" of the department's final decision "as provided in section 536.150, RSMo." Section 35-71.015(12)(D)2.

A §536.150 action is an original action in which the plaintiff "tries his or her case to the court." *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 506, 507 (Mo. banc 2009). The circuit court conducts the hearing as an original action. *Id.* at 506. The court "conducts a *de novo* review in which it hears evidence on the merits" and makes the record. *Id.* at 508. The circuit court "hears evidence, determines facts, and adjudges the validity of the agency decision." *Id.* at 506. Section 536.150 provides several forms of relief, including injunctive relief (such as a temporary restraining order). *See* Mo. Rev. Stat. §536.150.1.

"Section 536.150 authorizes a *de novo* post-deprivation evidentiary hearing before a Missouri circuit court, which determines the evidence and 'on the facts as found adjudges the validity of the agency decision.' " *Birkenholz v. Sluyter*, 857 F.2d 1214, 1218 (8th Cir. 1988), *quoting Phipps v. Sch. Dist. of Kansas City*, 645 S.W.2d 91, 95 (Mo. App. W.D. 1982). Section 536.150 review affords Plaintiff and background check applicants due process by providing "an opportunity to be heard at a meaningful time and in a meaningful manner… ." *SH3 Health Consulting, LLC v. Page*, 459 F.Supp.3d 1212, 1226 (E.D. Mo. 2020). Section 536.150 review provides a sufficient remedy that comports with Plaintiff's and background check applicants' rights to procedural due process. *See Birkenholz*, 857 F.2d at 1218.

Finally, Count III contains a conclusory allegation that individuals whose "names have been placed on a central registry merely on the basis of probable cause or reasonable suspicion, regardless of whether they obtained a due process hearing… [or] had *de novo* appeal rights in a court" would be ineligible to remain at Heartland. Ct. Doc. 23 at 26-27 (¶128); *see* Mo. Rev. Stat. §210.493.11(4). Plaintiff has not identified any individual for whom this would be an issue.

9

Further, on November 4, 2022, the Children's Division filed a proposed rule with the Missouri Secretary of State that includes the following:

> (3) The children's division shall not use or disseminate a finding in the central registry to conduct a background check for employment with a third party or to find a person ineligible for employment with a third party or presence at a residential care facility or child placement agency, unless and until the finding is final and –
>
> (A) the finding has been substantiated by court-adjudication, by at least a preponderance of the evidence standard;
>
> (B) the finding has been upheld by a preponderance of the evidence standard;
>
> (C) the person has waived administrative review or judicial review; or
>
> (D) the person has been found guilty of or pleaded guilty to an offense enumerated in sections 210.110(3) or 210.118 RSMo.

Def.'s Statement of Facts, ¶¶ 12, 13. The language of the proposed rule quoted above satisfies— and 3(D) exceeds—"the minimum standard of proof in civil cases[,]" *see Jamison v. Dept. of Soc. Servs, Div. of Family Servs*, 218 S.W.3d 399, 416 (Mo. banc 2007) (citing cases).

The administrative review and appeal process, with subsequent de novo judicial review, provide procedural due process to background check applicants and parties aggrieved by DSS's decisions concerning eligibility or ineligibility for employment or presence at a LERCF as a result of a background check.

## Conclusion

In light of the foregoing, Defendant respectfully requests that the Court grant summary judgment in its favor on all matters addressed herein, including Counts II, V, and VII.

Respectfully submitted,

**ERIC S. SCHMITT**
Attorney General

/s/ *Emily A. Dodge*
Emily A. Dodge, Mo Bar #53914

Assistant Attorney General
P.O. Box 899
Jefferson City, MO  65102-0899
Tel: (573) 751-7344
Fax: (573) 751-9456
Email: Emily.Dodge@ago.mo.gov
ATTORNEYS FOR DEFENDANT

### CERTIFCATE OF SERVICE

I hereby certify that on the 7th day of November, 2022, the foregoing was filed and served via the Court's electronic filing system upon all counsel of record.

/s/ *Emily A. Dodge*
Emily A. Dodge
Assistant Attorney General