IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

CNS INTERNATIONAL MINISTRIES, INC., )
)
    Plaintiff, )
)
v. )  Case No. 2:21-CV-65 RLW
)
ROBERT KNODELL, Acting Director of the )
Missouri Department of Social Services, )
)
    Defendant. )

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNTS IV, VI, AND NON-BACKGROUND-CHECK-RELATED ASPECTS OF COUNT III**

**I. COUNT III: Defendant is not entitled to summary judgment on Plaintiff's Count III because the challenged laws' threats of child removal violate Plaintiff's right to procedural due process.**

Penalties for violation of Missouri's new notification requirements include "injunctive relief to cease the operation of the residential care facility and provide for the appropriate removal of the children from the residential care facility . . . ." § 210.1271(1), RSMo. There is no requirement in § 210.1271(1) that notice to and a hearing for CNSIMI or its members precede such injunctive relief. *See also* § 210.1268, RSMo.

Another new provision, § 210.143, governs claims of child abuse or neglect at LERCFs, such as CNSIMI. That process requires that "the children's division," "law enforcement," or a "prosecuting or circuit attorney" petition the circuit court for an order directing a facility that is the subject of an investigation of allegations of child abuse or neglect "to present the child at a place and time designated by the court to a children's division worker for an assessment of the child's health, safety, and well-being." § 210.143, RSMo. The child can then be held for "assessment" for up to 72 hours. § 210.143(3), RSMo.

The new statutes provide no due process for the child, CNSIMI, or the parents prior to the 72-hour removal. If the child is held for assessment for more than 72 hours, there must be "a hearing with **attempted** notice to the facility and to the parents or guardian and with due process for all parties." § 210.143(3), RSMo. (emphasis added). Only attempted notice is required, even though the statutory scheme gives the State of Missouri Children's Division contact information for virtually all leadership personnel at a facility, and despite the fact that the Children's Division knows how and where to serve CNSIMI and its agents.

The new regulations further authorize removals of students without notice based on only a "reasonable belief" standard:

> The petition and order may be made on an *ex parte* basis if it is reasonable to believe that providing notice may place the child at risk for further abuse or neglect, if it is reasonable to believe that providing notice may cause the child to be removed from the state of Missouri or the jurisdiction of the court, or if it is reasonable to believe that evidence relevant to the investigation will be unavailable if the *ex parte* order is not entered.

§ 210.143(5), RSMo.

If a facility such as Heartland happens to be served with "a subpoena, petition, or order," the new laws provide for some limited attempts at due process:

> Any person served with a subpoena, petition, or order under this section shall not be required to file an answer, but may file a motion for a protective order or other appropriate relief. The motion shall be filed at or before the time for production or disclosure set out in the subpoena or order. The motion shall be in writing, but it may be informal and no particular form shall be required. The clerk shall serve a copy of the motion on the director of the children's division and any agency who applied for the order. The court shall expedite a hearing on the motion and shall issue its decision no later than one business day after the date the motion is filed. The court may review the motion in camera and stay implementation of the order once for up to three days. The in camera review shall be conducted on the record, but steps shall be taken to protect the identity of the child. Any information that may reveal the identity of a hotline reporter shall not be disclosed to anyone in any proceeding under this subsection unless otherwise allowed by law.

§ 210.143.6, RSMo. However, it is unclear under what circumstances a facility would be served with "a subpoena, petition, or order," given that *ex parte* applications are allowed.[1]

None of these new provisions provides adequate due process for removing a child from Heartland, the standard for which was firmly articulated years ago by Judge Webber of the U.S. District Court for the Eastern District of Missouri, after the State wrongfully removed 115 students from Heartland: the State must provide notice and a hearing prior to removing any child from Heartland unless there is reasonable cause to believe that that particular child is "in imminent danger of suffering serious physical harm, threat to life from abuse or neglect, or has been sexually abused or is in imminent danger of sexual abuse." *Heartland Academy Community Church v. Waddle,* 317 F. Supp. 2d 984, 1111 (E.D. Mo. 2004), *aff'd, Heartland Academy Community Church v. Waddle,* 427 F.3d 525 (8th Cir. 2005).[2] The State's attempt to institute a new statutory scheme falls well short of this clear due process standard, ignoring the directly applicable *Waddle* holding.[3]

---

[1] Defendant defends the *ex parte* applications by noting that a subsequent hearing is required under Section 210.1271.2. Doc. 55 at 7. But, again, only *attempted notice* of such a hearing to the parties, and not *actual notice*, is required. § 210.1271.2, RSMo.

[2] Compare § 210.143 RSMo. Under this new statute, the Children's Division, law enforcement, or a prosecuting or circuit attorney may petition the court for an order directing an LERCF which is the subject of an investigation of child abuse or neglect to produce a child "at a place and time designated by the court to a children's division worker for an assessment of the child's health, safety, and well-being." 210.143.1. A child can be held in investigative ("assessment") detention for up to 72 hours before being returned to the LERCF or his/her parents or guardians. 210.143.3 RSMo. The statute allows courts little latitude. "The court shall enter an order" if the following criteria are met: "(1) . . . there is reasonable cause to believe that the child has been abused or neglected and the residential care facility does not voluntarily provide access to the child; (2) the assessment is reasonably necessary for the completion of an investigation or collection of evidence; and (3) doing so is in the best interest of the child." This order can be expanded to "other children in the care of the residential care facility if the court finds there is reasonable cause to believe that such children may have been abused or neglected." 210.143.4 RSMo. *Ex parte* process is permissible for any one of the following reasons: (1) providing notice may place the child at risk of further abuse or neglect; (2) if it is reasonable to believe that providing notice may cause the child to be removed from the state of Missouri or the jurisdiction of the court or (3) it is reasonable to believe that evidence relevant to the investigation will be unavailable if the *ex parte* order is not entered. 210.143.5 RSMo.

[3] Defendant's brief also ignores the *Waddle* case, instead citing *Mitchell v. Dakota Cnty. Soc. Servs*., 959 F.3d 887 (8th Cir. 2020), a case about removing a child from custodial parents before having a hearing.

3

Defendant's primary defense to these claims is that Plaintiff's concerns are a "hypothetical" removal of students and cessation of operations, and Plaintiff therefore "has not demonstrated 'standing for prospective relief' because Plaintiff cannot show that it is experiencing 'an immediate threat of injury.'" Doc. 55 at 3, 5-6. This argument is not at its strongest against Heartland, since Heartland has already been the victim of a wrongful mass removal of students by the State. *Heartland Academy Community Church v. Waddle*, 317 F. Supp. 2d at 1111. The declaratory relief and permanent injunction entered by Judge Webber remain in full force and effect today against Michael Waddle in his official capacity, *id.* at 1089, which binds the State of Missouri.

Moreover, Defendant elsewhere admits that there is a live controversy in this case by finding Heartland already in default of the new requirements: "Plaintiff does not have a protected property interest in continuing to operate a LERCF at Heartland" because Plaintiff "has not filed a notification containing all information required by Mo. Rev. Stat. §210.1262 and Mo. Code Regs tit. 13, §35-71.300(5)." Doc. 55 at 7. The Defendant is arguing that the only way the Plaintiff can qualify to vindicate its constitutional rights raised in this litigation is to surrender them. Since Defendant is on the record citing Heartland for non-compliance, any and all repercussions of not complying with the new laws, including cessation of the LERCF and removal of students, are on the table.

Given the clarity of the new laws' requirements and no disavowal of enforcement by Defendant, *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014) (citing absence of disavowal as support for a credible threat of enforcement), Plaintiff does not have to wait to protect its constitutional rights until it faces a state injunction suit or closure of CNSIMI's business. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-129 (2007) ("[W]here

threatened action by government is concerned, we do not require a plaintiff to expose himself to

liability before bringing suit to challenge the basis for the threat"); *Telescope Media Group v.*

*Lucero*, 936 F.3d 740, 749 (8th Cir. 2019) (A plaintiff such as Heartland "need not wait for an

actual prosecution or enforcement action before challenging a law's constitutionality.").

Further, in cases where the challenged law is "recent and not moribund," like the laws at

issue here, the standard for showing a credible threat of enforcement is "quite forgiving." *New*

*Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 14 (1st Cir. 1996)

(citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 301-02 (1979)). This is

because a court presumes that a legislature enacts a statute with the intent that it be enforced.

*Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021), as amended (June 23, 2021).[4]

II.     **COUNT IV: Defendant is not entitled to summary judgment on Plaintiff's Count IV because the challenged laws' threats of child removal violate constitutionally protected parental rights to direct the upbringing and education of one's children.**

Entities that conduct religious schools, such as CNSIMI, are protected by the Due

Process Clause of the Fourteenth Amendment from a government's unwarranted interference

with the rights of parents, and the rights of the school selected by the parents, to direct the

upbringing and education of the parents' children. *Pierce v. Society of Sisters,* 268 U.S. 510

(1925). Parents and guardians, as a part of their liberty, may direct the education of their

children, including religious education, by selecting where their children will be brought up and

educated. Under *Pierce*, CNSIMI has standing to assert those rights.

Violations of the State's new notification requirements, which would require CNSIMI to

inform the State of the identities of those in the drug and alcohol recovery programs, among

---

[4] The Supreme Court "has applied [the principles in *Babbitt*] in a number of cases challenging criminal statutes . . . and in the civil context as well." *Hedges v. Obama*, 724 F.3d 170, 196 (2d Cir. 2013) (internal quotation marks omitted) (citing *MedImmune*, 549 U.S. at 129-30 (concluding that plaintiff need not expose itself to civil liability by breaching royalty agreement)); *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000).

other things, are remedied by "injunctive relief to cease the operation of the residential care facility and provide for the appropriate removal of the children from the residential care facility . . ." § 210.1271.1, RSMo. This threat of removals and disruption of CNSIMI's operations without due process of law (see discussion of Count III, *supra*) burdens the parental rights of those who have entrusted their children to CNSIMI for formation.

Again, Defendant objects only that a removal and court-ordered cessation of operations at Heartland is merely hypothetical. Doc. 55 at 9-10. As stated *supra*, Heartland, its students, and their parents have suffered a devastating mass removal at the hands of misguided (or worse) state agents before, so their vigilance to defend their community from unjust incursions is not paranoia. And Defendant has stated that it believes Plaintiff to already be in violation of disclosure laws, meaning its allegedly hypothetical remedies are ready for deployment. There is certainly no reason why Heartland should wait for its residents to be interfered with before testing the constitutionality of such a penalty,[5] especially when the new law ignores an existing legal standard for removals. *Waddle,* 317 F. Supp. 2d at 1111 (finding removal of a child from Heartland unconstitutional without first providing notice and a hearing unless there is reasonable cause to believe that such a particular child being removed is "in imminent danger of suffering serious physical harm, threat to life from abuse or neglect, or has been sexually abused or is in imminent danger of sexual abuse.").[6]

Defendant also argues that Heartland could simply *stop being a boarding school*:

> in the hypothetical event that a court would issue an order granting such relief, that would not stop Plaintiff from operating a private school. Plaintiff would no longer be able to operate a boarding school at Heartland in that scenario, but "children of staff and from the community

---

[5] Plaintiff incorporates by reference the pre-enforcement standing caselaw found in Section I, *supra*.

[6] Again, the declaratory relief and permanent injunction entered by Judge Webber remain in full force and effect today against Michael Waddle in his official capacity, and therefore against the State of Missouri. *Waddle*, 317 F. Supp. 2d at 1089, 1110.

at large" (see Ct. Doc. 23 at 3, ¶9) could continue to attend Plaintiff's K-12 school. If Plaintiff's LERCF were ordered to cease operations, children previously residing at the LERCF could still attend Plaintiff's school, but they would have to stay the night somewhere else. If those children did not reside with their parents or guardians, or in foster homes, *see* Mo. Code Regs tit. 13, §35-71.015(1)F, they could live in homes that were not owned or operated by Plaintiff, or "in private homes whose owners are" not "contracted with, associated or affiliated with the institution," §35-71.015(1)(B).

Doc. 55 at 11. Defendant cannot justify its laws by saying that they would apply constitutionally—*if* Plaintiff changes its lawful operations dramatically.

By purporting to establish a new, low standard for removals of children and the shutdown of CNSIMI, Defendant is violating parents' rights to send their children to Heartland and direct their upbringing. Thus, Count IV must survive Defendant's motion. *See Waddle,* 317 F. Supp. 2d at 1100-01 (finding that the defendant "violated Plaintiffs' right to family integrity when he removed the children on October 30, 2001, without notice or an opportunity to be heard and in the absence of exigent circumstances").

### III.    COUNT VI: Defendant is not entitled to summary judgment on Plaintiff's Count VI because the challenged laws allow child removals and seizures of medical records in unreasonable, warrantless searches in violation of the Fourth Amendment.

Plaintiff alleges that Defendant's new rules and regulations expressly allow the State to conduct warrantless and unreasonable searches and seizures. Doc. 23 ¶ 155. As discussed *supra,* the new laws allow Defendant to conduct child removals, which are seizures*,* without due process of law. The new laws also present other Fourth Amendment problems.

For example, the regulations require CNSIMI to gather and keep medical records for children, and allow the Department of Social Services, without any substantive reason and without a warrant, "to inspect the medical records." 13 CSR 35-71.300(5)(D)(8). Similarly, the Department of Social Services can at any time demand:

> a full census and demographic information of children at the residential care facility, including parental or other guardian contact information and a full list of officers, managers,

contractors, volunteers with access to children, employees, and other support staff of the
residential care facility; any person eighteen years of age or older who resides at or on the
property of the residential care facility; and any person who has unsupervised contact with a
resident of the residential care facility.

§ 210.1264, RSMo. These appropriations of confidential information by the State are warrantless

searches in violation of the Fourth Amendment, and the failure by CNSIMI to accede to these

unconstitutional demands is grounds for closure of CNSIMI. § 210.1271(1), RSMo.

This is not the first time Heartland has been forced to complain about unlawful misuse of

confidential information by Missouri officials, nor is it difficult to understand why Heartland is

deeply concerned with official abuse of inappropriately accessed student and family information

to injure its students and their families. In *Heartland Academy Community Church v. Waddle,*

Judge Webber upbraided the Missouri juvenile officer who unlawfully executed a search warrant

to gather demographic information of children and parental contact information, then publicly

disclosed that confidential information. Judge Webber catalogued the disclosures as follows:

The full names of juveniles were disclosed in the probable cause report (Pl.ex. 85–A).
Juveniles are identified by their conduct. At paragraph 16, a boy is classified as taking a gun
to school to kill another child. At paragraph 17, another youth is described as being in trouble
with drugs and as having committed theft and battery. Paragraph 18 refers to a child
described as being educationally delayed or mentally handicapped. At paragraph 21, a boy is
reported to have had sex with his adopted sister. At paragraph 22, a boy is reported to have
been arrested thirty times, having been in possession of crack cocaine, and in possession of
an altered weapon. Mr. Waddle's letter to parents, sent because he said he was concerned
about protecting children, advises them, to bolster his position that the children were at risk,
to refer to unlawfully disclosed juvenile records. He encourages parents to remove their
children from the only successful placement many of them ever had. Sheriff Parrish's
probable cause statement contained unlawfully disclosed, personal, embarrassing
information. Mr. Waddle admits that he could not lawfully disclose this information. He did
nothing to correct this unlawful disclosure of protected information until someone at
Heartland made him aware of the need to take action. He agrees that this disclosure was not
in the best interests of the children. His explanation is that he was not responsible for what
the sheriff or prosecutor did.

317 F.Supp.2d at 1021.

8

Following its theme, Defendant primarily defends the Fourth Amendment claim by arguing that enforcement by Defendant is speculative. Defendant refers the Court to its pre-enforcement analyses in sections I and II, *supra*.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that Defendant's Motion for Summary Judgment on Counts IV, VI and non-background-check-related aspects of Count III be denied.

Respectfully submitted,

OTTSEN, LEGGAT AND BELZ, L.C.

By:  /s/ Timothy Belz
   Timothy Belz  #MO-31808
   112 South Hanley, Second Floor
   St. Louis, Missouri 63105-3418
   Phone: (314) 726-2800
   Facsimile: (314) 863-3821
   tbelz@olblaw.com

   and

   Brad L. Blake #MO-38340
   Fellows & Blake, L.L.C.
   13421 Manchester Road, Suite 105
   St. Louis, Missouri 63131
   Phone: (314) 725-1600
   Facsimile: (314) 725-1609
   bblake@fellowsblakelaw.com

   Attorneys for CNS International Ministries, Inc.

## Certificate of Service

The undersigned hereby certifies that the foregoing document was served on all registered parties on this 7th day of December, 2022 using the Court's online filing system.

/s/ Timothy Belz