**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| CNS INTERNATIONAL | ) | |
| MINISTRIES, INC., | ) | |
|       Plaintiff, | ) | |
|   v. | ) | Case No. 2:21-cv-00065 |
| ROBERT KNODELL, | ) | |
|       Defendant. | ) | |
| | ) | |
| | ) | |

## <u>DEFENDANT'S LEGAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

ARGUMENT ...................................................................................................................2

    A.    Plaintiff misreads the legislature's definition of residential care facility. ...............2

    B.    This Court lacks subject matter jurisdiction over Count I, and Count I fails on the

           merits.................................................................................................................4

    C.    The challenged provisions do not violate expressive association...........................7

    D.    Plaintiff is not entitled to summary judgment on its procedural due process

           claims. .............................................................................................................10

           1.    Mo. Rev. Stat. §210.1271 ........................................................................10

           2.    Mo. Rev. Stat. §210.143 .........................................................................12

           3.    The administrative review and appeal process for background check

                findings, with subsequent judicial review under Mo. Rev. Stat. §536.150,

                satisfies procedural due process..............................................................16

    E.    Plaintiff is not entitled to summary judgment on Count IV...................................18

    F.    Plaintiff is not entitled to summary judgment under *Hosana-Tabor.* ....................19

    G.    Plaintiff is not entitled to summary judgment on the Fourth Amendment claims

           pled in the Amended Complaint (Count VI).........................................................21

    H.    Plaintiff is not entitled to summary judgment on Count VII. ...............................23

CONCLUSION...........................................................................................................25

## ARGUMENT

For the reasons stated herein, Plaintiff has not met its burden of establishing the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Fed. R. Civ. P. 56(c). Accordingly, this Court should deny Plaintiff's motion for summary judgment.

### A.  Plaintiff misreads the legislature's definition of residential care facility.

The Residential Care Facility Notification Act ("RCFNA"), Mo. Rev. Stat. §§210.1250 to 210.1286, defines "residential care facility" to mean

> **any place, facility, or home** operated by any person who receives children who are not related to the operator and whose parent or guardian is not a resident of the same facility and **that provides such children with** supervision, care, lodging, and maintenance for twenty-four hours a day, with or without transfer of custody.

Mo. Rev. Stat. §210.1253(6). "The context in which a word is used determines which of the word's ordinary meanings the legislature intended." *Gross v. Parson*, 624 S.W.3d 877, 885 (Mo. banc 2021). The legislature's definition of "residential care facility" focuses on the "place, facility, or home… that provides" to children not living at the place, facility, or home with their parents "supervision, care, lodging, and maintenance." A "facility" is "something (as a hospital, machinery, plumbing) that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end." *Webster's Third New Int'l Dictionary* 812-13 (1993). A "place" is "a building or locality used for a special purpose < ~ of amusement> < ~ of worship> …" *Id.* at 1727; *see Moon Shadow, Inc. v. Dir. of Revenue*, 945 S.W.2d 436, 437 (Mo. banc 1997) (building was not a place of amusement because the activities at issue did not occur there).

Plaintiff misreads the legislature's definition of residential care facility and DSS's definition of LERCF, *see* Mo. Code Regs. tit. 13, §35-71.015(1)(F). Plaintiff's LERCF does not consist of Heartland's entire campus. Plaintiff says that it receives children, so all places, facilities,

and homes that Plaintiff operates are a LERCF.  Plaintiff's interpretation is contrary to the legislative intent expressed in the plain language of Mo. Rev. Stat. §210.1253(6), as well as DSS's interpretation and application of the statute.  " 'The interpretation and construction of a statute by an agency charged with its administration is entitled to great weight.'" *Tuttle v. Dobbs Tire & Auto Ctrs, Inc.*, 590 S.W.3d 307, n. 12 (Mo. banc 2019), *quoting Mercy Hosps. E. Cmtys. v. Mo. Health Facilities Review Comm.*, 362 S.W.3d 415, 417 (Mo. banc 2012).

Based on the information provided by Plaintiff, DSS would not consider the Men's Recovery Program or the Women's Recovery Program or the housing for participants in those programs part of the LERCF operated by Plaintiff on Heartland's campus. See Def.'s Add'l Mat. Facts, ¶1.  The Men's Recovery Program and Women's Recovery Program are separate from the residential care program for boys and girls, Heartland Children and Youth Home (HCYH).  The Men's and Women's Recovery Programs and their housing facilities are not operated to provide care for children, and Plaintiff has presented no evidence that the residents or personnel from the Men's Recovery Program or Women's Recovery Program have a role in the care and treatment of the children served by HYCH.   Plaintiff did not list the publicly available addresses for the Men's Recovery Program or the Women's Recovery Program as the LERCF's address on Plaintiff's notification form. Def.'s Add'l Mat. Facts, ¶2.  The Men's Recovery Program participants reside in a different county, separated by a lake from the children.

Plaintiff listed the street address for HYCH under the Residential Care Facility Information section at the top of Plaintiff's LERCF notification form. Def.'s Add'l Mat. Facts, ¶¶5, 7.  Plaintiff marked the "boarding school" box under "type of agency." Id., ¶6.  The children in HYCH attend Heartland Christian Academy (HCA). Id., ¶9.  Plaintiff's LERCF notification form indicates that HCA is part of Plaintiff's LERCF. Id., ¶10.  Plaintiff listed HCA teachers, staff, and administrators,

3

including the Head of School and Dean of Students, as residential care facility staff. Def.'s Add'l Mat. Facts, ¶12.

Heartland Christian College is not identified as part of Plaintiff's LERCF on the LERCF notification form. Id., ¶14.  There is no evidence that any child in HYCH attends Heartland Christian College.  Heartland Community Church is not identified as part of Plaintiff's LERCF on the LERCF notification form. Id., ¶15.  DSS would not consider Heartland Community Church part of Plaintiff's LERCF unless church facilities housed children served by the LERCF and personnel from the church played a direct role in the care and treatment of children served by Plaintiff's LERCF. Id., ¶16.  The evidence in the record does not indicate that Heartland Community Church or Heartland Christian College are part of Plaintiff's LERCF.

**B.     This Court lacks subject matter jurisdiction over Count I, and Count I fails on the merits.**

This Court lacks subject matter jurisdiction over the claims asserted in Count I because 42 U.S.C. §290dd-2 does not provide a private right of action.  Every Circuit that has considered the question has concluded that §290dd-2 does not create a private right of action. *Chapa v. Adams*, 168 F.3d 1036, 1038 (7th Cir. 1999); *Laster v. CareConnect Health Inc.*, 852 Fed. Appx. 476, 478 (11th Cir. 2021); *Ellison v. Cocke Cty.*, 63 F.3d 467, 470, 471 (6th Cir. 1995).  "The 'legislative scheme' clearly leaves no place for suits by private plaintiffs." *Ellison* at 471.  When the plaintiff "brings a claim under a federal statute that does not authorize a private right of action, the statute will not support jurisdiction under §1331." *Cross v. Fox*, 23 F.4th 797, 800 (8th Cir. 2022).

42 U.S.C. §290dd-2 does not satisfy the jurisdictional criteria of 28 U.S.C. §1343.  Section 290dd-2 does not provide "for the protection of civil rights" (*see* 28 U.S.C. §1343(a)(4)), create an enforceable "right, privilege, or immunity" (*Doe v. Broderick*, 225 F.3d 440, 447, 449 (4th Cir. 2000), *quoting Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 423

(1987)), or provide "for the equal rights of all citizens or persons within the jurisdiction of the United States[,]" 28 U.S.C. §1343(a)(3).

Multiple Circuits have concluded that §290dd-2 does not confer a personal right, privilege, or immunity enforceable through Section 1983. *Ellison*, 63 F.3d at 471-72; *Schlosser v. Kwak*, 16 F.4th 1078, 1082 (2nd Cir. 2021); *Broderick*, 225 F.3d at 447, 449.  Though the Eighth Circuit has not addressed this specific question, "it is well-established that 42 U.S.C. §290dd-2 does not provide a private cause of action that can be enforced via §1983[.]…" *Reynolds v. MU Health Care*, 2020 WL 4905545 at *2 (W.D. Mo. Aug. 20, 2020).  "[T]he rationale of *Chapa* [*v. Adams*, 168 F.3d 1036 (7th Cir. 1999)] and *Doe* [*v. Broderick*, 225 F.3d 440 (4th Cir. 2000)] have been used by the Eighth Circuit to conclude[,]" in *Frison v. Zebro*, 339 F.3d 994, 999 (8th Cir. 2003), that 18 U.S.C. §912, "does not confer a private right of action." *Giroux v. Bear*, 2017 WL 1082396 at *3 (D. S.D. Mar. 22, 2017).  42 U.S.C. §290dd-2 establishes a criminal penalty for violations. *See* 42 U.S.C. §290dd-2(f); *Chapa*, 168 F.3d 1036 (7th Cir. 1999); *Schlosser*, 16 F.4th at 1083.

Moreover, the notification and background check requirements of the RCFNA and implementing regulations do not require Plaintiff to disclose (1) records of the identity of any recovery/drug treatment program participant or (2) the fact that any individual is participating or has participated in a recovery/drug treatment program, has or has had a substance abuse disorder, or has ever been referred for treatment for a substance abuse disorder.

42 U.S.C. §290dd-2(a) provides in pertinent part that

> Records of the identity of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse disorder education… treatment, rehabilitation, or research, which is… regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e), be confidential and be ***disclosed*** only for the purposes and under the circumstances expressly authorized under subsection (b).

42 U.S.C. §290dd-2(a) (double emphasis added).

5

42 U.S.C. §290dd-2(g) authorizes the Secretary of the United States Department of Health and Human Services to promulgate regulations "to carry out the purposes of" 42 U.S.C. §290dd-2, including "definitions," 42 U.S.C. §290dd-2(g).  The Secretary has defined "disclose" to mean:

> …to communicate any information identifying a patient as being or having been diagnosed with a substance use disorder, having or having had a substance use disorder, or being or having been referred for treatment of a substance use disorder either directly, by reference to publicly available information, or through verification of such identification by another person.

42 C.F.R. §2.11.

The Men's and Women's Recovery Programs are not part of Plaintiff's LERCF.  The notification provisions do not require Plaintiff to "disclose" the identity or records of the identity of any patient who has been referred for substance abuse disorder treatment, has, or has had, a substance abuse disorder within the meaning of 42 C.F.R. §2.11 or 42 U.S.C. §290dd-2(a). *See* Mo. Rev. Stat. §210.1262; Mo. Code Regs. tit. 13, §35-71.300 5), (5)(D).  DSS's notification form requires a LERCF to list the "job title/role" of "all staff members, volunteers, and any individual eighteen (18) years or older who reside at or on the property of the residential care facility…".  Def.'s Add'l Mat. Facts, ¶27.  Listing a staff member's job title or role would not communicate if s/he has ever been referred for substance abuse disorder treatment, has, or ever had a substance abuse disorder.  For non- "staff members," someone's "role" could simply be listed as "volunteer" or individual 18 years or older residing at (or on the property of) the LERCF.  That would not "disclose" or communicate information that would identify an individual as "being or having been diagnosed with a substance use disorder, having or having had a substance use disorder, or being or having been referred for treatment of a substance use disorder… ." 42 C.F.R. §2.11.

Plaintiff's reliance upon *In re Employment Records of John Does Employed by Sharpe Holdings ("Sharpe")*, 4:17MC238 RLW, 2017 WL 6547738 (E.D. Mo. 2017), denying the U.S.

Secretary of Labor's Application for Order Authorizing the Disclosure of Patient Records (Ct. Doc. 1), is misplaced.  The Secretary had requested "an Order allowing the disclosure of employment records that… will disclose the identities of individuals who participated or are participating in a drug and alcohol rehabilitation program, as well as the disclosure of participant identities for the purposes of interviewing them." *Sharpe*, Ct. Doc. 1 at 1.  The Secretary conceded that producing payroll records would "necessarily reveal the identities of" Heartland's recovery program participants "[b]ecause deductions were taken from" their "pay that were not taken from other employees." *Sharpe*, Ct. Doc. 1 at 7.  The Secretary insisted upon disclosure of the identities of all employees to whom the pay records belonged, claiming that "Wage and Hour needs to speak with as many [Recovery Program] participants as it can" (*Sharpe*, Ct. Doc. 1 at 8).

 The notification provisions, Mo. Rev. Stat. §210.1262 and Mo. Code Regs. tit. 13, §35-71.300, do not require a "disclosure" of information that is confidential under §290dd-2.  DSS is not seeking disclosure of records that are confidential under §290dd-2.

Mo. Rev. Stat. §§210.493 and 210.1263 and Mo. Code Regs tit. 13, §35-71.015 do not require Plaintiff to "disclose" any information that is confidential under §290dd-2.  Individuals subject to the background check requirements "shall submit fingerprints and any information that the department requires to complete the background checks," Mo. Rev. Stat. §210.493.1; §35-71.015(1)(A), (6).  Neither Mo. Rev. Stat. §210.493 nor Mo. Code Regs tit. 13, §35-71.015 require Plaintiff to submit any information.

### C.    The challenged provisions do not violate expressive association.

In II.A., Plaintiff argues that it must disclose the names of recovery program participants on the LERCF notification form.  As previously explained, Plaintiff is mistaken.  Missouri law

does not require recovery program participants to undergo background checks to reside in the housing for those recovery programs or participate in those programs on Heartland's campus.

Plaintiff's assertion that all its members must undergo background checks is incorrect and contrary to the plain language of Mo. Rev. Stat. §§210.1263 and 210.1253(6) (defining "residential care facility"). An employee who is not providing services to or employed by Plaintiff's LERCF does not need a background check to continue employment with Plaintiff. *See* §210.1263; §210.1253(6); Mo. Code Regs Ann. tit. 13, §35-71.015(1)(L).

A finding of ineligibility for employment or presence at a LERCF does not prevent anyone from becoming a member of Heartland or require Plaintiff to exclude anyone from membership. Ineligibility for presence or employment at Plaintiff's LERCF is not synonymous with ineligibility for presence anywhere on Heartland's campus, or for employment by Plaintiff. Mo. Rev. Stat. §210.493 does not foreclose Mr. Sonnier from associating with Plaintiff's members, but he is ineligible for employment or presence at Plaintiff's LERCF based on a criminal conviction. That does not violate the right to freedom of association of Mr. Sonnier or any Heartland member. *See United States v. Good*, 386 F.Supp.3d 1073, 1089-90 (D. Neb. 2019).

Plaintiff refers in passing to *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984). Plaintiff does not deny Defendant's compelling interest in protecting children from abuse. The notification and background check requirements are content-neutral and "unrelated to the suppression of ideas," 468 U.S. at 623. If the Court views ineligibility of some background check applicants (Plaintiff identifies two) for employment or presence at Plaintiff's LERCF under Mo. Rev. Stat. §210.493.11 as interference with Plaintiff's internal organization or affairs, the compelling interest in protecting children in residential care facilities from abuse and neglect justifies any impact that it may have on the associational freedom of Plaintiff or its members. *See Roberts* at 623.

8

The RCFNA and background check regulation advance Defendant's compelling interest through the least restrictive means of achieving the end of the RCFNA.  Plaintiff questions the need for officers of a LERCF, such as board members, to successfully complete background checks, but admits that its board members are in a chain of command that appoints and exercises control over managers, employees, support staff, contractors, and volunteers (see Ct. Doc. 66, n. 9).  Requiring officers to undergo background checks is part of the least restrictive means of achieving the RCFNA's end of protecting children in residential care facilities from abuse and neglect.  Officers of LERCFs, e.g., board members, have ultimate control, responsibility, and decision-making authority for the care, control, and supervision of the children at their LERCF. Def.'s Add'l Mat. Facts, ¶19.  The officers' decisions—especially board members' decisions— impact those children, even if officers do not directly interact with or access the children in order to provide for their needs. Id., ¶20.  For example, board members may advise on policy development and implementation, and selection of program directors, administrators, and other personnel affiliated with the LERCF. Id.

Like *Roberts*, the record does not support a conclusion that the background check requirements will impede the ability of Plaintiff or its members to engage in constitutionally protected activities, such as helping people through redemption in the belief that Christ is the answer (see Pl.'s Statement of Facts, ¶12).  Plaintiff's operations, including the recovery programs, may continue on its Heartland campus.  The background check requirements do not exclude individuals from membership, from associating with Plaintiff's members, or from participating in the Heartland community.  Any incidental abridgement of freedom of association that may be occasioned by ineligibility for employment or presence at Plaintiff's LERCF "is no greater than is necessary to accomplish the State's legitimate purposes." *Roberts*, 468 U.S. at 628.

**D.   Plaintiff is not entitled to summary judgment on its procedural due process claims.**

**1.   Mo. Rev. Stat. §210.1271**

Plaintiff offers its conclusion that Mo. Rev. Stat. §210.1271 does not explicitly require notice and a hearing before a court may issue an injunction under it. See Ct. Doc. 66 at 33. Nothing in §210.1271 suggests that every case brought under it would entail ex parte proceedings. Plaintiff's concern that an ex parte order might hypothetically be granted under §210.1271.1 at some future time is speculative.  The federal courts do not grant declaratory judgments "upon a hypothetical basis," *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977), *quoting Aetna Life Ins. Co.*, 300 U.S. at 242.  Plaintiff has not demonstrated "standing for prospective relief" because Plaintiff cannot show that it is experiencing "an immediate threat of injury." *Webb as next friend of K. S. v. Smith*, 936 F.3d 808, 814-15 (8th Cir. 2019).

Where the State "must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997).  In the event of an ex parte order "requiring a residential care facility to cease operations, a hearing shall be held within three business days to determine whether the order shall remain in effect, with attempted notice to the facility and the parents or guardians and due process for all parties." Mo. Rev. Stat. §210.1271.2.  Rule 92.02 prohibits the issuance of a preliminary injunction absent "prior notice and an opportunity to be heard" (Mo. S. Ct. Rule 92.02(c)(1)) and imposes strict limits upon ex parte temporary restraining orders (*see* Mo. S. Ct. Rule 92.02(b)(1)).

Plaintiff does not have a protected property interest in continuing to operate a LERCF at Heartland.  Plaintiff does not "have 'a legitimate claim of entitlement to' " continuing to operate as a LERCF because it has not filed a notification containing all information required by Mo. Rev.

Stat. §210.1262 and Mo. Code Regs tit. 13, §35-71.300(5). *See Austell v. Sprenger*, 690 F.3d 929, 935 (8th Cir. 2012), *quoting Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); see Def.'s Add'l Mat. Facts, ¶¶28-37.

Where a property interest is involved, due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006); *Crum v. Vincent*, 493 F.3d 988, 993 (8th Cir. 2007). Rather, due process "requires notice that is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Crum* at 993, *quoting Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). DSS has telephone numbers for the director and operator of Plaintiff's LERCF, the LERCF director's e-mail address, and the street, mailing, and e-mail addresses of Plaintiff's LERCF. Def.'s Add'l Mat. Facts, ¶¶38, 39. " 'Notice by mail is ordinarily presumed to be constitutionally sufficient.' " *Crum* at 993, *quoting Nunley v. Dept. of Justice*, 425 F.3d 1132, 1136 (8th Cir. 2005). Service upon an e-mail address provided by Plaintiff would satisfy due process, because it would be reasonably calculated to apprise the LERCF of a pending court matter and afford it an opportunity to present its objections. *See Missouri ex rel. Schmitt v. People's Republic of China*, 2021 WL 1889857 at *2 (E.D. Mo. May 11, 2021), *quoting Mullane*, 339 U.S. at 314.

Parents or guardians with legal custody of children at Plaintiff's LERCF can remove their children at any time. *See* Mo. Rev. Stat. §475.025. If the parent or guardian decides to take his or her child, Plaintiff does not have a liberty interest in keeping that child at its LERCF. Further, §210.1271 contemplates that children will be placed in the physical custody of their parents or legal guardians where possible. Mo. Rev. Stat. §210.1271.1, .4.

"In child removal cases, the meaningful time and manner requirement means that the state must hold a hearing promptly after removal." *Mitchell v. Dakota County Soc. Servs*, 959 F.3d 887,

897 (8th Cir. 2020).  Where a child was "without proper care, custody, or support" (*see* Mo. Rev. Stat. §211.031.1(1)(b)) because the LERCF where the child was staying had ceased operating, and the child was taken into custody, "the juvenile or family court shall notify the parties of the right to have a protective custody hearing," Mo. Rev. Stat. §211.032.1.  Personal service is required on all parties (Mo. S. Ct. R. 114.01(a)), unless personal service cannot be effected, in which case, service may be made by registered or certified mail to a party's last known address (Mo. S. Ct. R. 114.01(d)).  For purposes of chapter 211 and Rules 110 to 129, *see* Mo. S. Ct. R. 110.01, the parties include "the parents, guardian, and custodian of the juvenile," Mo. S. Ct. R. 110.04(a)(20).

The required notice to the parents and guardians shall be provided in advance of the hearing. Mo. S. Ct. R. 114.01(f).  That is facilitated by §210.1264, which requires "any [LERCF] subject to the notification requirements of sections 210.1250 to 210.1286" to provide, "[u]pon request by the department or a law enforcement officer… a full census" of the children at the LERCF, "including parental and other guardian contact information… ." Mo. Rev. Stat. §210.1264.  "A party 'need not receive actual notice, but only notice that is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action.' " *Slaven v. Engstrom*, 710 F.3d 772, 779 (8th Cir. 2013) (citation omitted).

### 2.  Mo. Rev. Stat. §210.143

Section 210.143 petitions and orders are used in the context of an investigation of abuse or neglect of a specific child or children. *See* Mo. Rev. Stat. §210.143.1 through .4.  "Investigation" means "the collection of physical and verbal evidence to determine if a child has been abused or neglected." Mo Rev. Stat. §210.110, 210.110(10).

> The investigation shall include but not be limited to the nature, extent, and cause of the abuse or neglect; the identity and age of the person responsible for the abuse or neglect; the names and conditions of other children in the home, if any; the home environment and the relationship of the subject child to the parents or other persons responsible for the child's care; any indication of incidents of physical violence

12

against any other household or family member; and other pertinent data.

Mo. Rev. Stat. §210.145.10.  An investigation would reasonably include "an assessment of the

child's health, safety and well-being[,]" Mo. Rev. Stat. §210.143.1. *See Hawley v. Nelson*, 968

F.Supp. 1372, 1386 (E.D. Mo. 1997).

A circuit court only has authority to issue a §210.143 order if multiple conditions are met,

including a LERCF's refusal to "voluntarily provide access to the child[,]" §210.143.2(1), during

an investigation of child abuse or neglect.  Only then may a court issue "an order directing an

exempt-from-licensure residential care facility… that is the subject of an investigation of child

abuse or neglect to present the child at a place and time designated by the court… ." §210.143.1.

> The court shall enter an order under this section if:
> (1) The court determines that there is reasonable cause to believe that the child has
> been abused or neglected and the residential care facility does not voluntarily
> provide access to the child;
> (2) The assessment is reasonably necessary for the completion of an investigation
> or the collection of evidence; and
> (3) Doing so is in the best interest of the child.

Mo. Rev. Stat. §210.143.2.  Following the assessment, the child is to be returned to the LERCF,

or parents or guardian, "unless the court, after a hearing with attempted notice to the facility and

to the parents or guardian and with due process for all parties, enters further orders to the contrary."

Mo. Rev. Stat. §210.143.3.

"[T]he right to family integrity does not include a constitutional right to be free from child

abuse investigations." *Mitchell*, 959 F.3d at 897.  "The government has a compelling interest in

protecting minor children, especially when it is necessary to protect them from their parents." *Id.*

The government also has a compelling interest in protecting children residing at a LERCF.

> The petition and order may be made on an ex parte basis if it is reasonable to
> believe that providing notice may place the child at risk for further abuse or
> neglect, if it is reasonable to believe that providing notice may cause the child to
> be removed from the state of Missouri or the jurisdiction of the court, or if it is

reasonable to believe that evidence relevant to the investigation will be
unavailable if the ex parte order is not entered.

Mo. Rev. Stat. §210.143.5.  Then an ex parte petition and order protect "the state's very strong

interests in protecting the child and learning in timely fashion what the child had to relate about

the matter, without possibly being limited by the presence of" LERCF staff or officers, who may

be perpetrators. *See Hawley*, 968 F.Supp. at 1386, *aff'd*, 141 F.3d 1168 (8th Cir. 1998).

Whatever liberty interest a LERCF might have in a particular child's presence, a §210.143

order does not impose a burden like outright removal of a child from its parents' custody.  Even if

ex parte, an order could allow Plaintiff's LERCF sufficient time and opportunity to seek a

protective order, stay, or temporary restraining order, and obtain an expedited hearing before the

date and time for the production or assessment of a child.  A court may stay implementation of its

order to produce a child for up to three days. Mo. Rev. Stat. §210.143.6.  "Any person served with

a subpoena, petition, or order under this section… may file a motion for protective order or other

appropriate relief. … at or before the time for production" of the child. *Id.*  The court must decide

the motion within one business day of filing. *Id.*

If viewed through the lens of child removal, notice is not constitutionally required prior to

a temporary, up to 72 hour removal of a child for an assessment of the child's health, safety and

well-being where the criteria of §210.143.2 are met. *See Mitchell*, 959 F.3d at 897; *Stanley v.*

*Finnegan*, 899 F.3d 623, 627 (8th Cir. 2018); *see Hawley*, 968 F.Supp. at 1386 (no constitutional

requirement to notify parent prior to interviewing child subject of suspected neglect), *aff'd at* 141

F.3d 1168 (8th Cir. 1998).  A "reasonable suspicion" of child abuse is sufficient to remove a child

in the context of a child abuse investigation, *Stanley*, 899 F.3d at 627.

A hearing after the LERCF produced a child would satisfy due process. Plaintiff is "not

entitled to participate in child abuse investigations with the authorities." *See Hawley*, 968 F.Supp

14

at 1386, citing *Manzano v. S. Dak. Dept. of Soc. Serv.*, 60 F.3d 505, 510 (8th Cir. 1998). "Any person named in an investigation as a perpetrator who is aggrieved by a determination of abuse or neglect" may seek administrative review with subsequent de novo judicial review. Mo. Rev. Stat §210.152.4, .6.   A post-child assessment judicial proceeding and remedy under Mo. Rev. Stat §210.152 would satisfy due process. *See Hawley* at 1385, 1386.

Plaintiff's contention that the standard for removing any child from its campus—even temporarily "for an assessment of the child's health, safety, and well-being[,]" *see* Mo. Rev. Stat. §210.143.1, as part of an investigation of abuse or neglect of the child to be assessed—without prior notice and a hearing is "reasonable cause to believe that a particular child is 'in imminent danger of suffering serious physical harm, threat to life from abuse or neglect, or has been sexually abused or is in imminent danger of sexual abuse[,]' " see Ct. Doc. 66 at 35, is incorrect.   "[A] reasonable suspicion of child abuse" is what the law requires, *Stanley v. Finnegan*, 899 F.3d at 627.   Plaintiff's reliance upon *Heartland I* (*Heartland Academy Community Church v. Waddle)*, 317 F.Supp.2d 984 (E.D. Mo. 2004), *aff'd*, 427 F.3d 525 (8th Cir. 2005), for the standard is misplaced for several reasons.   In *Heartland I*, the district court did not find that a reasonable suspicion or exigent circumstances existed, so the juvenile officer's removal of children without notice or a hearing deprived plaintiffs of procedural due process. 317 F.Supp.2d at 1099-1101; *see* 427 F.3d at 535; *see Stanley*, 899 F.3d at 627.   In child removal cases, a hearing must be held promptly after removal. *Mitchell*, 959 F.3d at 897.   In *Heartland I*, the juvenile officer prevented plaintiffs from receiving postdeprivation process by dismissing his petitions before a scheduled hearing could be held. 317 F.Supp.2d at 1101. The application of the district court's permanent injunction was limited to "Mike Waddle, or any juvenile officer acting at his direction," *Id.* at 1110.

Notice is not constitutionally required prior to a court ordering a LERCF to produce a child for an assessment of the child's health, safety and well-being under Mo. Rev. Stat. §210.143.

**3.  The administrative review and appeal process for background check findings, with subsequent judicial review under Mo. Rev. Stat. §536.150, satisfies procedural due process.**

In III.B., Plaintiff raises procedural due process concerns about aspects of the administrative review and appeal processes for background applicants and others aggrieved by background check eligibility determinations.

First, Plaintiff expresses concern that a LERCF may not know why a particular applicant is ineligible.  But Plaintiff has not identified anyone who has been found ineligible for employment or presence at its LERCF for a reason unknown to Plaintiff.

Any background check applicant may consent to the Children's Division notifying the LERCF "of its decision on eligibility or ineligibility and/or sending a copy of its eligibility or ineligibility finding to the" LERCF. Mo. Code Regs Ann. tit. 13, §35-71.015(6)(B)8; *see* §35-71.015(6)(B)(10).  An applicant may choose to share background check results and reasons for ineligibility.  A LERCF may require background check applicants to provide that information.

Second, Plaintiff has presented no evidence that any applicant has been, or will be, found ineligible for employment or presence at its LERCF because of placement on the Central Registry based on mere probable cause or reasonable suspicion.  The Children's Division is only finding applicants ineligible for employment or presence at LERCFs due to Central Registry findings if the preponderance standard of *Jamison*, *see* 218 S.W.3d 399, 412, 416, has been met, if the applicant was found guilty of or pled guilty to specified criminal offenses, or the applicant waived administrative or judicial review of the Central Registry finding, see Def.'s Add'l Mat. Facts, ¶¶41, 42.

Third, due process does not require a full, evidentiary hearing at the administrative review stage, the initial stage of review, *see* Mo. Code Regs Ann. tit. 13, §35-71.015(12)(B).  Rather, the administrative review "should be an initial check against mistaken decisions[,]" *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985).  Plaintiff acknowledges that, ultimately, de novo judicial review under Mo. Rev. Stat. §536.150 is available to applicants and those aggrieved by final decisions of the Department. See Ct. Doc. 66 at 38, *citing* 13 CSR 35-71.015(12)(D).  Section 536.150 review affords Plaintiff and background check applicants due process by providing "an opportunity to be heard at a meaningful time and in a meaningful manner… ." *SH3 Health Consulting, LLC v. Page*, 459 F.Supp.3d 1212, 1226 (E.D. Mo. 2020). Section 536.150 review provides a sufficient remedy that comports with Plaintiff's and background check applicants' rights to procedural due process. *See Birkenholz v. Sluyter*, 857 F.2d 1214, 1218 (8th Cir. 1988).

Fourth, due process does not require DSS to entertain collateral attacks on criminal convictions or guilty pleas, or agency findings of child abuse or neglect as part of the administrative review and appeal process for background check findings.  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time, and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 323 (1976).  " '(D)ue process is flexible and calls for such procedural protections as the particular situation demands.' " *Id.* at 334, *quoting Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

States have no constitutional obligation to provide post-conviction relief proceedings, which are collateral attacks on the underlying conviction or guilty plea. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987).  Missouri has chosen to provide for post-conviction relief proceedings via Mo. S. Ct. Rules 24.035 and 29.15.  DSS has no constitutional obligation to permit collateral attacks on criminal convictions or guilty pleas as part of the background check administrative

17

review or appeal processes. *See Finley*, 481 U.S. at 557. DSS does not violate due process in failing to permit collateral attacks on civil judgments during those administrative processes. Applying res judicata does not violate procedural due process. *See Deretich v. Off. of Admin. Hearings, State of Minn.*, 798 F.2d 1147, 1153 (8th Cir. 1986). "A corollary of *res judicata* is that parties cannot collaterally attack the merits of a final judgment entered in a previous proceeding." *Atkinson v. Firuccia*, 567 S.W.3d 190, 195 (Mo. App. W.D. 2018).

Federal courts "have not hesitated to apply *res judicata* to enforce repose" to an administrative body's adjudication of "disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 798-99 (1986). Missouri has long provided administrative review by the child abuse and neglect review board (CANRB) to any named perpetrator "who is aggrieved by a determination of abuse or neglect by the [Children's] division[,]" Mo. Rev. Stat. §210.152.4. The alleged perpetrator may seek de novo judicial review, and has "the opportunity to appear and present testimony" to the circuit court. Mo. Rev. Stat. §210.152.6. The trial de novo, "although in theory an appeal of the administrative hearing, is an original proceeding and is not an exercise of review jurisdiction." *C.S. v. Mo. Dept. of Soc. Servs*, 491 S.W.3d 636, 647 (Mo. App. W.D. 2016) (quoting cases; internal punctuation omitted). The circuit court "conducts a fresh hearing on the matter" (*id.* at 647, *quoting Petet v. State, Dept. of Soc. Servs, Div. of Family Servs*, 32 S.W.3d 818, 821 (Mo. App. W.D. 2000)) and "the parties are 'afforded the opportunity for a full hearing on all issues.' " *C.S.* at 648, *quoting Petet* at 821.

### E.   Plaintiff is not entitled to summary judgment on Count IV.

The RCFNA and implementing regulations do not prevent parents from selecting any private school—including Plaintiff's—for their children. Plaintiff argues that the new laws

18

"usurp" parents' rights to select an educational program by interfering with Plaintiff's employment decisions. Ct. Doc. 66 at 38. That is incorrect. True, a school janitor and lunchroom supervisor have been found ineligible due to guilty pleas detected by background checks. Plaintiff's school can continue to operate and impart Plaintiff's beliefs. The RCFNA states that

> Nothing in the statutes of Missouri shall give any governmental agency jurisdiction or authority to regulate or attempt to regulate, control, or influence the form, manner, or content of the religious curriculum, program, or ministry of a school or of a facility sponsored by a church or religious organization.

Mo. Rev. Stat. §210.1274.

Even if this court were to hypothesize a future §210.1271 action where a court would order Plaintiff's LERCF to cease operations, that would not stop Plaintiff from operating a school. Plaintiff could no longer operate a boarding school at Heartland in that scenario, but "children of staff and from the community at large" (see Pl.'s Statement of Facts, ¶4) could continue to attend Plaintiff's K-12 school. Children previously residing at the LERCF could still attend Plaintiff's school, but would have to stay the night somewhere else. Defendant addressed Plaintiff's due process concerns about Mo. Rev. Stat. §210.1271 in argument section D.1.

**F. Plaintiff is not entitled to summary judgment under *Hosanna-Tabor*.**

This case does not implicate the limited holding of *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171 (2012) ("*Hosanna-Tabor*"). The question in *Hosanna-Tabor* was whether the Establishment or Free Exercise Clauses barred the Title VII suit of a terminated ministerial employee against the religious entity that had employed her. 565 U.S. at 176, 188. The Court concluded that a ministerial exception "grounded in the First Amendment" precluded Title VII from applying "to claims" brought by a minister concerning his or her employment relationship with a religious institution, *Hosanna-Tabor*, 565 U.S. at 188, more specifically, "an employment discrimination claim brought on behalf of a minister, challenging

her church's decision to fire her[,]" 565 U.S at 196.  The Court held "only that the ministerial exception bars such a suit." *Id.*  *Hosanna-Tabor* does not require DSS to make an exception for ministerial employees of LERCFs by dispensing them from undergoing background checks.

In *Hosanna-Tabor*, the Court "unanimously recognized that the Religion Clauses foreclose certain employment discrimination claims brought against religious organizations." *Our Lady of Guadelupe Sch. v. Morrissey-Berru*, 140 S.Ct. 2049, 2061 (2020).  "The constitutional foundation for" the Court's holding in *Hosanna-Tabor* "was the general principle of church autonomy to which we have already referred: independence in matters of faith and doctrine and in closely linked matters of internal government." *Id.*  The Court stressed that "[t]he First Amendment protects the right of religious institutions 'to decide for themselves, free from state interference, matters of church government as well as faith and doctrine.' " *Id.* at 2055, *quoting Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952).  The Court had applied that principle in *Hosanna-Tabor* to hold that the First Amendment barred the courts from entertaining a teacher's employment discrimination claim against the religious school where she had taught. *Our Lady of Guadelupe*, 140 S.Ct. at 2055.

The ministerial exception protects a church's independence in "matters 'of faith and doctrine' " by preserving its authority to supervise and remove ministers "without interference by secular authorities" because "[w]ithout that power, a wayward minister's preaching, teaching, and counseling could contradict the church's tenets and lead the congregation away from the faith." *Our Lady of Guadelupe* at 2060-61.  The First Amendment prohibits government interference with internal matters of church discipline or government, and commits internal debates or controversies to a church's tribunal tasked with deciding such disputes. 565 U.S. at 187.

Plaintiff brings as-applied challenges.  Plaintiff listed the teachers at its school on the LERCF notification form.  Plaintiff presents no evidence that any teacher has been, or would be, found ineligible for employment or presence at its LERCF under Mo. Rev. Stat. §210.493.11.

Heartland Community Church is not part of Plaintiff's LERCF (see Def.'s Add'l Mat. Facts, ¶¶15, 16), so a pastor of that church does not need a background check to fulfill the role of pastor.

Background check requirements, and ineligibility of some individuals based on background check results, do not violate the Establishment Clause.  The Establishment Clause "prevents the Government from appointing ministers," *Hosanna-Tabor*, 565 U.S. at 184.  Nothing in any statute or regulation that Plaintiff challenges authorizes a government official or agency to select any of Plaintiff's ministers, officers, or ministerial employees.

### G.  Plaintiff is not entitled to summary judgment on the Fourth Amendment claims pled in the Amended Complaint (Count VI).

Plaintiff concludes— in one sentence— that Mo. Rev. Stat. §210.1264 violates the Fourth Amendment. See Ct. Doc. 66 at 43.  Defendant disagrees.

Requesting the census and demographic information authorized by §210.1264 would not have been regarded as an unlawful search when the Fourth Amendment was framed. *See Morales v. Daley*, 116 F.Supp.2d 801, 818 (S.D. Tex. 2000), *citing Wyoming v. Houghton*, 526 U.S. 295, 299 (1999).  The information that may be sought under §210.1264 is less extensive or detailed than questions that were asked during early federal censuses. *See Morales* at 818.

Section 210.1264 does not authorize the requestor to enter the LERCF's premises. *See* Mo. Rev. Stat. §210.1264.  If the court considers a §210.1264 request a search, it is reasonable.  The degree to which providing DSS with parent or guardian contact information for the children at the LERCF, along with names and basic demographic information for the children, and a list of those

21

subject to the background check requirements, intrudes upon the privacy of those individuals is limited (again, less extensive than completing a federal Census). *See Morales* at 819, 820; *see Houghton*, 526 U.S. at 300, 303.  On the other hand, DSS needs the ability to obtain census and demographic information under §210.1264 to promote legitimate government interests in protecting children, and facilitate and expedite communications with the parents or guardians of children at LERCFs, including providing notice to parents and guardians consistent with their constitutional rights. *See Houghton* at 300.

Contrary to Plaintiff's assertion, failure to provide §210.1264 information upon request is not a basis for seeking relief under §210.1271. *See* Mo. Rev. Stat. §210.1271.1.  Nor is failing to comply with §210.1264 a criminal act. *See Wyman v. James*, 400 U.S. 309, 317-18 (1971) (caseworker home visits of welfare recipients not a search in Fourth Amendment sense).

Merely requiring a LERCF to keep medical records for children does not violate the Fourth Amendment.  The Amended Complaint quotes portions of the regulation that sets forth required content of the LERCF notification form, see Ct. Doc. 23 at 8-9, ¶43, but that pleading does not give fair notice of any Fourth Amendment challenge to Mo. Code Regs Ann. tit. 13, §35-71.300(5)(D)8.B., which provides:

> The LERCF shall provide the division access to the facility upon request to inspect the medical records maintained by the LERCF on the children served by the LERCF in order to verify that the medical records are being kept. The division will request access to this information only when the division has reasonable basis to believe that the LERCF is not maintaining records for any child as required by law.

§35-71.300(5)(D)8.B; see also Ct. Doc. 23 at 31, 36.

Nonetheless, DSS plans to amend Mo. Code Regs Ann. tit. 13, §35-71.300 to remove the language in 8.B quoted above. Def.'s Add'l Mat. Facts, ¶44.  Pending such amendment, DSS does not plan to inspect the medical records of children served by LERCFs to monitor compliance with

the recordkeeping requirement, Def.'s Add'l Mat. Facts, ¶44, *see* Mo. Rev. Stat. §210.1262(8); *see* §35-71.300(5)(D)8.  If the Children's Division had reason to suspect that a child at a residential care facility was being abused or neglected, the Division would be required to assess the child to determine if additional evaluation and action were warranted. Def.'s Add'l Mat. Facts, ¶45.  In the event of a juvenile proceeding involving a child at a LERCF, or a law enforcement investigation of child abuse or neglect, child welfare and law enforcement authorities would have opportunities to subpoena medical records. Def.'s Add'l Mat. Facts, ¶46.

DSS has not requested access to Plaintiff's LERCF to inspect medical records. Def.'s Add'l Mat. Facts, ¶47.  DSS has not applied §35-71.300(5)(D)8.B to Plaintiff, and plans to amend §35-71.300 to remove the language in (5)(D)8.B.  "Typically, and not surprisingly, regulations must actually be applied before a plaintiff can challenge them on an as-applied basis." *Dolls, Inc. v. City of Coralville*, 425 F.Supp.2d 958, 972 (S.D. Iowa 2006).  Plaintiff lacks standing to bring an as-applied challenge to §35-71.300(5)(D)8.B. *Id.* at 972-73.  Plaintiff lacks standing to seek to enjoin §35-71.300(5)(D)8.B because Plaintiff has not shown a likelihood of future harm to it from an application of that provision. *Dolls, Inc.* at 974-76, citing cases.

## H.      Plaintiff is not entitled to summary judgment on Count VII.

The Amended Complaint does not adequately plead that undergoing a background check violates applicants' Fourteenth Amendment constitutional right of privacy. See Ct. Doc. 23, ¶163; Ct. Doc. 66 at 45; *Stamm v. County of Cheyenne*, 326 F.Supp.3d 832, 852, 855 (D. Neb. 2018). Individuals have no legitimate expectation of privacy in their criminal histories. *Id.* at 855, *quoting Eagle v. Morgan*, 88 F.3d 620, 627-28 (8th Cir. 1996).  Moreover, DSS discloses a background check eligibility or ineligibility finding only to the individual applicant, unless the applicant consents in writing. Mo. Code Regs Ann. tit. 13, §35-71.015(6)(B)8; *see* §35-71.015(6)(B)(10).

23

DSS is prohibited from revealing to a residential care facility "any disqualifying offense or other related information regarding the applicant." Mo. Rev. Stat. §210.493.9, .10.

Plaintiff's assertion that eligibility or ineligibility for employment or presence at a LERCF is based solely upon "FBI database searches" (see Ct. Doc. 66 at 45) is incorrect. *See* Mo. Rev. Stat. §210.493.3; Mo. Code Regs Ann. tit. 13, §35-71.015(2). 34 U.S.C. §40102, referenced in Ct. Doc. 66 at 45, enables the States or the U.S. Attorney General to establish procedures for "qualified entities designated by the State" to obtain national criminal history background checks on covered individuals for specific purposes, 34 U.S.C. §40102(a). 34 U.S.C. §40102 does not supersede Mo. Rev. Stat. §210.1263.

Due process does not require the opportunity to collaterally attack a criminal conviction or guilty plea. See supra, pp. 16-17. 28 C.F.R. §50.12 does not mandate that DSS afford background check applicants opportunities to collaterally attack criminal convictions or guilty pleas or correct or challenge such information contained in an FBI database before making eligibility or ineligibility findings under Mo. Rev. Stat. §210.493 or Mo. Code Regs Ann. tit. 13, §35-71.015.

If a conviction or guilty plea was erroneously entered in an applicant's FBI identification record, that applicant may direct a challenge to the accuracy or completeness "of any entry on his/her record to the FBI, Criminal Justice Information Services (CJIS) Division" or to the agency that "contributed the questioned information[,]" 28 C.F.R. §16.34. Before they are fingerprinted, applicants for background checks required by Mo. Rev. Stat. §§210.493 or 210.1263 are given written information about how to challenge the accuracy or completeness of their FBI criminal history record, either by contacting the FBI directly, or by sending a challenge "to the agency that contributed the questioned information to the FBI." Def.'s Add'l Mat. Facts, ¶¶48-50. DSS does not submit any criminal case dispositions (e.g., convictions or guilty pleas) to MULES/CJIS.

Def.'s Add'l Mat. Facts, ¶¶51, 52.  If a background check applicant wanted to challenge the accuracy of criminal case disposition information that had been submitted to the FBI's CJIS database, that challenge would need to be directed to the agency that had "contributed the questioned information," 28 C.F.R. §16.34, not DSS.

Notably, Plaintiff has not claimed, nor presented any evidence, that either school employee found ineligible for employment at Plaintiff's LERCF is challenging, or has challenged, the accuracy of a disqualifying criminal conviction or guilty plea, either directly to the FBI or to the agency that "contributed the questioned information[,]" 28 C.F.R. §16.34.  28 C.F.R. §50.12(b) states in part that "Officials making" determinations of suitability for employment "should not deny… employment based on information in the record until the applicant has been afforded a reasonable time to correct or complete the record, or has declined to do so." *Id.*  Mr. Sonnier and Ms. Morgan pled guilty to disqualifying offenses more than 11 years ago. See Pl.'s Statement of Facts, ¶¶25, 26.  Each has had a more than reasonable amount of time to correct or complete their FBI identification records, if desired.

### Conclusion

Plaintiff has not demonstrated that it is entitled to summary judgment on the merits of its claims, or that it is entitled to judgment as a matter of law on the balance of harms or public interest factors that this Court would need to consider before entering a permanent injunction.

In light of the foregoing, Defendant respectfully requests that the Court deny Plaintiff's motion for summary judgment.  Defendant respectfully requests that the Court grant Defendant's motions for summary judgment.

Respectfully submitted,

**ERIC S. SCHMITT**
Attorney General

/s/ *Emily A. Dodge*
Emily A. Dodge, Mo Bar #53914
Assistant Attorney General
P.O. Box 899
Jefferson City, MO  65102-0899
Tel: (573) 751-7344
Fax: (573) 751-9456
Email: Emily.Dodge@ago.mo.gov
ATTORNEYS FOR DEFENDANT

## CERTIFCATE OF SERVICE

I hereby certify that on the 7th day of December, 2022, the foregoing was filed and

served via the Court's electronic filing system upon all counsel of record.

/s/ *Emily A. Dodge*
Emily A. Dodge
Assistant Attorney General