UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| CNS INTERNATIONAL MINISTRIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:21-cv-00065 |
| v. | ) ) | |
| ROBERT KNODELL, | ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNTS II, V, VII, AND BACKGROUND CHECK RELATED ASPECTS OF COUNT III**

**I.     Reply/response to Plaintiff's Argument Section III (Count III and Count VII procedural due process claims re: background checks)**

**A.     Count III reply**

Count III contains no allegation suggesting that placement on a sex offender registry would violate due process unless the standards of procedural due process for placement on Missouri's Central Registry for child abuse, set forth in *Jamison v. Dept. of Soc. Servs.*, 218 S.W.3d 399 (Mo. banc 2007), had been met.  Nor did Plaintiff make that argument in its summary judgment legal memorandum (Ct. Doc. 66).  Count VII does not provide fair notice of such a claim.  Plaintiff now argues, for the first time[1], that no background check applicant can be found ineligible under Mo. Rev. Stat. 210.493 because the applicant is a registered sex offender (or is required to register as a sex offender), *see* §210.493.11(3), unless the preponderance standard of *Jamison* is met before someone is placed on a sex offender registry. See Ct Doc. 74 at 8.

---

[1] Plaintiff's summary judgment statements of fact include Plaintiff's statement that it "treats sex offender status as automatically disqualifying[,]" at least, for employment purposes. Ct. Doc. 68 at 7-8, ¶22.

Plaintiff references no statute or case identifying any state requiring individuals to register as sex offenders "merely on the basis of probable cause or reasonable suspicion," see Ct. Doc. 74 at 8. Congress enacted Sex Offender Registration legislation in 2006 that requires each "jurisdiction" (more than the States, *see* 34 U.S.C. §20911(10)) to "maintain a jurisdiction-wide sex offender registry conforming to the requirements of this subchapter[,]" 34 U.S.C. §20912(a). A "sex offender" is "an individual who was convicted of a sex offense." 34 U.S.C. §20911(1). A "sex offender" as so defined is required to register. *Id.*; 34 U.S.C. §20913(a).

The standard of proof for a criminal conviction exceeds the probable cause standard. *In re Winship*, 397 U.S. 358, 360-61 (1970). A sex offender required to register based on a guilty plea has waived the constitutional right to a jury trial and privilege against self-incrimination. *Parke v. Raley*, 506 U.S. 20, 29 (1992). The " 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights" is "a presumption deeply rooted in our jurisprudence… ." *Id.*, *citing Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Defendant has no constitutional obligation to permit collateral attacks on sex offense convictions, including guilty pleas, as part of the background check administrative review or appeal processes. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987); *see also* Mo. S. Ct. Rules 24.035 and 29.15.

**B.     Count VII reply**

In Count VII, Plaintiff hangs its hat on 28 C.F.R. §50.12. That regulation has no applicability to state or national sex offender registries, state-based child abuse and neglect registries, or state family care safety registries.

28 C.F.R. §50.12 does not require anyone to treat applicants as suitable for employment, or hire applicants, pending applicants' challenges to or completion of their FBI identification records.

2

Defendant does not violate procedural due process in failing to permit collateral attacks on civil judgments or administrative bodies' previous adjudications of factual matters during the background check administrative review or appeal processes.  Applying res judicata does not violate procedural due process. *See Deretich v. Off. of Admin. Hearings, State of Minn.*, 798 F.2d 1147, 1153 (8th Cir. 1986).  "A corollary of *res judicata* is that parties cannot collaterally attack the merits of a final judgment entered in a previous proceeding." *Atkinson v. Firuccia*, 567 S.W.3d 190, 195 (Mo. App. W.D. 2018).

Federal courts "have not hesitated to apply *res judicata* to enforce repose" to an administrative body's adjudication of "disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 798-99 (1986).  Missouri has long provided administrative review by the child abuse and neglect review board (CANRB) to any named perpetrator "who is aggrieved by a determination of abuse or neglect by the [Children's] division[,]" Mo. Rev. Stat. §210.152.4.  The alleged perpetrator may seek de novo judicial review, and has "the opportunity to appear and present testimony" to the circuit court. Mo. Rev. Stat. §210.152.6.  The trial de novo, "although in theory an appeal of the administrative hearing, is an original proceeding and is not an exercise of review jurisdiction." *C.S. v. Mo. Dept. of Soc. Servs*, 491 S.W.3d 636, 647 (Mo. App. W.D. 2016) (quoting cases; internal punctuation omitted).  The circuit court "conducts a fresh hearing on the matter" (*id.* at 647, *quoting Petet v. State, Dept. of Soc. Servs, Div. of Family Servs*, 32 S.W.3d 818, 821 (Mo. App. W.D. 2000)) and "the parties are 'afforded the opportunity for a full hearing on all issues.' " *C.S.* at 648, *quoting Petet* at 821.

Paragraph 5 of Plaintiff's Statement of Additional Facts—other than the fact that Plaintiff's General Counsel, Mr. Melton, wrote the October 20, 2021, letter attached to his December 7, 2022,

declaration—is not supported by the cited evidence. Plaintiff misreads 34 U.S.C. §40102. That statute enables the States or the U.S. Attorney General to establish procedures for "qualified entities designated by the state" to obtain national criminal history background checks on covered individuals for specific purposes. 34 U.S.C. §40102(a). A "covered individual" includes a person who "seeks to have, or may have access to children" 34 U.S.C. §40104(9)(A) "who—(i) is employed by, volunteers with, or seeks to be employed by, or volunteer with, a qualified entity[,]" §40104(9)(B)(i).

The background check process, and subsequent available administrative review and appeal processes, with judicial review pursuant to Mo. Rev. Stat. §536.150, satisfy procedural due process.

**II.     Reply/response to Argument Section I (Count II)**

Plaintiff contends that the notification statute and background check requirements burden its "ability to define its membership" (see Ct. Doc. 74 at 2), but Plaintiff remains free to define membership however it wishes. Plaintiff remains free to accept or reject anyone as a member, whether or not the member or prospective member successfully completes a background check or is found eligible for presence or employment at Plaintiff's LERCF. Ineligibility for presence or employment at Plaintiff's LERCF under Mo. Rev. Stat. §210.493 (*see* §210.493.10, .11) is not tantamount to ineligibility or disqualification for membership in CNSIMI. Anyone Plaintiff embraces as a member is free to associate with and remain a part of CNSIMI and the Heartland community.

As explained in Defendant's Reply in Support of Motion for Summary Judgment on Count I, Mo. Rev. Stat. §210.1262 does not require Plaintiff to disclose recovery program participants as such. Further, the Men's Recovery Program and Women's Recovery Program are not part of

4

Plaintiff's LERCF. Even if an employee of Plaintiff's LERCF, LERCF volunteer with access to children, or LERCF resident age 18 or older listed on the required notification form happened to be a recovery program participant, neither §210.1262 nor the notification regulation nor the notification form itself require Plaintiff to reveal that anyone is in one of its recovery programs. The Court should reject Plaintiff's speculation that §210.1262 will dissuade individuals from continuing their participation in Plaintiff's recovery programs or enrolling and participating in those programs.

Plaintiff proposes that CNSIMI is a LERCF, but the plain language of the legislature's definition of residential care facility does not support that. Under the RCFNA, "residential care facility" means

> **any place, facility, or home** operated by any person who receives children who are not related to the operator and whose parent or guardian is not a resident of the same facility and **that provides such children with** supervision, care, lodging, and maintenance for twenty-four hours a day, with or without transfer of custody.

Mo. Rev. Stat. §210.1253(6) (emphasis added). "The context in which a word is used determines which of the word's ordinary meanings the legislature intended." *Gross v. Parson*, 624 S.W.3d 877, 885 (Mo. banc 2021). Moreover, §210.1253(6) should be interpreted to avoid what Plaintiff describes as an "absurd result"—requiring every member of Plaintiff to undergo a background check (under Mo. Rev. Stat. §210.493). " 'Statutes are interpreted to avoid unreasonable or absurd results.' " *Fox v. State*, 640 S.W.3d 744, 757 (Mo banc 2022) (omitting bracket), *quoting St. Louis Police Officers' Ass'n v. Bd. of Police Comm'rs of City of St. Louis*, 259 S.W.3d 526, 528 (Mo. banc 2008). The legislature's definition of "residential care facility" focuses on the "place, facility, or home… that provides" to children not living at the place, facility, or home with their parents "supervision, care, lodging, and maintenance." A "facility" is "something (as a hospital, machinery, plumbing) that is built, constructed, installed, or established to perform some particular

5

function or to serve or facilitate some particular end." *Webster's Third New Int'l Dictionary* 812-13 (1993).  A "place" is "a building or locality used for a special purpose < ~ of amusement> < ~ of worship> …" *Id.* at 1727; *see Moon Shadow, Inc. v. Dir. of Revenue*, 945 S.W.2d 436, 437 (Mo. banc 1997) (building was not a place of amusement because the activities at issue did not occur there).

### III. Reply/response to Argument Section II (Count V)

Defendant is confident that this Court will read and consider its summary judgment arguments regarding Count V.  The undersigned withdrew the Count V argument that previous counsel advanced in support of judgment on the pleadings in her reply (see Ct. Doc. 46 at 17).

Here, Defendant's argument is not, as Plaintiff suggests, that "the general principle of church autonomy" (*see Our Lady of Guadelupe Sch. v. Morrissey-Berru*, 140 S.Ct. 2049, 2061 (2020)) can only be asserted as an affirmative defense to a discrimination claim.  Thus, the out-of-circuit district court's rejection of the argument that church autonomy can only be raised as an affirmative defense, *see Intervarsity Christian Fellowship/USA v. Bd. of Governors of Wayne St. Univ.*, 534 F.Supp.3d 785, 806 (E.D. Mich. 2021), has no bearing on the disposition of the cross-motions for summary judgment pending before this Court.  *Intervarsity* is distinguishable based on its egregious facts—a public university and its administrators mandated that a Christian student organization accept as Christian leaders "individuals who do not believe in Plaintiffs' religious beliefs[,]" 534 F.Supp.3d at 811.  The defendants were not "impacting Plaintiffs' choice in ministers in ways unrelated to major doctrinal issues." *Id.*  Though not expressly stated by the district court, the university's actions interfered with "independence in matters of faith and doctrine and in closely linked matters of internal government[,]" *Our Lady of Guadelupe Sch.*, 140 S.Ct. at 2061.

The " 'First Amendment does not categorically insulate religious relationships from judicial scrutiny, for to do so would necessarily extend constitutional protection to the secular components of these relationships,' which 'would impermissibly place a religious leader in a preferred position in our society.' " *McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 348 (5th Cir. 2020), *quoting Sanders v. Casa View Baptist Church*, 134 F.3d 331, 335-36 (5th Cir. 1998).  Basing eligibility for presence or employment at a LERCF upon criteria that are unrelated to matters of faith and doctrine, such as not having committed or pled guilty to a limited set of crimes (*see* Mo. Rev. Stat. §210.493.11(5)), and not being a sex offender required to register (*see* §210.493.11(3)), does not interfere with Plaintiff's independence in faith and doctrine and in closely linked matters of internal government.  On the other hand, dispensing ministerial employees of LERCFs from background check requirements " 'would impermissibly place' " religious leaders " 'in a preferred position in our society.' " *See McRaney*, 966 F.3d at 348.  The State's concerns about the safety and protection of children not residing with either parent involve purely secular issues.  Thus, the background check requirements of the RCFNA do not encroach upon Plaintiff's "ability to manage its internal affairs in a way that violates the First Amendment." *GeorgiaCarry.Org, Inc. v. Georgia*, 764 F.Supp.2d 1306, 1312 (M.D. Ga. 2011).

Moreover, Heartland Community Church is not part of Plaintiff's LERCF, so a pastor of that church does not need a background check to fulfill the role of pastor.  Plaintiff brings as-applied challenges.  Plaintiff listed the teachers at its school on the LERCF notification form.  Plaintiff presents no evidence that any teacher has been, or would be, found ineligible for employment or presence at its LERCF under Mo. Rev. Stat. §210.493.

**Conclusion**

In light of the foregoing, and for the reasons set forth in Defendant's Motion for Summary Judgment on Counts II, V, VII, and Background Check Related Aspects of Count III, and supporting legal memorandum (Ct. Docs 59 and 61), Defendant respectfully requests that the Court grant summary judgment in his favor and against Plaintiff as to Counts II, V, VII, and the background check related aspects of Count III.

Respectfully submitted,

**ERIC S. SCHMITT**
Attorney General

/s/ *Emily A. Dodge*
Emily A. Dodge, Mo Bar #53914
Assistant Attorney General
P.O. Box 899
Jefferson City, MO  65102-0899
Tel: (573) 751-7344
Fax: (573) 751-9456
Email: Emily.Dodge@ago.mo.gov
ATTORNEYS FOR DEFENDANT

**CERTIFCATE OF SERVICE**

I hereby certify that on the 21th day of December, 2022, the foregoing was filed and served via the Court's electronic filing system upon all counsel of record.

/s/ *Emily A. Dodge*
Emily A. Dodge
Assistant Attorney General