UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| CNS INTERNATIONAL MINISTRIES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| ROBERT KNODELL, | ) ) ) |
| Defendant. | ) ) ) |

Case No. 2:21-cv-00065

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNTS IV, VI, AND NON-BACKGROUND CHECK ASPECTS OF COUNT III**

**A.  Mo. Rev. Stat. §§210.143 and 210.1271 are consistent with procedural due process.**

Plaintiff says that that the Children's Division may seek a court order under Mo. Rev. Stat. §210.1271, §210.143, or both, and might do so ex parte.  To the extent that those hypothetical future possibilities might occur, Defendant's opening suggestions have fully addressed the procedural due process arguments. See Ct. Doc. 55 at 2-9.

Plaintiff seems to argue that the permanent injunction against Juvenile Officer Waddle, entered in *Heartland I*, binds the State of Missouri in its entirety.  Based on the language of the permanent injunction order (317 F.Supp.2d 984 (E.D. Mo. 2004); Ct. Doc. 424, filed 5/11/2004), read in its context, it does not appear that the order binds the State of Missouri generally.

Defendant acknowledges that Juvenile Officer Waddle would have been an employee of the judicial branch of state government.  The injunction against him, as a public official, is valid against Mr. Waddle's successors in office, *see Randolph v. Rogers*, 253 F.3d 342, 346 n. 7 (8th Cir. 2001).  But it does not bind every state official, department, and employee whatsoever.

**The *Heartland I* permanent injunction**

In balancing the harms, the district court considered "the potential harm to Mr. Waddle and Ms. Ayers[1] if an injunction is issued" and recognized "the very important areas of concern afforded juvenile authorities and law enforcement in protecting juveniles from harm." 317 F.Supp.2d at 1108. The Court did not mention the role of DSS (or any division of DSS) in protecting children in its discussion of Plaintiffs' request for a permanent injunction. *See id.* at 1106-1110. No DSS employee or official was a defendant, nor was DSS or any of its divisions.

The Court stated that it believed "that injunctive relief can be narrowly and unambiguously drawn to minimize the harm to Mr. Waddle and Ms. Ayers in legitimately exercising their power." 317 F.Supp.2d at 1108. The Court determined that "it is in the public interest for limited injunctive relief, that does not prevent Mr. Waddle and Ms. Ayers from lawfully exercising their duties under Missouri law, to be granted to Plaintiffs." *Id.* at 1109. The court decided to grant permanent injunctive relief " against Mr. Waddle" (*id.*) "… and anyone acting at his direction in the Second Circuit Juvenile Office." *Id.* at 1110. But the court was "not persuaded that injunctive relief against [Ms. Ayers] or the Juvenile Office of the Forty-First Judicial Circuit is indicated." *Id.* at 1109. Accordingly, the Court entered "the following permanent injunction against Mr. Waddle and any Second Judicial Circuit Officer acting on his direction:

> Hereafter, Mike Waddle, or any juvenile officer acting at his direction, shall not cause or attempt to cause the pre-notice or pre-hearing removal of or take into protective custody any child or children from Heartland Academy or CNS International Industries, Inc., without reasonable cause to believe that each child for whom protective custody or removal is sought is in imminent danger of suffering serious physical harm, threat to life from abuse or neglect, or has been sexually abused or is in imminent danger of sexual abuse.

*Id.* at 1110.

---

[1] Defendant Cindy Ayers was the Chief Juvenile Officer of the Forty-First Judicial Circuit. 317 F.Supp.2d at 1101.

The language of the permanent injunction that Plaintiffs had requested from the district court in *Heartland I* is set forth at 317 F.Supp. 2d at 1106-07.

In *Heartland I*, Plaintiffs asked the court "to enter the following declaratory judgment:

> It is unlawful to cause or attempt to cause, by court order or otherwise, the pre-notice and/or pre-hearing protective custody and/or removal of any children from the Heartland Academy Community Church and/or CNS International Ministries, Inc., unless there is reasonable cause to believe that each child as to whom the protective custody and/or removal is sought is in imminent danger of suffering serious physical harm, threat to life, or sexual abuse as a result of abuse or neglect.

*Id.* The court declined to enter declaratory relief against Ms. Ayers, but did find Plaintiffs "entitled to declaratory relief against Mr. Waddle." *Id.* at 1111. Accordingly, the Court entered the following order "against Mr. Waddle and any Second Judicial Circuit Juvenile Officer acting on his direction:

> Hereafter, Mike Waddle, or any juvenile officer acting at his direction, shall not cause or attempt to cause the pre-notice or pre-hearing removal of or take into protective custody any child or children from Heartland Academy or CNS International Industries, Inc., without reasonable cause to believe that each child for whom protective custody or removal is sought is in imminent danger of suffering serious physical harm, threat to life from abuse or neglect, or has been sexually abused or is in imminent danger of sexual abuse.

*Id.*

The declaratory and injunctive relief against Mr. Waddle, discussed above, does not bind the State of Missouri as a whole, as Plaintiff suggests in footnote 6 (see Ct. Doc. 72 at 6). It does not establish a procedural due process standard for child removal that would override Eighth Circuit precedent such as *Mitchell v. Dakota County Soc. Servs*, 959 F.3d 887 (8th Cir. 2020), and *Stanley v. Finnegan*, 899 F.3d 623 (8th Cir. 2018), as to Children's Division employees or officials.

3

**B.     Count IV reply**

For the reasons stated in Defendant's summary judgment briefing concerning Count I (see Ct. Doc. 52 and Ct. Doc. 80), neither the notification statute, the notification regulation, nor the LERCF notification form require Plaintiff to reveal or disclose the identities of those participating in Plaintiff's drug and alcohol recovery programs as Plaintiff suggests at the bottom of Ct. Doc. 72 at 5.

Here, Defendant is not defending the actions of Second Judicial Circuit Juvenile Officer Waddle, or Juvenile Officer Ayers, back in October 2001.  The questions before this Court are whether Plaintiff or Defendant are entitled to summary judgment with respect to Plaintiff's as-applied challenges to various provisions of the RFCNA and implementing regulations.  Defendant responded to Plaintiff's arguments concerning the declaratory and injunctive relief awarded in *Heartland I* in Section A of this reply.

Plaintiff appears to suggest that Mo. Rev. Stat. §210.1271 purports "to establish a new, low standard for removals of children and the shutdown of CNSIMI," Ct. Doc. 72 at 7.  Plaintiff is incorrect. Mo. Rev. Stat. §210.1271 does not establish a new standard "for the appropriate removal of children from" a "residential care facility" or for "injunctive relief to cease the operation of" a "residential care facility[,]" 210.1271.1.  The applicable standards would be found in the law existing at the time of the statute's enactment. " '[T]he Court must presume the legislature was aware of the state of the law at the time of its enactment.' " *State ex rel. T.J. v. Cundiff*, 632 S.W.3d 353, 357 (Mo. banc 2021) (quoting cases).  "When considering whether to grant a preliminary injunction," a Missouri circuit court must consider the *Gabbert* factors, including " 'the balance between [any] harm [to the movant] and the injury that the injunction's issuance would inflict on other interested parties.' " *State ex. rel. Ideker, Inc. v. Grate*, 437 S.W.3d 279, 287 (Mo. App.

4

W.D. 2014) (words in brackets in original), *quoting State ex rel. Dir. of Revenue v. Gabbert*, 925 S.W.2d 838, 839 (Mo. banc 1996).  Under Missouri law, "a party seeking a permanent injunction must show… irreparable harm and lack of an adequate remedy at law." *Rebman v. Parson*, 576 S.W.3d 605, 611 (Mo. banc 2019).

    C.    **Count VI reply**

Requesting the census and demographic information authorized by §210.1264 would not have been regarded as an unlawful search when the Fourth Amendment was framed. *See Morales v. Daley*, 116 F.Supp.2d 801, 818 (S.D. Tex. 2000), *citing Wyoming v. Houghton*, 526 U.S. 295, 299 (1999).  The information that may be sought under §210.1264 is less extensive or detailed than questions that were asked during early federal censuses. *See Morales* at 818.

Section 210.1264 does not authorize the requestor to enter the LERCF's premises. *See* Mo. Rev. Stat. §210.1264.  If the court considers a §210.1264 request a search, it is reasonable.

The degree to which providing DSS with parent or guardian contact information for the children at the LERCF, along with names and basic demographic information for the children, and a list of those subject to the background check requirements, intrudes upon the privacy of those individuals is limited (again, less extensive than completing a federal Census). *See Morales* at 819, 820; *see Houghton*, 526 U.S. at 300, 303.  On the other hand, DSS needs the ability to obtain census and demographic information under §210.1264 to promote legitimate government interests in protecting children, and facilitate and expedite communications with the parents or guardians of children at LERCFs, including providing notice to parents and guardians consistent with their constitutional rights. *See Houghton* at 300.

Plaintiff references a portion of the final decision in *Heartland I* that discusses the outcome of a county sheriff's failure to replace the names of juveniles with initials in sheriff's reports

5

concerning the Manure Pit Incident. *See* 317 F.Supp.2d at 1020. The *Heartland I* court discussed Mr. Waddle's decision to seek a search warrant not authorized by Missouri statute, *see id.* at 1017, n. 9, and Mr. Waddle's seizure and retention of records and information not within the scope of the search warrant that he obtained, *id.* at 1019.

The sheriff "referred to the juveniles by name in files that were open to the public." *Id.* at 1020. After certain defendants were formally criminally charged and arrested, media began calling "about information related to the juveniles." *Id.* The sheriff contacted the prosecuting attorney for advice, and the names of the juveniles were blacked out. *Id.* at 1020-21. In a letter to parents of students at Heartland that Waddle sent four days "after the public announcement of the charges against the five Heartland employees," Waddle referred the parents to the sheriff's probable cause statement that "contained unlawfully disclosed, personal, embarrassing information" about the juveniles, (see e.g. the block quote at the bottom of page 7 of Plaintiff's opposing suggestions, Ct. Doc. 72 at 8, *quoting* 317 F.Supp.2d at 1021), though Waddle could not lawfully disclose the information, and agreed "that this disclosure was not in the best interests of the children." 317 F.Supp.2d at 1021.

Plaintiff's, and the district court's concerns, expressed in *Heartland I*, about Waddle's unprofessional behavior and disclosure of sensitive, highly personal information about juveniles that he had no right to disclose are understandable. Section 210.1264 does not authorize the disclosure of records or information protected from disclosure by law to third parties.

Contrary to Plaintiff's assertion, failure to provide §210.1264 information upon request is not a basis for seeking relief under §210.1271. *See* Mo. Rev. Stat. §210.1271.1.

Merely requiring a LERCF to keep medical records for children does not violate the Fourth Amendment. The Amended Complaint quotes portions of the regulation that sets forth required

content of the LERCF notification form, see Ct. Doc. 23 at 8-9, ¶43, but that pleading does not give fair notice of any Fourth Amendment challenge to Mo. Code Regs Ann. tit. 13, §35-71.300(5)(D)8.B.  Section 35-71.300(5)(D)8.B does not, as Plaintiff asserts, allow DSS to inspect medical records "without any substantive reason" (see Ct. Doc. 72 at 7).

> The LERCF shall provide the division access to the facility upon request to inspect the medical records maintained by the LERCF on the children served by the LERCF in order to verify that the medical records are being kept. The division will request access to this information only when the division has reasonable basis to believe that the LERCF is not maintaining records for any child as required by law.

§35-71.300(5)(D)8.B; see also Ct. Doc. 23 at 31, 36.

## Conclusion

In light of the foregoing, and for the reasons set forth in Defendant's Motion for Summary Judgment on Counts IV, VI, and Non-Background Check Aspects of Count III, and supporting legal memorandum (Ct. Docs 53 and 55), Defendant respectfully requests that the Court grant summary judgment in his favor and against Plaintiff as to Counts IV, VI, and the non-background check aspects of Count III.

Respectfully submitted,

**ERIC S. SCHMITT**
Attorney General

/s/ *Emily A. Dodge*
Emily A. Dodge, Mo Bar #53914
Assistant Attorney General
P.O. Box 899
Jefferson City, MO  65102-0899
Tel: (573) 751-7344
Fax: (573) 751-9456
Email: Emily.Dodge@ago.mo.gov
ATTORNEYS FOR DEFENDANT

7

## CERTIFCATE OF SERVICE

I hereby certify that on the 21st day of December, 2022, the foregoing was filed and served via the Court's electronic filing system upon all counsel of record.

/s/ *Emily A. Dodge*
Emily A. Dodge
Assistant Attorney General