IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CNS INTERNATIONAL MINISTRIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:21-CV-65 RLW |
| ) | |
| ROBERT KNODELL, Director of the ) | |
| Missouri Department of Social Services, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S RESPONSE TO THE COURT'S AUGUST 30, 2023
SHOW CAUSE ORDER REGARDING INTERVENING
LEGISLATIVE REVISIONS**

On August 30, 2023, the Court ordered as follows:

> The recent changes to § 210.493 unquestionably impact the merits of this case. . . . Plaintiff shall show cause in writing no later than September 29, 2023, why this case should not be dismissed as moot in light of recent changes to the statutory and regulatory schemes at issue. Plaintiff shall identify all relevant statutory and regulatory changes that have occurred since Plaintiff filed its Amended Complaint. Plaintiff shall explain why the Amended Complaint presents a live case or controversy despite those changes.

Doc. 88 at 5. The relevant statutory changes that have occurred since Plaintiff filed its Amended Complaint are recited *infra* in footnote 4 on page 7; there have been no relevant regulatory changes.

This brief is intended to respond to the Court's show cause order. For several independent reasons, the revisions to Mo. Rev. Stat. § 210.493 do not render this case moot.

## I. The revisions to Section 210.493 were minor and inconsequential.

### A. Lawyers, accountants and consultants are still required to undergo background checks because they are "contractors" under Sections 210.493 and 1263.

As the Court notes, Section 210.493 no longer requires background checks for a LERCF's "officers," "managers," and "other support staff." The Court also notes that "Heartland contends that DSS's definition of 'support staff' would apply to lawyers and accountants that work for Heartland." ECF No. 88 at 4. This is true.

However, lawyers, accountants and consultants (First Amended Complaint, ECF No. 23 at ¶ 110) are still required to undergo background checks because they are "contractors"—a contractor being defined by the State as "a person who contracts to do work for or supply goods to [a LERCF]." Mo. Rev. Stat § 210.493.1(2).[1]

This continued inclusion of "contractors" presents a wide variety of problems even beyond lawyers, accountants and consultants. For instance, a mechanic that fixes a facility's van has contracted to do work for a LERCF. Is that mechanic required to undergo a background check? Do food suppliers have to undergo background checks? The removal of "support staff" from the requirements is a welcome change, in that it is one less issue to consider. But it solves almost no problems, given what the State left in the statute.

---

[1] Until the 2023 legislative revision, the term "contractor" was left undefined in the relevant statutes and regulations.

2

### B. Section 210.1263 still requires "officers," "managers," and "other support staff" to undergo background checks.

Section 210.1263, which is essentially a mirror image of the previous version of Section 210.493, was *not* amended. That provision reads as follows:

> Background checks required, when. — Officers, managers, contractors, volunteers with access to children, employees, and other support staff of residential care facilities subject to the notification requirements under sections 210.1250 to 210.1286; any person eighteen years of age or older who resides at or on the property of such residential care facility; any person who has unsupervised contact with a resident of such residential care facility; and owners of such residential care facilities who will have access to the facilities shall undergo background checks under section 210.493.

The three categories of individuals removed from necessary background checks in the new Section 210.493 (officers, managers and other support staff) are still included here. This renders the revision of Section 210.493 meaningless to this case.

### C. Defendant's regulations still require "officers," "managers," and "other support staff" to undergo background checks.

In addition to Section 210.1263, the State left its relevant regulations unchanged. 13 CSR 35-71.015(1)(A)(1) states (emphasis added):

> Except as otherwise provided in this regulation, applicants for LRCFs, LERCFs, and CPAs who are required to complete the background check process include **officers**; **managers**; contractors with unsupervised access to children; volunteers with unsupervised access to children; employees; **other support staff**; owners of LRCFs and LERCFs that will have access to the facilities; and owners of LERCF, LRCF, and CPA that will have access to children.

3

"Other support staff . . . include[s] any individual who works for or performs services, including professional services, for the LERCF . . . ." 13 CSR 35-71.015(1)(L). As noted throughout Plaintiff's amended complaint, "professional services" would appear to include accountants and lawyers and others that have no contact with children at the facility.

Defendant's regulations thus leave in place the requirement that officers, managers and support staff—the three categories removed from Section 210.493—are subject to background checks.

## II. Every Count of Plaintiff's Complaint remains viable after revisions to Section 210.493.

Even if the amendment of Section 210.493 had completely eliminated "managers," "officers," and "support staff" from background check requirements, Plaintiff's claims would remain intact.[2]

---

[2] As just one example of the existence of a continuing live case or controversy, Plaintiff attaches Defendant's "license-exempt residential care facility notification compliance listing," updated September 22, 2023. It is attached to Exhibit 3, Decl. of Mary Shambro, September 22, 2023. Plaintiff is not included in Defendant's listing of compliant entities. While Plaintiff applied for inclusion of its LERCF in the "compliance listing" on October 12, 2021 (as required in Mo. Rev. Stat. § 210.1280) (*see* ECF No. 76-2 at 16), Defendant has not placed Plaintiff's LERCF in the "compliance listing." The tacit meaning of Plaintiff's LERCF not being included in the "compliance listing" nearly two years later is that Defendant deems the LERCF as non-compliant with the Residential Care Facility Notifications Act and is subject to the shut-down proceedings described in Mo. Rev. Stat. §§ 210.1268 and 1271. This "compliance listing" is a matter of public record and is designed to be utilized by the public to obtain information about the facilities and the "disposition of any substantiated child abuse or neglect reports at or related to the residential care facility." Mo. Rev. Stat. § 210.1280. Defendant's deadline for previously existing LERCFs to complete the required background checks was extended to March 31, 2022. 13 CSR 35-71.015(4). According to Defendant, Plaintiff is still out of compliance.

4

Count I, for instance, challenges Missouri's requirements that Plaintiff notify DSS of every individual residing on its campus (§ 210.1262),[3] which

---

[3] Although the Court has not requested further briefing on the issue, Plaintiff acknowledges the Court's footnote observation that it "is not convinced at this stage that Heartland's entire campus is a LERCF. In fact, DSS 'does not consider Heartland's entire campus Plaintiff's LERCF.'" ECF No. 88, p. 2 n.2. While the Court notes that it is not convinced as to the breadth of the definition of an LERCF, Plaintiff respectfully suggests that Defendant has placed Plaintiff in an untenable position at present. Pursuant to Mo. Rev. Stat. § 210.1283, any individual who knowingly fails to complete a background check "is guilty of a class B misdemeanor." Plaintiff respectfully suggests that the large universe of individuals who are subject to criminal prosecution under the Residential Care Facility Notification Act should not be left to the mercy of administrative agency whim and prosecutorial discretion. *United States v. Cardiff*, 344 U.S. 174, 176 (1952) ("The vice of vagueness in criminal statutes is the treachery they conceal either in determining what persons are included or what acts are prohibited."). Those receiving drug and alcohol recovery services are a particularly vulnerable population to this threat due to the fact that any criminal charges may have a disproportionally adverse impact upon their incarceration status.

Plaintiff stands on its briefing that the plain language of the new law makes every "place, facility, or home operated by" CNSIMI subject to background check and notification requirements. Reply Brief, ECF No. 84 at 4-6. As to statements of DSS that it interprets the LERCF definition in a narrow fashion, Plaintiff receives little comfort from concessions offered simply to evade litigation pressure. There is nothing keeping those declarations or positions from changing in the future. As the Supreme Court held in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457, n.1 (2017):

> In April 2017, the Governor of Missouri announced that he had directed the Department to begin allowing religious organizations to compete for and receive Department grants on the same terms as secular organizations. That announcement does not moot this case. We have said that such voluntary cessation of a challenged practice does not moot a case unless "subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." (citation omitted). The Department has not carried the "heavy burden" of making "absolutely clear" that it could not revert to its policy of excluding religious organizations.

*See also Rogers v. Virginia State Registrar*, 507 F. Supp. 3d 664, 675 (E.D. Va. 2019) ("General Herring's interpretation lacks the force of law. . . . In addition, future Attorneys General are not bound by AG Herring's memorandum and may advance a different interpretation of the statute."); *Greenberg v. Goodrich*, 593 F. Supp. 3d 174, 194-97 (E.D. Pa. 2022) (noting that "[m]aking a concession to appease the Court in this litigation does not create confidence that Defendants truly understand the constitutional limitations of their allegedly broad power to regulate attorneys" and citing a case stating that the "'heavy burden' of mootness was not met where promise was made after litigation began and defendant made no claim that it was binding on the city"); *Harrell v. The Florida Bar*, 608 F.3d 1241, 1266–67 (11th Cir. 2010) ("Short of repealing a statute, if a governmental

necessarily involves revealing to DSS those in Plaintiff's drug and alcohol recovery programs in violation of federal privacy laws. This claim would not be moot as a result of the revisions to Section 210.493 because after revision it still requires background checks of "any person eighteen years of age or older who resides at or on the property of such residential care facility . . ." Section 210.493.3.

Count II, the expressive association count, primarily provides another basis for challenging the same notification requirements challenged in Count I. Count II also alleges that the background check provisions violate

---

entity decides in a clandestine or irregular manner to cease a challenged behavior, it can hardly be said that its 'termination' of the behavior is unambiguous."). In the case at bar, we know that the State had the ability to revise its statutory scheme, because it did so during this litigation, in 2023. If Defendant wanted its narrow interpretation of "LERCF" to be real and permanent, it could have added it to the law when Section 210.493 was revised. It did not.

Even Defendant's counter-textually narrow interpretation of what constitutes a LERCF, which it claims excludes the adult recovery programs, would not cure the new laws of being unlawfully overinclusive. The statute fails both horizontally (in including every one of CNSIMI's ministries as a LERCF, by the plain meaning of the text) and vertically (by applying to CNSIMI's officers, managers, contractors, employees, and support staff, regardless of whether they have any contact with children, because CNSIMI is the corporate identity of all the recovery programs). The vertical problem exists because the Plaintiff, CNSIMI, is the single organization under which the men's program, women's program and children's programs operate. Background checks are required in Section 210.1263 of "officers" and Defendant's regulations expansively define "officer" as "any individual who holds an executive position with the LERCF, . . . including but not limited to President and/or Chairperson of the Board, Board Vice President and/or Vice Chair, Board Secretary, Board Treasurer, any other position designated as an officer in the bylaws or articles of incorporation or organization; and General Counsel, Headmaster, Principal, Head Teacher, and Director and/or Chief Executive Officer of the LERCF . . .." 13 CSR 35-71.015(1)(I).

Plaintiff's expressive association rights, but the claim can stand alone on the notification challenge, which is unrelated to Section 210.493.[4]

Count III relates to background checks, to the extent they reveal whether employees or those on Plaintiff's campus are listed in any state registries for abuse and neglect. But this aspect of the background check laws was not amended by the State. Under the statute and enabling regulations, individuals are ineligible to remain at Heartland even if their names have been placed on a central registry on the basis of mere probable cause or reasonable suspicion, regardless of whether they obtained a due process hearing and regardless of whether they had *de novo* appeal rights in a court of law, all of which is contrary to the 14th Amendment to the U.S. Constitution. *Jamison v. Dept. of Soc. Servs.,* 218 S.W.3d 399 (Mo. 2007). None of this is affected by the revisions to Section 210.493.

Count IV is a parental rights challenge, alleging that the statutory scheme that allows the State to remove children from Heartland and cause it to cease operations is a violation of parents' ability to direct their children's

---

[4] The main legislation, entitled the "Residential Care Facility Notification Act," Mo. Rev. Stat. §§ 210.1250-1286, which was initially adopted along with Section 210.493 in 2021, has not even once been amended. Nor have any of the relevant regulations been amended since 2021. Section 210.493 was amended in 2023 only as follows: adding definitions for "applicant," "contractor," "employee," "owner," and "volunteer;" removing "officers," "managers" and "other support staff" from the background check requirements in former subsections 1 and 2 (while leaving undisturbed the background check requirements of Section 210.1263); adding the bolded portion here to subsection 3(1): "a **state and** Federal bureau of Investigation fingerprint check"; removing "National Crime Information Center's" from subsection 3(2); and renumbering paragraphs.

7

upbringing. Removing "managers," "officers" and "support staff" from background check requirements does not alter this claim.

Count V is brought under the *Hosanna-Tabor* ministerial exception, which exempts religious organizations from interference by the government in employment decisions involving "ministers." The statutory scheme continues to unlawfully place restrictions on whom Plaintiff can employ, such as its religious teachers, because of their background checks. This argument is not affected by the revisions to Section 210.493.

Count VI alleges that the statutory scheme allows for illegal searches and seizures in that it allows the State to conduct warrantless searches of the medical records Plaintiff has on file for its students. This argument is not affected by the revisions to Section 210.493.

Finally, Count VII alleges that the statutory scheme should allow those who have background checks that bar them from employment to correct those records before being denied employment, as federal law allows. This argument is not affected by the revisions to Section 210.493.

## CONCLUSION

For the foregoing reasons, Plaintiff asks the Court to deem this case a live case and controversy because the amendment of Section 210.493 did not render moot any of Plaintiff's claims.

         Respectfully submitted,

September 29, 2023      OTTSEN, LEGGAT AND BELZ, L.C.

         By: /s/ Timothy Belz
           Timothy Belz #MO-31808
           112 South Hanley, Second Floor
           St. Louis, Missouri 63105-3418
           Phone: (314) 726-2800
           Facsimile: (314) 863-3821
           tbelz@olblaw.com

           and

           Brad L. Blake #MO-38340
           Fellows & Blake, L.L.C.
           13421 Manchester Road, Suite 105
           St. Louis, Missouri 63131
           Phone: (314) 725-1600
           Facsimile: (314) 725-1609
           bblake@fellowsblakelaw.com

           Attorneys for CNS International
           Ministries, Inc.

## **Certificate of Service**

The undersigned hereby certifies that the foregoing document was served on all registered parties on this 29th day of September, 2023 using the Court's online filing system.

         /s/ Timothy Belz