IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

CNS INTERNATIONAL MINISTRIES, INC.,          )
                                             )
            Plaintiff,                       )
                                             )
v.                                           )     Case No. 2:21-CV-65 RLW
                                             )
ROBERT KNODELL, Director of the              )
Missouri Department of Social Services,      )
                                             )
            Defendant.                       )

## SECOND AMENDED COMPLAINT

Plaintiff CNS International Ministries, Inc. ("CNSIMI" or "Heartland"), for its Second Amended Complaint against Robert Knodell, in his official capacity as Director of the Missouri Department of Social Services, states as follows:

### Nature of Case

1.      In this action, Heartland seeks declaratory and injunctive relief against implementation and enforcement of portions of a new Missouri statute (House Bills 557 and 560, as amended) and enabling regulations issued by Missouri's Department of Social Services. The statute and enabling regulations make requirements, employ procedures, and threaten penalties that are thoroughly contrary to clearly established law under the United States Constitution, and in some instances require Heartland to violate settled federal statutory requirements guaranteeing privacy to individuals in drug and alcohol recovery programs.

2.      This is not the first time that Heartland has been forced to seek refuge in federal court from an unconstitutional assault by Missouri officials. In 2004, Judge E. Richard Webber ruled that removal of a child from Heartland is unconstitutional without first providing notice and a hearing unless there is reasonable cause to believe that such a particular child being

removed is "in imminent danger of suffering serious physical harm, threat to life from abuse or neglect, or has been sexually abused or is in imminent danger of sexual abuse." *Heartland Academy Community Church v. Waddle,* 317 F. Supp. 2d 984, 1111 (E.D. Mo. 2004), *aff'd, Heartland Academy Community Church v. Waddle,* 427 F.3d 525 (8th Cir. 2005). The Court of Appeals further agreed with Judge Webber that Heartland's expressive association rights could not be disturbed absent compliance by government authorities with strict scrutiny—that they can impair such rights only if they bear the burden of demonstrating that they are using the narrowest means of achieving a compelling government interest. 427 F.3d at 535. Governmental authorities in 2004 and 2005 failed these constitutional tests, and they fail them again today.

### Parties

3.      Plaintiff CNS International Ministries, Inc. ("CNSIMI" or "Heartland"), is a Missouri not-for-profit corporation in good standing, located in the Eastern District of Missouri. It sues in its own right and, as an association, has standing to bring suit on behalf of its members, which it does here, because: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to Heartland's purpose; and (3) neither the claims asserted nor the relief requested requires the participation in the lawsuit of each of the individual members.

4.      CNSIMI is exempt from Federal income tax under Section 501(a) of the Internal Revenue Code as an organization described in Section 501(c)(3).

5.      Defendant Robert Knodell is Director of the Missouri Department of Social Services. He is sued in his official capacity.

**Jurisdiction and Venue**

6.      Jurisdiction is conferred on the Court, for the resolution of the federal and constitutional questions presented, by 28 U.S.C. §§ 1331 and 1343.  Redress for federal constitutional violations is sought pursuant to 42 U.S.C. § 1983.

7.      The jurisdiction of the Court to grant declaratory and injunctive relief is conferred by 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65, Fed. R. Civ. P., and the general legal and equitable powers of this Court.

8.      Venue is correct in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims have arisen or will arise in this judicial district.

**Facts Pertaining to All Counts**

**A.  An Intentional Community**

9.      Heartland consists of, among other things, Heartland Children and Youth Home (consisting of a girls' recovery program and a boys' recovery program), Heartland Women's Recovery Program and Heartland Men's Recovery Program. These are programs for troubled people. There is a K-12 school, attended by those in the boys' and girls' programs as well as children of staff and from the community at large. There is also an accredited two-year college operating on the Heartland campus known as "Heartland Christian College."

10.      In addition to tending to their studies, it is common for boys and girls, who are old enough, to engage in part-time work in operations run by Heartland's affiliates.

11.      There are currently seven children in the boys' and girls' programs at Heartland— four boys and three girls.

12.      Heartland's recovery programs, which have been continuously operating since the

mid-1990s, seek to introduce the concepts of Christian living and personal responsibility, helping

men and women and boys and girls who are bound with life-controlling addictions, attitudes, and

behavioral problems.

13.     The Heartland Men's Recovery Center houses men of all ages and from all over

the United States.

14.     Men who enroll in the 12-month program find themselves in an environment far

removed from the temptations of the world, combined with the disciplines of hard work and a

focus on Jesus Christ. They reside in a part of Heartland's sprawling campus that is in Knox

County, separated by a lake from the remainder of the residents—children, women, and college

students—who reside in Shelby County.

15.     Men in the Recovery Program participate in daily devotions, chapel, and all

weekly Heartland church services.

16.     In the Heartland Women's Recovery Program, women live in a home-like

environment while focusing on their relationship with Jesus Christ. They are trained in areas

such as vocation, work ethic, child-rearing, and financial stewardship.

17.     Women in the Women's Home have a daily devotional time together and attend

all weekly Heartland church services.

18.     The women participate in preparation of meals and daily chores to maintain and

clean their home.

19.     Because of the nature of addiction and recovery, many individuals in these

programs have criminal convictions or guilty pleas in their past, often involving drug-related

offenses.

20.     Heartland is an intentional community, which is one that is built around a specific

interest or goal (similar in that respect to a golfing community, a retirement community, or an artist colony).

21.     Heartland believes that Jesus is the answer to every issue individuals face—including addiction, anger, broken homes, and financial crises.

22.     Men and women who commit themselves to the process of restoration find help at Heartland through the power of God and the encouragement of people who have walked a similar path.

23.     Heartland's vision is a Jesus-centered, sustainable, intentional community of hope for the hurting built around a vibrant local church, cultivating individual, family, community, and global transformation through the power of the gospel.

24.     The church, Heartland Community Church, is at the heart of the community.

25.     CNSIMI believes that a church is the spiritual family of God, the Christian fellowship created by the Holy Spirit through the mighty acts of God in Christ Jesus.

26.     The "church" is more about life together (being a living community, which is lived out on a daily basis) in these local bodies, than it is about just a group of people having a meeting together. Therefore, the church is not just a building or a meeting; it is a living community of believers that are together in a particular location.

27.     Heartland believes that the church is the foundation of its community and that everything it does should have the church as its central purpose.

28.     The church's tenets of faith include:

    a.  The Church as the Body of Christ, being seen visibly in distinct local fellowships, is God's chosen instrument to manifest the knowledge of His glory throughout the earth.

5

     b.  Jesus Christ, upon ascending to the Father, commissioned all believers to take the Gospel to the ends of the earth. It is both the duty and privilege of believers to proclaim the Gospel, make disciples, and build the Church with people from all the nations.

29.    Heartland believes that making disciples is a community effort.

30.    Discipleship involves teaching, training and accountability.

31.    Heartland recognizes that in the early days of the Church, shortly after Jesus Christ was raised from the dead, those who believed in Him devoted themselves to meeting together every day "in the temple and from house to house." During this time, they shared meals, praised God, and cared for each other. They also listened to teaching and welcomed new believers into their friendships. They enjoyed life together.

32.    Heartland's recovery programs are about transformation, redemption, and restoration.

33.    To understand how to live healthy and productive lives, individuals need to walk alongside and interact with other imperfect people who are living healthy and productive lives.

34.    Heartland exists to provide all its residents with an opportunity to be an active part and active participant.

35.    For these reasons, individuals in all the recovery programs attend church services and work jobs at Heartland, often volunteer jobs, just as others in the community do.

36.    Plaintiff is an association for social, economic, educational, religious, and cultural purposes, and is thus entitled to protection absent a showing by Defendant of a compelling state interest that cannot be achieved through less restrictive means. *Roberts v. Jaycees,* 468 U.S. 609, 623 (1984).

**B.  Heartland is a Safe Community.**

37.     To Heartland's knowledge, there is no listing in Missouri's Central Registry for Abuse and Neglect that has resulted from any incident between an adult and a child in the boys' or girl's recovery program in the past 22 years, and no felony or misdemeanor convictions resulting from such interactions in the entire history of Heartland, going back to its beginning in the mid-1990s. Children in the Heartland Children and Youth Home are supervised by carefully vetted staff.

**C.  House Bill Nos. 557 and 560**

38.     Missouri House Bills 557 and 560 took effect on July 14, 2021.

39.     Those bills involved an act "[t]o amend chapter 210, RSMo, by adding thereto sixteen new sections relating to the protection of children, with penalty provisions and an emergency clause."

40.     DSS regulations, which went into effect on October 1, 2021, govern "LERCFs," defined as:

> "License-Exempt Residential Care Facility" or "LERCF" means any place, facility, or home operated by any person who receives children who are not related to the operator and whose parent or guardian is not a resident of the same facility and that provides such children with supervision, care, lodging and maintenance for twenty-four hours a day, with or without transfer of custody, and that is not required to be licensed under section 210.516 RSMo. Unless exempted as provided below, LERCFs include, but are not limited to, boarding schools, juvenile detention facilities, license-exempt foster homes as defined in section 210.516, RSMo, and other congregate care facilities.

13 CSR 35-71.015(1)(F).

41.     Heartland, because of its boarding school, is an LERCF.

42.     The new regulations contain various background check and disclosure provisions for LERCFs, described below.

**1.  Compelled Notification Procedures**

43.     Since October 12, 2021, three months after the effective date of the new laws and a mere eleven days after the emergency regulations became effective, Heartland has been and is required by the new law to make the following notifications to the Department of Social Services, Children's Division:

> 1. The LERCF shall list its full name, street address, mailing addresses, e-mail address, and phone number. The mailing address and e-mail addresses shall be the addresses of record of the LERCF and all official correspondence to the LERCF will be sent to the mailing or e-mail address on record.
>
> 2. The LERCF shall identify the name of the director, owner, operator, all staff members, volunteers, and any individual eighteen years of age or older who resides at or on the property of the LERCF. The LERCF shall provide the name, street address, physical and electronic mailing addresses, and phone number of the director or director's designee who will serve as the point of contact between the division and the LERCF.
>
> 3. The LERCF shall provide a full description of the agency or organization operating the LERCF, including a statement as to whether the agency or organization is incorporated.
>
>> A. The description of the agency or organization shall specify the type of agency or organization.
>>
>> B. If the agency or organization is incorporated then the LERCF shall provide the state in which the LERCF was incorporated in and the corporate name of the LERCF.
>
> 4. The LERCF shall identify the name and address of the sponsoring organization of the residential care facility, if applicable.
>
> 5. The LERCF shall identify the school or schools attended by the children served by the residential care facility. The LERCF shall list the name and address of each school.
>
> 6. Fire and safety inspection certificates.
>
>> ...
>
> 7. Local health department inspection certificates.

...

8. Proof that medical records are maintained for each child.

    A. The division will accept a written attestation, made under oath, subject to penalty of perjury, and executed by the director of the LERCF, that the LERCF actually maintains medical records for each child served by the LERCF according to the written policy of the LERCF, which shall be attached to the attestation.

    B. The LERCF shall provide the division access to the facility upon request to inspect the medical records maintained by the LERCF on the children served by the LERCF in order to verify that the medical records are being kept. The division will request access to this information only when the division has reasonable basis to believe that the LERCF is not maintaining records for any child as required by law.

9. Background Check completion/eligibility. The director of the LERCF, or his or her authorized designee, shall certify, under oath subject to the penalties of perjury that all individuals who are required to complete a background check have successfully completed the background checks and have been found eligible for employment or presence at the LERCF pursuant to section 210.493, RSMo and 13 CSR 35-71.015.

    A. Phase in period for LERCFs in operation as of July 14, 2021. For all original notifications submitted by LERCFs which were both in operation and had children in its facility as of July 14, 2021, the division will accept a written certification from the director of the LERCF that all individuals who are required to submit to a back- ground check pursuant to section 210.493 RSMo, and 13 CSR 35- 71.015 either have completed the background check requirements or will have successfully completed the background check by December 31, 2021. Upon completion of this process the director or the director's designee shall provide written or electronic notice to the division certifying that the background check process for these individuals has been successfully completed. The division may extend this period for up to an additional one hundred twenty (120) days if the LERCF establishes, in writing, that it is unable to successfully complete the process by the deadline.

13 CSR 35-71.300(4)(5)(D)(1)-(9).

    44.    According to 13 CSR 35-71.300(4)(5)(D)(2) and Section 210.1264 RSMo,

Heartland must notify the State of anyone who lives at Heartland, including those in drug and

alcohol recovery programs.

45.     Violation of these notification requirements is punished by, inter alia, "injunctive relief to cease the operation of the residential care facility and provide for the appropriate removal of the children from the residential care facility . . ." Section 210.1271(1) RSMo. There is no requirement in Section 210.1271(1) that notice and a hearing to Heartland or its member precede such injunctive relief. *See also* § 210.1268 RSMo.

### 2.  Required Background Checks

46.     Background checks are required for:

Officers, managers, contractors, volunteers with access to children, employees, and other support staff of residential care facilities subject to the notification requirements under sections 210.1250 to 210.1286; any person eighteen years of age or older who resides at or on the property of such residential care facility; any person who has unsupervised contact with a resident of such residential care facility; and owners of such residential care facilities who will have access to the facilities shall undergo background checks under section 210.493.

§ 210.1263 RSMo. Background checks are also required for those who *apply* for a position at the facility that is required to undergo background checks. 13 CSR 35-71.015(1)(A).

47.     As the Department of Social Services is privy to the background checks (§ 210.493 RSMo), the checks also amount to compelled disclosure of the identities of everyone who undergoes a background check.

48.     The background checks are required for persons regardless of whether they typically (or ever) have contact with children at the facility. Checks are required for "Other Support Staff," for instance, which includes "any individual who works for or performs services, including professional services, for the LERCF . . ." 13 CSR 35-71.015(1)(L). This would include lawyers and accountants, who may (and do) work hundreds of miles away from Heartland.

10

49.     Background checks include:

(1) A state and Federal Bureau of Investigation fingerprint check;

(2) A search of the National Sex Offender Registry; and

(3) A search of the following registries, repositories, or databases in Missouri, the state where the applicant resides, and each state where such applicant resided during the preceding five years:

(a) The state criminal registry or repository, with the use of fingerprints being required in the state where the applicant resides and optional in other states;
(b) The state sex offender registry or repository;
(c) The state family care safety registry; and
(d) The state-based child abuse and neglect registry and database.

§ 210.493.4 RSMo.

50.     Failure to successfully complete a background check renders an individual "ineligible for employment, service or presence with an LERCF." 13 CSR 35-71.015 (4)(A); Cf. § 210.493.11 RSMo ("ineligible for employment or presence").

51.     Section 210.1283 RSMo also makes it a class B misdemeanor to knowingly fail to complete a background check as required under § 210.493 RSMo. In other words, it criminalizes individuals for not waiving their privacy rights, among other things.

52.     The results of the background checks determine whether the applicant can remain at the facility. An individual is "ineligible" for employment or presence at the facility if he or she:

(1) Refuses to consent to the background check as required by this section;

(2) Knowingly makes a materially false statement in connection with the background check as required by this section;

(3) Is registered, or is required to be registered, on a state sex offender registry or repository or the National Sex Offender Registry;

(4) Is listed as a perpetrator of child abuse or neglect under sections 210.109 to 210.183 or any other finding of child abuse or neglect based on any other state's registry or database; or

(5) Has pled guilty or nolo contendere to or been found guilty of:

(a) Any felony for an offense against the person as defined in chapter 565;
(b) Any other offense against the person involving the endangerment of a child as prescribed by law;
(c) Any misdemeanor or felony for a sexual offense as defined in chapter 566;
(d) Any misdemeanor or felony for an offense against the family as defined in chapter 568;
(e) Burglary in the first degree as defined in section 569.160;
(f) Any misdemeanor or felony for robbery as defined in chapter 570;
(g) Any misdemeanor or felony for pornography or related offense as defined in chapter 573;
(h) Any felony for arson as defined in chapter 569;
(i) Any felony for armed criminal action as defined in section 571.015, unlawful use of a weapon as defined in section 571.030, unlawful possession of a firearm as defined in section 571.070, or the unlawful possession of an explosive as defined in section 571.072;
(j) Any felony for making a terrorist threat as defined in section 574.115, 574.120, or 574.125;
(k) A felony drug-related offense committed during the preceding five years; or
(l) Any similar offense in any federal, state, or other court of similar jurisdiction of which the department has knowledge.

§ 210.493.12 RSMo.

53.     Again, these individuals are ineligible to remain at Heartland regardless of whether they have any contact with children and in many cases regardless of whether their conviction of the above-mentioned criminal offenses have anything to do with children.

54.     These individuals are ineligible to remain at Heartland even if their names have been placed on a central registry merely on the basis of probable cause or reasonable suspicion, regardless of whether they obtained a due process hearing, and regardless of whether they had *de novo* appeal rights in a court of law, all of which is contrary to the 14th Amendment to the U.S. Constitution. *Jamison v. Dept. of Soc. Servs.,* 218 S.W.3d 399 (Mo. 2007). Given that those with "felony drug-related offense(s) committed during the preceding five years" are ineligible, the

12

background check and eligibility requirements threaten the viability of Heartland's recovery programs.

### 3.  A Lack of Due Process

### a.  Claims of Abuse or Neglect

55.     Section 210.143 addresses claims by the Children's Division of child abuse or neglect at LERCFs.

56.     The process is for "the children's division," "law enforcement," or a "prosecuting or circuit attorney" to petition the circuit court for an order directing a facility which is the subject of an investigation of child abuse or neglect "to present the child at a place and time designated by the court to a children's division worker for an assessment of the child's health, safety, and well-being." § 210.143 RSMo.

57.     The new law states that the court *shall* enter such an order if:

> (1) The court determines that there is reasonable cause to believe that the child has been abused or neglected and the residential care facility does not voluntarily provide access to the child;
>
> (2) The assessment is reasonably necessary for the completion of an investigation or the collection of evidence; and
>
> (3) Doing so is in the best interest of the child.

§ 210.143(1) RSMo.

58.     The child can then be held for "assessment" for up to 72 hours. § 210.143(3) RSMo.

59.     The provisions contain no due process provisions for the child, the facility or the parents prior to the 72-hour removal.

60.     If the child is held for assessment for more than 72 hours, there must be "a hearing with **attempted** notice to the facility and to the parents or guardian and with due process

for all parties." § 210.143(3) RSMo (emphasis added). Only "attempted" notice is required, despite the fact that the statutory scheme gives the Children's Division contact information for virtually all leadership personnel at a facility, and despite the fact that the Children's Division knows how and where to serve Heartland and its agents anyway.

61.     If the court enters an order to produce the child, the court may expand the order to produce other children in the care of the residential care facility if the court finds there is reasonable cause to believe that such children may have been abused or neglected. § 210.143.4 RSMo.

62.     The new regulations contemplate mass removals of students based on only a "reasonable belief" standard:

> The petition and order may be made on an *ex parte* basis if it is reasonable to believe that providing notice may place the child at risk for further abuse or neglect, if it is reasonable to believe that providing notice may cause the child to be removed from the state of Missouri or the jurisdiction of the court, or if it is reasonable to believe that evidence relevant to the investigation will be unavailable if the *ex parte* order is not entered.

§ 210.143.5 RSMo.

63.     Once a facility is served with "a subpoena, petition, or order," there are some limited attempts to provide due process protections:

> Any person served with a subpoena, petition, or order under this section shall not be required to file an answer, but may file a motion for a protective order or other appropriate relief. The motion shall be filed at or before the time for production or disclosure set out in the subpoena or order. The motion shall be in writing, but it may be informal and no particular form shall be required. The clerk shall serve a copy of the motion on the director of the children's division and any agency who applied for the order. The court shall expedite a hearing on the motion and shall issue its decision no later than one business day after the date the motion is filed. The court may review the motion in camera and stay implementation of the order once for up to three days. The in camera review shall be conducted on the record, but steps shall be taken to protect the identity of the child. Any information that may reveal the identity of a hotline reporter shall not be disclosed to anyone in any proceeding under this subsection unless otherwise allowed by law.

§ 210.143.6 RSMo.

64.     However, it is unclear under what circumstances a facility would be served with "a subpoena, petition, or order," given that *ex parte* applications are allowed.

### b.  Background Check Ineligibility

65.     If an individual is rendered "ineligible" to be present at an LERCF because of information revealed in a background check, there is only limited process for review and limited information provided to the facility.

66.     The facility is not told what in a background check renders an individual ineligible: "The department shall not reveal to the residential care facility any disqualifying offense or other related information regarding the applicant." § 210.493.11 RSMo..

67.     It is unclear how a person or facility like Heartland is supposed to review an ineligibility finding if they do not know the reasons behind the finding.

68.     13 CSR 35-71.015(12)(B) explains the administrative review process, noting:

3.  The administrative review shall be conducted and decided based upon the written materials submitted to the division and any information and materials presented at a review conference. The division will provide a review conference upon written request.
4.  The review conference may take place by telephone conference call, video conference, or in-person meeting.
5.  The administrative review process shall be informal. **The rules of evidence shall not apply. There is no right to conduct discovery. There shall be no right to compel the production of witnesses or evidence by subpoena or otherwise.**
6.  The administrative review shall be conducted by an individual designated by the director of the department or the division, who may be an employee of the division or the department. However, the individual shall not have been involved in making the decision which is subject to review.
7.  The individual conducting the administrative review shall conduct the administrative review and render a written decision no later than thirty (30) days from the date that the division received the request for administrative review.
8.  **The decision upon administrative review shall be the final decision of the department as to any person that is not an applicant.**

Emphasis added.

69.     There is nothing in the way of a real due process hearing. There is no discovery, no compelling of appearance witnesses and, apparently, no testimony under oath. Nor are rules of evidence utilized.

70.     The applicant (but not the facility) can appeal the decision of the department upon administrative review. This entails a procedure before the Administrative Hearings Unit of the Division of Legal Services of the Department of Social Services. 13 CSR 35-71.015(12)(C). *Contra* Section 210.493.13 RSMo, which does not limit the administrative review available to the facility: "Any person aggrieved by a decision of the department shall have the right to seek an administrative review."

71.     Here, again, there are severe limitation on due process:

The hearing **shall not be not an opportunity to collaterally attack or re-litigate the validity of the underlying plea of guilt, plea of *nolo contendere*, or the underlying finding of child abuse, neglect or maltreatment** by the applicable state or local agency, or the accuracy of information in the federal, state or local registry or repository.

13 CSR 35-71.015(12)(C)(8) (emphasis added).

72.     In the appeal, the hearings are "informal, but they shall be held on the record and testimony will be adduced under oath. **The rules of evidence do not apply.** The applicant may be represented by an attorney." 13 CSR 35-71.015(12)(C)(6) (emphasis added).

73.     Finally, there is limited judicial review.

1. Any applicant aggrieved by the final decision of the department after appeal may seek judicial review as provided in section 536.150 RSMo.

2. Any person who is not an applicant who is aggrieved by the final decision of the department after administrative review may seek judicial review as provided in section 536.150, RSMo.

13 CSR 35-71.015(12)(D). Thus the facility can obtain judicial review of the decision of the department upon initial administrative review, but the facility is left out of the stage of review

conducted by the department's Administrative Hearings Unit. *Cf.* 13 CSR 35-71.015(12)(B)8

("The decision upon [the initial] administrative review shall be the final decision of the

department as to any person that is not an applicant."). *Contra* Section 210.493.13 RSMo, which

does not limit the administrative review available to the facility: "Any person aggrieved by a

decision of the department shall have the right to seek an administrative review."

74.     The judicial review involved is not *de novo*, but is described as follows:

When any administrative officer or body existing under the constitution or by statute or by
municipal charter or ordinance shall have rendered a decision which is not subject to
administrative review, determining the legal rights, duties or privileges of any person,
including the denial or revocation of a license, and there is no other provision for judicial
inquiry into or review of such decision, such decision may be reviewed by suit for injunction,
certiorari, mandamus, prohibition or other appropriate action, and in any such review
proceeding the court may determine the facts relevant to the question whether such person at
the time of such decision was subject to such legal duty, or had such right, or was entitled to
such privilege, and may hear such evidence on such question as may be properly adduced,
and the court may determine whether such decision, in view of the facts as they appear to the
court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an
abuse of discretion; and the court shall render judgment accordingly, and may order the
administrative officer or body to take such further action as it may be proper to require; but
the court shall not substitute its discretion for discretion legally vested in such administrative
officer or body, and in cases where the granting or withholding of a privilege is committed
by law to the sole discretion of such administrative officer or body, such discretion lawfully
exercised shall not be disturbed.

§ 536.150 RSMo.

75.     Absent declaratory and injunctive relief against application and enforcement of

the offending portions of HB557 and 560, along with enabling regulations, Plaintiff will suffer

irreparable harm.

76.     There is no adequate remedy at law, as monetary damages could not possibly

compensate Plaintiff for the damage the new law threatens to do to Plaintiff's association.

**COUNT I**

**VIOLATION OF FEDERAL PRIVACY LAWS**

77.     Plaintiff repeats and re-alleges each of the foregoing allegations in this Complaint.

78.     CNSIMI, a Missouri nonprofit corporation with more than fifty employees, provides full-time residential services to men, women, and children with behavioral problems or who suffer from alcohol or drug dependencies, and it operates a school that serves the children of individuals in its Recovery Program, as well as its employees' children.

79.     Pursuant to 42 U.S.C. § 290dd-2 and 42 U.S.C. § 290ee-3, CNSIMI is required to observe strict confidentiality regarding any patient identifying records of those in the drug and alcohol recovery programs it administers.

80.     Pursuant to 42 CFR § 2.11, CNSIMI is a program which holds itself out as providing and does provide alcohol or drug abuse diagnosis, treatment or referral for treatment.

81.     Pursuant to 42 CFR § 2.12(b)(4), CNSIMI is the recipient of Federal assistance because it is assisted by the Internal Revenue Service of the Department of the Treasury through the allowance of income tax deductions for contributions to the program or through the granting of tax-exempt status to the program.

82.     As such, pursuant to 42 CFR § 2.13(2), these regulations restrict the disclosure of alcohol or drug abuse patient records. In addition, 42 CFR § 2.12(d)(1)-(2) provides that these restrictions also apply to any persons who receive patient records from such a program. "Person" means an individual, partnership, corporation, Federal, State or local government agency, or any other legal entity.

83.     The recently-enacted Section 210.1262 RSMo, part of the Residential Care Facility Notification Act, states that a facility such as CNSIMI must notify the Department of

Social Services of, *inter alia*, the "[n]ame of the director, owner, operator, all staff members, volunteers, and any individual eighteen years of age or older who resides at or on the property of the residential care facility."

84. This notification was required to be made by October 12, 2021, three months after the effective date of the statutes, and thereafter. 210.1259.2 RSMo.

85. The Emergency Rules enabling this act were filed on September 17, 2021 and became effective October 1, 2021.

86. Violation of these notification requirements are remedied by, *inter alia*, "injunctive relief to cease the operation of the residential care facility and provide for the appropriate removal of the children from the residential care facility . . ." § 210.1271.1 RSMo.

87. Section 210.493 RSMo, which requires background checks provided to the State for those at Heartland, would also reveal the identities of those in the Recovery Programs.

88. The records sought by the Department of Social Services are confidential under federal law because they reveal the names of individuals participating in the Recovery Programs. 42 U.S.C. § 290dd-2(b)(2)(a).

89. The privacy statute and governing regulations "carry a strong presumption against disclosing records of this kind. 42 U.S.C. § 290ee-3(a) [now 290dd-2]. The express purpose of this provision is to encourage patients to seek treatment for substance abuse without fear that by doing so, their privacy will be compromised." *United States v. Cresta*, 825 F.2d 538, 551-52 (1st Cir. 1987), *cert. denied*, 486 U.S. 1042 (1988).

90. The reason for the privilege is clear – it is "a response to the considerable stigma long associated with, and still attached to, substance use disorders." *See Confidentiality of Alcohol and Other Drug Abuse Treatment Information for Emergency Department and Trauma*

*Center Patients*, 20 Health Matrix 387, 388 (2010). "The purpose of the federal statute is to encourage patients to seek treatment for substance abuse by assuring them that their privacy will not be compromised." *In re B.S.*, 659 F.2d 1137, 1139 (Vt. 1995) (citing *Whyte v. Connecticut Mutual Life Ins. Co.*, 818 F.2d 1005, 1010 (1st Cir. 1987)).

91.    "Congress felt that 'the strictest adherence' to the confidentiality provisions was needed, lest individuals in need of drug abuse treatment be dissuaded from seeking help." *Ellison v. Cocke Cty. Tenn*, 63 F.3d 467, 471 (6th Cir. 1995); *see also U.S. ex. rel Chandler v. Cook Cty., Ill.,* 277 F.3d 969, 981 (7th Cir. 2002) ("It is not only the privacy rights of individual patients that are at stake here, but also the continued effectiveness and viability of important substance abuse treatment programs . . . Patients will be less willing to seek treatment if patient confidentiality is not strictly protected.").

92.    Pursuant to 42 CFR § 2.20, "no state law may either authorize or compel any disclosure prohibited by the regulations in this part."

93.    Judge White of this district has found in favor of CNSIMI, pursuant to the federal rules cited herein, regarding its claims that it cannot reveal the identities of those in its recovery programs. *In re Employment Records of John Does Employed by Sharpe Holdings*, 4:17MC238 RLW, 2017 WL 6547738 (E.D. Mo. 2017).

94.    Absent declaratory and injunctive relief against application and enforcement of the notification requirements, Plaintiff will suffer irreparable harm. It has no adequate remedy at law.

**COUNT II**

**VIOLATION OF PLAINTIFF'S RIGHT OF**
**EXPRESSIVE ASSOCIATION**

95.     Plaintiff repeats and re-alleges each of the foregoing allegations in this Complaint.

96.     The First Amendment recognizes and protects the right to freedom of association.

Plaintiff is an association for social, economic, educational, religious, and cultural purpose, and

is thus entitled to protection absent a showing by Defendant of a compelling state interest that

cannot be achieved through less restrictive means. *Roberts v. Jaycees,* 468 U.S. 609, 623 (1984).

97.     Christian belief and practice are integral to the identity of CNSIMI, and adherence

to Christian tenets is a deeply and sincerely integral aspect of Plaintiff.

98.     The recently-enacted Section 210.1262 RSMo, part of the Residential Care

Facility Notification Act, states that a facility such as CNSIMI must notify the Department of

Social Services of, *inter alia*, the "[n]ame of the director, owner, operator, all staff members,

volunteers, and any individual eighteen years of age or older who resides at or on the property of

the residential care facility."

99.     This notification was required to be made by October 12, 2021 and thereafter.

§ 210.1259.2 RSMo.

100.     Violation of these notification requirements is punished by, *inter alia*, "injunctive

relief to cease the operation of the residential care facility and provide for the appropriate

removal of the children from the residential care facility . . ." Section 210.1271.1 RSMo. The

new statute and enabling regulations do not require that notice and a hearing be provided prior to

such injunctive relief.

101.     Congress and federal courts have recognized the damage done to associations

when those in their alcohol and drug rehabilitation facilities are denied confidentiality.

"Congress felt that 'the strictest adherence' to the confidentiality provisions was needed, lest individuals in need of drug abuse treatment be dissuaded from seeking help." *Ellison v. Cocke Cty. Tenn*, 63 F.3d 467, 471 (6th Cir. 1995); *see also U.S. ex. rel Chandler v. Cook Cty., Ill.,* 277 F.3d 969, 981 (7th Cir. 2002) ("It is not only the privacy rights of individual patients that are at stake here, but also the continued effectiveness and viability of important substance abuse treatment programs . . . Patients will be less willing to seek treatment if patient confidentiality is not strictly protected.").

102.    The implications of the mandated disclosure at issue are immense, as they may dissuade those in the Recovery Program from continuing, which in turn will jeopardize the program itself.

103.    The Department's background check requirements (and actions that must be taken upon the information revealed in the check) also threaten CNSIMI's association rights.

104.    Background checks are required for:

Officers, managers, contractors, volunteers with access to children, employees, and other support staff of residential care facilities subject to the notification requirements under sections 210.1250 to 210.1286; any person eighteen years of age or older who resides at or on the property of such residential care facility; any person who has unsupervised contact with a resident of such residential care facility; and owners of such residential care facilities who will have access to the facilities shall undergo background checks under section 210.493.

§ 210.1263 RSMo. Background checks are required for those who *apply* for a position at the facility and also any individual "who . . . is required to successfully complete the background check requirement for . . . presence at the . . . License-Exempt Residential Care Facility." 13 CSR 35-71.015(1)(A). "'Applicant' means any individual who applies or is required to successfully complete the background check requirements for employment or presence at the  . . . LERCF . . ." *Id.*; § 210.493.1(1) RSMo.

105.    The background checks are required for those regardless of whether they typically (or ever) have contact with children at the facility. Checks are required for "Other Support Staff," for instance, which includes "any individual who works for or performs services, including professional services, for the LERCF . . ." 13 CSR 35-71.015(1)(L); § 210.1263 RSMo. This would include lawyers and accountants, who may (and do) work hundreds of miles away from Heartland, who are also "contractors" under §§ 210.493.2 and 210.1263 RSMo.

106.    Failure to successfully complete a background check renders an individual "ineligible for employment, service or presence" at the facility. 13 CSR 35-71.015(4)(A); *Cf.* §  210.493.11 RSMo. Section 210.1283 RSMo also makes it a class B misdemeanor to knowingly fail to complete a background check as required under Section § 210.493 RSMo.

107.    The results of the background checks determine whether the applicant can remain at the facility. An individual is "ineligible" if he or she refuses to consent to a background check, is registered in certain state registries, or has pled guilty to or been convicted of certain crimes, including, for instance, "felony drug-related offenses."  § 210.493 RSMo.

108.    These individuals are ineligible to remain at CNSIMI regardless of whether they have any contact with children and in many cases whether their criminal offenses have anything to do with children.

109.    Given that those with "felony drug-related offense(s) committed during the preceding five years" are ineligible, the background check and eligibility requirements threaten the viability of CNSIMI's Recovery Program.

110.    Requiring that "support staff" and "contractors"—which include professional service providers— undergo background checks also threatens CNSIMI's ability to operate, as it

23

may be difficult to find accountants, lawyers and consultants who are willing to submit to FBI background and fingerprint checks.

111.    The Supreme Court has given significant protection to individuals who may be victimized by compelled disclosure of their affiliations. Where government action subjects persons to harassment and threats of bodily harm, economic reprisal, or "other manifestations of public hostility," *NAACP v. Alabama*, 357 U.S. 449, 462 (1958), the government must demonstrate a compelling interest, *id*. at 463; *Bates v. Little Rock*, 361 U.S. 516, 524 (1960), there must be a substantial relationship between the information sought and the compelling state interest, *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 546 (1963), and the state regulation must "be narrowly drawn to prevent the supposed evil," *Louisiana ex rel. Gremillion v. NAACP*, 366 U.S. 293, 297 (1961) (internal quotation marks omitted) (*quoting Cantwell v. Connecticut*, 310 U.S. 296, 307 (1940)).

112.    The statute and enabling regulations presume to determine who "is eligible or ineligible for employment or presence at the residential care facility . . ." § 210.493.11 RSMo, based upon the results of invasive background checks.

113.    A residential care facility is defined under the statute as "any place, facility, or home operated by any person who receives children who are not related to the operator and whose parent or guardian is not a resident of the same facility and that provides such children with supervision, care, lodging, and maintenance for twenty-four hours a day, with or without transfer of custody." § 210.1253(6) RSMo.

114.    The statute and enabling regulations require these invasive background checks and the Defendant presumes to tell the ministries who is eligible and ineligible to be its "officers; managers; contractors with unsupervised access to children; volunteers with unsupervised access

24

to children; employees; other support staff; owners of . . . LERCFs that will have access to the facilities . . ." 13 CSR 35-71.015(1)(A)1; *Cf.* §§ 210.493.2 and 210.1263 RSMo, which also include all contractors, whether or not they have unsupervised access to children.

115.     In turn, "Officer" is defined as "any individual who holds an executive position with the LERCF . . . , including, but not limited to President and/or Chairperson of the Board, Board Vice President and/or Vice Chair, Board Secretary, Board Treasurer, any other position designated as an officer in the bylaws or articles of incorporation or organization; and General Counsel, Headmaster, Principal, Head Teacher, and Director and/or Chief Executive Officer of the LERCF . . ." 13 CSR 35-71.015(2)(I).

116.     "Other Support Staff" is defined to ". . . include any individual who works for or performs services, including professional services, for the LERCF, LRCF, or Child Placing Agency, whether compensated or not. Other support staff may be employees and employees may be other support staff." 13 CSR 35-71.015(1)(L). This includes lawyers and accountants, even if they are not at the facility.

117.     The term "Contractors" is not defined in the statute or the regulations, however Sections 210.493.2 and 210.1263 RSMo require background checks on all contractors, whereas the enabling regulations incongruously require background checks only on ". . . contractors with unsupervised access to children . . ." 13 CSR 35-71.015(1)(A)1. Contractors include lawyers and accountants.

118.     A "volunteer" is interpreted to include "any individual who performs a service for or on behalf of the LERCF . . . of their own free will without obligation, or without any expectation of reward or compensation." 13 CSR 35-71.015(1)(M). The distinction between a "volunteer" (who need only comply with the background check requirements if they are

"volunteers with unsupervised access to children") and an individual who is classified as "Other Support Staff" or who is uncompensated (who need to comply with the background check requirements even if there is no contact with children) is incapable of discernment.

119.    The Department's regulations restrict the freedom of CNSIMI to form an expressive association of those who share a common commitment to education, addiction recovery and religious faith.

120.    Defendant violates the federal constitutional rights of CNSIMI and its members, including its students and their families, faculty and staff, to associate, as guaranteed by the First Amendment to the U.S. Constitution.

121.    Defendant violates Plaintiff's right to freedom of association by requiring disclosure of those in recovery programs and by barring the employment or presence of those (regardless of whether they have any contact with children at CNSIMI) who have background checks that reveal histories which may or may not have anything to do with child abuse or endangerment.

## COUNT III

## Procedural Due Process

122.    Plaintiff repeats and re-alleges each of the foregoing allegations in this Complaint.

123.    As more specifically described herein, the statutory scheme set forth does not afford due process to Plaintiff or others engaged in the activities of Plaintiff's association.

124.    The new statute and enabling regulations do not provide the procedural due process required by the 14th Amendment to the U.S. Constitution, in that property and liberty interests are violated without first providing notice and a hearing.

125.    Removal of a child from Heartland is unconstitutional without first providing

notice and a hearing unless there is reasonable cause to believe that such a particular child being removed is "in imminent danger of suffering serious physical harm, threat to life from abuse or neglect, or has been sexually abused or is in imminent danger of sexual abuse." *Heartland Academy Community Church v. Waddle,* 317 F. Supp. 2d 984, 1111 (E.D. Mo. 2004), *aff'd, Heartland Academy Community Church v. Waddle,* 427 F.3d 525 (8th Cir. 2005).

126.    No removal of children or other members of the Heartland association can constitutionally occur without the Defendant passing the strict scrutiny test, which requires Defendant to demonstrate a compelling state interest in removing each particular child from Heartland and showing that even if such a compelling interest exists, there is not a narrower means of achieving it. Missouri's statutory scheme ignores these requirements.

127.    Plaintiff and its members have protected property and liberty interests in maintaining the residence of Plaintiff's members at Heartland and avoiding their forced removal.

128.    The statute and enabling regulations presume to determine who "is eligible or ineligible for employment or presence at the residential care facility" (§ 210.493.11 RSMo), based upon the results of invasive background checks, which include, most prominently, whether their names are found in any state registries for abuse and neglect. Under the statute and enabling regulations, individuals are ineligible to remain at Heartland even if their names have been placed on a central registry merely on the basis of probable cause or reasonable suspicion, regardless of whether they obtained a due process hearing and regardless of whether they had *de novo* appeal rights in a court of law, all of which is contrary to the 14th Amendment to the U.S. Constitution. *Jamison v. Dept. of Soc. Servs.,* 218 S.W.3d 399 (Mo. 2007).

129.    Plaintiff and its members are constitutionally entitled to a meaningful hearing and notice of that hearing before any removal may take place.

130.    Missouri's statutory scheme authorizes the deprivation of these property and liberty interests without adequate due process because it does not guarantee full and fair hearings conducted pre-deprivation for Plaintiff or its members.

131.    Absent declaratory and injunctive relief against application and enforcement of this new statute and enabling regulations, Plaintiff will suffer irreparable harm.

## COUNT IV

### Parental Rights

132.    Plaintiff repeats and re-alleges each of the foregoing allegations in this Complaint.

133.    Entities engaged in conducting religious schools are protected by the Due Process Clause of the Fourteenth Amendment from a government's unwarranted interference with the rights of parents, and the rights of the school selected by the parents, to direct the upbringing and education of the parents' children.

134.    The new law deprives students' parents of a fair opportunity to procure for their children instruction that they think is important and that they have selected at least in part for religious reasons.

135.    The Fourteenth Amendment protects Plaintiff from the deprivation of its and its members' property and liberty rights without due process of law.

136.    The right to conduct schools in a certain manner is a right under *Pierce v. Society of Sisters,* 268 U.S. 510 (1925). Parents and guardians, as a part of their liberty, may direct the education of their children, including religious education, by selecting where their children will be brought up and educated, and under *Pierce*, Heartland has standing to assert those rights.

137.    The new statute and enabling regulations conflict with these rights, threatening Heartland with removals and ceased operations.

138.    Defendant has violated and continues to violate the federal constitutional rights of Plaintiff, including its students and their parents, to be free from interference with the rights of parents, guardians and families to direct the upbringing and education of their children, under the U.S. Constitution.

139.    Absent declaratory and injunctive relief against application and enforcement of the new statute and enabling regulations, Plaintiff will suffer irreparable harm.

**COUNT V**

**The *Hosanna-Tabor* Ministerial Exception**

140.    Plaintiff repeats and re-alleges each of the foregoing allegations in this Complaint.

141.    The new statute and enabling regulations violate Plaintiff's freedom and autonomy under the Religion Clauses of the First Amendment to the United States Constitution.

142.    The Free Exercise and the Establishment Clauses together vest in religious organizations the autonomy to order their own affairs, to decide for themselves, free from governmental interference, matters of ecclesiastical government, doctrine, the communication of that doctrine and the internal administration of their institution.

143.    Plaintiff's teachers of religion, among other employees, are sources of religious instruction to students and are an essential part of transmitting religious faith to the next generation.

144.    The new statute and enabling regulations contain no exception for the employment of ministerial employees, including teachers, house parents and the many other employees of Heartland who promote its message, as required by *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC,* 565 U.S. 171 (2012).

29

145.     The statute and enabling regulations presume to determine who "is eligible or
ineligible for employment or presence at the residential care facility . . . " based upon the results
of invasive background checks. § 210.493.11 RSMo.

146.     A residential care facility is defined under the statute as "any place, facility, or
home operated by any person who receives children who are not related to the operator and
whose parent or guardian is not a resident of the same facility and that provides such children
with supervision, care, lodging, and maintenance for twenty-four hours a day, with or without
transfer of custody." § 210.1253(6) RSMo.

147.     The statute and enabling regulations require these invasive background checks
and the Defendant presumes to tell the ministries who is eligible and ineligible to be its "officers;
managers; contractors with unsupervised access to children; volunteers with unsupervised access
to children; employees; other support staff; owners of . . . LERCFs that will have access to the
facilities . . ." 13 CSR 35-71.015(1)(A)1; *Cf.* §§ 210.493.2 and 210.1263 RSMo, which also
include all contractors, whether or not they have unsupervised access to children. These statutes
include attorneys and accountants, even though they are offsite.

148.     In turn, "Officer" is defined as "any individual who holds an executive position
with the LERCF . . . , including, but not limited to President and/or Chairperson of the Board,
Board Vice President and/or Vice Chair, Board Secretary, Board Treasurer, any other position
designated as an officer in the bylaws or articles of incorporation or organization; and General
Counsel, Headmaster, Principal, Head Teacher, and Director and/or Chief Executive Officer of
the LERCF . . ." 13 CSR 35-71.015(2)(I).

149.     "Other Support Staff" is defined to ". . . include any individual who works for or
performs services, including professional services, for the LERCF, LRCF, or Child Placing

Agency, whether compensated or not. Other support staff may be employees and employees may be other support staff." 13 CSR 35-71.015(1)(L). This includes lawyers and accountants, even if they are not at the facility.

150.    The term "Contractors" is not defined in the statute or the regulations, however Sections 210.493.2 and 210.1263 RSMo require background checks on all contractors, whereas the enabling regulations incongruously require background checks only on ". . . contractors with unsupervised access to children . . ." 13 CSR 35-71.015(1)(A)1. Contractors include lawyers and accountants.

151.    A "volunteer" is interpreted to include "any individual who performs a service for or on behalf of the LERCF . . . of their own free will without obligation, or without any expectation of reward or compensation." 13 CSR 35-71.015(1)(M). The distinction between a "volunteer" (who need only comply with the background check requirements if they are "volunteers with unsupervised access to children") and an individual who is classified as "Other Support Staff" or who is uncompensated (who need to comply with the background check requirements even if there is no contact with children) is incapable of discernment.

152.    Defendant has violated, and continues to violate, Plaintiff's freedom and autonomy under the Free Exercise and Establishment Clauses.

153.    Absent declaratory and injunctive relief against application and enforcement of the new statute and enabling regulations, Plaintiff will suffer irreparable harm.

## COUNT VI

## Illegal Search and Seizure

154.    Plaintiff repeats and re-alleges each of the foregoing allegations in this Complaint.

155.    Defendant promises, under the new statute and enabling regulations, to deprive

Plaintiff and its members of certain constitutionally protected rights under the Fourth

Amendment to the Constitution of the United States including the right to be free from

warrantless and unreasonable searches and seizures.

156.    Absent declaratory and injunctive relief against application and enforcement of

the new statute and enabling regulations, Plaintiff will suffer irreparable harm.

## COUNT VII

### Procedural Due Process/Federal Supremacy

157.    Plaintiff repeats and re-alleges each of the foregoing allegations in this Complaint.

158.    Sections 210.1263 and 210.493 RSMo, taken together, require a "background

check," including a "Federal Bureau of Investigation fingerprint check," for:

> Officers, managers, contractors, volunteers with access to children, employees, and other support staff of residential care facilities subject to the notification requirements under sections 210.1250 to 210.1286; any person eighteen years of age or older who resides at or on the property of such residential care facility; any person who has unsupervised contact with a resident of such residential care facility; and owners of such residential care facilities who will have access to the facilities shall undergo background checks under section 210.493.

§ 210.1263 RSMo.

159.    The required background checks consist of the following:

(A) A fingerprint-based background check of open and closed criminal history conducted in conjunction with the MSHP pursuant to subsection (3) of this regulation; and

(B) A search of the national offender registry conducted by the division; and

(C) A search of the following registries, repositories, or databases in Missouri, the state where the applicant resides, and each state where the applicant resided during the preceding five (5) years conducted by the division:

   1.   The state sex offender registry or repository (in Missouri this is a search of the MSHP Sex Offender Registry); and

   2.   The state family care safety registry (in Missouri this is a search of the family care safety registry); and

      3.   The state-based child abuse and neglect registry and database (in Missouri this is a search of the Central Registry of the division).

13 CSR 35-71.015(2).

160.    These background checks are required for persons regardless of whether they typically (or ever) have contact with children at the facility. Checks are required for "Other Support Staff," for instance, which includes "any individual who works for or performs services, including professional services, for the LERCF . . . whether compensated or not," 13 CSR 35-71.015(1)(L). "Professional services" would appear to include accountants and lawyers and others who have no contact with children at the facility. *Cf.* 34 U.S.C. 40102 (a "background check [is] for the purpose of determining whether a covered individual has been convicted of a crime that bears upon the covered individual's fitness *to have responsibility for the safety and well-being of children*") (emphasis added).

161.    Pursuant to Section 210.493.11 RSMo, an individual is determined to be "eligible or ineligible for employment or presence at the residential care facility" based upon FBI database searches alone.

162.    Failure to successfully complete a background check renders an individual "ineligible for employment, service or presence" at the facility. 13 CSR 35-71.015(4)(A); *Cf.* § 210.493.11 RSMo ("employment or presence").

163.    Section 210.1283 RSMo also makes it a class B misdemeanor to knowingly fail to complete a background check as required under § 210.493 RSMo. In other words, it criminalizes individuals for not waiving their privacy rights.

164.    Missouri allows an individual to appeal a disqualification based on a background check, but, notably, the individual "shall not be [given] an opportunity to collaterally attack or

re-litigate the validity of the underlying plea of guilt, plea of *nolo contendere*, or the underlying

finding of child abuse, neglect or maltreatment . . ." 13 CSR 35-71.015(12)(C)(8).

165.    Federal law, on the other hand, requires pre-deprivation due process regarding

FBI background checks, including the ability to correct a record:

> The officials making the determination of suitability for licensing or employment shall provide the applicants the opportunity to complete, or challenge the accuracy of, the information contained in the FBI identification record. These officials also must advise the applicants that procedures for obtaining a change, correction, or updating of an FBI identification record are set forth in 28 CFR 16.34. **Officials making such determinations should not deny the license or employment based on information in the record until the applicant has been afforded a reasonable time to correct or complete the record, or has declined to do so.** A statement incorporating these use-and-challenge requirements will be placed on all records disseminated under this program. This policy is intended to ensure that all relevant criminal record information is made available to provide for the public safety and, further, to protect the interests of the prospective employee/licensee who may be affected by the information or lack of information in an identification record.

28 CFR 50.12 (emphasis added).

166.    Under federal law an individual can collaterally attack what is in the database and

cannot be told that he or she is ineligible for employment until that right has been exhausted. The

individual must be afforded pre-deprivation due process. Under this new Missouri law, he or she

is specifically deprived of employment, pre-deprivation due process, and due process entirely, in

that he or she cannot collaterally attack, change, correct or update their FBI records, contrary to

federal law.

167.    This statutory scheme does not afford due process to Plaintiff or others engaged in

the activities of Plaintiff's association. The proper due process is recognized by federal

background check law, described above, which supersedes the contrary state law that Missouri

has set forth. U.S. Const. Art. VI, cl. 2.

168.    Absent declaratory and injunctive relief against application and enforcement of

the new statute and enabling regulations, Plaintiff will suffer irreparable harm.

34

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a)   A declaratory judgment stating that:

1)   It is unlawful for Defendant to remove or seek the removal of any person, including children, residing at Heartland, without first providing Heartland and the person subject to removal and his or her custodial parent or legal guardian with meaningful notice and an opportunity to be heard, unless such person is in imminent danger of serious bodily injury or death, or has been sexually abused or is in imminent danger of sexual abuse. In failing to meet this Constitutional threshold, Section 210.143(2)-(5) RSMo, Section 210.1268 RSMo and Section 210.1271(1)-(4) RSMo are invalid absent pre-deprivation notice and a meaningful opportunity to be heard;

2)   It is unlawful for Defendant to remove or seek the removal (whether through "ineligibility" or otherwise) of any person from Heartland without first demonstrating a compelling state interest in removing the particular person and demonstrating that there is no less restrictive means of achieving the compelling state interest;

3)   It is unlawful for Section 210.493.3 RSMo to require "any person eighteen years of age or older who resides at or on the property" of CNS International Ministries, Inc., to complete a background check or otherwise disclose their identity without, at a minimum, first meeting the requirements imposed by 42 USC § 290dd-2 and 42 CFR Part 2 as regards each participant (past or present) in alcohol and drug recovery programs;

4)   Section 210.1283 RSMo's Class B misdemeanor penalty is invalid as applied to any participant in CNS International Ministries, Inc.'s alcohol and drug abuse programs' (past or present) refusal to submit to invasive background checks, as violative of 42 USC § 290dd-2 and 42 CFR Part 2;

5)   It is unlawful for Defendant, or anyone acting in concert with Defendant, to seek or require the disclosure of a full census and demographic information at the residential care facility, of any persons eighteen years of age or older who reside at or on the property of the residential care facility pursuant to Section 210.1264 RSMo, without, at a minimum, first meeting the requirements imposed by 42 USC § 290dd-2 and 42 CFR Part 2 regarding each participant in CNS International Ministry, Inc.'s alcohol and drug recovery programs;

6)   It is unlawful for Section 210.493.11 RSMo to condition a participant's "eligibility" or "ineligibility" for "presence at" CNS International Ministries, Inc.'s alcohol and drug abuse programs based upon disclosure of their identity and the outcome of invasive background checks, as violative of 42 USC § 290dd-2 and 42 CFR Part 2;

7)   It is unlawful to require CNS International Ministries, Inc. to refrain from receiving children (Section 210.1259.1 RSMo), face injunctions to cease operations or suffer the removal of children (Section 210.1271.1(3) RSMo) based upon its refusal to violate 42 USC § 290dd-2 and 42 CFR Part 2 regarding each participant in CNS International Ministry, Inc.'s alcohol and drug recovery programs;

8) It is unlawful for Defendant to interfere with and dictate CNS International Ministries, Inc.'s choice in officers, staffing, and contractors, including, but not limited to its President and/or Chairperson of the Board, Board Vice President and/or Vice Chair, Board Secretary, Board Treasurer, any other position designated as an officer in the bylaws or articles of incorporation or organization, General Counsel, Headmaster, Principal, Head Teacher, Director and/or Chief Executive Officer, Managers, or staff or support staff, including the providers of professional services (such as attorneys and accountants);

9) It is unlawful for Defendant, or anyone acting in concert with the Defendant, to condition CNS International Ministries, Inc.'s ability to receive children under § 210.1259 RSMo upon its agreement to exclude individuals from its employment and premises based upon constitutionally and statutorily prohibited criteria;

10) It is unlawful for Defendant, or anyone acting in concert with Defendant, to require the acquisition of and access to all medical records of the child residents of the facility pursuant to § 210.1262(8) RSMo, for no reason other than "to verify that medical records are being kept" and solely based upon a "reasonable basis to believe" that the medical records are not maintained;

11) It is unlawful for Defendant, or anyone acting in concert with Defendant, to demand a census list, demographics information and the related information regarding officers, managers, contractors, volunteers with access to children,

employees, and other support staff of the facility, any person eighteen years of age or older who resides at or on the property of the residential care facility and any person who has unsupervised contact with a resident of the residential care facility pursuant to § 210.1264 RSMo;

12) It is unlawful for Defendant, or anyone acting in concert with Defendant, to condition an individual's presence at CNS International Ministries, Inc.'s premises on undergoing background checks and criminally penalize individuals for failure to undergo background checks pursuant to Sections 210.493 and 210.1283 RSMo; and

13) It is unlawful for Defendant to maintain and provide to the public a list of all residential care facilities in compliance with sections 210.1250 to 210.1286 RSMo, while excluding Plaintiff from the list.

b) Injunctive relief forbidding Defendant, his employees, agents and successors in office from enforcing any statute or regulation to the extent the Court declares such statutes or regulations to be unlawful as requested above;

c) Attorney fees and other expenses as provided by 42 U.S.C. § 1988;

d) Costs as provided by law; and

e) Such other and further relief as the Court deems appropriate.

January 5, 2024                       Respectfully submitted,

                                      OTTSEN, LEGGAT AND BELZ, L.C.

                          By:  /s/ Timothy Belz_____
                               Timothy Belz  #MO-31808
                               112 South Hanley, Second Floor
                               St. Louis, Missouri 63105-3418
                               Phone: (314) 726-2800
                               Facsimile: (314) 863-3821
                               tbelz@olblaw.com

                               and

                               Brad L. Blake #MO-38340
                               Fellows & Blake, L.L.C.
                               13421 Manchester Road, Suite 105
                               St. Louis, Missouri 63131
                               Phone: (314) 725-1600
                               Facsimile: (314) 725-1609
                               bblake@fellowsblakelaw.com

                               Attorneys for CNS International Ministries, Inc.


**Certificate of Service**

The undersigned hereby certifies that the foregoing document was served on all

registered parties on this 5th day of January, 2024 using the Court's online filing system.


                               /s/ Timothy Belz_____