IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| CNS INTERNATIONAL MINISTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-CV-65 HEA |
| | ) | |
| ROBERT KNODELL, in his official capacity as | ) | |
| Director of the Missouri Department of | ) | |
| Social Services, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATUS REPORT**

Plaintiff CNS International Ministries, Inc. ("CNSIMI" or "Heartland"), hereby responds

to Defendant Knodell's June 6, 2024 Status Report.

Defendant states that proposed amendments to two regulations—"13 CSR 35-71.300

Notification Requirements for License-Exempt Residential Care Facilities" and "13 CSR 35-

71.015 Background Checks for Personnel of Residential Care Facilities and Child Placing

Agencies"—have been published in the *Missouri Register*. On October 1, Defendant states, DSS

will decide if the amended regulations become final.

The proposed amendments are clearly designed to address some (but by no means all) of

the legal issues Heartland has raised in the current lawsuit. For example, DSS proposes by

regulation to narrow the definition of "LERCF" to "a place, facility, or home *that provides*

*children* with supervision . . . ." rather than as "any place, facility, or home *operated by any*

*person who receives children* . . . ." Doc. 120-1 at 3 (emphases added); *see also* Plaintiff's

Opening MSJ Brief, Doc. 104 at 4-6 (showing the overbreadth problems caused by the statutory

definition). DSS would narrow the list of those subject to background checks by excluding

managers and officers, among others. Doc. 120-1 at 2-3; *see also* Doc. 104 at 7 (explaining the

problems with imposing background checks as broadly as the statute does). DSS would eliminate the requirement that LERCFs provide the State with access to the medical records of the children in its care without a warrant. Doc. 120-1 at 7; see *also* Doc. 104 at 22-23 (showing the medical records provision to be unconstitutional).

The proposed amendments hew so closely to some of the objections raised in this lawsuit that Heartland cannot help but consider these proposed amendments strong evidence that DSS itself recognizes the illegal implications of the challenged state laws. Indeed, these frequent regulatory attempts at amelioration are tacit admissions of the statute's constitutional infirmities.

Heartland welcomes any regulatory activity that purports to protect it, even temporarily, from the effects of legislative overreaching. Defendant's inclusion of these proposed amendments in his status report suggests that Defendant considers these proposed amendments to be significant to this case, albeit in an unspecified way. Here, Heartland must point out that the illegal obligations imposed on it *have been imposed by statute* and cannot be cured by regulation.

Section 210.1263 RSMo, for instance, still requires "officers," "managers," and "other support staff" to undergo background checks. That provision reads as follows:

> Background checks required, when. — Officers, managers, contractors, volunteers with access to children, employees, and other support staff of residential care facilities subject to the notification requirements under sections 210.1250 to 210.1286; any person eighteen years of age or older who resides at or on the property of such residential care facility; any person who has unsupervised contact with a resident of such residential care facility; and owners of such residential care facilities who will have access to the facilities shall undergo background checks under section 210.493.

The three categories of individuals removed from necessary background checks in the proposed regulations (officers, managers and other support staff) are still included in the statute.[1] This

---

[1] The inclusion of "contractors" in the statute is also notable, as it would mean that even lawyers, accountants and consultants (First Amended Complaint, ECF No. 23 at ¶ 110) are still required to undergo background checks—a contractor being defined by the State as "a person who contracts to do work for or supply goods to [a LERCF]." Mo. Rev. Stat § 210.493.1(2). This wide-ranging definition also means that off-site mechanics and food suppliers have to

renders the regulatory amendment meaningless to this case and, in general, only a source of confusion.

The statutory definition of a LERCF remains unchanged as well. "License-exempt" means a residential care facility that is not required to be licensed under section 210.516, and "Residential care facility" means "any place, facility, or home **operated by any person who receives children** who are not related to the operator and whose parent or guardian is not a resident of the same facility and that provides such children with supervision, care, lodging, and maintenance for twenty-four hours a day, with or without transfer of custody." Section 210.1253 RSMo (emphasis added).

In short, DSS cannot cure illegal provisions in a state statute by regulatory means (or by any other form of selective enforcement). *See Crescent Plumbing Supply Company v. Director of Revenue*, 565 S.W.3d 665, 668–69 (Mo. 2018) ("If a regulation is inconsistent with the statute, it is the statute, not the regulation, that this Court will apply."); *Brown v. Missouri Board of Probation and Parole*, 517 S.W.3d 24, 26–28 (Mo. App. W.D. 2016), reh'g and/or transfer denied, (Jan. 24, 2017) and transfer denied, (May 30, 2017) ("It is well-settled that a regulation may not conflict with a statute and if it does the regulation must fail.").

Changing the regulations in response to Plaintiff's lawsuit appears to be a form of voluntary cessation; DSS is agreeing with Plaintiff in various ways and acknowledging that the laws at issue should be written differently. But because statutes control over regulations, no regulation or admission by DSS can provide Heartland or other LERCFs security that the illegal provisions of the laws at issue will not be fully enforced in the future.

---

undergo background checks before doing work for Heartland.

That is precisely why courts have held that voluntary cessation of an illegal activity in response to a lawsuit cannot moot legal claims: the State may not change its ways voluntarily (and potentially temporarily) and protect illegal laws from judicial review. *See, e.g.*, *Trinity Lutheran Church of Columbia, Inc., v. Comer*, 582 U.S. 449, 457 n.1 (2017) (Governor of Missouri could not moot a legal challenge to unconstitutional statute by ordering agency to avoid unconstitutional applications).[2]

Each and every one of Plaintiff's claims are unaffected by the proposed regulations.[3] Accordingly, Heartland must persist in asking this Court to effect by declaratory and injunctive relief what is beyond DSS's regulatory power: complete and permanent (and precedential) disabling of the illegal provisions of the new laws.

---

[2] *See also Rogers v. Virginia State Registrar*, 507 F. Supp. 3d 664, 675 (E.D. Va. 2019) ("General Herring's interpretation lacks the force of law. . . . In addition, future Attorneys General are not bound by AG Herring's memorandum and may advance a different interpretation of the statute."); *Greenberg v. Goodrich*, 593 F. Supp. 3d 174, 194-97 (E.D. Pa. 2022) (noting that "[m]aking a concession to appease the Court in this litigation does not create confidence that Defendants truly understand the constitutional limitations of their allegedly broad power to regulate attorneys" and citing a case stating that the "'heavy burden' of mootness was not met where promise was made after litigation began and defendant made no claim that it was binding on the city"); *Harrell v. The Florida Bar*, 608 F.3d 1241, 1266–67 (11th Cir. 2010) ("Short of repealing a statute, if a governmental entity decides in a clandestine or irregular manner to cease a challenged behavior, it can hardly be said that its 'termination' of the behavior is unambiguous."). In the case at bar, we know that the State had the ability and awareness to revise its statutory scheme, because it did so during this litigation when it amended Section 210.493 RSMo in 2023.

[3] This is not the first time Plaintiff has had to address a change in relevant laws within the context of this case. On August 30, 2023, the Court ordered Plaintiff to show cause as to why certain changes to Section 210.493 RSMo did not render this case moot. Plaintiff filed its response on September 29, 2023 (Doc. 89), and the Court found the case was not moot. Doc. 90. Plaintiff's response, which detailed why each and every one of its counts was still actionable after changes to Section 210.493, is applicable to the new regulatory changes as well. Plaintiff also addressed similar regulatory changes to those discussed herein in summary judgment briefing, Doc 107-1 at 2-4, 15-16, because Defendant attached proposed amendments in draft form to an affidavit in support of its motion for summary judgment. Doc. 101-2 at 8-20. Those drafts have now been offered as formal Proposed Rules filed with the Secretary of State, to become final October 1, 2024. Doc. 102-1.

Respectfully submitted,

CLAYTON PLAZA LAW GROUP, L.C.

By: /s/ Timothy Belz
    Timothy Belz  #MO-31808
    112 South Hanley, Second Floor
    St. Louis, Missouri 63105-3418
    Phone: (314) 726-2800
    Facsimile: (314) 863-3821
    tbelz@olblaw.com

    and

    Brad L. Blake #MO-38340
    Fellows & Blake, L.L.C.
    13421 Manchester Road, Suite 105
    St. Louis, Missouri 63131
    Phone: (314) 725-1600
    Facsimile: (314) 725-1609
    bblake@fellowsblakelaw.com

    Attorneys for CNS International Ministries, Inc.

### Certificate of Service

The undersigned hereby certifies that the foregoing document was served on all

registered parties on this 26th day of July, 2024 using the Court's online filing system.

/s/ Timothy Belz

5