## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | | |
|---|---|---|
| CNS INTERNATIONAL MINISTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:21-CV-65 HEA |
| | ) | |
| JESSICA BAX, *in her official capacity as Acting Director of the Missouri Department of Social Services*, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on the parties' cross motions for summary judgment. (ECF Nos. 95 and 100). The motions are fully briefed and ripe for review. For the reasons below, the Court denies Plaintiff CNS International Ministries, Inc.'s motion for summary judgment and grants Defendant Jessica Bax's motion for summary judgment.

### I.    Background

Plaintiff CNS International Ministries, Inc. ("CNSIMI") is a non-profit corporation that operates a number of Christian-based programs near Bethel, Missouri, including a residential program for troubled youth. Because CNSIMI is a religious organization, it is exempt from Missouri state licensing requirements for

its children's residential program.    Prior to 2021, there was very little state oversight of residential care facilities for children that were run by religious organizations. Religious organizations were not even required to inform state officials if they were operating a residential facility.

In 2021, following compelling testimony at legislative hearings about neglect, physical abuse, and sexual assaults that had occurred in residential facilities for children that were run by certain religious organizations within the State of Missouri, the Missouri legislature enacted the Residential Care Facility Notification Act ("RCFNA" or the "Act"), Mo. Rev. Stat. §§ 210.1250, *et seq.*, which became effective July 14, 2021. This Act mandates disclosures, background checks, certain recordkeeping, and general health and safety standards for residential care facilities that are exempt from licensing under Mo. Rev. Stat. § 210.516.   The Act requires, among other things, that license-exempt residential care facilities ("LERCF") notify the Missouri Department of Social Services ("DSS") of their existence. Mo. Rev. Stat. § 210.1262.   Operators of a LERCF must also make certain disclosures to DSS regarding who works or volunteers for the LERCF or resides on the property; provide proof that medical records are maintained for each child; and conduct background checks of certain persons connected with the facility. Mo. Rev. Stat. §§ 210.1262, 210.1263, and 210.1264. In addition, the RCFNA outlines procedures for

2

the removal of children for certain violations of the Act, as well as if there is an immediate risk to the health or safety of the children.  Mo. Rev. Stat. § 210.1271. Pursuant to its rulemaking authority under the RCFNA, DSS adopted regulations, which have been amended a number of times.

In this suit, CNSIMI challenges many of the RCFNA's statutory and regulatory provisions. It argues that the RCFNA and its regulations mandate requirements, employ procedures, and threaten penalties that are contrary to clearly established law under the United States Constitution and would require Plaintiff to violate federal statutes. CNSIMI seeks declaratory and injunctive relief against implementation and enforcement of certain portions of the RCFNA.  More specifically, Plaintiff brings the following claims in its Second Amended Complaint (hereinafter "Complaint"): Violation of Federal Privacy Laws, 42 U.S.C. § 290dd-2 (Count I); Violation of Plaintiff's Right to Expressive Association (Count II); Procedural Due Process (Count III); Parental Rights (Count IV); the *Hosanna-Tabor* Ministerial Exception (Count V); Illegal Search and Seizure (Count VI); and Procedural Due Process/Federal Supremacy (Count VII).  Plaintiff and Defendant both filed motions for summary judgment and move for the entry of judgment in their favor as to all of these claims.

## II.  *Summary Judgment Standard*

The standard applicable to summary judgment motions is well-settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. *City of Mt. Pleasant, Ia. v. Associated Elec. Co-op., Inc.,* 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor).   Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000); *Allen v. Entergy Corp.*, 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than

4

simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring*, 207 F.3d at 1029 (quoting *Anderson*, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, *see Crossley v. Georgia-Pac. Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).

## III.    *Undisputed Facts*

Consistent with the summary judgment standard in mind, and upon reviewing the record, the Court accepts the following facts as true for purposes of resolving the parties' cross-motions for summary judgment:

Plaintiff CNSIMI is a Missouri not-for-profit corporation. It is exempt from federal income tax under Section 501(a) of the Internal Revenue Code as an organization described in Section 501(c)(3).   CNSIMI is governed by a Board of Directors. The Board of Directors appoints the ministry's officers, including, for

example, the President, Treasurer, Secretary. These officers appoint managers, who hire employees, support staff, contractors, and volunteers.

CNSIMI operates on what it describes as a "sprawling campus," which it calls Heartland (referred to hereinafter as the "Heartland Campus").[1] The Heartland Campus is situated on land near Bethel, Missouri in Knox County and Shelby Counties. CNSIMI asserts that Christian belief and practices are integral to its identity, and the community on the Heartland Campus is an intentional community that is built around the specific goal to help those with life-controlling issues through redemption in the belief that Jesus Christ is the answer to every issue that humans face, including addiction, anger, broken homes, and financial crises. CNSIMI characterizes the Heartland Campus as a "Christ-centered, sustainable, intentional community of hope for the hurting built around a vibrant local church, cultivating individual, family, community and global transformation through the power of the Gospel." (ECF No. 97 at 3, ¶13).

---

[1] In its filings with the Court, Plaintiff uses the terms "Heartland" and "CNSIMI" interchangeably, and it is not always clear to what it is referring. (ECF No. 115 at 7 n.1). At various points in its briefs, Plaintiff uses the term "Heartland" to refer to the campus in northeastern Missouri, Plaintiff's corporate entity, its operations, and/or its ministries. There is a legal distinction between a non-profit corporation and a place – they are *not* interchangeable. In this Opinion, Memorandum and Order, the Court will refer to the non-profit corporation as "CNSIMI" and the campus as "Heartland Campus."

CNSIMI operates a number of services or ministries on the Heartland Campus, including the following: Heartland Children and Youth Home ("HCYH"), a residential behavioral and recovery program for girls and boys; Heartland Women's Recovery Program ("HWRP"), a residential drug and alcohol program for adult women; Heartland Men's Recovery Program ("HMRP"), a residential drug and alcohol program for adult men; and Heartland Christian Academy ("HCA"), a K-12 day school, which is attended by children from HCYH, as well as children of staff and children from the community at large. Also located on the Heartland Campus, although incorporated separately, are Heartland Christian College, which is a two-year college, and Heartland Community Church.

Heartland Community Church is a separate legal entity from CNSIMI, but it is central to the Heartland Campus.   Members of the Heartland Community Church believe that a church is the spiritual family of God, the Christian fellowship created by the Holy Spirit through the mighty acts of God in Christ Jesus.   According to CNSIMI, "church" is a community of believers living together, as opposed to a building or a group of people gathered at a single time. (ECF No. 97 at 4). According to CNSIMI, in order to understand how to live healthy and productive lives, individuals need to walk alongside and interact with other imperfect people, who are living healthy and productive lives.   Many individuals in CNSIMI's

recovery programs have criminal convictions in their past, often involving drug-related offenses.

HMRP houses adult men, who enroll in a 12-month program that focuses on Christian living and hard work. They participate in daily devotions, chapel, and all weekly Heartland Community Church services. The men reside in Knox County, which is separated from other parts of the Heartland Campus by a lake. The women in HWRP live in a home-like environment and are trained in areas of vocation, work ethic, child-rearing, and financial stewardship. The women have daily devotion time and attend all weekly Heartland Community Church services. As for HCYH, CNSIMI does not provide any facts describing the facility (or facilities) where the children reside or where it is located on the Heartland Campus.   It is undisputed, however, that on the large Heartland Campus, there are three separate addresses for HMRP, HWRP, and HCYH.

Children in HCYH are supervised by staff. For many years, CNSIMI has required anyone applying for a position that involved contact with children to report any criminal history, along with child abuse and neglect and sex offender information. In addition, for more than a decade, it has been CNSIMI's employment practice to obtain background checks from Missouri's State Highway Patrol and Family Care Safety Registry, although it is not clear from the record who CNSIMI

requires to undergo these checks. CNSIMI states that it scrutinizes all history but treats only sex offender status as automatically disqualifying. To CNSIMI's knowledge, there is no listing in Missouri's Central Registry for Abuse and Neglect resulting from any incident between an adult and a child in CNSIMI's recovery programs in the past 20 years, and no felony or misdemeanor convictions resulting from such interactions in the entire history of Heartland, going back to the mid-1990s.

In October 2021, CNSIMI submitted a LERCF notification form to the DSS.[2] The LERCF notification form that DSS used at that time required operators of LERCFs to list the "Job Title/Role" of "all staff members, volunteers, and any individual eighteen (18) years or older who reside at or on the property of the residential care facility."   (ECF No. 101-1, at 8-9).   Plaintiff filed with its LERCF notification form a table listing individuals who would complete background checks, including, but not limited to house parents at HCYH, the Head of School for HCA, HCA's teachers and substitute teachers, four individuals who were listed as "HCA Kitchen," and two individuals who were listed as "HCA Maintenance." (*Id.*)

---

[2] In its LERCF Notification, Plaintiff used the term "CNSIMI" to refer to the "facility name," the "owner name," the name of the "operating agency or organization," and the name of the "sponsoring organization."   (ECF No. 101-1, at 8-9).   When asked to identity the type of agency it was operating, Plaintiff did not indicate that it was operating a recovery and/or behavioral program, but rather it characterized its program as a "Boarding School."   *Id.*

CNSIMI disclosed Edward Sonnier to DSS, who has been a school janitor at HCA since 2015. A background check reflected that Mr. Sonnier pleaded guilty in 1994 to unlawful use of a weapon. Because of this offense, Defendant deemed Mr. Sonnier ineligible to work at a LERCF. CNSIMI also disclosed to DSS Sara Morgan, who has been a lunchroom supervisor at HCA since 2020. A background check reflected that Ms. Morgan pleaded guilty in 2011 to felony arson. Because of this offense, Defendant deemed Ms. Morgan as ineligible to work at a LERCF.

It is undisputed that the LERCF notification form that CNSIMI filed with DSS in October 2021 does not contain all information required by RCFNA and its regulations. In what it calls an attempt to comply with the new statute and regulations, CNSIMI offered to disclose names and conduct background checks on all individuals who were actually involved in childcare. Defendant indicated that this was insufficient, and it is DSS's position that CNSIMI is not in compliance with the RCFNA.

Furthermore, David Barton, who was listed as Director of CNSIMI's residential care facility, did not provide the certification required by Mo. Code Regs tit. 13, §35-71.300(5)(D).   Instead, he provided a "Modified Attestation" in lieu of what was mandated, which included the following language:

10

I hereby further attest and affirm that the facility maintains medical records according to the written policy of the facility, a copy of which is submitted as supporting materials to this Notification.

I further certify, under oath and subject to penalty of perjury, that all individuals listed on the attached are those with unsupervised access to children and either have completed the background check requirements or will have completed the background check by December 31, 2021, pursuant to the timeframe stated in 13 C.S.R. 35-71.300.9(A) and C.S.R. 35-71.015(4)(A). Individuals who do not have unsupervised access to children will not be asked to complete a background check.

The ministry does not acknowledge the Department of Social Services authority to designate who may lead, be employed by, be on the premises of, associate with, or avail themselves of the ministry's services.

(ECF No. 101 at 6, ¶ 22).

Defendant maintains a list of LERCFs that are in compliance with RCFNA and its regulations. While CNSIMI applied for inclusion on this list, Defendant has not placed HCYH or CNSIMI on the compliance list, which according to the record in this case, it updated on September 22, 2023.

## IV.   *Discussion*

CNSIMI contends that the definition of the term "LERCF" under the Act is so broad that it encompasses CNSIMI as a whole.   It is CNSIMI's position that the definition covers all of its ministries and programs on the Heartland Campus and, therefore, the RCFNA requires individuals across CNSIMI's various programs, including those individuals who participate in its adult recovery programs, to submit

11

to invasive background checks and disclosures, and that under the RCFNA, many of its members would be excluded from CNSIMI, its ministries, and the Heartland Campus. In addition, CNSIMI further argues that RCFNA's disclosure and background check requirements apply vertically to persons throughout its chain of operations, including its senior leadership and even its outside lawyers and accountants.

Defendant responds by arguing, among other things, that it has never interpreted the Act's definition of LERCF to encompass all of CNSIMI, its adult recovery programs, or the entire Heartland Campus.   Defendant has explicitly stated that the Act does not require background checks and disclosures for individuals in HMRP or HWRP, CNSIMI's adult recovery programs.   Defendant further argues that the categories of people who are subject to the RCFNA's disclosure and background check requirements are much more limited than CNSIMI's broad interpretation of the statute.

Most, if not all of Plaintiff's claims are based on its broad interpretation of the term "LERCF." The Court will first examine the statutory definition of what qualifies as a LERCF under the RCFNA.  The Court will then evaluate each of Plaintiff's claims within this statutory context.

**A. What is a "LERCF" under the RCFNA?**

A "residential care facility" is defined under the RCFNA to be:

Any place, facility, or home operated by any person who receives children who are not related to the operator and whose parent or guardian is not a resident of the same facility and that provides such children with supervision, care, lodging, and maintenance for twenty-four hours a day, with or without transfer of custody.

Mo. Rev. Stat. § 210.1253(6).

A "license-exempt" residential care facility means "a residential care facility that is not required to be licensed under [Mo. Rev. Stat.] § 210.516," which includes "any foster home arrangement established and operated by any well-known religious order or church and any residential care facility or child placement agency operated by such organization." Mo. Rev. Stat. § 210.516.1(5).   The parties do not dispute that any residential care facility operated by CNSIMI would be exempt from Missouri's licensing requirements, because CNSIMI is a religious organization.

CNSIMI operates HCYH, a residential program for troubled youth. However, CNSIMI does not contend that HCYH alone is a LERCF, rather it argues that CNSIMI's entire corporate entity is a LERCF because, according to CNSIMI, RCFNA's definition of a "residential care facility" is tied to the operator, not a particular building or facility.   In support of this argument, CNSIMI argues that the definition of "residential care facility" "attach[es] no significance" to whether

13

"homes," "places" and "facilities" receive children directly, but rather the focus is whether a home, place or facility is operated by any person who receives children. And because "person" is defined to include non-profit corporations, CNSIMI is "person who receives children."[3]   Therefore, according to Plaintiff, CNSIMI as a whole is a LERCF, and all of its programs, including its recovery programs for adult men and women, fall within the statute's definition and are subject to RCFNA's new disclosure and background check requirements. The Court finds the text of the statute does not support CNSIMI's broad interpretation.

When examining whether a state statue is unconstitutional or in violation of a federal law, a federal court should follow the state courts' interpretation of the statute. *Metro. Omaha Prop. Owners Ass'n, Inc. v. City of Omaha*, 991 F.3d 880, 884 (8th Cir. 2021).   If unavailable, federal courts are to apply "that state's rules of statutory construction." *Behlmann v. Century Sur. Co.*, 794 F.3d 960, 963 (8th Cir. 2015). Missouri courts have not interpreted Mo. Rev. Stat. § 210.1253(6) and, therefore, the Court will apply Missouri's rules of statutory construction.

The Missouri Supreme Court has instructed that "[t]he primary rule of statutory construction is to ascertain the intent of the legislature from the language

---

[3] The term "person" is defined to include "an individual, partnership, organization, association, or *corporation*." Mo. Rev. Stat. § 210.1253(5) (emphasis added).

14

used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *Howard v. City of Kansas City*, 332 S.W.3d 772, 779 (Mo. 2011) (quotation omitted).   Where "statutory language is not defined expressly, it is given its plain and ordinary meaning, as typically found in the dictionary." *Derousse v. State Farm Mut. Auto. Ins. Co.*, 298 S.W.3d 891, 895 (Mo. 2009).   *See also Concerned Parents v. Caruthersville Sch. Dist. 18*, 548 S.W.2d 554, 559 (Mo. 1977) ("words are to be taken in accord with their fair intendment and their natural and ordinary meaning," and "[w]hen language is plain and unambiguous, no construction is required"). "The context in which a word is used determines which of the word's ordinary meanings the legislature intended." *Gross v. Parson*, 624 S.W.3d 877, 885 (Mo. 2021).

Turning to the language of the statute at issue here, a residential care facility is limited to a "place," "facility," or "home."   Mo. Rev. Stat. § 210.1253(6).   The definition uses restrictive relative clauses to describe what constitutes a residential care facility, as well as who are operators of a residential care facility.   The restrictive relative clauses are introduced by the pronouns "that" and "who."   The statute uses the pronoun "who" to refer to operators of a residential care facility and the children served by the residential care facility.   More specifically, the statute states that a residential care facility is "operated by any person *who* receives children

15

*who* are not related to the operator … ." Mo. Rev. Stat. § 210.1253(6) (emphasis added). The statute then uses the pronoun "that" to introduce a third relative clause which states as follows: "*that* provides such children with supervision, care, lodging, and maintenance for twenty-four hours a day …." Mo. Rev. Stat. § 210.1253(6) (emphasis added). Despite using the pronoun "that," CNSIMI contends this third relative clause refers back to persons who are operators. The Court does not agree.

Ordinarily, the pronoun "who" refers to persons, and the pronoun "that" refers to inanimate objects or things. Further, in the first relative clause, the statute uses the term "who" to refer to persons who are operators of residential care facilities. If the drafters intended the third relative clause to refer to persons who are operators, it would have once again used the pronoun "who." *Nelson v. Crane*, 187 S.W.3d 868, 870 (Mo. 2006) (courts should presume legislators will use a term consistently and that it bears the same meaning throughout the statute). By using the pronoun "that," it is clear the relative clause refers back to the subject of the paragraph – a place, facility or home, which are inanimate. In other words, the drafters used the pronoun "that" to introduce a relative clause which provides additional information restricting a "residential care facility" to a place, facility, or home "that provides such children with supervision, care, lodging, and maintenance for twenty-four hours a day …." Mo. Rev. Stat. § 210.1253(6).

16

The Court finds this ordinary meaning gives proper effect to the legislator's intent.   This subsection of the statute is defining the term "residential care facility," not who is the operator of a residential care facility. CNSIMI admits that under its interpretation, the definition of a LERCF would be tied to the operator, not a particular building or facility, and the Court finds CNSIMI's proposed interpretation would result in absurd outcomes contrary to the purpose of the legislation, which is to protect children who live in facilities without their parents.   It is not unusual for philanthropic organizations to run a number of charities.   For example, an organization may operate a children's home, a resale shop, counseling services, and a job training center.   Under CNSIMI's reading of the statute, all of these charities would fall under the definition of a residential care facility – an interpretation that is preposterous.

As a corporation, CNSIMI may be an operator of a residential care facility, but CNSIMI is not a place, facility, or home.   In short, CNSIMI as whole is not a LERCF.   Further, not all of the places, facilities, or homes that CNSIMI operates are LERCFs – only those that receive children are.   Based on the record, it is undisputed that CNSIMI operates HCYH, which is a residential home or facility that provides children with 24-hour care. To the extent that children reside at HCYH

without their parents or guardians, HCYH is a LERCF under the statutory definition.[4]

In short, the Court finds that CNSIMI's broad interpretation of statutory definition for LERCF is not supported by the plain language of the statute. Only HCYH qualifies as a LERCF, which is the position Defendant has taken in enforcing the RCFNA. With this finding, the Court now turns to the merits of each of CNSIMI's claims.

## B. CNSIMI's Claims

### 1. Federal Privacy Laws – Count I

In Count I of its Complaint, CNSIMI claims that the RCFNA's disclosure and background check requirements are at odds with federal privacy laws, including 42 U.S.C. §§ 290dd-2 and 290ee-3. CNSIMI points to the fact that Mo. Rev. Stat. § 210.1262 requires it to disclose to DSS the "[n]ame of the director, owner, operator, all staff members, volunteers, and any individual eighteen years of age or older who resides at or on the property of the residential care facility"; and under Mo. Rev. Stat. § 210.493, "any person eighteen years of age or older who resides at or on the

---

[4]Interestingly, neither party in this case has established that the "parent[s] or guardian[s]" of the children at HCYH "[are] not [ ] resident[s] of the same facility." Mo. Rev. Stat. § 210.1253(6). Information about where the parents or guardians of the children at HCYH reside is not in either side's Statement of Uncontroverted Material Facts.

property of such residential care facility" is required to "submit fingerprints and any information that [DDS] requires to complete the background checks."  Mo. Rev. Stat. § 210.493.

CNSIMI argues these statutory provisions violate federal law because they would require CNSIMI to disclose records that are confidential under federal law in that they would necessarily reveal the names of individuals participating in its drug and alcohol recovery programs. 42 U.S.C. § 290dd-2(b)(2)(a); 42 C.F.R. § 2.13(2). Further, CNSIMI aruges that under federal regulations, "no state law may either authorize or compel any disclosure prohibited by the regulations in this part." 42 C.F.R. § 2.20

CNSIMI's argument that RCFNA's disclosure and background check requirements violate federal privacy laws is based, for the most part, on its broad interpretation of the definition of LERCF, which the Court finds is not supported by the plain meaning of the statute. CNSIMI as a whole is not a LERCF; only HCYH is a LERCF under the statutory definition.   Plaintiff is not required to disclose all members of CNSIMI or all persons who participate in CMSIMI's ministries, including its adult recovery programs, HMRP and HWRP.

CNSIMI does operate HCYH, and as the operator of HCYH, CNSIMI is subject to disclosures and background check requirements.   CNSIMI contends that

it is "clear" that anyone who resides at or on "the Heartland property" must be disclosed to DSS and undergo background checks. Defendant, however, has never taken this position.  In order to be in compliance with the RCFNA, adults who reside *at HCYH or on its property* must be disclosed and undergo background checks.  Mo. Rev. Stat. §§ 210.1262 and 210.493.  It is undisputed that there are no adults in a recovery program who reside *at* HCYH.  Further, CNSIMI has not established that adults in its recovery program reside on HCYH property.  To the extent CNSIMI is basing its assertion that anyone who resides on the Heartland Campus is subject to disclosure and background check requirements because all of the Heartland Campus is HCYH property, there is insufficient evidence in the record to support such an argument.

In moving for and opposing summary judgment, CNSIMI provides little factual information about the physical characteristics of the Heartland Campus and HCYH.  Based on the record before the Court, it appears HCYH is located somewhere on the Heartland Campus, which is a "sprawling" campus that is located in two counties.  Aside from stating that the men in HMRP live in one county, which is separated by a lake from where the children, women, and college students reside, there is no information as to the total size of the Heartland Campus, whether the Heartland Campus is contiguous, who owns the parcels of the Heartland Campus, or

20

where HCYH is even located on the Heartland Campus. And while CNSIMI operates on the Heartland Campus, it is undisputed that CNSIMI is not the only legal entity that uses the land. The Heartland Christian College and the Heartland Community Church, which are separate legal entities from CNSIMI, are also located on the Heartland Campus. But again, there is little to no information as to where these entities are located. And there is no information regarding how the land is parceled on the Heartland Campus, although it is undisputed that HCYH, HMRP, and HWRP all have separate street addresses. In short, Plaintiff has not established that there are adults over the age of 18 in recovery programs who reside *on HCYH's property* such that they would need to be disclosed and/or undergo background checks to comply with the RCFNA.

Plaintiff has failed to show either that it must disclose to DSS the adults who participate in its recovery programs or that such individuals must undergo background checks under the RCFNA. Therefore, Plaintiff has not established that the RCFNA's disclosure and background check requirements violate federal privacy laws. Defendant is entitled to summary judgment as to Count I of the Complaint.

21

## 2. Right to Expressive Association – Count II

In Count II, CNSIMI alleges that it is an association for social, economic, educational, religious, and cultural purposes, and that it is entitled to protection of its right to expressive association under the First Amendment.   CNSIMI argues that RCFNA's notification requirements, Mo. Rev. Stat. § 210.1262, violate its right to expressive association by threatening its programs and imposing burdens on those who join in its Christian beliefs.   More specifically, CNSIMI argues that the notification requirements may dissuade adults from participating or continuing in HMRP and HWRP, which could jeopardize these programs.   Plaintiff also argues that the RCFNA's background check requirements, Mo. Rev. Stat. § 210.493, violate its right to expressive association.   It points to the fact that an individual is "ineligible for employment, service or presence" at an LERCF, which Plaintiffs contend is CNSIMI *in toto*, if the individual refuses to consent to a background check, is registered on certain state registries, or has pled guilty to or been convicted of certain crimes, including, for instance, "felony drug-related offenses." Mo. Rev. Stat. § 210.493. CNSIMI claims the Act and its regulations restrict CNSIMI's freedom "to form an expressive association of those who share a common commitment to education, addiction recovery and religious faith," because

22

enforcement of the statute will result in the exclusion of some of its members from CNSIMI's ministry and the Heartland Campus.   (ECF No. 91 at 26, ¶ 119).

The Court finds, contrary to Plaintiff's view, that the RCFNA's disclosures and background check requirements do not apply to CNSIMI as whole, and CNSIMI has failed to set forth facts to show that they would apply all persons who reside, work, or are present on the Heartland Campus.   More particularly, the Court finds that individuals in HMRP and HWRP are not subject to the disclosures and background check requirements. Therefore, Plaintiff's argument that the RCFNA violates CNSIMI's right to expressive association under the First Amendment because it would dissuade adults from participating or continuing in these adult recovery programs is without merit.

RCFNA's background check requirements do, however, have the potential to exclude individuals from working, residing and/or volunteering at or on the premises of HCYH. The Court, therefore, now turns to whether the RCFNA's background check requirements violate Plaintiff's right to expressive association by excluding certain persons from HCYH.

"[I]mplicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."

*Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). But the freedom of expressive association, like many freedoms, is not absolute. *Id.* at 623. The Eighth Circuit has instructed courts to conduct the following analysis when evaluating a claim for violation of the right to associate under the First Amendment:

> [The] analysis of a freedom of association claim involves a two-part inquiry. First, if the plaintiff has identified an associational right that is impacted by the state action, the [U.S. Supreme] Court inquires whether the burden on that right is "significant." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 656 (2000) (finding "that the forced inclusion of Dale would significantly affect" the Boy Scouts' expressive association); *see also Roberts [ ]*, 468 U.S. [at] 626 [ ] ("Indeed, the Jaycees has failed to demonstrate that the Act imposes any serious burdens on the male members' freedom of expressive association.") … If the burden is found to be a significant burden on associational rights, the court must then consider whether a compelling state interest justifies the governmental practice. *Dale*, 530 U.S. at 648 (noting that the governmental entity must have a "'compelling state interest[ ], unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms[.]'") Ultimately, we must balance these competing interests[.] "[T]he associational interest in freedom of expression has been set on one side of the scale, and the State's interest on the other." *Id.* at 658–59.

*Royer ex rel. Est. of Royer v. City of Oak Grove*, 374 F.3d 685, 687–88 (8th Cir. 2004).

CNSIMI argues that the background check requirements burden its constitutional right to expressive association because "the results of the background checks automatically, mechanistically determine whether a community member can

24

remain at Heartland, regardless of CNSIMI's judgment."[5]   (ECF No. 104 at 18).   It argues that Defendant's ability to declare an individual "ineligible to be [a] member[ ] of the Heartland community is an outright abrogation of CNSIMI's right as an expressive association to define its membership." (*Id.*)

The statutory defined purpose of RCFNA's required background checks is to determine whether an individual is "eligible or ineligible for employment or presence at the residential care facility."   Mo. Rev. Stat. § 210.493.11. The results of the background checks, however, do not determine who can be a member of CNSIMI, participate in its ministries, or be present on the Heartland Campus, rather they have the potential to exclude individuals from HCYH.

Defendant has never advocated that an individual's non-compliance with RCFNA's background check requirements would result in his or her exclusion from CNSIMI's ministries and/or the Heartland Campus, although it can result in partial exclusion in that individuals could be excluded from HCYH, CNSIMI's LERCF. Despite this, Plaintiff makes an all or nothing argument.   It does not assert as an alternative argument that exclusion from one aspect of its ministries – being able to reside, work, or volunteer at HCYH – is a significant burden on CNSIMI's right to

---

[5]It is not clear whether CNSIMI is using the term "Heartland" here to refer to the Heartland Campus or CNSIMI itself.

expressive association, and the Court has found no controlling law that would indicate that partial exclusion from an association's premises or programs rises to the level of a significant burden. *See Royer,* 374 F.3d at 687–88 (partial ban on presence at community center, which limited the plaintiff's ability to carry out duties as head of several local non-profit organizations and also limited his ability to meet with other citizens to discuss politics was not a significant burden on plaintiff's right to expressive association).

Furthermore, activities and practices of individuals, though religiously motivated, are often subject to state regulation under the state's power to promote health, safety, and public welfare. *See, e. g., Prince v. Massachusetts*, 321 U.S. 158, (1944) (child-labor laws valid as applied to children distributing religious materials); *Reynolds v. United States*, 98 U.S. 145 (1878) (law prohibiting the practice of polygamy upheld).  Even if Plaintiff had shown that partial exclusion of some members was a significant burden on its right to expressive association, the Court finds a compelling state interest justifies background check requirements for adults who work or volunteer or are present at a LERCF. *Dale*, 530 U.S. at 648.  Children in residential facilities are a particularly vulnerable population. *All* aspects of the children's care are entrusted to the facility 24 hours a day, and by definition, children who reside at a LERCF do not have parents or guardians to protect them.  In

practice, children may be cut off from communicating with others outside the facility about abuse or neglect.   The regulations involved here clearly come within the state's power in the areas of health, safety, and public welfare.   Defendant has a substantial governmental interest in ensuring the safety of children and protecting them from exploitation by felons or persons with a history of abusing children. *Webb as next friend of K. S. v. Smith,* 936 F.3d 808, 811 (8th Cir. 2019) ("few governmental interests are more compelling than protecting minor children from abuse or deadly harm.").

Plaintiff aruges that while there may be a compelling state interest in protecting children, the RCFNA is not narrowly tailored to advance this interest because under the statute and its regulation, individuals who would not have any contact with children could be excluded from the Heartland Campus. CNSIMI also argues that disqualifying conduct under the RCFNA includes crimes that do not involve children. Each of these arguments will be addressed in turn.

To the extent Plaintiff's first argument is based on its broad interpretation of the definition of LERCF, the Court rejects the argument without merit. *See* discussion supra.   The Court recognizes that CNSIMI makes a more specific argument as well.   It points to the statute and argues that the categories of persons who are required to undergo background checks include persons who have no

contact with children whatsoever and would include CNSIMI's outside professionals and senior leadership.

Section 210.1263 of the RCFNA lists the following persons who are to undergo background checks pursuant to § 210.493:

> Officers, managers, contractors, volunteers with access to children, employees, and other support staff of residential care facilities subject to the notification requirements under sections 210.1250 to 210.1286; any person eighteen years of age or older who resides at or on the property of such residential care facility; any person who has unsupervised contact with a resident of such residential care facility; and owners of such residential care facilities who will have access to the facilities shall undergo background checks under section 210.493.

Mo. Rev. Stat. § 210.1263.   Section 210.493 also lists categories of persons who must undergo background checks, and until recently, § 210.493 tracked the language of § 210.1263.   However, § 210.493 was amended by the Missouri legislature effective August 28, 2023, to omit some of these categories of persons.   More specifically, the statute now provides as follows:

> Contractors, volunteers with access to children, and employees of residential care facilities subject to the notification requirements under sections 210.1250 to 210.1286; any person eighteen years of age or older who resides at or on the property of such residential care facility; any person who has unsupervised contact with a resident of the residential care facility; and owners of such residential care facilities who will have access to the facilities shall submit fingerprints and any information that the department requires to complete the background checks, as specified in regulations established by the department, to the Missouri state highway patrol for the purpose of conducting state and federal fingerprint-based background checks.

28

Mo. Rev. Stat. § 210.493.3. In other words, the more recent amendment to statute excludes officers, managers and "other support staff" from the background check requirements.  CNSIMI argues that the two statutes are inconsistent and that Mo. Rev. Stat. § 210.1263 continues to apply such that officers, managers, and other support staff remain in the categories of persons who must undergo background checks. The Court does not agree.

As discussed above, when a court is called upon to evaluate a statute, the chief objective "is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *S. Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. 2009).   And when "two statutory provisions covering the same subject matter are unambiguous standing separately but are in conflict when examined together, a reviewing court must attempt to harmonize them and give them both effect."   *South Metropolitan Fire Protection Dist.*, 278 S.W.3d at 666 (citation omitted).   "If harmonization is impossible, a chronologically later statute, which functions in a particular way will prevail over an earlier statute of a more general nature, and the latter statute will be regarded as an exception to or qualification of the earlier general statute." *Id.* (quotation omitted).

29

Here the two provisions are in conflict, but Mo. Rev. Stat. § 210.493 was amended after § 210.1263, and in light of the fact that § 210.1263 directs that the background checks are to be performed under § 210.493, the Court finds that § 210.493 operates as a qualification to § 210.1263, and § 210.493 is controlling. Officers, managers, and other support staff of a LERCF are no longer required to undergo background checks.[6]   *See State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 607 (Mo. 2019) ("it is presumed that, when the legislature amends a statute, the legislature intended to effect some change in the existing law.").

Only the following persons are required to undergo background checks under the RCFNA: contractors with access to children, volunteers with access to children,[7] employees of HCYH, any person eighteen years of age or older who resides at or on the property of HCYH; any person who has unsupervised contact with a resident of

---

[6]Consistent with the recently amended statute, the applicable regulations were also amended, and they no longer define the terms "officer," "manager" or "other support staff." Compare 13 C.S.R. 35-71.015 (2023) with 13 C.S.R. 35-71.015 (2024).   Moreover, the recently amended regulations state that "[e]xcept as otherwise provided in this regulation, applicants for [ ] LERCFs [ ] who are required to complete the background check process include contractors with unsupervised access to children; volunteers with unsupervised access to children; employees; owners of [ ] LERCFs that will have access to the facilities; and owners of LERCF [ ] that will have access to children."   13 C.S.R. 35-71.015(1)(A)(1) (2024).

[7]Reading the words "access to children" as modifying both contractors and volunteers is in accord with the series-qualifier canon. *Wong v. Minnesota Dep't of Hum. Servs.*, 820 F.3d 922, 928–29 (8th Cir. 2016) ("[T]he series qualifier canon generally applies when a modifier precedes or follows a list."). *See also Flores-Figueroa v. U.S.*, 556 U.S. 646, 650 (2009) (holding that the adverb "knowingly" modified verbs in a series).

HCYH; and HCYH's owners, who have access to the facility.   Mo. Rev. Stat. § 210.493.3; 13 C.S.R. 35-71.015(1)(A)(1).   The Court finds that this list is not overly broad, as it is limited to persons who would have access to children who reside in a facility without a parent or guardian.   The list does not include outside professionals, such as lawyers or accountants, or CNSIMI's senior leadership.

Plaintiff also makes the argument that the RCFNA is not narrowly tailored because the list of offenses that render an individual ineligible to work, volunteer or be present at HCYH or on its premises includes offenses that are not related to children.[8]   Two of CNSIMI's employees were deemed to be ineligible because one

---

[8]An applicant shall be ineligible if the applicant:

(1)     Refuses to consent to the background check as required by this section;
(2)     Knowingly makes a materially false statement in connection with the background check as required by this section;
(3)     Is registered, or is required to be registered, on a state sex offender registry or repository or the National Sex Offender Registry;
(4)     Is listed as a perpetrator of child abuse or neglect under sections 210.109 to 210.183 or any other finding of child abuse or neglect based on any other state's registry or database; or
(5)     Has pled guilty or nolo contendere to or been found guilty of:
    (a)     Any felony for an offense against the person as defined in chapter 565;
    (b)     Any other offense against the person involving the endangerment of a child as prescribed by law;
    (c)     Any misdemeanor or felony for a sexual offense as defined in chapter 566;
    (d)     Any misdemeanor or felony for an offense against the family as defined in chapter 568;
    (e)     Burglary in the first degree as defined in section 569.160;
    (f)     Any misdemeanor or felony for robbery as defined in chapter 570;
    (g)     Any misdemeanor or felony for pornography or related offense as defined in chapter 573;
    (h)     Any felony for arson as defined in chapter 569;

had a past conviction for unlawful use of a weapon and the other had a past conviction of arson.  Setting aside that both of these employees work in the day school not at HCYH, and it is not clear from the record whether they are even subject to § 210.493's background check requirements, the Court finds that offenses that render an applicant ineligible need not be limited to offenses involving children or sexual abuse, as Plaintiff would suggest. The state's interest in protecting children is not confined to protecting them from child abuse or sexual abuse.  The state has a compelling interest in protecting the general safety of these vulnerable children. More general crimes, like those involving weapons or arson, have the potential to place children at risk and it advances the state's compelling interest in protecting vulnerable children to place them on the list of disqualifying offences.

In sum, the Court finds CNSIMI has not established that its right to expressive association under the First Amendment has been violated by the RCFNA.   Under

---

(i)     Any felony for armed criminal action as defined in section 571.015, unlawful use of a weapon as defined in section 571.030, unlawful possession of a firearm as defined in section 571.070, or the unlawful possession of an explosive as defined in section 571.072;

(j)     Any felony for making a terrorist threat as defined in section 574.115, 574.120, or 574.125;

(k)     A felony drug-related offense committed during the preceding five years; or

(l)     Any similar offense in any federal, state, or other court of similar jurisdiction of which the department has knowledge.

Mo. Rev. Stat. § 210.493.12.

the statute and its regulations, members of CNSIMI have the potential to be excluded from HCYH, one of CNSIMI's programs and not its entire ministry. Plaintiff has not established partial exclusion from HCYH would amount to a significant burden on its right to freedom of association. But even if partial exclusion were a significant burden, the Court finds the State has a compelling interest in protecting children who are residents of LERCFs, and the RCFNA's disclosure and background check requirements are narrowly tailored to achieve that interest. Defendant is entitled to summary judgment as to Count II of the Complaint.

### 3. *Violation of Parental Rights – Count IV*

In Count IV, Plaintiff alleges that the RCFNA and its regulations threaten child removals and the ceased operation of HCYH, which "deprives students' parents of a fair opportunity to procure for their children instruction that they think is important and that they have selected at least in part for religious reasons. (ECF No. 91 at 28). Citing to *Pierce v. Society of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510 (1925), Plaintiff alleges that Defendant "has violated and continues to violate the federal constitutional rights of Plaintiff, including its students and their parents, to be free from interference with the rights of parents, guardians and families to direct the upbringing and education of their children under the U.S. Constitution." (ECF No. 91. at 29).

33

The Supreme Court in *Pierce* and other cases has recognized a fundamental right under the Constitution to "direct the education and upbringing of [one's] children." *Pierce*, 268 U.S. at 535; *see also Meyer v. Nebraska*, 262 U.S. 390, 401 (1923) (holding state law prohibiting foreign language instruction violated the "power of parents to control the education of their own"). Parental rights, however, are not unlimited. *Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 966 (8th Cir. 2015). The right is not absolute when the state has a compelling interest in protecting children from abuse. *Swipies v. Kofka*, 348 F.3d 701, 703 (8th Cir. 2003).

"Activities and practices of individuals, though religiously motivated, are often subject to state regulation under the state's power to promote health, safety, and public welfare." *Windsor Park Baptist Church v. Arkansas Activities Ass'n*, 658 F.2d 618, 621 (8th Cir. 1981). The Constitution "does not forbid reasonable nondiscriminatory regulation designed to advance recognized secular interests." *Windsor Park Baptist Church v. Arkansas Activities Ass'n*, 658 F.2d 618, 621 (8th Cir. 1981). Here, Missouri has a compelling interest in ensuring the safety of children, and as discussed above, the RCFNA's disclosure and background requirements – which are not nearly as broad as Plaintiff contends – are sufficiently limited to protect children who reside in LERCFs without their parents.

34

Under *Pierce*, parents cannot be compelled to send their children to public schools; they have a fundamental right to choose a private school.   *Pierce*, 268 U.S. at 535.   Parents, however, do not have a fundamental right to send their children to a private school free of state regulation, including reasonable background check requirements.   Plaintiff motion for summary judgment as to Count IV is denied, and Defendant is entitled to judgment as to this claim.   Plaintiff has not established that the RCFNA violates parents' constitutional rights to direct the upbringing and education of their children.

### 4.  *Right to Church Autonomy – Count V*

In Count V, CNSIMI claims that the RCFNA and its regulations violate CNSIMI's freedom and autonomy under the religion clauses of the First Amendment.   CNSIMI argues that its teachers of religion, among other employees, are sources of religious instruction to students and are an essential part of transmitting religious faith to students.   Plaintiff contends that the new statute and enabling regulations contain no exception for the employment of these ministerial employees, which include teachers, house parents, and many other employees who promote CNSIMI's Christian message.   CNSIMI claims that under *Hosoanna-Tabor Evangelical Lutheran Church & School. v. E.E.O.C.,* 565 U.S. 171 (2012), RCFNA's exceedingly broad background check requirements, which do not have

35

exceptions for ministerial employees, unlawfully interferes with CNSIMI's religious autonomy.

The Free Exercise and Establishment Clauses protect "the right of religious institutions to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine*." Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 736 (2020) (internal quotation marks and citations omitted).   In *Hosanna-Tabor*, a "called" teacher at a Lutheran school claimed that she was unlawfully discharged in violation of the Americans with Disabilities Act. The Supreme Court began its analysis with the general statement that "[b]oth Religion Clauses bar the government from interfering with the decision of a religious to fire one of its ministers."   565 U.S. at 181. The Court found that the First Amendment bars "ministers" from bringing suit against a religious entity claiming termination in violation of employment discrimination laws.   The Supreme Court then examined whether the teacher was a minister covered by the ministerial exception, and after considering a number of factors, including what functions she actually performed in her job, the Court concluded she was.

Importantly, the Supreme Court acknowledged that religious entities are subject to neutral laws of general applicability, and in addressing the EEOC's argument that the ministerial exception would confer on religious employers an

"unfetter discretion" to violate a number of employment laws including hiring children or undocumented workers, the Supreme Court expressly limited the holding of the case, writing:

> The case before us is an employment discrimination suit brought on behalf of a minister, challenging her church's decision to fire her. Today we hold only that the ministerial exception bars such a suit. We express no view on whether the exception bars other types of suits, including actions by employees alleging breach of contract or tortious conduct by their religious employers.

*Id.* at 194.

The case at bar is not an employment discrimination suit and, therefore, the holding in *Hosanna–Tabor* is not controlling in this case. *Id.*   But even if the case were to apply, CNSIMI does not claim that any of its "ministers" have been deemed to be ineligible for employment or presence at HCYH.   It is undisputed that two CNSIMI employees did not meet RCFNA's background check requirements, but Plaintiff does not argue that these two employees – one who was a janitor and the other who was a cafeteria worker – meet the functional requirements of a "minister." *Our Lady of Guadalupe School*, 591 U.S. at 755 (to qualify for the ministerial exception, "[w]hat matters, at bottom is what an employee does.").   Furthermore, the Court declines to make a blanket determination that CNSIMI's teachers, house parents, administrators, and board members qualify under the ministerial exception without evidence as to how specific individuals perform these jobs.   *Id.*

37

Plaintiff argues that the RCFNA substantially interferes with its hiring decisions at every level and forecloses its ability to hire anyone, including a pastor or teacher, who does not meet the statute's eligibility requirements, and it contends that the state cannot invade a religious entity's sphere of autonomy in such a way. Plaintiff argues that CNSIMI's autonomy as a religious organization grants it freedom from *any governmental authority* imposing by legislation or regulation broad and meaningless criteria for whom it can employ or house.   The Court does not agree.   The independence of a religious institution in the matters of faith and doctrine and church governance, "does not mean that religious institutions enjoy a general immunity from secular laws."   *Our Lady of Guadalupe School*, 591 U.S. at 747.

Plaintiff has not established that RCFNA has been applied in such a way that a CNSIMI minister, teacher, or employee who is an essential part of transmitting CNSIMI's religious message has been deemed ineligible for employment at HCYH. Therefore, any as-applied challenge is without merit. To the extent CNSIMI is making a facial challenge to the statute, the Court acknowledges that the RCFNA may interfere with a religious organization's right to decide who can work at its LERCF, but Plaintiff has provided no support for an argument that the state cannot disqualify individuals, including ministers or religious teachers, who have been

38

convicted of sex crimes against minors, for example, from working at a residential care facility for children. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (a plaintiff "can only succeed in a facial challenge by establishing that no set of circumstances exists under which the Act would be valid, i.e., that the law is unconstitutional in all of its applications.") (cleaned up). Even under the less demanding standard for facial challenges, it is clear that a statute requiring background checks for persons who work at or are present at a LERCF "has a plainly legitimate sweep." *Id.*   Plaintiff has failed to show that the RCFNA violates the Religion Clauses of the First Amendment as applied or on its face. Defendant is entitled to summary judgment as to Count V of the Complaint.

### 5.  *Illegal search and seizure – Count VI*

Plaintiff claims that the RCFNA and its regulations deprive Plaintiff and its members "certain constitutionally protected rights under the Fourth Amendment to the Constitution of the United States including the right to be free from warrantless and unreasonable searches and seizures."   (ECF No. 91 at 32).   The Fourth Amendment to the United States Constitution "protects '[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Thompson*, 524 F.3d 1126, 1132 (10th Cir. 2008) (quoting U.S. Const. amend. IV). It also commands that "no Warrants shall issue,

39

but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

Plaintiff argues that a RCFNA regulation that requires CNSIMI to keep medical records for children and to allow DSS to inspect those records without reason or a warrant violates the Fourth Amendment right to be free of unreasonable searches. *See* 13 C.S.R. § 35.71.300(5)(D)(8). This regulation, however, was amended effective October 30, 2024, and it now provides as follows:

> The division will accept a written attestation, made under oath, subject to penalty of perjury, and executed by the director of the LERCF, that the LERCF actually maintains medical records for each child served by the LERCF according to the written policy of the LERCF, which shall be attached to the attestation.

13 C.S.R. § 35.71.300(5)(D)(8)(A). Plaintiff's Fourth Amendment claim as to this regulation, therefore, is denied as moot. *Teague v. Cooper*, 720 F.3d 973, 977 (8th Cir. 2013); *Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678, 687 (8th Cir. 2012).

Plaintiff also claims that the more general disclosure requirements of Mo. Rev. Stat. § 210.1264 violate Plaintiff's Fourth Amendment right to be free from unlawful searches.[9] Plaintiff cites no authority to support its Fourth Amendment

---

[9]The statutory provision provides as follows:

unlawful search argument.   More specifically, Plaintiff has not established that disclosures under § 210.1264 amount to a search within the meaning of the Fourth Amendment.   Defendant is entitled to summary judgment as to Count VI.   *See also United States v. MacLeod*, 436 F.2d 947, 950–51 (8th Cir. 1971) (rejecting criminal defendant's argument that statute requiring taxpayers to supply information to the government violates the Fourth Amendment right to be free from unreasonable searches).

### 6.  *Procedural due process – Count III and VII*

CNSIMI brings procedural due process claims in Counts III and VII. Plaintiff argues that three parts of the RCFNA and its regulations fail to meet the procedural due process requirements the Fourteenth Amendment.   CNSIMI challenges Mo. Rev. Stat. § 210.1271, which is the enforcement provision of the RCFNA, and Mo. Rev. Stat. § 210.143, which provides procedures for conducting

---

Upon request by the department or a law enforcement officer acting within the scope of his or her employment, any license-exempt residential care facility subject to the notification requirements of sections 210.1250 to 210.1286 shall provide a full census and demographic information of children at the residential care facility, including parental or other guardian contact information and a full list of officers, managers, contractors, volunteers with access to children, employees, and other support staff of the residential care facility; any person eighteen years of age or older who resides at or on the property of the residential care facility; and any person who has unsupervised contact with a resident of the residential care facility.

Mo. Rev. Stat. § 210.1264.

41

assessments of children during an abuse investigation of a LERCF.   CNSIMI also contends that the RCFNA's background check procedures, which are set forth in Mo. Rev. Stat. § 210.493.11 and 13 C.S.R. 35-71.015, fail to provide applicants with proper due process including, among other things, the right to properly appeal ineligibility determinations.

The Due Process clause of the United States Constitution provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law.'" U.S. Const. amend. XIV, § 1. Due process "is a flexible concept, requiring only such procedural protections as the particular situation demands." *Lind v. Midland Funding, L.L.C.*, 688 F.3d 402, 405 (8th Cir. 2012) (quotations and citations omitted).   That said, "procedural due process has [a] clear [meaning]: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified," *Id.* at 405–06 (quotations and citations omitted).

None of the statutory or regulatory provisions Plaintiff is challenging on procedural due process grounds have been enforced against CNSIMI or applied to any of its members. Despite this, CNSIMI asks the Court to invalidate these provisions and broadly declare them unconstitutional under the Fourteenth Amendment.   Such relief would apply not only to CNSIMI and its applicants, but it

42

would also apply to other operators of LERCFs and any applicants they may have. In other words, CNSIMI is not making an as-applied challenge to these statutory and regulatory provisions but a facial challenge.  *Los Angeles v. Patel*, 576 U.S. 409, 415 (2015) (a facial challenge, is "an attack on a statute itself as opposed to a particular application.").

Facial challenges to the validity of state laws are disfavored because they "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Washington State Grange*, 552 U.S. at 450 (quotations and citations omitted).  CNSIMI is asking that the Court invalidate these state statutes and regulation as unconstitutional, an extraordinary remedy that is disfavored.

Even when bringing a facial challenge, Plaintiff must satisfy "normal requirements" of Article III standing. *Mosby v. Ligon*, 418 F.3d 927, 932–33 (8th Cir. 2005). See *also* Town *of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433 (2017) (a plaintiff must demonstrate that it has standing for each claim it brings and for each form of relief it seeks.). Defendant argues that CNSIMI lacks standing to challenge §§ 210.1271.1 and 210.143 on procedural due process grounds. While Defendant

43

does not raise standing with regard to the background check requirements, the Court has an independent responsibility to ensure that CNSIMI also has Article III standing to bring this claim. *See Bernbeck v. Gale*, 829 F.3d 643, 646 (8th Cir. 2016).

Article III establishes three elements as a constitutional minimum for a party to have standing: (1) 'an injury in fact,' meaning 'the actual or imminent invasion of a concrete and particularized legal interest'; (2) a causal connection between the alleged injury and the challenged action of the defendant; and (3) a likelihood that the injury will be redressed by a favorable decision of the court." *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 985–86 (8th Cir. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). To demonstrate standing for prospective declaratory relief, CNSIMI must show that it faces "a real and immediate threat" that it will suffer an injury in the future, "not a conjectural or hypothetical one." *Webb as next friend of K.S.*, 936 F.3d at 815 (citing *Frost v. Sioux City, Iowa*, 920 F.3d 1158, 1161 (8th Cir. 2019)). Previous injuries do not confer standing to pursue injunctive or declaratory relief, but rather Plaintiff must be experiencing "an ongoing

44

injury or an immediate threat of injury." *Id.   See also Mosby v. Ligon*, 418 F.3d 927, 933 (8th Cir. 2005) (finding plaintiff lacked standing to obtain prospective relief where complaint dwelled almost exclusively on past interactions).

> a. <u>CNSIMI lacks standing to challenge Missouri Revised Statute §§ 210.1271 and 210.143.</u>

Plaintiff challenges Mo. Rev. Stat. § 210.1271, which is the enforcement provision of the RCFNA.   This section provides that in the event a LERCF fails to comply with RCFNA's requirements or if there is "[a]n immediate health or safety concern for the children at the residential care facility," the state may seek injunctive relief in state court to cease the operation of the LERCF.   Mo. Rev. Stat. § 210.1271.1.   The statute does provide that in some instances, a motion for injunctive relief may be filed *ex parte*. § 210.1271.2.

Plaintiff also argues that Mo. Rev. Stat. § 210.143 fails to meet the requirements of due process.   This subsection allows for Defendant to petition a state court to order a LERCF that is the subject of a child abuse investigation "to present the child at a place and time designated by the court to a children division worker for an assessment of the children health, safety, and well-being."   Mo. Rev. Stat. § 210.143.1.   The state court is to enter the order if the court determines that there is "reasonable cause to believe that the child has been abused or neglected" and the LERCF "does not voluntarily provide access to the child"; the assessment,

which shall be completed within 72 hours, "is reasonably necessary for the completion of an investigation or the collection of evidence"; and "[d]oing so is in the best interest of the child." *Id.* at § 210.143.2 and 3. This subsection also provides for *ex parte* relief under certain circumstances. *Id.* at § 210.1271.2.

Plaintiff argues that both § 210.1271.1 and § 210.143 fail to meet the Fourteenth Amendment's procedural due process requirements. Plaintiff points to the fact that under § 210.1271.1, Defendant is allowed to proceed *ex parte* without notice or a hearing. As for § 210.143, Plaintiff argues this section provides no due process for CNSIMI, the child, or the parents prior to a 72-hour removal, and if a child is to be held more than 72 hours, only *attempted* notice is required. Plaintiff also challenges the legal standard for the entry of a removal order.

Although CNSIMI asks that the Court declare these two statutes unconstitutional and enjoin Defendant from enforcing them, Plaintiff does not allege, and there is no evidence in the record to suggest that Defendant has ever sought or threatened to seek an *ex parte* injunction against CNSIMI under § 210.1271.1 or the removal of a child in CNSIMI's care pursuant to § 210.143. Despite this, CNSIMI argues that it has standing to challenge the new laws on procedural due process grounds because Defendant has a history of illegally intruding on Plaintiff's constitutional rights. In support of this argument, Plaintiff

points to the fact that on October 30, 2001, the State of Missouri wrongfully removed 115 students from the Heartland Campus and placed the children into protective custody. CNSIMI challenged the children's removal and obtained a permanent injunction against Mike Waddle, Juvenile Officer of the Second Judicial Circuit, who had removed some of the children without notice, a court order, and in the absence of exigent circumstances. *Heartland Acad. Cmty. Church v. Waddle*, 317 F. Supp. 2d 984 (E.D. Mo. 2004), *aff'd,* 427 F.3d 525 (8th Cir. 2005).

In *Waddle*, CNSIMI did not challenge the validity of Missouri's laws, but rather it alleged that under the specific facts of the case, the removal of the children violated the constitutional rights of CNSIMI, its students, and their parents.  The Honorable E. Richard Webber agreed and entered a permanent injunction against Mr. Waddle specifically, which was affirmed by the Eighth Circuit Court of Appeals. *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 536 (8th Cir. 2005).  Notably, the district court found Cindy Ayers, the Chief Juvenile Officer of the Forty–First Judicial Circuit, had also violated the plaintiffs' constitutional rights but declined to enter an injunction against this state employee. Judge Webber explicitly found that Mr. Waddle, unlike Ms. Ayers, "appears ready and willing to once again remove the children from Heartland, if the circumstances were the same

47

as they were at the time of the mass removal on October 30, 2001."   317 F. Supp. 2d at 1109.

The fact that CNSIMI successfully litigated constitutional claims against a juvenile officer in 2004 does not establish that it is currently facing real and immediate threat now, or that it will suffer injury in the immediate future. The Court believes this is especially true because in the *Waddle case*, which is more than 20 years old, Judge Webber did not find it necessary to enter an injunction against the other state officer. The injunction was limited to Officer Mike Waddle, and it applied to the facts of that case specifically. *Waddle*, 427 F.3d at 536 (rejecting Defendant Waddle's argument that the injunction would limit his and other juvenile officers from doing their job, by noting that "anyone acquainted with this case knows precisely the behavior that the injunction is designed to prevent in the future—the behavior that violated the constitutional rights of Heartland and its students in the first place.").

The Court finds CNSIMI does not have standing to challenge §§ 210.1271 and 210.143 on procedural due process grounds. Plaintiff has not shown that it is facing the harms it alleges are unconstitutional, and its past interactions with the state are insufficient to show the threat of future harm.   *Webb as next friend of K. S.*, 936 F.3d at 815 (allegations that plaintiff have an increased chance of facing "another

situation" with DHS is not enough). The record is devoid of anything even suggestive that Defendant will file an *ex parte* enforcement action in state court under §§ 210.1271 against CNSIMI for its failure to comply with RCFNA's disclosure and background check requirements. The application of Mo. Rev. Stat. § 210.143 is even more speculative, as there are no allegations or evidence that CNSIMI is under investigation for child abuse or neglect. Reviewing the constitutionality of these two statutes would necessarily take the Court "into the area of speculation and conjecture," *Smook v. Minnehaha Cnty.*, 457 F.3d 806, 816 (8th Cir. 2006), and it would "short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution."[10] *Washington State Grange*, 552 U.S. at 451. The Court finds Plaintiff lacks standing to bring these claims. CNSIMI's procedural due process claims as to Mo. Rev. Stat. §§ 210.1271 and 210.143 are dismissed without prejudice for lack of standing.

---

[10]Defendant's arguments opposing the merits of Plaintiff's procedural due process claims demonstrate why it is perilous to strike a state law as unconstitutional pre-enforcement on a facial challenge. Defendant argues that state court actions to enforce the RCFNA under Mo. Rev. Stat. § 210.1271 would be subject to Mo. Sup. Ct. R. 92.02, the procedural rule for motions for temporary restraining orders and/or for preliminary injunctions, which requires notice and a hearing and imposes strict limits on *ex parte* motions. It is unclear whether Missouri's courts would apply Rule 92.02 to Mo. Rev. Stat. § 210.1271 and ruling on the issue before the statute is applied would usurp the state's authority to enact and enforce its own statutes under the Constitution.

b. <u>CNSIMI lacks standing to challenge RCFNA's background check procedures.</u>

In Counts III and VII, CNSIMI aruges that the RCFNA's background check procedures do not satisfy the Fourteenth Amendment's procedural due process requirements.   CNSIMI points to the fact that under Mo. Rev. Stat. § 210.493.11, a LERCF is not entitled to information as to why an applicant was disqualified, which CNSIMI argues, hinders a LERCF's ability to appeal an ineligibility finding. CNSIMI also challenges the fact that an applicant may be disqualified if he or she has been placed on another state's registry for child abuse and/or neglect.   Mo. Rev. Stat. § 210.493.12. According to CNSIMI, in some states an individual may be placed on a state child abuse or neglect registry on the basis of probable cause or reasonable suspicion, regardless of whether the individual obtained due process of law or had *de novo* appeal rights, which, CNSIMI argues, is in violation of the Fourteenth Amendment.   Finally, CNSIMI argues that the regulations that provide for appeal of an ineligibility determination do not meet the requirements of procedural due process in that applicants who are disqualified are not permitted to collaterally attack prior convictions or findings of abuse, and they are deprived of employment eligibility pending any appeal.   13 C.S.R. 35-71.015(4)(B) and (12)(C).

It is undisputed that two of CNSIMI's employees were determined to be ineligible for employment at a LERCF.  There is no evidence, however, that either of these employees appealed or intend to appeal the ineligibility determination, or that CNSIMI intends to file an appeal of their behalf.  In short, CNSIMI's due process arguments regarding the background check procedures are all based on hypothetical situations.  Anticipating that CNSIMI may have an applicant in the future who may be on another state's child abuse registry or who may seek to make a collateral attack on a past conviction brings the Court "into the area of speculation and conjecture," *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974).  The speculative nature of making such predictions leads the Court to conclude that CNSIMI has not established that it is facing a real or immediate threat of injury as a result of the background check procedures.  *Mosby*, 418 F.3d at 933.  The Court finds Plaintiff lacks standing to pursue these claims. *Webb as next friend of K.S.*, 936 F.3d at 815 (no evidence plaintiffs will suffer an injury in the future that is "not a conjectural or hypothetical one."). CNSIMI's procedural due process claims as to RCFNA's background check procedures are dismissed without prejudice for lack of standing.

## V.    Conclusion

In sum, the Court finds that under the statutory definition of "residential care facility" and the facts of this case, HCYH qualifies as a LERCF, not CNSIMI as a

whole.  Further, CNSIMI has not established that under the terms of the RCFNA and the facts of this case that it is required to disclose the identity of adults in its adult recovery programs and, therefore, Plaintiff's claim that the RCFNA is at odds with federal privacy laws is without merit, and Defendant is entitled to the entry of summary judgment as to Count I.  Plaintiff also has not established that it or its members' constitutional rights to expressive association, church autonomy, and/or parental control are violated by the RCFNA, and Defendant is entitled to the entry of summary judgment as to Counts II, IV, and V.  The Court further finds that CNSIMI's claim under the Fourth Amendment in Count VI as to the inspection of medical records has been rendered moot.  Finally, the Court finds CNSIMI lacks standing to bring its claims of procedural due process in Counts III and VII.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff CNS International Ministries, Inc.'s Motion for Summary Judgment is **DENIED**.   [ECF No. 95]

**IT IS FURTHER ORDRED** that Defendant's Motion for Summary Judgment is **GRANTED**. [ECF No. 100]   Consistent with the Opinion, Memorandum, and Order, the Court enters judgment in favor of Defendant as to Counts I, II, IV, and V of the Second Amended Complaint; Plaintiff's claims in Count VI of the Second Amended Complaint are denied as moot; and the Court

dismisses without prejudice for lack of standing Plaintiff's claims in Counts III and VII of the Second Amended Complaint.

An appropriate Judgment shall accompany this Opinions, Memorandum, and Order.

Dated this 3rd day of March, 2025.


_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE